# TAB 1

**CAUSE NO. _____**

| | | |
|---|---|---|
| WC 4811 SOUTH CONGRESS, LLC and | § | IN THE DISTRICT COURT OF |
| AFFILIATED COMMERCIAL SERVICES, | § | |
| INC. | § | TRAVIS COUNTY, TEXAS |
|      Plaintiffs, | § | |
| | § | _____ JUDICIAL DISTRICT |
| v. | § | |
| | § | |
| | § | |
| 4811 SOCO LP, and | § | |
| BANCORPSOUTH BANK | § | |
|      Defendant. | | |

### <u>PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY AND PERMANENT INJUNCTION</u>

WC 4811 South Congress, LLC, Texas a limited liability corporation, ("Borrower") and Affiliated Commercial Services, Inc., a Texas Corporation ("Bidder", together with Borrower, the "Plaintiffs") file this Plaintiffs' Original Petition and Application for Temporary Restraining Order, Temporary and Permanent Injunction against 4811 Soco, LP ("Anonymous Lender") a foreign entity not authorized to do business in Texas, and BancorpSouth Bank, a Mississippi banking corporation, ("Bank" together with Anonymous Lender, the "Defendants") in support thereof shows the Court the following:

### I. <u>SUMMARY</u>

1. Defendant, BancorpSouth Bank is a financial institution doing business in Travis County and is being served by serving  Michael J. Durrschmidt at Hirsch and Westheimer, 1415 Louisiana Street, 36th Floor Wedge International Tower, Houston, Texas 77002 Phone: 713-223-5181 FAX: 713-223-9319 , or wherever an agent for service of process may be found. BancCorpSouth Bank is the original lender of a mortgage loan to Plaintiff in the original principal sum of

$4,745,000 ("Loan").

2. Defendant, 4811 Soco, LP is a recently formed, anonymous shell entity, not authorized to do business in Texas by the Texas Secretary of State, with layers of nominee managers and lawyers, designed to surreptitiously protect, hide and shield the identities of their principals, that is the purported holder of a mortgage note on a valuable real property owned by WC 4811 South Congress, LLC. Anonymous Lender allegedly purchased the Loan on August 21, 2020 and is being provided notice through its counsel, Christopher L. Dodson Bracewell LLP, 711 Louisiana, Suite 2300, Houston, Texas 77002 Email: chris.dodson@bracewell.com and Mark Riley Mark Riley, Phone: (713) 822-8935; Email: Riley@Riley-CPA-Law.com, or wherever its agent for service of process may be found.

3. On August 21, 2020, Borrower notified the Bank that it had become aware of not only certain state, county and city restrictions that prevent a non-judicial foreclosure sale from properly proceeding as required under the Texas Property Code, without express approval of the Mayor of the City of Austin. Borrower requested that Bank either confirm mayoral approval for the sale or confirm withdrawal of the sale.

4. Bank replied that it needed to discuss the foregoing with its client and would need until August 24, 2020 to provide a response. In the intervening period, Bank allegedly sold the Loan to Anonymous Lender, which Bank informed Borrower of on August 24, 2020. Though Bank acknowledged the impact of the aforementioned restrictions on the ability to conduct a public sale in accordance with the Texas Property Code, Bank attempted to wash its hands of the issues by indicating to Borrower that as Bank had sold the Loan (albeit *after* it was noticed of the restriction issues by Borrower), it "no longer controlled the disposition of the

collateral" and directed Borrower to a mailing address for Anonymous Lender. Borrower had to follow up again for email or phone contact information, and was provided information for counsel Mark Riley.

5.   Borrower then received correspondence from counsel Chris Dodson on behalf of Anonymous Lender to inform it that in spite of the in place orders restricting gathering for public foreclosure sales, it nonetheless intended to pursue the purportedly scheduled non judicial foreclosure sale on September 1, 2020, despite the in place restrictions.

6.   On August 25, 2020, Anonymous Lender tried to argue that other foreclosure sales occurred in August without express mayoral approval. However, Borrower informed Anonymous Lender that it received from the Mayor of Austin correspondence specifically in response to a query on foreclosure sales in which the Mayor confirmed that as of August 26, 2020, no authorization or approval had been given for such a gathering.

7.   Further, on August 25, 2020 Anonymous Lender tried to argue that the AG Guidance Letter does not deserve the weight Borrower recommends. Contrary to this assertion, the Travis County Tax Office has given deference to the same AG Guidance Letter in canceling all public tax foreclosure sales, and specifically referencing the AG Guidance Letter as support for having done so.

8.   Anonymous Lender asserts that "there is no evidence or suggestion that the September 1 foreclosure sale for this Property will be attended by more than 10 willing bidders, so it would be inappropriate to preemptively cancel the foreclosure sale on this basis." Bidder has informed Anonymous Lender that it wishes to attend the foreclosure sale but as the gathering for this sale will likely be a violation of law and subject it to civil and criminal prosecution

and/or result in a voidable or void sale, Bidder and its agents are restricted from attending this proposed non-judicial foreclosure sale.

9.  By asserting that so long as less than 10 people intend to attend the foreclosure sale for this property, the sale will satisfy the public sale requirement, Lender completely misinterprets the impact of the Standing Orders on its ability to conduct a non-judicial foreclosure sale in accordance with the Texas Property Code. Gatherings for **all** foreclosure sales occur on the first Tuesday of each month. There are typically greater than 10 persons in attendance at minimum, due to the administrative persons who are typically in attendance which include but are not limited to trustees, lenders, bidders, security and other interested parties who track and attend such public sales each month in a populous county such as Travis County.

10.  Thus, because the standing orders presently prevent Bidder and other interested public sale participants from being able to attend the proposed sale, Anonymous Lender cannot satisfy the public sale requirement on September 1, 2020 and should be enjoined from attempting to conduct a sale that violates Borrower's statutory rights and Bidder's right to participate in a public foreclosure auction (Bidder's sole claim under this petition).

11.  Nonetheless, in an obvious effort to steal Plaintiff's property in the cover of a global pandemic, Anonymous Lender insists on holding a non-judicial foreclosure sale for which it is certain that willing bidders will not be able to attend due to the state, county and city orders preventing the gathering of more than 10 persons without mayoral approval, which the Lender does not have.

12.  This is an application for this Court to enjoin Anonymous Lender from attempting to proceed with a non judicial foreclosure sale on September 1, 2020,  on the steps of the Travis County

Courthouse located at 1000 Guadalupe Street, Austin, Texas, as doing so would be in violation of Borrower's statutory right to a public sale under the Texas Property Code and would deny Bidder's and other interested parties from attending the sale casing irreparable damage to both due to the unique nature of real estate, Bidder's only claim hereunder. The circumstances surrounding this motion are extraordinary and unprecedented. There is good cause.

13. If Plaintiffs application is not granted, harm is imminent because Borrower's statutory rights under the Texas Property Code will be violated and Borrower may wrongfully lose the use and possession of its unique property in a sale conducted in violation of the Texas Property Code and will cause Plaintiff damage, by creating a cloud on title due to the void sale. Because of the numerous overlapping governmental orders restricting such public gatherings, Bidder will be harmed due to its inability to bid at the non-judicial foreclosure sale. Plaintiffs have no adequate remedy at law because Plaintiffs claims against Defendants involve real property that is unique in nature and cannot be replaced by a money judgment.

14. Defendants have been given notice of the Application for Temporary Restraining Order and Temporary injunction. Plaintiffs request that this Court enjoin, restrain and prohibit Defendants and any person or entity acting in concert with Defendants, from taking any action in exercising the power of foreclosure, including but not limited to foreclosing on the property and note at the September 1, 2020, Travis County Foreclosure Sale purporting to claim defaults on the agreements related to the Subject Property, legally described per the description contained in the Notice of Trustee's Sale, attached hereto as Exhibit A.

15. By virtue of the foregoing, Plaintiffs have demonstrated a likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction or other equitable

remedy against Defendants. In order to preserve the status quo and the property and rights of Plaintiffs during the pendency of this action, the Defendants should be cited to appear and show cause why Defendants should not be temporarily enjoined, restrained, and prohibited, and any person or entity acting in concert with Defendants, from foreclosing on the Borrower's property in a foreclosure sale where Bidder cannot attend.

16. Plaintiffs' application for a temporary restraining order is authorized by Texas Civil Practice and Remedies Code § 65.011 since Plaintiffs are entitled to a writ of injunction or order of restraint under the principal of equity. Furthermore, irreparable injury to the Plaintiffs is threatened and as such it is necessary to preserve the status quo.

### CAUSES OF ACTION

17. **Breach of Contract.** Borrower incorporates by reference herein for all purposes the allegation of the preceding paragraphs verbatim.

   a. Plaintiff Borrower and Defendant Bank are parties to a valid enforceable contract directly between the parties. Anonymous Lender, abused an existing contractual or fiduciary relationship with Bank, while seeking to take advantage of tightening credit market during a global pandemic and rush to wrongfully foreclose on valuable unique real property while rebuffing all good faith attempts by Plaintiff Borrower to resolve the loan.

   b. Defendant Bank and Defendant Anonymous Lender have breached their agreements and its contract with Plaintiff Borrower. As a beneficiary and/or a party to all of these contracts, Defendants conspiracy to convert Borrower's property and Anonymous Lender breach has injured Plaintiff Borrower.

   c. Plaintiff Borrower is entitled to recover is damages against Defendant Bank and

Defendant Anonymous Lender for it actual, consequential, and out-of-pocket damages, court costs, attorneys fees, expenses and interest.

18. **Fraud.** Plaintiff Borrower and Plaintiff Bidder incorporates by reference herein for all purposes the allegation of the preceding paragraphs verbatim. Additionally, alternatively, and without waiver of the foregoing, Defendants have committed fraud against Plaintiffs. Defendant Bank made representations to Plaintiff Borrower that it needed time to consider a postponement of its prior noticed foreclosure due governmental orders while unbeknownst to Plaintiff Borrower, Defendant Bank was secretly working with Defendant Anonymous Lender to use confidential information on the terms of the loan between the parties to effectuate a loan sale.

19. On information and belief, at the time that Defendant Bank made the representations to Plaintiff Borrower, it knew the representations were false or made such representations recklessly, making positive assertions of fact without knowledge of its truth and Defendant Bank made such representations with the intent that Plaintiff act on them. Plaintiff Borrower did act in reliance to its harm.

20. **Declaratory Judgment.** Plaintiff Borrower and Plaintiff Bidder incorporate by reference herein for all purposes the allegation of the preceding paragraphs verbatim. Additionally, alternatively, and without waiver of the foregoing, pursuant to Texas Civil Practices and Remedies Code, section 37.003, Plaintiff Borrower requests the Court determine the rights and obligations of the parties with respect to the rights and obligations of the Bank and Anonymous Lender to post the Subject property for foreclosure and sell the Subject Property at what is in essence a private sale. A present, actual, and justiciable controversy exists in that Plaintiffs are seeking judicial determination that they are entitled to the process of conducting

a legitimate public sale under the contracts between the parties.

21. Plaintiff seeks attorney's fees pursuant to Texas Civil Practices and Remedies Code, section 37.009, and seeks determination if and what amount of attorney's fees for violation of agreements and certain provisions of Texas law would be proper.

## II. <u>ARGUMENTS AND AUTHORITIES</u>

22. There are currently there are currently three orders that restrict gatherings in excess of 10 persons in Austin, Texas, where the September 1, 2020 foreclosure sale would take place.

   a. ***Executive Order GA-28 (as amended)*** issued by Governor Abbot provides that outdoor gatherings in excess of 10 people are <u>prohibited</u> ***unless the mayor of the city in which the gathering is held . . . approves of the gathering***. (emphasis added).

      i. Executive Order GA-28's application to foreclosure sales was specifically addressed in an informal guidance letter issued by the Attorney General's office, as further detailed below, in which the Attorney General's office confirmed that foreclosure sales may not satisfy the public requirement without express approval from the city mayor to hold the sale gathering.

   b. ***Order No 202-16 by the County Judge of Travis County***, after reciting the restrictions in place on outdoor gatherings under GA-28, provides "any gatherings that exceed 10 people are hereby PROHIBITED, except as permitted by current Governor's Proclamations and Orders."

   c. ***Order No 20200815-019 issued by the Mayor of the City of Austin***, after reciting the restrictions in place on outdoor gatherings under GA-28, provides in relevant part that through December 15, 2020 "Further, pursuant to the Governor's Order, and the advice of the local Health Authority, gatherings or presence at any outdoor area, event, or establishment of more than 10 persons are PROHIBITED except at provided in this Section."

23. Governor Abbott's Executive Order 28 which prohibits gatherings of more than ten (10) persons is in direct contradiction with the requirement for a "public sale" under Texas Property Code

PLAINTIFFS APPLICATION FOR TEMPORARY RESTRAINING
ORDER, TEMPORARY AND PERMANENT INJUNCTION

Section 51.002(a) ("a sale of real property under a power of sale conferred by a deed of trust or other contract lien must be a public sale at auction held between 10 a.m. and 4 p.m. of the first Tuesday of a month."

24. The impact of GA-28 on the ability to hold foreclosure sales in satisfaction of the public sale requirement was specifically discussed and addressed in the Texas Attorney General's Guidance Letter, which provides in relevant part:

> With this background in mind, we address your question concerning attendance limitations. Governor Abbott ordered in Executive Order GA-28 that "every business in Texas shall operate at no more than 50 percent of the total listed occupancy of the establishment." This general limitation, however, is subject to several exceptions.
>
> One such exception is found in paragraph five of the order, which limits outdoor gatherings to 10 persons or fewer without approval by the mayor or, in the case of unincorporated territory, the county judge in whose jurisdiction the gathering occurs. Accordingly, to the extent a foreclosure sale occurs outdoors, **attendance at the sale is limited to 10 persons or fewer unless greater attendance is approved by the relevant mayor or county judge**.
>
> **If a foreclosure sale is subject to, and not exempted from, the 10-person attendance limit imposed in Executive Order GA-28, it should not proceed if one or more willing bidders are unable to participate because of the attendance limit.** "[A] sale of real property under a power of sale conferred by a deed of trust or other contract lien must be a public sale at auction held between 10 a.m. and 4 p.m. of the first Tuesday of a month." **The purpose of the public sale requirement is to "secure the attendance of purchasers and obtain a fair price for the property." Strict compliance with the Property Code is required for a trustee to properly make a foreclosure sale**. If an attendance limit precludes the conduct of a public sale for the purpose of securing sufficient bidders to obtain a fair price, the propriety of a foreclosure auction may be called into question. **Accordingly, to the extent attendance at a foreclosure sale is limited to ten or fewer persons, and that limit precludes the attendance of one or more willing bidders who otherwise would have appeared in person, the sale should not go forward as it likely would not comport with the Property Code requirement that the sale be a "public sale."** (internal citations omitted) (*emphasis added*)

25. The relevant order and documentation referenced in paragraphs 22-24 above are attached hereto as (Exhibit B).

26. The Travis County Tax Office has acknowledged the AG Guidance Letter's impact on the ability to satisfy the public sale requirements of the Texas Property Code by indicating on its website that **"Tax foreclosure sales are canceled until further notice"** and providing a link (accessed by clicking on "*Learn More*") to the AG Guidance Letter indicating that in light of GA-28 foreclosure sales should not occur. This information can be found directly on the Travis County Tax Office website: https://tax-office.traviscountytx.gov/properties/foreclosed/upcoming-sales/list

27. Further, on August 26, 2020, Borrower received written confirmation from the Mayor of the City of Austin that no mayoral approval or authorization has been given for outdoor gatherings in excess of ten (10) people for the proposed foreclosure sale in Austin, Texas (Exhibit C).

28. Bidder is unable to participate in the proposed non-judicial foreclosure sale due to the standing orders and the likelihood it will be subject to civil or criminal prosecution for the violation thereof.

29. In light of the foregoing, Plaintiffs respectfully requests that this Court issue a Temporary Restraining Order as well as Temporary and Permanent Injunction to maintain the status quo and to enjoin Anonymous Lender's attempt to conduct a non-judicial foreclosure on the Borrower's property.

## **CONCLUSION**

30. For the reasons set forth above, Plaintiffs move this Court for an entry of a Temporary Restraining Order as well as Temporary and Permanent Injunction to maintain the status quo and to enjoin Anonymous Lender's wrongful attempt to foreclose on Borrower's property in a civil conspiracy with the Bank to convert Borrower's property.

31. Plaintiffs have shown a probability of recovery on the merits of its claim that

Anonymous Lender's actions fail to comply with the Texas Property Code, and that the Defendants have colluded to deprive Borrower of its collateral in order to realize a windfall. Further, balancing the equities, Anonymous Lender is secure in its economic position as the underlying real estate is worth at approximately four times the outstanding debt, such that a temporary restraining order would not prejudice or harm Anonymous Lender while the underlying disputes are resolved. By contrast, should Borrower be deprived of its unique and valuable real estate, and Bidder denied because of governmental regulation the opportunity to appear at a public to bid and purchase the same, they would be irreparably harmed. *Stewart Beach Condo. Homeowners Ass'n, Inc. v. Gili N Prop Investments, LLC*, 481 S.W.3d 336, 350 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("every piece of real estate is unique, and if foreclosure were allowed before a full determination of the underlying claim, the homeowner would be irreparably harmed.")

32. Plaintiffs are ready and willing to post a bond as required by Texas law, and requests that the Court set the bond for an amount not to exceed $10,000 for the temporary restraining order and again for the temporary injunction.

33. Anonymous Lender is not likely to be prejudiced by such an injunction as demonstrated by its significant equity cushion of millions of dollars of value in the Property in excess of the outstanding Loan.

34. Finally, issuing the requested temporary restraining order will maintain the status quo until such time as this Court can take evidence to determine whether a temporary injunction to protect Plaintiffs' respective rights to a public sale should be entered. Plaintiffs reserve the right to further amend their petition.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants, be cited to appear and answer herein, and upon final hearing hereof, Plaintiffs have and recover judgment of and from Defendants as follows:

1. Injunctive relief in the form of a Temporary Restraining Order and a Temporary injunction after notice to Defendants, and all necessary writs prayed for herein;

2. Actual damages in an amount as determined by the Court and within the Court's jurisdiction;

3. Reasonable attorneys' fees, expenses of litigation, and court costs;

4. Pre-judgment interest and post-judgment interest at the maximum rates allowed by law; and

5. Such other relief, both general and special, at law and in equity, to which the Plaintiff may show itself justly entitled.


MANFRED STERNBERG & ASSOCIATES, P.C.


_____

Manfred Sternberg
SBN: 19175775
1700 Post Oak Blvd. Suite 600
Houston, TX 77056
Telephone:   (713) 622-4300
Facsimile:   (713) 622-9899
Email: manfred@msternberg.com
**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of August, 2020, a true and correct copy of the foregoing was forwarded via the Court's electronic filing service and e-mail to the following:

Christopher L. Dodson
Bracewell LLP
711 Louisiana, Suite 2300
Houston, Texas 77002
Email: chris.dodson@bracewell.com

Mark Riley
Phone: (713) 822-8935
Email: Riley@Riley-CPA-Law.com

ATTORNEYS FOR DEFENDANTS

Michael J. Durrschmidt
Hirsh & Westheimer
1415 Louisiana, 36th Floor
Houston, Texas 77002
Email: mdurrschmidt@hirschwest.com

ATTORNEYS FOR DEFENDANT BANCORPSOUTH

Manfred Sternberg

## <u>VERIFICATION</u>

STATE OF TEXAS          §
                        §
COUNTY OF TRAVIS  §

BEFORE ME, the undersigned authority, on this day personally appeared Jeremy Stoler authorized agent of WC 4811 South Congress LLC, Plaintiff in the above-entitled and numbered cause; that he has read the above and foregoing Petition and Application for Temporary Restraining Order and that the facts contained therein are within my personal knowledge and they are all true and correct.

FURTHER AFFIANT SAYETH NOT.

_____

STATE OF TEXAS          §
                        §
COUNTY OF HARRIS  §

BEFORE ME, the undersigned authority, on this day personally appeared Manfred Sternberg authorized agent of Affiliated Commercial Services, Inc., Plaintiff in the above-entitled and numbered cause; that he has read the above and foregoing Petition and Application for Temporary Restraining Order and that declare that the facts contained therein are within my personal knowledge and they are all true and correct.

FURTHER AFFIANT SAYETH NOT.

_____

**JURAT**

My name is MANFRED STERNBERG, my date of birth is August 28, 1960, and my address is 1110 Guinea Drive, Houston, TX 77055. I declare under penalty of perjury that every statement in the foregoing Declaration is within my personal knowledge and is true and correct:

Executed in Harris County, State of Texas on the 31st day of August 3l, 2020.

DECLARANT

_____
MANFRED STERNBERG

# <u>EXHIBIT A</u>

 9 pgs    202040409

## NOTICE OF TRUSTEE'S SALE

STATE OF TEXAS            §
                         §      KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF TRAVIS         §

WHEREAS, WC 4811 SOUTH CONGRESS, LLC, a Delaware limited liability company (the

"*Grantor*"), executed a Deed of Trust, Security Agreement and Financing Statement dated March 31, 2017,

and recorded April 3, 2017 in the Official Public Records of Travis County, Texas (the "*Records*") under

Document No. 2017052193 (together with all extensions, modification, and renewals, if any, collectively

referred to hereinafter as the "*Deed of Trust*");

WHEREAS, the Grantor, pursuant to the Deed of Trust, conveyed to T. Gerry Gamble (the

"*Original Trustee*") for the benefit of First State Bank Central Texas, its successors and assigns

("*Beneficiary*"), all of the personal property, real property and premises described and referred to in the

Deed of Trust (the "*Mortgaged Property*"), including the following described property located in Travis

County, Texas:

14.993 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE
SURVEY NO. 20, ABSTRACT NO. 8, IN TRAVIS COUNTY, TEXAS, BEING MORE
FULLY DESCRIBED BY METES AND BOUNDS ON EXHIBIT "A" ATTACHED
HERETO AND MADE A PART HEREOF FOR ALL PURPOSES, BEING THE
FOLLOWING FOUR TRACTS:

### TRACT 1:
4.32 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE,
IN TRAVIS COUNTY, TEXAS, BEING THE SAME PROPERTY CONVEYED BY
ABEL J. & MARY ANN THERIOT FAMILY LIMITED PARTNERSHIP TO THERIOT
FLP PROPERTIES – III, IN A DEED DATED MAY 6, 2010, RECORDED IN
DOCUMENT NUMBER 2010125121, OF THE OFFICIAL PUBLIC RECORDS OF
TRAVIS COUNTY, TEXAS.

### TRACT 2:
5.6839 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE,
IN TRAVIS COUNTY, TEXAS, BEING THE SAME PROPERTY AS TRACT ONE
CONVEYED BY SASHA THERIOT SANDERS, TEAL THERIOT SANDERS, AND
ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC, IN
A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125125,
OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

### TRACT 3:
2.629 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE,
IN TRAVIS COUNTY, TEXAS, BEIGN THE SAME PROEPRTY AS TRACT TWO

1

CONVEYED BY SASHA THERIOT SANDERS, TEAL THERIOT SANDERS, AND ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125125, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

TRACT 4:
2.32 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, BEIGN THE SAME PROEPRTY AS TRACT TWO CONVEYED BY SUZANNE MARIE SANDERS AND CURTIS NOLEN SANDERS TO SANDERS FLP PROPERTIES – I, LLC, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125122, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

WHEREAS, the Deed of Trust secures payment of that certain Promissory Note dated March 31, 2017, executed by Grantor, as Maker, and payable to the order of Beneficiary, in the original stated amount of FOUR MILLION SEVEN HUNDRED FOFTY-FIVE THOUSAND AND 00/100 DOLLARS ($4,745,000.00) (together with all extensions, modification, and renewals, if any, collectively referred to hereinafter as the "*Note*");

WHEREAS, BancorpSouth Bank, a Mississippi banking corporation (the "*Holder*"), is the successor by merger to Beneficiary;

WHEREAS, the Holder is the current legal owner and holder of the indebtedness secured by the Deed of Trust (the "*Indebtedness*") and, if, for any reason, Holder prefers to appoint a substitute trustee to act instead of the trustee named in the Deed of Trust, Holder has the full power to appoint, at any time and without any formality other than by written instrument, one or more successor or alternate successor trustees, each of whom shall succeed to all the estate, rights, powers and duties conferred upon the Original Trustee in the Deed of Trust and by applicable law;

WHEREAS, Holder has named, constituted and appointed in writing BRADLEY E. RAUCH, a resident of Harris County, Texas, ZACHARY SCHNEIDER, a resident of Harris County, Texas, ANGELA ZAVALA, a resident of Travis County, Texas, and also MICHELLE JONES, a resident of Travis County, Texas, as Substitute Trustees, each with the power to act independently (and without the joinder of the others) under and by virtue of the Deed of Trust and to hold possess and execute all the estate, rights, powers and duties conferred upon the Original Trustee in the Deed of Trust and by applicable law;

2

WHEREAS, Grantor has defaulted in the performance of its obligations under the Note and the Deed of Trust, and notice of such defaults have been waived, and/or have occurred, and Grantor has failed to cure such default(s);

WHEREAS, acceleration of maturity and demand have been made upon Grantor for payment of the Indebtedness, and/or have been waived, and/or have occurred;

WHEREAS, the proceeds of the Note were used for commercial purposes, and the Mortgaged Property was not to be used by the debtor for residential purposes;

WHEREAS, the Holder has called upon and requested either or any of Bradley E. Rauch, Zachary Schneider, Angela Zavala, Michelle Jones, or any additional substitute trustee appointed pursuant to the terms of the Deed of Trust, as Substitute Trustees, to perform the Trustee's duties under the Deed of Trust and to post, mail and file, or have posted, mailed, and filed, notice and to sell the Mortgaged Property without prejudice and without creating an election not to proceed against any other collateral securing the obligations of the Grantor to the Holder, and without waiving any rights or remedies which the Holder has against the Grantor or any other parties obligated for payment of the Indebtedness;

NOW, THEREFORE, the undersigned Substitute Trustee, at the request of the Holder, hereby gives notice that after due posting of this Notice as required by the Deed of Trust and law, a Substitute Trustee will sell on **September 1, 2020** (that being the first Tuesday of said month, as provided for in Texas Property Code Sec. 51.002) at public auction to the highest bidder for cash, at THE REAR "SALLYPORT" OF THE TRAVIS COUNTY COURTHOUSE, 1000 GUADALUPE STREET, AUSTIN, TEXAS 78701, said location having been designated by the County Commissioners' Court of Travis County, Texas (or such other location as may be designated by said County Commissioners' Court), the sale to begin no earlier than 1:00 o'clock p.m. and no later than three (3) hours after such time, the Mortgaged Property, including without limitation, all personal property described in the Deed of Trust, owned by the Grantor, Grantor's heirs, legal representatives, successors and assigns, and originally covered by the Deed of Trust, whether or not herein specifically described.

20170804.20190907/3778366.1

3

THE SALE OF THE PROPERTY IS "AS IS" AND "WHERE IS" AND WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND BY THE SUBSTITUTE TRUSTEE OR HOLDERS OF SAID INDEBTEDNESS, EXPRESS, IMPLIED, STATUTORY, QUASI-STATUTORY OR OTHERWISE, ANY WARRANT OR MERCHANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE BEING EXPRESSLY DISCLAIMED. NEITHER THE HOLDER NOR THE TRUSTEE OR SUBSTITUTE TRUSTEE MAKES ANY REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE COMPLIANCE WITH LAWS, RULES, AGREEMENTS, OR SPECIFICATIONS, NOR WITH RESPECT TO CONDITION, QUALITY, CAPACITY, DESIGN, OPERATION, ABSENCE OF ANY LATENT DEFECTS OR ANY OTHER WARRANTY OR REPRESENTATION WHATSOEVER WITH RESPECT TO THE PROPERTY, ALL OF WHICH ARE EXPRESSLY WAIVED BY PURCHASER(S).

THE NEXT PAGE IS THE SIGNATURE PAGE

WITNESS BY HAND this 7th day of **August, 2020**.

Zachary Schneider, Trustee

COUNTY OF HARRIS      §

STATE OF TEXAS      §

This document was acknowledged before me on this, the **7th** day of **August, 2020**, by Zachary Schneider, Trustee.

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

**Name and Address of Substitute Trustees:**
Mr. Bradley E. Rauch
Hirsch & Westheimer, P.C.
1415 Louisiana, 36th Floor
Houston, Texas 77002



KAREN M. WADE
My Notary ID # 7848256
Expires June 30, 2023

Mr. Zachary Schneider
Hirsch & Westheimer, P.C.
1415 Louisiana, 36th Floor
Houston, Texas 77002

Angela Zavala
Foreclosure Network of Texas
10406 Rockley Road
Houston, TX 77099

Michelle Jones
Foreclosure Network of Texas
10406 Rockley Road
Houston, TX 77099

**AFTER RECORDING, PLEASE RETURN TO:**
Mr. Zachary Schneider
Hirsch & Westheimer, P.C.
1415 Louisiana, 36th Floor
Houston, Texas 77002

5

20170804.20190907/3778366.1

## EXHIBIT "A"

### Legal Description

METES AND BOUNDS DESCRIPTION OF A SURVEY OF 14.993 ACRES OF LAND, A PORTION OF THE ISAAC DECKER LEAGUE SURVEY NO. 20, ABSTRACT NO. 8, IN THE CITY OF AUSTIN, TRAVIS COUNTY, TEXAS, SAID 14.993 ACRES OF LAND BEING ALL OF THAT CALLED 4.32 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, AS DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM ABEL J. & MARY ANN THERIOT FAMILY LIMITED PARTNERSHIP TO THERIOT FLP PROPERTIES – III OF RECORD IN DOCUMENT NUMBER 2010125121, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT CALLED 5.6839 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, DESIGNATED AS TRACT 1 AND DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM SASHA THERIOT SANDERS, TEAL THERIOT SANDERS, AND ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC, OF RECORD IN DOCUMENT NUMBER 2010125125, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT CALLED 2.629 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, DESIGNATED AS TRACT 2 IN SAID SPECIAL WARRANTY DEED TO SANDERS CHILDREN INVESTMENTS, LLC OF RECORD IN DOCUMENT NUMBER 2010125125, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT 2.32 ACRES OF LAND, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, AS DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM SUZANNE MARIE SANDERS AND HER HUSBAND CURTIS NOLEN SANDERS TO SANDERS FLP PROPERTIES – I, LLC OF RECORD IN DOCUMENT NUMBER 2010125122, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, SAID 14.993 ACRES OF LAND, AS SURVEYED BY BOWMAN CONSULTING GROUP, LTD. AND SHOWN ON BOWMAN PLAN NO. 3562, BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

**BEGINNING** at a 5/8" iron rod found I the east right-of-way line of South Congress Avenue at the most westerly northwest corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and at the southwest corner of that 0.780 of one acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Cash Warranty Deed to MMGG Enterprises, L.P. in Document No. 2004036130, Official Public Records of Travis County, Texas, said 5/8" iron rod found being a common corner of the two parcels describe din that Agreement of record in Document No. 2005099083, Official Public Records of Travis County, Texas, said 5/8" iron rod found being the **POINT OF BEGINNING** and most westerly northwest corner of the tract described herein, and from which 5/8" iron rod found, a 1/2" iron rod with plastic cap stamped "ALL POINTS" found at the southwest corner of that 0.066 of one acre tract described in a Street Deed form MMGG Enterprises, LTD., to the City of Austin of records in Document No. 2005102391, Official Public Records of Travis County, Texas bears N 63° 59' 01" W a distance of 0.67 feet;

**THENCE** S 61° 50' 30" E, with the most westerly north line of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the south line of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the agreed line referenced in the said Agreement of record in Document No. 2005099083 a distance of 239.20 feet to a ½" steel pin found at a reentrant corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the south east corner of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the corner referenced in said Agreement for a reentrant corner of the tract described herein;

**THENCE** N 23° 58' 30" E, with the most northerly west line of the said Theriot FLP Properties – III, LLC 4.32 acre tract and with the east line of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the agreed line referenced in the said Agreement, at a distance of 4.94 passing a ½" steel pin found 0.17 feet east of line, said ½" steel pin found being the southeast corner of that 0.708 of one acre tract, a

6

portion of the said Isaac Decker League Survey No. 20, as described in a Special Warranty Deed With Vendor's Lien to Area 51 Enterprises LLC in Document No. 2015028497, Official Public Records of Travis County, Texas, in all 149.96 feet to a ½" steel pin found in the south line of that 4.056 acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Special Warranty Deed to ID Bel Air Partners, LP or record in Document No. 2005017785, Official Public Records of Travis County, Texas, and being the most northerly northwest corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract, and the northeast corner of the said MMGG Enterprises, L.P. 0.780 of one acre tract and the northeast corner of the said Area 51 Enterprises LLC 0.708 of one acre tract, and being also the corner referenced in said Agreement for the most northerly northwest corner of the tract described herein;

**THENCE** S 63° 24' 52" E, with the most easterly north line of the said Theriot FLP Properties – III, LLC 4.32 are tract and the south line of the said ID Bel Air Partners, LP 4.056 acre tract, a distance of 383.05 feet to a ½" steel pin found in the west line of Lot 2A, Block V, a Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, of record in Plat Book 51, Page 20, Plat Records of Travis County, Texas, and being also the southeast corner of the said ID Bel Air Partners, LP 4.056 acre tract and the northeast corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract, for the northeast corner of the tract described herein;

**THENCE** S 26° 47' 44" W, with the west line of said Lot 2A, Block V, a Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, and with the east line of the said Theriot FLP Properties – III, LLC 4.32 acre tract, a distance of 58.95 feet o a ½" steel pin with plastic cap stamped "M&S 1838" found at the southwest corner of said Lot 2A, Block V and the northwest corner of Lot 1A, Block V, of said Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, for an angle point in the east line of the tract described herein;

**THENCE** S 26° 41' 23" W, with the west line of said Lot 1A, Block V and the west line of Lot 4, Block V, Greenwood Hills, Section Five, of record in Plat Book 42, Page 10, Plat Records of Travis County, Texas, and being also with the west line of Liverpool Drive as shown on said map or plat of Greenwood Hills, Section Five and being also with the east line of the said Theriot FLP Properties III, LLC 4.32 acre tract, a distance of 237.88 feet to a ½" steel pin found at the southeast corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the northeast corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres of land, for an angle point in the east line of the tract described herein;

**THENCE** S 26° 31' 34" W, with the west line of Liverpool Drive and the west line of Lot 23, Block W, of said Greenwood Hills Section Five and being also with the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 152.96 feet to a 5/8" steel pin found at the southwest corner of said Lot 23, Block W and the Norwest corner of Lot 16, Block W, of said Greenwood Hills Section Five, for an angle point in the east line of the tract described herein;

**THENCE** S 27° 38' 57" W, with the west line of said Lot 16, Block W, of said Greenwood Hills Section Five and being also with the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 40.08 feet to a ½" steel pin found at the southwest corner of said Lot 16, Block W and the northwest corner of Lot 15, Block W, of said Greenwood Hills Section Five, for an angle point in the east line of the tract described herein;

**THENCE** S 26° 33' 27" W, with the west line of said Lot 15, Block W and the west line of Lots 14, 13, 12, 11 and 10, Block W, of said Greenwood Hills Section Five and the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 473.14 feet to a ½" steel pin with plastic cap stamped "M&S 1838" found in the west line of said Lot 10, Block W, Greenwood Hills Section Five at the southeast corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, for a southeast corner of the tract described herein;

7

**THENCE** N 34° 50' 27" W, with the southwest or west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 11.89 feet to a ½" steel pin with plastic cap stamped "M&S 1838" found in the southwest or west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres and at the northeast corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, for a reentrant corner of the tract described herein;

**THENCE** S 27° 22' 12" W, with the east line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, at a distance of 25.77 feet, more or less, passing the most easterly northwest corner of that 2.002 acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Warranty Deed with Vendor's Lien of record in Document No. 2011133868, Official Public Records of Travis County, Texas, in all a distance of 261.28 feet to a ½" steel pin with plastic cap stamped "M&S 1838" found at the southeast corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and a reentrant of the said Jim O'Brien 2.002 acre tract and the moth southerly southeast corner of the tract described herein;

**THENCE** N 60° 09' 26" W, with the most westerly north line of the said Jim O'Brien 2.002 acre tract and with the south line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, a distance of 199.03 feet to a ½" steel pin with plastic cap stamped "M&S 1838" found at an angle point in the most westerly north line of the said Jim O'Brien 2.002 acre tract and an angle point the south line of the sand Sanders Children Investments, LLC Tract 2 of 2.62 acres;

**THENCE** N 67° 47' 26" W, with the most westerly south line of the said Jim O'Brien 2.002 acre tract and with the south line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, a distance of 58.62 feet to a ½" steel pin with plastic cap stamped "M&S 1838" found in the east line of Wasson Road (old State Highway No. 29) at the most westerly northwest corner of the said Jim O'Brien 2.002 of one acre tract and the southwest corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, for the most southerly southwest corner of the tract described herein;

**THENCE** with the east line of Wasson Road (old State Highway No. 29) and the west line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and with the west line of the said Sanders FLP Properties – 1, LLC 2.32 acre tract, courses numbered 1 through 5 inclusive as follows:

1. N 24° 25' 26" W, a distance of 42.22 feet to ¾" iron pipe found;
2. N 14° 47' 26" W, a distance of 70.00 feet to a drill hole in top of a concrete curb found;
3. N 19° 56' 26" W, at a distance of 154.55 feet passing the northwest corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and the southwest corner of the said Sanders FLP Properties – 1, LLC 2.32 acre tract, in all a distance of 254.00 feet to a calculated point in a multi-trunk Pecan tree;
4. N 07° 57' 26" W, a distance of 138.98 feet to a ½" steel pin with plastic cap stamped "M&S 1838" found; and
5. N 04° 30' 34" E, a distance of 36.10 feet to a ½" steel pin with plastic cap stamped "M&S 1838" found at the intersection of the east line of Wasson Road and the east line of Congress Avenue;

**THENCE** N 27° 40' 11" E, with the east right-of-way of South Congress Avenue and the west line of the said Sanders FLP Properties – 1, LLC 2.32 acre tract and the west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, and being also with the west line of the said Theriot FLP Properties – III, LLC 4.32 acre tract, at a distance of 271.24 feet passing the northwest corner of the said Sanders FLP Properties – 1, LLC 2.32 are tract and the southwest corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, at a distance of 386.42 feet passing a northwest corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, and a southwest corner of the said Theriot FLP Properties – III, LLC 4.32 tract, in all 666.83 feet to the **POINT OF BEGINNING** of the tract described herein containing 14.993 acres of land.

8

20170804.20190907/3778366.1



**FILED AND RECORDED**
OFFICIAL PUBLIC RECORDS

*Dara DeBeauvoir*

Dana DeBeauvoir, County Clerk
Travis County, Texas

202040409

Aug 10, 2020 11:12 AM
Fee: $3.00        MACEDOS

# **EXHIBIT B**



GOVERNOR GREG ABBOTT

June 26, 2020

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
8:45AM O'CLOCK
JUN 2 6 2020
Secretary of State

The Honorable Ruth R. Hughs
Secretary of State
State Capitol Room 1E.8
Austin, Texas 78701

Dear Secretary Hughs:

Pursuant to his powers as Governor of the State of Texas, Greg Abbott has issued the following:

Executive Order No. GA-28 relating to the targeted response to the COVID-19 disaster as part of the reopening of Texas.

The original executive order is attached to this letter of transmittal.

Respectfully submitted,

Gregory S. Davidson
Executive Clerk to the Governor

GSD/gsd

Attachment

# 𝔈𝔵𝔢𝔠𝔲𝔱𝔦𝔳𝔢 𝔒𝔯𝔡𝔢𝔯

### BY THE
### GOVERNOR OF THE STATE OF TEXAS

**Executive Department**
**Austin, Texas**
**June 26, 2020**

### EXECUTIVE ORDER
### GA 28

*Relating to the targeted response to the COVID-19 disaster*
*as part of the reopening of Texas.*

━━━━━━━━━━━━━━━

WHEREAS, I, Greg Abbott, Governor of Texas, issued a disaster proclamation on March 13, 2020, certifying under Section 418.014 of the Texas Government Code that the novel coronavirus (COVID-19) poses an imminent threat of disaster for all counties in the State of Texas; and

WHEREAS, in each subsequent month effective through today, I have renewed the disaster declaration for all Texas counties; and

WHEREAS, the Commissioner of the Texas Department of State Health Services (DSHS), Dr. John Hellerstedt, has determined that COVID-19 continues to represent a public health disaster within the meaning of Chapter 81 of the Texas Health and Safety Code; and

WHEREAS, I have issued executive orders and suspensions of Texas laws in response to COVID-19, aimed at protecting the health and safety of Texans and ensuring an effective response to this disaster; and

WHEREAS, I issued Executive Order GA-08 on March 19, 2020, mandating certain social-distancing restrictions for Texans in accordance with guidelines promulgated by President Donald J. Trump and the Centers for Disease Control and Prevention (CDC); and

WHEREAS, I issued Executive Order GA-14 on March 31, 2020, expanding the social-distancing restrictions for Texans based on guidance from health experts and the President; and

WHEREAS, I subsequently issued Executive Orders GA-16, GA-18, GA-21, GA-23, and GA-26 from April through early June 2020, aiming to achieve the least restrictive means of combatting the threat to public health by continuing certain social-distancing restrictions, while implementing a safe, strategic plan to Open Texas; and

WHEREAS, as Texas reopens in the midst of COVID-19, increased spread is to be expected, and the key to controlling the spread and keeping Texas residents safe is for all Texans to consistently follow good hygiene and social-distancing practices, especially those set forth in the minimum standard health protocols from DSHS; and

WHEREAS, due to recent substantial increases in COVID-19 positive cases, and increases in the COVID-19 positivity rate and hospitalizations resulting from COVID-19, targeted and temporary adjustments to the reopening plan are needed to achieve the

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
8:45AM O'CLOCK

JUN 2 6 2020

least restrictive means for reducing the growing spread of COVID-19 and the resulting imminent threat to public health, and to avoid a need for more extreme measures; and

WHEREAS, everyone must act safely, and to that end, this executive order and prior executive orders provide that all persons should follow the health protocols from DSHS, which whenever achieved will mean compliance with the minimum standards for safely reopening, but which should not be used to fault those who act in good faith but can only substantially comply with the standards in light of scarce resources and other extenuating COVID-19 circumstances; and

WHEREAS, the "governor is responsible for meeting ... the dangers to the state and people presented by disasters" under Section 418.011 of the Texas Government Code, and the legislature has given the governor broad authority to fulfill that responsibility; and

WHEREAS, failure to comply with any executive order issued during the COVID-19 disaster is an offense punishable under Section 418.173 by a fine not to exceed $1,000, and may be subject to regulatory enforcement;

NOW, THEREFORE, I, Greg Abbott, Governor of Texas, by virtue of the power and authority vested in me by the Constitution and laws of the State of Texas, and in accordance with guidance from DSHS Commissioner Dr. Hellerstedt and other medical advisors, the Governor's Strike Force to Open Texas, the White House, and the CDC, do hereby order the following on a statewide basis effective at noon on June 26, 2020:

Every business establishment in Texas shall operate at no more than 50 percent of the total listed occupancy of the establishment; *provided, however, that*:

1. There is no occupancy limit for the following:
   a. any services listed by the U.S. Department of Homeland Security's Cybersecurity and Infrastructure Security Agency (CISA) in its Guidance on the Essential Critical Infrastructure Workforce, Version 3.1 or any subsequent version;
   b. religious services, including those conducted in churches, congregations, and houses of worship;
   c. local government operations, including county and municipal governmental operations relating to licensing (including marriage licenses), permitting, recordation, and document-filing services, as determined by the local government;
   d. child-care services;
   e. youth camps, including but not limited to those defined as such under Chapter 141 of the Texas Health and Safety Code, and including all summer camps and other daytime and overnight camps for youths; and
   f. recreational sports programs for youths and adults;

2. Except as provided below by paragraph number 5, this 50 percent occupancy limit does not apply to outdoor areas, events, or establishments, except that the following outdoor areas or outdoor venues shall operate at no more than 50 percent of the normal operating limits as determined by the owner:
   a. professional, collegiate, or similar sporting events;
   b. swimming pools;
   c. water parks;
   d. museums and libraries;
   e. zoos, aquariums, natural caverns, and similar facilities; and

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
8:45am O'CLOCK

JUN 2 6 2020

      f.  rodeos and equestrian events;

3.  This 50 percent occupancy limit does not apply to the following establishments that operate with at least six feet of social distancing between work stations:

      a.  cosmetology salons, hair salons, barber shops, nail salons/shops, and other establishments where licensed cosmetologists or barbers practice their trade;

      b.  massage establishments and other facilities where licensed massage therapists or other persons licensed or otherwise authorized to practice under Chapter 455 of the Texas Occupations Code practice their trade; and

      c.  other personal-care and beauty services such as tanning salons, tattoo studios, piercing studios, hair removal services, and hair loss treatment and growth services;

4.  Amusement parks shall operate at no more than 50 percent of the normal operating limits as determined by the owner;

5.  For any outdoor gathering in excess of 100 people, other than those set forth above in paragraph numbers 1, 2, or 4, the gathering is prohibited unless the mayor of the city in which the gathering is held, or the county judge in the case of a gathering in an unincorporated area, approves of the gathering, and such approval can be made subject to certain conditions or restrictions not inconsistent with this executive order;

6.  For dine-in services by restaurants that have less than 51 percent of their gross receipts from the sale of alcoholic beverages, the occupancy limit shall remain at 75 percent until 12:01 a.m. on June 29, 2020, at which time such restaurants may only operate at up to 50 percent of the total listed occupancy of the restaurant, subject to paragraph number 9 below;

7.  People shall not visit bars or similar establishments that hold a permit from the Texas Alcoholic Beverage Commission (TABC) and are not restaurants as defined above in paragraph number 6; provided, however, that the use by such bars or similar establishments of drive-thru, pickup, or delivery options for food and drinks is allowed to the extent authorized by TABC;

8.  People shall not use commercial rafting or tubing services, including rental of rafts or tubes and transportation of people for the purpose of rafting or tubing;

9.  For any business establishment that is subject to a 50 percent "total listed occupancy" limit or "normal operating limit," and that is in a county that has filed with DSHS, and is in compliance with, the requisite attestation form promulgated by DSHS regarding minimal cases of COVID-19, the business establishment may operate at up to 75 percent of the total listed occupancy or normal operating limit of the establishment;

10.  For purposes of this executive order, facilities with retractable roofs are considered indoor facilities, whether the roof is opened or closed;

11.  Staff members are not included in determining operating levels, except for manufacturing services and office workers;

12.  Except as provided in this executive order or in the minimum standard health protocols recommended by DSHS, found at www.dshs.texas.gov/coronavirus, people should not be in groups larger than ten and should maintain six feet of social distancing from those not in their group;

13.  People over the age of 65 are strongly encouraged to stay at home as much as possible; to maintain appropriate distance from any member of the household who has been out of the residence in the previous 14 days; and, if leaving the

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
8:45AM O'CLOCK

JUN 2 6 2020

home, to implement social distancing and to practice good hygiene, environmental cleanliness, and sanitation;

14. In providing or obtaining services, every person (including individuals, businesses, and other legal entities) should use good-faith efforts and available resources to follow the minimum standard health protocols recommended by DSHS;

15. Nothing in this executive order or the DSHS minimum standards precludes requiring a customer to follow additional hygiene measures when obtaining services.  Individuals are encouraged to wear appropriate face coverings, but no jurisdiction can impose a civil or criminal penalty for failure to wear a face covering;

16. People shall not visit nursing homes, state supported living centers, assisted living facilities, or long-term care facilities unless as determined through guidance from the Texas Health and Human Services Commission (HHSC). Nursing homes, state supported living centers, assisted living facilities, and long-term care facilities should follow infection control policies and practices set forth by HHSC, including minimizing the movement of staff between facilities whenever possible; and

17. For the remainder of the 2019-2020 school year, public schools may resume operations for the summer as provided by, and under the minimum standard health protocols found in, guidance issued by the Texas Education Agency (TEA).  Private schools and institutions of higher education are encouraged to establish similar standards.  Notwithstanding anything herein to the contrary, schools may conduct graduation ceremonies consistent with the minimum standard health protocols found in guidance issued by TEA.

Notwithstanding anything herein to the contrary, the governor may by proclamation add to the list of establishments or venues that people shall not visit.

This executive order shall supersede any conflicting order issued by local officials in response to the COVID-19 disaster, but only to the extent that such a local order restricts services allowed by this executive order, allows gatherings prohibited by this executive order, or expands the list or scope of services as set forth in this executive order.  Pursuant to Section 418.016(a) of the Texas Government Code, I hereby suspend Sections 418.1015(b) and 418.108 of the Texas Government Code, Chapter 81, Subchapter E of the Texas Health and Safety Code, and any other relevant statutes, to the extent necessary to ensure that local officials do not impose restrictions in response to the COVID-19 disaster that are inconsistent with this executive order, provided that local officials may enforce this executive order as well as local restrictions that are consistent with this executive order.

All existing state executive orders relating to COVID-19 are amended to eliminate confinement in jail as an available penalty for violating the executive orders.  To the extent any order issued by local officials in response to the COVID-19 disaster would allow confinement in jail as an available penalty for violating a COVID-19-related order, that order allowing confinement in jail is superseded, and I hereby suspend all relevant laws to the extent necessary to ensure that local officials do not confine people in jail for violating any executive order or local order issued in response to the COVID-19 disaster.

This executive order supersedes Executive Order GA-26, but does not supersede Executive Orders GA-10, GA-13, GA-17, GA-19, GA-24, GA-25, or GA-27.  This

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
8:45Am  O'CLOCK

JUN 2 6 2020

executive order shall remain in effect and in full force unless it is modified, amended, rescinded, or superseded by the governor.  This executive order may also be amended by proclamation of the governor.



Given under my hand this the 26th day of June, 2020.

GREG ABBOTT
Governor

ATTESTED BY:

RUTH R. HUGHS
Secretary of State



GOVERNOR GREG ABBOTT

July 2, 2020

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
2:30pm O'CLOCK
JUL 02 2020
Secretary of State

The Honorable Ruth R. Hughs
Secretary of State
State Capitol Room 1E.8
Austin, Texas 78701

Dear Secretary Hughs:

Pursuant to his powers as Governor of the State of Texas, Greg Abbott has issued the following:

A proclamation amending Executive Order GA-28 relating to mass gatherings in Texas during the disaster posed by the novel coronavirus (COVID-19).

The original proclamation is attached to this letter of transmittal.

Respectfully submitted,

Gregory S. Davidson
Executive Clerk to the Governor

GSD/gsd

Attachment

# PROCLAMATION

**BY THE**

## 𝕲𝖔𝖛𝖊𝖗𝖓𝖔𝖗 𝖔𝖋 𝖙𝖍𝖊 𝕾𝖙𝖆𝖙𝖊 𝖔𝖋 𝕿𝖊𝖝𝖆𝖘

━━━━━━━━━━

**TO ALL TO WHOM THESE PRESENTS SHALL COME:**

WHEREAS, I, Greg Abbott, Governor of Texas, issued a disaster proclamation on March 13, 2020, certifying under Section 418.014 of the Texas Government Code that the novel coronavirus (COVID-19) poses an imminent threat of disaster for all counties in the State of Texas; and

WHEREAS, in each subsequent month effective through today, I have renewed the disaster declaration for all Texas counties; and

WHEREAS, I issued Executive Order GA-28 on June 26, 2020, relating to the targeted response to the COVID-19 disaster as part of the reopening of Texas; and

WHEREAS, additional measures are needed to slow the spread of COVID-19 in Texas;

NOW, THEREFORE, I, Greg Abbott, Governor of Texas, by virtue of the power and authority vested in me by the Constitution and laws of the State of Texas, do hereby amend paragraph numbers 5 and 12 of Executive Order GA-28, effective at 12:01 p.m. on July 3, 2020, to read as follows:

5. For any outdoor gathering in excess of 10 people, other than those set forth above in paragraph numbers 1, 2, or 4, the gathering is prohibited unless the mayor of the city in which the gathering is held, or the county judge in the case of a gathering in an unincorporated area, approves of the gathering, and such approval can be made subject to certain conditions or restrictions not inconsistent with this executive order;

12. Except as provided in this executive order or in the minimum standard health protocols recommended by DSHS, found at www.dshs.texas.gov/coronavirus, people shall not be in groups larger than 10 and shall maintain six feet of social distancing from those not in their group;

This proclamation shall remain in effect and in full force for as long as Executive Order GA-28 is in effect and in full force, unless otherwise modified, amended, rescinded, or superseded by the governor.

IN TESTIMONY WHEREOF, I have hereunto signed my name and have officially caused the Seal of State to be affixed at my office in the City of Austin, Texas, this the 2nd day of July, 2020.

GREG ABBOTT
Governor

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
2:30pm O'CLOCK

JUL 0 2 2020

*Governor Greg Abbott*
July 2, 2020

*Proclamation*
Page 2

ATTESTED BY:

RUTH R. HUGHS
Secretary of State

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
2:30PM O'CLOCK

JUL 0 2 2020



# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

August 1, 2020

Honorable Bryan Hughes
Texas Senate
P.O. Box 12068
Capitol Station
Austin, TX 78711

Dear Senator Hughes,

You ask whether local governmental bodies have authority to limit in-person attendance at a judicial or non-judicial foreclosure sale to 10 persons or fewer. Your question concerns local emergency orders restricting or delaying such sales during the current COVID-19 pandemic. We conclude that a foreclosure sale of residential or commercial real property that is conducted outdoors is subject to the limitation on outdoor gatherings in excess of 10 persons imposed by Executive Order GA-28. Accordingly, an outdoor foreclosure sale may not proceed with more than 10 persons in attendance unless approved by the mayor in whose jurisdiction the sale occurs, or if in an unincorporated area, the county judge. However, to the extent a sale is so limited, and willing bidders who wish to attend are not allowed to do so as a result, the sale should not proceed as it may not constitute a "public sale" as required by the Texas Property Code.

When a mortgage loan is in default, a mortgagee may elect to institute either a judicial foreclosure or, when permitted by the deed of trust, a non-judicial foreclosure.[1] A judicial foreclosure begins with a lawsuit to establish the debt and fix the lien.[2] The judgment in a foreclosure lawsuit generally provides that an order of sale issue to any sheriff or constable directing them to seize the property and sell it under execution in satisfaction of the judgment.[3] After the sale is completed, the sheriff or other officer must provide to the new buyer possession of the property within 30 days.[4]

---

[1] *Bonilla v. Roberson*, 918 S.W.2d 17, 21 (Tex. App.—Corpus Christi 1996, no writ).

[2] *Id.* at 21.

[3] TEX. R. CIV. P. 309; *but see id.* (excepting judgments against executors, administrators, and guardians from orders of sale). The procedures for the sale under judicial foreclosure generally follow the same procedures as sales under non-judicial foreclosures. *Compare id.* 646a–648 *with* TEX. PROP. CODE § 51.002.

[4] TEX. R. CIV. P. 310.

A non-judicial foreclosure, in turn, must be expressly authorized in a deed of trust.[5] The Property Code prescribes the minimum requirements for a non-judicial sale of real property under a power of sale conferred by a deed of trust or other contract lien.[6] The Code requires that a sale under a non-judicial foreclosure be "a public sale at auction held between 10 a.m. and 4 p.m. of the first Tuesday of a month," unless that day is January 1 or July 4, in which cases the sale must be held on the first Wednesday of the month.[7] The deed of trust or other loan document can establish additional requirements, and if such requirements are established, those requirements must likewise be satisfied in order for there to be a valid foreclosure sale.[8]

We understand that many foreclosure sales in Texas, both judicial and non-judicial, are held outdoors. Frequently, such sales occur on the steps of a courthouse.

With this background in mind, we address your question concerning attendance limitations. Governor Abbott ordered in Executive Order GA-28 that "every business in Texas shall operate at no more than 50 percent of the total listed occupancy of the establishment."[9] This general limitation, however, is subject to several exceptions. One such exception is found in paragraph five of the order, which limits outdoor gatherings to 10 persons or fewer without approval by the mayor or, in the case of unincorporated territory, the county judge in whose jurisdiction the gathering occurs.[10] Accordingly, to the extent a foreclosure sale occurs outdoors, attendance at the sale is limited to 10 persons or fewer unless greater attendance is approved by the relevant mayor or county judge.

While certain services are exempt from the outdoor gathering limitation in Executive Order GA-28, we do not conclude that foreclosure sales are included within them. Executive Order GA-28 exempts from its limitations on outdoor gatherings services described in paragraphs 1, 2, and 4 of the order. Relevant here, paragraph 1 exempts from capacity limitations, *inter alia*, "any services listed by the U.S. Department of Homeland Security's Cybersecurity and Infrastructure Workforce, Version 3.1 or any subsequent version."[11] (CISA Guidance). Among the services listed in version 3.1 of

---

[5] *See* TEX. PROP. CODE § 51.002.

[6] *See id.* § 51.002.

[7] *Id.* §§ 51.002(a), (a-1); *see also id.* § 51.002(h) (requiring a sale to be held on or after the 90th day after the date the commissioners court records a designation of a sale at an area other than an area at the county courthouse).

[8] *See Bonilla*, 918 S.W.2d at 21.

[9] Gov. Greg Abbott Exec. Order GA-28.

[10] *Id.* at 3 (as amended by Gov. Greg Abbott Proc. of July 2, 2020).

[11] *Id.* at 2.

the CISA Guidance are "[r]esidential and commercial real estate services, including settlement services."[12]

A court's main objective in construing the law is to give effect to the intent of its provisions.[13]  And there is no better indication of that intent than the words that are chosen.[14] One dictionary defines a "service" as "[w]ork that is done for others as an occupation or business."[15] A periodic foreclosure auction conducted at a courthouse— whether by an officer of the court, an attorney, an auction professional, or another person serving as trustee[16]—does not constitute the type of dedicated real estate service work contemplated by the CISA Guidance. Accordingly, we conclude that outdoor foreclosure sales are not exempted from the 10-person attendance limitation imposed by paragraph 5 of Executive Order GA-28.

If a foreclosure sale is subject to, and not exempted from, the 10-person attendance limit imposed in Executive Order GA-28, it should not proceed if one or more willing bidders are unable to participate because of the attendance limit. "[A] sale of real property under a power of sale conferred by a deed of trust or other contract lien must be a *public sale* at auction held between 10 a.m. and 4 p.m. of the first Tuesday of a month."[17] The purpose of the public sale requirement is to "secure the attendance of purchasers and obtain a fair price for the property."[18] Strict compliance with the Property Code is required for a trustee to properly make a foreclosure sale.[19] If an attendance limit precludes the conduct of a public sale for the purpose of securing sufficient bidders to obtain a fair price, the propriety of a foreclosure auction may be called into question. Accordingly, to the extent attendance at a foreclosure sale is limited to ten or fewer persons, and that limit precludes the attendance of one or more willing bidders who otherwise would have appeared in person, the sale should not go forward as it likely would not comport with the Property Code requirement that the sale be a "public sale."

---

[12] *See* Guidance on the Essential Critical Infrastructure Workforce: Ensuring Community and National Resilience in COVID-19 Response, at 16, available at https://www.cisa.gov/sites/default/files/publications/Version_3.1_CISA_Guidance_on_Essential_Critical_Infrastructure_Workers.pdf.

[13] *See Summers*, 282 S.W.3d at 437.

[14] *See id.* ("Where text is clear, text is determinative of that intent.").

15 Am. Heritage Dictionary (5th ed. 2020), available at https://www.ahdictionary.com/word/search.html?q=service; *see also Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015) (applying an undefined term's ordinary meaning, unless the context of the law in which the term appears suggests a different or more precise definition).

[16] The Texas Property Code does not set forth specific professional requirements for a foreclosure trustee, providing only that "[o]ne or more persons may be authorized to exercise the power of sale under a security instrument." TEX. PROP. CODE § 51.007(a).

[17] TEX. PROP. CODE § 51.002(a) (emphasis added).

[18] *Reisenberg v. Hankins*, 258 S.W. 904, 910 (Tex. Civ. App.–Amarillo 1924, writ dismissed w.o.j.).

[19] *Myrad Props. v. LaSalle Bank Nat'l Assoc.*, 252 S.W.3d 605, 615 (Tex. App.–Austin 2008), *rev'd on other grounds*, 300 S.W.3d 746 (Tex. 2009).

We trust this letter provides you with the advice you were seeking. Please note this letter is not a formal Attorney General opinion under section 402.042 of the Texas Government Code; rather, it is intended only to convey informal legal guidance.

Sincerely,

Ryan Bangert
Deputy First Assistant Attorney General

19 pgs    2020145196    **STAYS IN FILE**

## ORDER BY THE COUNTY JUDGE OF TRAVIS COUNTY

### County Judge Order 2020-16; Relating to the COVID-19 Community Restrictions

**Whereas,** on March 6, 2020, a Declaration of Local Disaster was issued by the Travis County Judge to allow the County of Travis ("County" or "Travis County"), Texas, to take measures to reduce the possibility of exposure to COVID-19 and promote the health and safety of Travis County residents; and

**Whereas,** on March 13, 2020, a Declaration of State of Disaster was issued by Governor Greg Abbott to take additional steps to prepare for, respond to, and mitigate the spread of COVID-19 to protect the health and welfare of Texans; and

**Whereas,** the virus that causes COVID-19 is contagious and spreads through person-to-person contact, especially in group settings; and

**Whereas,** on June 18, 2020, the County Judge issued Order 2020-12, requiring all commercial entities in Travis County that provide goods or services directly to the public to develop and implement a Health and Safety Policy related to COVID-19 which, at a minimum, shall require that all employees and visitors to the commercial entity's business premises or other facilities wear face coverings;

**Whereas,** on June 26, 2020 the Governor issued Executive Order GA-28 ("GA-28"), related to the reopening of services and business, with reduced occupancy limits and gathering restrictions for individuals and businesses, as well as continuing recommended health protocols and social distancing measures to attempt to mitigate increased transfer of COVID-19 associated with the expanding commercial and social interactions; and

**Whereas,** on July 2, 2020, the Governor issued a Proclamation to amend paragraph 5 of GA-28 to prohibit any outdoor gathering in excess of 10 people, except as specifically exempted in paragraphs 1, 2 and 4 of GA-28, unless approved by the county judge or mayor, subject to conditions and restrictions not inconsistent with GA-28; and

**Whereas,** the Governor's Proclamation of July 2, 2020 also amended paragraph 12 of GA-28 to state "except as provided in this executive order or in the minimum standard health protocols recommended by DSHS, found at www.dshs.texas.gov/coronavirus, people shall not be in groups larger than 10 and shall maintain six feet of social distancing from those not in their group;" and

**Whereas,** on July 2, 2020, the Governor further issued Executive Order GA-29, which requires every person in Texas to wear a face covering over the nose and mouth when inside a commercial entity or other building open to the public, or when in an outdoor public space whenever not feasible to maintain six (6) feet of social distancing from persons outside one's household, and except as provided in the order; and

**Whereas,** on July 9, 2020, the County Judge issued Order 2020-14, effective July 11, 2020, prohibiting any gatherings in excess of 10 people and requiring face coverings, except as permitted by the Governor's orders; and

**Whereas,** as of August 13, 2020, Travis County has experienced 23,718 confirmed cases of COVID-19, with 263 current hospitalizations and 328 deaths as a result of the disease, and although infection rates have currently leveled somewhat, the Health Authority expects the number of infections to rise if current rules regarding masking, social distancing, hygiene, and other health protocols are lifted; and

**Whereas,** Dr. Mark Escott, the interim Health Authority for Austin/Travis County, continues to encourage people to stay home except when necessary and finds that the area still needs to increase testing and contact tracing capabilities, to maintain social distancing and hygiene, and to wear face coverings to provide for the safety of the public while businesses are reopening and when individuals are outside their household; and

**Whereas,** COVID-19 continues to menace the health of County residents and the economy, and the Health Authority has advised on the need for continued vigilance by individuals and County businesses in complying with mandatory health measures; and

**Whereas,** the County Judge has determined that extraordinary emergency measures must be taken to try and mitigate the effects of this public health emergency and to facilitate a response to the public health threat; and

**Whereas,** pursuant to Government Code section 418.108(g), a County Judge is authorized to control ingress and egress from a local disaster area, and control the movement of persons and the occupancy of premises in that disaster area; and

**Whereas,** this Order shall cover all individuals currently living within Travis County, including but not limited to all of the cities and municipalities within the boundaries of Travis County and specifically listed in **Exhibit A**.

### NOW THEREFORE, I, COUNTY JUDGE OF TRAVIS COUNTY, PURSUANT TO THE AUTHORITY VESTED BY TEXAS GOVERNMENT CODE CHAPTER 418, HEREBY FIND AND ORDER THAT:

Effective as of 12:00 a.m., Sunday, August 16, 2020 ("Effective Date"), and continuing through 11:59 p.m. on December 15, 2020 unless extended, modified or terminated early by the Travis County Judge or as otherwise indicated below:

1. **Public Health Emergency**. That this Order shall continue the local disaster declaration and public health emergency for Travis County for the period specified herein and shall incorporate and adopt the most recent orders issued by Governor Greg Abbott including GA-28, as amended by Proclamation issued July 2, 2020, GA-29 issued July 2, 2020, and any subsequent orders or proclamations by the Governor relating to the COVID-19 disaster.

2. **Gatherings**. Any gatherings that exceed 10 people are hereby PROHIBITED, except as permitted by current Governor's Proclamations and Orders.

3. Pursuant to the Governor's Order GA-28, there is no occupancy limit for the following:
   a. any services listed by the U.S. Department of Homeland Security's Cybersecurity and Infrastructure Security Agency (CISA) in its Guidance on the Essential Critical Infrastructure Workforce, Version3. 1 or any subsequent version;
   b. religious services conducted in churches, congregations, and houses of worship;
   c. local government operations, including county and municipal governmental operations relating to licensing (including marriage licenses), permitting, recordation, and document-filing services, as determined by the local government;
   d. child-care services;
   e. youth camps, including but not limited to those defined as such under Chapter 141 of the Texas Health and Safety Code, and including all summer camps and other daytime and overnight camps for youths; and
   f. recreational sports programs for youths and adults;

   All participants in lawful gatherings or groups expressly permitted by this Order or the Governor's Order are nonetheless subject to the face covering behaviors set forth in Sections 6 and 7 of this Order and **Exhibits B and C,** including or as may be limited by any other requirements imposed by the Governor's Order. Nothing in this Order prohibits the gathering of members of a household within the household's residence.

4. Pursuant to the Governor's  Order GA-28, the outdoor gathering ban in section 2 of this Order does not apply to the following outdoor areas, events, or establishments, except that the following outdoor areas or outdoor venues shall operate at no more than 50 percent of the normal operating limits as determined by the owner:
   a. professional, collegiate, or similar sporting events;
   b. swimming pools;
   c. water parks;
   d. museums and libraries;
   e. zoos, aquariums, natural caverns, and similar facilities; and
   f. rodeos and equestrian events;

5. Pursuant to the Governor's Order GA-28, the outdoor gathering ban in section 2 of this Order does not apply to amusement parks and carnival, except that amusement parks and carnivals shall operate at no more than 50 percent of the normal operating limits as determined by the owner;

6. **Face Covering Requirements**. In accordance with the Governor's Order GA-29, every person in Travis County IS REQUIRED to wear a face covering over their nose and mouth when inside a commercial entity or other building open to the public, or when in an outdoor public space whenever not feasible to maintain six (6) feet of social distancing from persons outside one's household; provided however that this face covering requirement does not apply to the following:
   a. any person younger than 10 years of age;

b. any person with a medical condition or disability that prevents wearing a face covering;

c. any person while the person is consuming food or drink, or is seated at a restaurant to eat or drink;

d. any person while the person is (1) exercising outdoors or engaging in physical activity outdoors, and (2) is maintaining a safe distance from other people not in the same household;

e. any person while the person is driving alone or with passengers who are part of the same household as the driver;

f. any person obtaining a service that requires temporary removal of the face covering for security surveillance, screening, or a need for specific access to the face, such as while visiting a bank or while obtaining a personal care service involving the face, but only to the extent necessary for the temporary removal;

g. any person while the person is in a swimming pool, lake, or similar body of water;

h. any person who is voting, assisting a voter, serving as a poll watcher, or actively administering an election, but wearing a face covering is strongly encouraged;

i. any person who is actively providing or obtaining access to religious worship, but wearing a face covering is strongly encouraged; or

j. any person while the person is giving a speech for a broadcast or to an audience; and

k. Not excepted from this face-covering requirement is any person attending a protest or demonstration involving more than 10 people and who is not practicing safe social distancing of six feet from other people not in the same household.

l. any person who is alone, or in the presence of only members of the same household or residence, in a separate room or single space not accessible to the public, and not in an indoor common area.

7. **Social Distancing and Hygiene**. All persons should practice Social Distancing and Hygiene as defined below, except when in the presence of only members of one's own household or residence, or when otherwise exempted by this Order. Parents and Guardians of children under 10 are responsible for maintaining social distance between child members of their household and others' households. For purposes of this Order, and as outlined in the Guidelines from the CDC and Austin/Travis County Health Authority (attached as **Exhibit B**). Social Distancing and Hygiene include maintaining at least a six-foot distance from other individuals, washing hands with soap and water for at least 20 seconds as frequently as possible or using hand sanitizer with at least 60% alcohol, covering coughs or sneezes (into the sleeve or elbow, not into hands), regularly cleaning high-touch surfaces, and not shaking hands.

8. **Mandatory Health and Safety Policy – Commercial Entities**. All commercial entities in Travis County that provide goods or services directly to the public must develop and implement a health and safety policy or plan ("Health and Safety Policy") related to preventing transmission of the COVID-19 virus. Travis County includes all municipalities within the boundaries of Travis County listed in Exhibit A. The Health and Safety Policy must require, at a minimum, that all employees, customers and visitors to the commercial entity's business premises or other facilities wear face coverings over their nose and mouth

when in an area or performing an activity which will necessarily involve close contact or proximity to co-workers, other individuals or members of the public where six feet of separation is not feasible, and subject to the exceptions in Section 6. The Health and Safety Policy required to be developed and implemented by this Order may also include the implementation of other mitigating measures designed to control and reduce the transmission of COVID-19 such alternative methods of service for those unable to wear mask or temperature checks or health screenings. A copy of a sample Health and Safety Policy and sign is attached as **Exhibit D**, and can also be found on the Travis County website.

Commercial entities must post the Health and Safety Policy required by this Order in a conspicuous location sufficient to provide notice to employees, customers and visitors of all health and safety requirements. **Failure to develop and implement the Health and Safety Policy required by this Order may result in a fine not to exceed $1,000 for each violation.**

9. <u>**Extension of Deadlines**</u>. Notwithstanding the expiration of this Order, all deadlines or expiration dates imposed by County code, order, rule, or regulation for site plans, subdivisions, development permits, and similar development applications or approvals are extended until March 15, 2021, or the date they would have normally expired, whichever is later.

10. <u>**Prior Orders**</u>. This Order is issued in accordance with and incorporates by reference all declarations, findings, and recitations set out in the preamble to this Order. This Order replaces and supersedes County Judge Orders 2020-12 and 2020-14 in their entirety, and replaces and supersedes Sections 1, and 3 through 7 of the Travis County Judge's Prevention Guidelines and Order of June 16, 2020 (Order 2020-11). Section 2 (Prevention Guidelines) and Section 8 of the County Judge's Prevention Guidelines and Order of June 16, 2020 (Order 2020-11), including the Recommendations of the Health Authority, Face Covering recommendations and Construction Guidance set forth in exhibits B, C and D, remain in effect.

11. The Austin Public Health Department and the Travis County Clerk will post this Order on their websites. In addition, the owner, manager, or operator of any facility that is likely to be impacted by this Order is strongly encouraged to post a copy of this Order onsite and to provide a copy to any member of the public asking for a copy. If any subsection, sentence, clause, phrase, or word of this Order or any application of it to any person, structure, gathering, or circumstance is held to be invalid or unconstitutional by a decision of a court of competent jurisdiction, then such decision will not affect the validity of the remainder of this Order and its application.

12. <u>**Savings Clause**</u>. If any provision of this Order or its application to any person or circumstance is held to be invalid, then the remainder of the Order, including the application of such part or provision to other persons or circumstances, shall not be affected and shall continue in full force and effect. To this end, the provisions of this Order are severable.

13. **ENFORCEMENT**. That the Travis County Sheriff's Office, the Travis County Fire Marshal's Office, and other peace officers are hereby authorized to enforce this Order and the Governor's Executive Orders.

   a. A violation of Section 2 of this Order (Gatherings) may be punishable through criminal or civil enforcement and may result in a fine not to exceed $1,000. A criminal violation of Section 2 of this Order is a misdemeanor punishable by fine only.

   b. For a violation of Section 6 of this Order (Face Covering Requirements), and following a verbal or written warning for a first-time violator of this face covering requirement, a person's second violation shall be punishable by a fine not to exceed $250.00. Each subsequent violation shall be punishable by a fine not to exceed $250.00 per violation.

   c. A violation of Section 8 (Mandatory Health and Safety Policy) may be punishable through civil enforcement and may result in a fine not to exceed $1,000.

14. This Order incorporates by reference the following:

   a. **Exhibit A**: List of Cities and Municipalities within Travis County Jurisdiction Covered by this Order

   b. **Exhibit B**: Recommendations and Requirements by the Austin / Travis County Health Authority for Individuals, Families and Businesses

   c. **Exhibit C:** Face Covering Behaviors

   d. **Exhibit D:** Sample Health and Safety Policy and Sign

**ORDERED** this the _14th_ day of August, 2020, in the County of Travis, Texas.

Samuel T. Biscoe

County Judge
County of Travis, Texas

Filed with the Clerk of Travis County, this _14th_ day of August, 2020.

Dana DeBeauvoir, County Clerk

**Exhibit A: List of Cities and Municipalities within Travis County Jurisdiction covered by the Order**

- City of Austin
- City of Bee Cave
- City of Cedar Park
- City of Creedmoor
- City of Elgin
- City of Jonestown
- City of Lago Vista
- City of Lakeway
- City of Leander
- City of Manor
- City of Mustang Ridge
- City of Pflugerville
- City of Rollingwood
- City of Round Rock
- City of Sunset Valley
- City of West Lake Hills
- Village of Briarcliff
- Village of Point Venture
- Village of San Leanna
- Village of The Hills
- Village of Volente
- Village of Webberville

## Exhibit B

## Austin/Travis County Health Authority
## Requirements and Recommendations
## for Individuals, Families and Businesses

I. **Individuals**  All individuals shall comply with the Governor's Minimum Standard Health Protocols, checklist for all individuals, found at:
https://gov.texas.gov/uploads/files/organization/opentexas/OpenTexas-Checklist-Individuals.pdf

    A. **COVID-19 Positive Individuals**, Suspected Positives, those currently being tested, and Untested Individuals with cough, fever, sore throat, chills, muscle aches, loss of smell, loss of taste, shortness of breath, vomiting, and/or diarrhea shall:

        i.   Not leave their residence without a mask or fabric face covering to prevent the spread to others.

        ii.   Be permitted to do the following while wearing a mask or fabric face covering:

            a.   Seek medical care or emergency medical care related or unrelated to COVID-19. In doing so, they shall notify first responders at the time of the call to 9-1-1 or prior to visiting other healthcare providers that they have tested positive for COVID-19, or been exposed to individuals who have tested positive, are suspected positive for COVID-19 or untested individuals with cough and/or fever.

            b. Walk or exercise alone in the immediate vicinity of their residence.

            c. Seek testing for COVID-19.

        iii. Not leave the County without prior notification to Austin Public Health at APH.Preparedness@austintexas.gov.

        iv. Practice Social Distancing and Hygiene within the residence, observe hygiene practices for prevention of household spread in accordance with the Centers for Disease Control (CDC) guidelines.

        v.   Notify Austin Public Health if the residence does not allow for physical separation from other household contacts (separate room and bathroom).

        vi. Notify Austin Public Health if a member of their household is over the age of 65 and/or if they have underlying medical conditions identified by the CDC of increasing the risk of complications from COVID-19.

vii.  Remain in home quarantine for at least 10 days following the onset of their illness and at least three days (72 hours) after the conclusion of their illness (resolution of fever without medications and improvement in cough and shortness of breath), whichever is longer.

**B.**  **Household Members of COVID-19 Positive Individuals**, Suspected Positives, those currently being tested, or Untested Individuals with cough, fever, sore throat, chills, muscle aches, loss of smell, loss of taste, shortness of breath, vomiting, and/or diarrhea shall:

i.  Not leave the residence without a mask or fabric face covering to prevent the spread to others.

ii.  Be permitted to do the following while wearing a mask or fabric face covering:

a.  Seek medical care or emergency medical care related or unrelated to COVID-19. In doing so, they shall notify first responders at the time of the call to 9-1-1 or prior to visiting other healthcare providers that they have been exposed to individuals who have tested positive, are suspected positive for COVID-19 or untested individuals with cough and/or fever.

b.  Walk or exercise alone in the immediate vicinity of their residence.

iii.  Not leave the County without prior notification to Austin Public Health at APH.Preparedness@austintexas.gov.

iv.  Practice Social Distancing and Hygiene within the residence, observe hygiene practices for prevention of household spread in accordance with CDC guidelines.

v.  Notify Austin Public Health if the residence does not allow for physical separation from other household contacts (separate room and bathroom).

vi.  Notify Austin Public Health or your Primary Care Provider if they develop symptoms consistent with COVID-19 as defined by the CDC.

vii.  Remain in home quarantine for at least 14 days since the last contact with an individual known or suspected to be COVID-19 positive, regardless of the presence of symptoms.

**C.**  Individuals should refrain from reporting to work when falling within any of the following criteria:

i.  Has signs or symptoms of a COVID-19 infection, such as cough, fever, sore throat, chills, muscle aches, loss of smell, loss of taste, shortness of breath, vomiting, and/or diarrhea;

ii.   Has a fever greater than 99.6°F;

iii.   In the previous 14 days has had contact with someone with a confirmed diagnosis of COVID-19 and did not have the appropriate personal protective equipment designated by the Centers for Disease Control and Prevention (CDC); is under investigation for COVID-19; or is ill with a respiratory illness; or

iv.   Has traveled to an area the World Health Organization or CDC considers a "Hotspot."

If someone in a household has tested positive for COVID-19, or is awaiting results of a COVID-19 test, and a member of the household is an employee of an government service or CISA industry, an exception may be made by Austin Public Health allowing that member of the household to voluntarily return to work after finding the risk of reduced essential services is greater than the risk of infection.

## D. Vulnerable Populations

i.   Vulnerable populations include people who:

a. Are 65 years old and older; or

b. Have certain health conditions such as heart disease, lung disease, diabetes, kidney disease, Human Immunodeficiency Virus (HIV), Acquired Immune Deficiency Syndrome (AIDS), and weakened immune systems.

ii.   Vulnerable Individuals shall:

a. Avoid group gatherings unless it is essential;

b. Avoid people who are sick,

c. Wear a mask or fabric face covering at all times when in public, and

d. Comply with the Governor's Special Guidance for Texans Over 65, found at: https://gov.texas.gov/uploads/files/organization/opentexas/OpenTexas-Special-Guidance-For-Texans-Over-65.pdf

## E. Individual Gatherings

i.   All social indoor or outdoor gatherings outside of a single household or dwelling should be avoided or minimized. No more than 10 individuals may stand or gather together, except as expressly permitted by this Order or the Governor's Order.

ii.   Do not attend any events or gatherings if sick.

iii. For household and other gatherings permitted by the Order:

    a. Have hand washing capabilities, hand sanitizers, and tissues available;

    b. Frequently clean high-touch surface areas like countertops, doorknobs, and handrails; and

    c. Find ways to create physical space (minimum of six (6) feet distance between people) to minimize close contact as much as possible.

    d. Find ways to ensure six feet of social distancing from another group or gathering.

**F. Schools and Daycare. To the extent that schools and daycare are open under current orders:**

    i. Do not have your child attend school or daycare if sick.

    ii. If you have a child with chronic health conditions, consult the child's doctor about school and daycare attendance.

    iii. Frequently re-educate students and staff regarding Social Distancing and Hygiene and Face Covering behaviors and ensure that appropriate signs are posted.

    iv. Explore remote teaching and online options to continue learning.

**II.** **Businesses** shall operate only to the extent permitted by order of the Texas Governor.

**III.** **Businesses** and services permitted to operate by the Governor's Order shall comply with the following:

**A.** To prevent stigma and discrimination in the workplace, employers shall only adhere to the recommendations described in this Order to determine risk of COVID-19. Employers should contact their own human resources advisors and shall not make determinations of risk based on race, color, religion, sex, sexual orientation, gender identity, age, familial status, disability, marital status, student status, creed, or national origin. To the extent possible, employers should maintain confidentiality of people with suspected or confirmed COVID-19.

**B.** Employers shall only allow persons in and around their premises that are: (1) essential employees not subject to any of the criteria in Section 1 of this Exhibit, (2) delivery personnel, suppliers, customers or members of the public practicing Social Distancing and Hygiene and Face Covering behaviors as set forth in Sections 2, 3, and 5 (Mandatory Health Plans) of this Order, and (3) persons with legal authority to enter such as law enforcement.

C. Prior to allowing employees into its facility, employers shall ask all employees if they meet any of the criteria in Section I of this Exhibit, and shall direct employees to return home or other appropriate shelter and services if the employee is exhibiting symptoms and presenting a threat of infecting others.

D. Employers shall immediately separate an employee who becomes sick or demonstrates a temperature greater than 99.6°F while at work from other employees and send that employee home or to other appropriate shelter and services.

E. Human resources departments shall create alternate work plans to help employees remain productive while keeping the workforce safe and healthy.

F. Employers are strongly encouraged to require employees (either those exhibiting symptoms or all employees) to undergo a COVID-19 symptom check and non-invasive temperature readings prior to entering a worksite; however, **employers are not mandated to take the temperature of employees prior to entrance to its worksite**. If the employer does take employees' temperatures and/or has first-hand knowledge that the employee's temperature exceeds 99.6°F, then the employer shall prohibit the employee from entering the facility or property.

G. Employers shall create and implement an infectious disease response plan.

H. Employers shall comply with the Governor's Minimum Standard Health Protocols, checklist for employers, found at: https://gov.texas.gov/uploads/files/organization/opentexas/OpenTexas-Checklist-Employers.pdf

I. Where appropriate employers shall:

    i.   Suspend nonessential employee travel;

    ii.  Prohibit employees working within six (6) feet of one another unless necessary to provide continuity of essential services;

    iii. Minimize or cancel in-person meetings and conferences including canceling. postponing or moving to on-line formats for all indoor or outdoor gatherings of any number of people.

    iv.  Require employees to stay home when they are sick and maximize flexibility in sick leave benefits.

    v.   Permit sick employees to stay home without providing a doctor's note.

    vi.  Utilize telecommuting options to minimize person-to-person interaction.

vii.  Alter, stagger or otherwise schedule or separate employees or teams of employees so not all employees are present at one time but are present at alternative days and times, unless necessary to provide continuity of essential services.

viii. Limit or restrict the number of customers or visitors permitted in a workplace at one time.

ix.  Ensure that individuals (employees and clients) queuing inside and outside of the business or workplace can maintain six (6) feet of separation.

x.   Designate special separate shopping times for high-risk clients as designated by the CDC.

xi.  Increase the use and capability of on-line, drive-thru, curbside, or delivery services.

xii.  Provide hand washing capabilities, hand sanitizers, and tissues.

xiii. Clean high-touch surface areas like countertops, doorknobs, and handrails at least twice per day with CDC recommended surface cleaners for COVID-19.

xiv. Require and allow employees to practice the Face Covering Behaviors as set forth in Sections 3 and 5 and **Exhibit C** of this Order.

# Exhibit C

## Face Covering Behaviors

A significant percentage of individuals with the COVID-19 virus lack symptoms. Because an infected person can transmit the virus to others before showing any symptoms, the covering of a person's nose and mouth when outside their home or residence is necessary to help prevent the spread of COVID-19. This is consistent with the findings of the CDC and Austin-Travis County Health Authority

Unless you already have your own personal used masks that cannot be donated, the fabric face coverings recommended are not surgical masks or N-95 respirators, which are critical supplies that must continue to be reserved for healthcare workers and first responders. Staying home is the best way to help reduce the spread of the virus, but if an individual must leave their place of residence, wearing a fabric face covering shall be used as outlined in this Exhibit and this Order. **Wearing a face covering is not a substitute for maintaining 6-feet social distancing and hand washing, as these remain important steps to slowing the spread of the virus.**

**The public in general and employers and employees shall adhere to the following:**

a.    All persons ten years of age and older shall wear some form of covering over their nose and mouth, such as a commercially made or homemade mask, scarf, or bandana, when outside of his or her residence.

b.    This section shall not apply to:

1. any person younger than 10 years of age;

2. any person with a medical condition or disability that prevents wearing a face covering;

3. any person while the person is eating or drinking, or is seated at a restaurant to eat or drink;

4. any person while the person is (a) exercising outdoors or engaging in physical activity outdoors and (b) maintaining a safe distance from others not in the same household;

5. any person while the person is driving alone or with passengers of the same household as the driver;

6. any person obtaining a service that requires temporary removal of the face covering for security surveillance, screening, or the need for specific access to the face, such as while visiting a bank or while obtaining a personal care service involving the face, but only to the extent necessary for the temporary removal;

7. any person while the person is in a swimming pool, lake, or similar body of water;

8. any person who is voting, assisting a voter, serving as a poll watcher, or actively administering an election, but wearing a face covering is strongly encouraged;

9. any person who is actively providing or obtaining access to religious worship. but wearing a face covering is strongly encouraged;

10. any person while the person is giving a speech for a broadcast or to an audience;

11. any person while temporary removal of the face covering is necessary for communication by or with a person who is hearing impaired; or

12. any person while alone, or in the presence of only members of the same household or residence, in a separate room or single space not accessible to the public, and not in an indoor common area

Parents and Guardians of children under 10 shall be responsible for appropriately masking children when outside their residence.

c. All non-residents in nursing homes, retirement and long-term care facilities shall wear a fabric face covering as provided for in this Exhibit and Order (Face Coverings), except as otherwise required by an order issued by the Health Authority. In addition, residents in facilities with confirmed COVID-19 cases shall follow requirements of **Exhibit B**, except when doing so poses a greater mental or physical health, safety or security risk.

d. All COVID-19 Positive Individuals, Suspected Positives, those currently being tested, and untested individuals with cough, fever, sore throat, chills, muscle aches, loss of smell, loss of taste, shortness of breath, vomiting, and/or diarrhea and household members of same category of individuals shall not leave their residence without a mask or cloth face covering to prevent the spread to others.

e. All individuals working for a business shall wear a mask or cloth face covering whenever in public and whenever performing job duties in the presence of others.

f. Unless you already have your own personal used masks that cannot be donated, medical grade (N95) and surgical masks should be reserved and used only by medical professionals and first responders.

Examples of how to make cloth face coverings can be found online including guidance from the CDC and guidance from Austin/ Travis County Health Authority.

g. The fabric face covering should:

1. fit snugly but comfortably against the side of the face,
2. be secured with ties or ear loops,
3. include multiple layers of fabric,
4. allow for breathing without restriction, and

5.     be able to be laundered and machine dried without damage or change to shape.

h.     Employers shall require and allow employees to practice Face Covering Behaviors as set forth in the Order and this **Exhibit C**.

i.     Even with the use of appropriate face coverings, individuals shall maintain six feet of social distancing whenever possible.

j.     Individuals should avoid touching their face and should wash their hands or use hand sanitizer.

k.     For further information, individuals can access information at https://traviscountytx.gov/news/2020/1945-novel-coronavirus-covid-19-information and www.AustinTexas.gov/COVID19.

# Health and Safety Policy

**POLICY.** The virus that causes COVID-19 can be spread to others by infected persons who have few or no symptoms. Because of the hidden nature of this threat, it is the policy of this business to require the following:

**1. FACE COVERING REQUIRED IN ORDER TO ENTER PREMISES.** All persons over the age of ten (10), including employees, customers, visitors, invitees and contractors ("Patrons"), who enter this business must wear a face covering over their nose and mouth, such as a homemade mask, scarf, bandana, or handkerchief.

The requirement of face covering does not apply if covering the nose and mouth poses a greater mental or physical health, safety, or security risk, such as anyone who has trouble breathing, or is unconscious, incapacitated, or otherwise unable to remove the cover without assistance.

**2. SOCIAL DISTANCING PROTOCOLS.** Even with the use of appropriate face coverings, individuals should maintain six feet of social distancing whenever possible.

a. Employees should not work within six (6) feet of one another, except to the extent necessary to provide services;

b. Patrons should maintain six (6) feet of separation from other individuals outside their household, to the extent feasible when inside the business premises.

c. Patrons of the business queuing or waiting inside or on the premises of the business must maintain six (6) feet of separation from other individuals outside their household.

**3. VIOLATIONS.** Patrons who do not wear a face covering may be asked to leave the premises, and may not be provided goods or services until the face covering requirements are followed.

**4. NOTICE AND SIGNAGE.** Notice of this Health and Safety Policy will be posted in a conspicuous location of the business. Sample signage is attached.

# ALL CUSTOMERS
# WEAR FABRIC FACE COVERINGS



## PER CITY AND COUNTY ORDER, ALL CUSTOMERS MUST BE WEARING A FACE COVERING

Cloth face coverings should—

- fit snugly but comfortably against the side of the face

- be secured with ties or ear loops

- include multiple layers of fabric

- allow for breathing without restriction

- ability to be laundered

## Fabric face coverings are not a substitute for physical distancing measures. Continue to maintain 6-feet when outside your home.

DIY face cover instructions available at austintexas.gov/covid19




04/13/2020



**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

Dana DeBeauvoir, County Clerk
Travis County, Texas

2020145196

Aug 14, 2020 02:31 PM
Fee: $0.00          WELLINB

## STAY HOME, MASK, AND OTHERWISE BE SAFE

### ORDER NO. 20200815-019

OCC RECEIVED AT
AUG 14 '20 PM4:52

### BY

### THE MAYOR OF THE CITY OF AUSTIN

**WHEREAS,** on March 6, 2020, I, Mayor Steve Adler, issued a Declaration of Local Disaster pursuant to Texas Government Code Chapter 418, ratified by City Council Resolution No. 20200312-074, to allow the City of Austin to take measures in response to the COVID-19 pandemic and protect the health and safety of Austin residents;

**WHEREAS,** on March 13, 2020, Governor Greg Abbott proclaimed a state-wide state of disaster due to the COVID-19 pandemic and has since issued numerous Executive Orders related to the pandemic, including Executive Orders GA-28 on June 26, 2020, amended on July 2, 2020, and GA-29 on July 2, 2020;

**WHEREAS,** as of August 14, 2020, Travis County has experienced 23,718 confirmed cases of COVID-19 and 328 deaths as a result of the disease;

**WHEREAS,** current protections must remain in place to ensure that ICUs do not reach capacity;

**WHEREAS,** the local Health Authority finds that the area still needs to increase testing and contact tracing capabilities, to maintain social distancing and hygiene, and to wear face coverings to provide for the safety of the public while businesses are reopening;

**WHEREAS,** infected persons can transmit the COVID-19 virus to others before showing any symptoms, and widespread and consistent use of face coverings over the nose and mouth when in public is a critical and necessary measure to help slow the spread of the virus while allowing local businesses to continuing to reopen and help the Austin economy recover;

**WHEREAS,** Governor Abbott has clarified that his plan to reopen the Texas economy includes maintaining the authority of local governments to require businesses to adopt and enforce health policies that include face covering requirements;

**WHEREAS,** by proclamation Governor Abbott amended GA-28 to ban outdoor gatherings of more than 10 persons, subject to certain exceptions;

**WHEREAS,** Governor Abbott issued Executive Order GA-29 requiring all persons in Texas over the age of 10, subject to certain exceptions, to wear masks while inside a commercial entity or other building or space open to the public, or when outside and unable to properly social distance;

**WHEREAS,** on August 14, 2020, the local Health Authority adopted, in accordance with Ordinance No. 20200709-003, new emergency rules that address operational requirements for schools that the local Health Authority finds are necessary to protect the public health; and

**WHEREAS,** COVID-19 continues to menace the health of Austin residents and the Austin economy, and the local Health Authority has advised on the need for continued vigilance by individuals and Austin businesses in complying with mandatory health measures;

**NOW THEREFORE, I, MAYOR OF THE CITY OF AUSTIN, PURSUANT TO THE AUTHORITY VESTED BY TEXAS GOVERNMENT CODE CHAPTER 418, HEREBY ORDER, EFFECTIVE AS OF 12:01 A.M. ON AUGUST 16, 2020, AND CONTINUING THROUGH DECEMBER 15, 2020, THAT IN THE CITY OF AUSTIN:**

**SECTION 1.** All individuals and business establishments are **ORDERED** to practice the social distancing, hygiene, and face covering behaviors set forth in Sections 2 through 5 and **Exhibits A and C**, unless excepted by this Order or otherwise provided by the Governor's Executive Orders GA-28 (as amended), GA-29, and any other executive order in effect (cumulatively referenced as the "Governor's Order"). Further, to the extent this Order does not mandate or directly address a course of action, all individuals and business establishments shall at a minimum comply with any emergency rules adopted by the local Health Authority and the health protocols otherwise recommended in the Governor's Open Texas Checklists, found at: https://gov.texas.gov/organization/opentexas.

Social gatherings of any size shall be avoided or minimized. Vulnerable individuals (those over 65, who are immunocompromised, or who have underlying health conditions putting them at increased risk of harm from COVID-19) shall particularly avoid groups of more than two beyond the members of their single household or residence.

**Further, pursuant to the Governor's Order and the advice of the local Health Authority, gatherings or presence at any outdoor area, event, or establishment of more than 10 persons are PROHIBITED except as provided in this Section.**

While it is recommended that everyone should avoid taking advantage of the following exceptions if reasonably possible, pursuant to the Governor's Order, there is no occupancy limit for the following:

a. any services listed by the U.S. Department of Homeland Security's Cybersecurity and Infrastructure Security Agency (CISA) in its Guidance on the Essential Critical Infrastructure Workforce, Version 3.1, or any subsequent version;
b. religious services conducted in churches, congregations, and houses of worship;
c. local government operations;
d. child-care services;
e. youth camps, including but not limited to those defined as such under Chapter 141 of the Texas Health and Safety Code, and including all summer camps and other daytime and overnight camps for youths; and
f. recreational sports programs for youth and adults.

While it is recommended that everyone should avoid taking advantage of the following exceptions if reasonably possible, pursuant to the Governor's Order, the outdoor gathering ban in

this Section does not apply to the following outdoor areas, events, or establishments, except that the following outdoor areas or outdoor venues shall operate at no more than 50 percent of the normal operating limits as determined by the owner:

    a.  professional, collegiate, or similar sporting events;
    b.  swimming pools;
    c.  water parks;
    d.  museum and libraries;
    e.  zoos, aquariums, natural caverns, and similar facilities;
    f.  rodeos and equestrian events; and
    g.  amusement parks.

All participants in lawful gatherings or groups expressly permitted by this Order or the Governor's Order are nonetheless subject to the required social distancing, hygiene, and face covering behaviors set forth in Sections 2 through 5 and **Exhibits A and C,** including or as may be limited by any other requirements imposed by the Governor's Order. Nothing in this Order prohibits the gathering of members of a household within the household's residence.

Nursing homes, retirement, and long-term care facilities may permit non-critical assistance visitors or providers to access their facilities, in accordance with the guidance and emergency rules issued by the Texas Health and Human Services Commission. All non-residents in nursing homes, retirement, and long-term care facilities must wear a fabric face covering as set forth in Section 3 (Face Covering Behaviors).

Each school that offers instruction to students in one or more grades, pre-kindergarten through grade 12, must follow the phased-in approach in **Exhibit E** unless it will result in a loss of funding from the Texas Education Agency (TEA).

**Wearing a face covering is not a substitute for maintaining 6-feet social distancing and hand washing, as these remain important steps to slowing the spread of the virus.**

If someone in a household is COVID-19 positive or is awaiting the results of a COVID-19 test, the entire household is **ORDERED** to isolate and not travel outside of the City of Austin except to seek medical attention until cleared by Austin Public Health. When seeking medical care or emergency medical care, a person must notify the healthcare provider in advance (or the 9-1-1 call taker and first responders in the event of an emergency) if they have tested positive for COVID-19 or show symptoms consistent with COVID-19 such as cough, fever, sore throat, runny nose or congestion, chills, muscle or body aches, loss of smell, loss of taste, shortness of breath, difficulty breathing, vomiting, nausea, and/or diarrhea, or if they have been exposed to another individual who tested positive or displayed symptoms consistent with COVID-19.

**SECTION 2. Social Distancing and Hygiene**. All persons MUST practice social distancing except when in the presence of only members of one's own household or residence, when passing another individual is incidental and momentary, when dining in groups of 10 or less, or when otherwise exempted by this Order. Parents and guardians of children under 10 shall be responsible for maintaining social distance between child members of their household and others' households. For purposes of this Order, and as outlined in the guidelines from the CDC and

Austin/Travis County Health Authority, social distancing means maintaining at least a six-foot distance from other individuals, washing hands with soap and water for at least 20 seconds as frequently as possible or using hand sanitizer with at least 60% alcohol if soap and water are unavailable, covering coughs or sneezes (into the sleeve or elbow, not into hands), regularly cleaning high-touch surfaces, and not shaking hands.

**SECTION 3.  Individual Face Covering Behaviors:**  Because an infected person can transmit the COVID-19 virus to others before showing any symptoms and for other reasons, the covering of a person's nose and mouth is necessary to help slow the spread of the virus. All persons, including those persons attending a protest or demonstration, MUST wear some form of covering that fits snugly over their nose and mouth, such as a commercially made or homemade fabric mask, scarf, bandana, when outside of his or her residence, however, that this face-covering requirement does not apply to the following:

a.   any person younger than 10 years of age (though it is still recommended for children two years of age and older);

b.   any person with a medical condition or disability that prevents wearing a face covering;

c.   any person while the person is eating or drinking, or is seated at a restaurant to eat or drink;

d.   any person while the person is (1) exercising outdoors or engaging in physical activity outdoors and (2) maintaining a safe distance from others not in the same household;

e.   any person while the person is driving alone or with passengers of the same household as the driver;

f.   any person obtaining a service that requires temporary removal of the face covering for security surveillance, screening, or the need for specific access to the face, such as while visiting a bank or while obtaining a personal care service involving the face, but only to the extent necessary for the temporary removal;

g.   any person while the person is in a swimming pool, lake, or similar body of water;

h.   any person who is voting, assisting a voter, serving as a poll watcher, or actively administering an election, but wearing a face covering is strongly encouraged;

i.   any person who is actively providing or obtaining access to religious worship, but wearing a face covering is strongly encouraged;

j.   any person while the person is giving a speech for a broadcast or to an audience;

k.   any person while temporary removal of the face covering is necessary for communication by or with a person who is hearing impaired; or

l.   any person who is alone, or in the presence of only members of the same household or residence, in a separate room or single space not accessible to the public, and not in an indoor common area.

Parents and guardians of children under the age of 10 are responsible for appropriately masking their children when outside their residence.

All non-residents in nursing homes, retirement and long-term care facilities shall wear a fabric face covering, except as otherwise required by an order issued by the Health Authority. In addition, residents in facilities with confirmed COVID-19 cases shall follow requirements of **Exhibit A**, except when doing so poses a greater mental or physical health, safety or security risk.

See **Exhibit C** for further direction and guidance on Face Covering Behaviors.

**SECTION 4.  Face Coverings at City Facilities.** Individuals over the age of six must wear face coverings at all times (subject only to the exceptions set forth in Section 3.b-3.l) while present on or in City property or facilities, unless expressly exempted by a City policy applicable to the premises or facility.

**SECTION 5. Mandatory Face Covering Policies for Business Establishments (both Publicly Accessible and Accessible Only to Employees).** All businesses (including not-for-profit entities) and commercial entities (including without limitation condominium and multi-family residential, office common areas, and individual office spaces), and the operators of any venues or events open to the public, are **ORDERED** to implement and maintain in force and effect during the term of this Order a health and safety policy or plan related to preventing transmission of the COVID-19 virus.

The health and safety policy or plan must, at a minimum, require that all employees, customers, and visitors wear face coverings over their nose and mouth (subject only to the exceptions set forth in Section 3) while in any part of the business's or venue's premises or facility, and must require of and enforce this health and safety policy or plan as to all who enter upon or into the premises or facility.

The health and safety policy or plan required by this Section may also include the implementation of other mitigating measures designed to control and reduce the transmission of COVID-19 such as temperature checks or health screenings as reasonable and appropriate. This Order does not preclude a business or venue from adopting more stringent face covering or hygiene requirements than those required herein. All business establishments and venues subject to this Order must post conspicuous signage displaying the requirements of the health and safety policy or plan required by this Order at or near each entrance (on each entry door if feasible) to the premises in a manner sufficient to provide clear notice to employees, customers, and visitors at least of the face covering requirement. A sample health and safety policy and signage that is minimally compliant with this Section is attached as **Exhibit B** and can be obtained at http://austintexas.gov/page/printed-materials-and-required-signage.

Business employers shall require all employees to comply with the Face Covering Behaviors in this Section while present on the business premises or conducting the employer's business outside the employee's residence. See **Exhibit C** for further direction and guidance on Face Covering Behaviors.

**SECTION 6.  Reopened Businesses**. All business establishments allowed to remain reopened by the Governor's Orders are strongly encouraged to operate at a capacity less than otherwise permitted to make it more feasible for customers and staff to maintain proper social distancing within their establishment, and to provide services remotely or in a manner maximizing social distancing (e.g., curb-side pickup, delivery, etc.) as much as possible.

**SECTION 7.  City Deadlines.**  Notwithstanding the expiration of this Order, all deadlines and expiration dates for site plans, subdivisions, zoning, building permits, and similar development applications or permits are extended until March 15, 2021, or the date they would have normally expired, whichever is later.  All other deadlines or expiration dates imposed by City code, ordinance, rule, or regulation remain in effect as provided by the code provision, rule, or regulation, unless otherwise extended by separate order or ordinance.

A manufacturer that retools its business for the primary purpose of manufacturing and producing ventilators, masks, personal protective equipment, or any supplies necessary for Healthcare Operations and Critical Infrastructure may apply for a temporary permit or temporary change of use permit for such manufacturing. The Building Official may suspend any City ordinance, order or regulation which would prevent a manufacturer from retooling its business to produce such equipment in the official's sole discretion, and the official's decision on approving the permit is final.

**SECTION 8.  Hospital, Pharmacy, and Clinic Data**.  Hospitals, pharmacies, and clinics, or any other entity or person who performs or obtains testing for COVID-19, shall provide the Health Authority test results at least weekly on Thursdays and, beginning August 31, 2020, twice weekly on Mondays and Thursdays. The test results must include: PCR, antigen, antibody testing, and other information when specifically requested by the Health Authority; and must be provided in electronic form and in the manner directed by Austin Public Health. Any data that is required to be provided to the State under state law, shall be simultaneously provided to the City of Austin Health Authority if the individual is tested within the City of Austin or Travis County.

**SECTION 9.  Retail, Restaurant Dine-In and Reopened Service Logs and Privacy Protection**.  To assist in both the statewide and local contact tracing programs, all retail, restaurants and bars allowing indoor service and all reopened services are encouraged to maintain an activity log of, as reasonably possible, the contact information for all inside or sit-down customers and employees including the dates and times they were present in the business and the location they occupied for more than a passing moment. Voluntary maintaining of such a log may obviate the need for the Austin Public Health normal protocol otherwise of to publicly release, without limitation and in its discretion, the location where people with confirmed infections have been, with relevant dates and timeframes, so as to otherwise trace contacts.

To protect the privacy of customers, the logs shall be maintained only for a one-month period and shall be the property of the business, not the city. The log may be used only by public health authorities if needed for contact tracing. The logs shall not be part of a database and shall not be used for law enforcement purposes.

**SECTION 10.  Criminal Offense.** A violation of this Order is a violation of Austin City Code Section 2-6-24 and a criminal offense. A violation of this Order may be punishable through criminal enforcement, except as limited by state order. Peace officers, City of Austin Code Department inspectors, and the Office of the Austin Fire Marshal are hereby authorized to enforce this Order and the Governor's Order.  Except as provided below, a criminal violation of this Order is a misdemeanor punishable by a fine not to exceed $1,000, but not by confinement.  With respect to Section 5, each day or a portion of each day during which the violation occurs or continues constitutes a separate offense. An individual, rather than a business, who violates any provision of this Order concerning the mandatory wearing of face coverings shall first be given a verbal or written warning. Each subsequent violation is punishable by a fine not to exceed $250 per violation, but not by confinement.

A criminal violation of this Order may be enforced by the filing of a probable cause affidavit alleging the violation with the appropriate court or by issuing a citation to the person violating that contains written notice of the time and place the person must appear before a magistrate of this state, the name and address of the person charged, and the offense charged.

Enforcement of this Order is substantially reliant on self-regulation and a community commitment to public health and safety under the threat of COVID-19.  If there is not widespread compliance with this Order, the City will increase enforcement efforts, as allowed by law.

**SECTION 11. Savings Clause.**   If any provision of this Order or its application to any person or circumstance is held to be invalid, then the remainder of the Order, including the application of such part or provision to other persons or circumstances, shall not be affected and shall continue in full force and effect. To this end, the provisions of this Order are severable.

**SECTION 12.  Posting.**  The Austin Public Health Department and the City Clerk will post this Order on their websites.  In addition, the owner, manager, or operator of any facility that is likely to be impacted by this Order is strongly encouraged to post a copy of this Order onsite and to provide a copy to any member of the public asking for a copy.

**SECTION 13.  Exhibits**.  This Order incorporates by reference the following:

| | |
|---|---|
| **Exhibit A**: | Recommendations and Requirements by the Austin / Travis County Health Authority |
| **Exhibit B**: | Sample Business Health and Safety Policy and Signage |
| **Exhibit C**: | Face Covering Behaviors |
| **Exhibit D**: | Construction Requirements |
| **Exhibit E**: | Phased-in Approach to On-Campus Instruction Based on Risk-Based Stages |

**SECTION 14.** This order supersedes Order No. 20200702-017.

**ORDERED** this the _____ day of August 2020, in the City of Austin, Travis County, Texas, in witness whereof I subscribe my name and cause to be affixed the seal of the City of Austin.

7

**SECTION 10.  Criminal Offense.** A violation of this Order is a violation of Austin City Code Section 2-6-24 and a criminal offense. A violation of this Order may be punishable through criminal enforcement, except as limited by state order. Peace officers, City of Austin Code Department inspectors, and the Office of the Austin Fire Marshal are hereby authorized to enforce this Order and the Governor's Order.  Except as provided below, a criminal violation of this Order is a misdemeanor punishable by a fine not to exceed $1,000, but not by confinement.  With respect to Section 5, each day or a portion of each day during which the violation occurs or continues constitutes a separate offense. An individual, rather than a business, who violates any provision of this Order concerning the mandatory wearing of face coverings shall first be given a verbal or written warning. Each subsequent violation is punishable by a fine not to exceed $250 per violation, but not by confinement.

A criminal violation of this Order may be enforced by the filing of a probable cause affidavit alleging the violation with the appropriate court or by issuing a citation to the person violating that contains written notice of the time and place the person must appear before a magistrate of this state, the name and address of the person charged, and the offense charged.

Enforcement of this Order is substantially reliant on self-regulation and a community commitment to public health and safety under the threat of COVID-19.  If there is not widespread compliance with this Order, the City will increase enforcement efforts, as allowed by law.

**SECTION 11. Savings Clause.**   If any provision of this Order or its application to any person or circumstance is held to be invalid, then the remainder of the Order, including the application of such part or provision to other persons or circumstances, shall not be affected and shall continue in full force and effect. To this end, the provisions of this Order are severable.

**SECTION 12.  Posting.**  The Austin Public Health Department and the City Clerk will post this Order on their websites.  In addition, the owner, manager, or operator of any facility that is likely to be impacted by this Order is strongly encouraged to post a copy of this Order onsite and to provide a copy to any member of the public asking for a copy.

**SECTION 13.  Exhibits**.  This Order incorporates by reference the following:

| | |
|---|---|
| **Exhibit A**: | Recommendations and Requirements by the Austin / Travis County Health Authority |
| **Exhibit B**: | Sample Business Health and Safety Policy and Signage |
| **Exhibit C**: | Face Covering Behaviors |
| **Exhibit D**: | Construction Requirements |
| **Exhibit E**: | Phased-in Approach to On-Campus Instruction Based on Risk-Based Stages |

**SECTION 14.** This order supersedes Order No. 20200702-017.

**ORDERED** this the 14th day of August 2020, in the City of Austin, Travis County, Texas, in witness whereof I subscribe my name and cause to be affixed the seal of the City of Austin.

Mayor, City of Austin

Filed with me, the City Clerk of the City of Austin, this ___ day of August 2020, by Mayor Steve Adler, whose signature I hereby attest under my hand and the seal of the City of Austin.

City Clerk

8

# Exhibit A

## Austin/Travis County Health Authority
## Requirements and Recommendations
## for Individuals, Families and Businesses

**I.  Individuals**  All individuals shall comply with the Governor's Minimum Standard Health Protocols, checklist for all individuals, found at:
https://gov.texas.gov/uploads/files/organization/opentexas/OpenTexas-Checklist-Individuals.pdf

    **A**. **COVID-19 Positive Individuals**, Suspected Positives, those currently being tested, and Untested Individuals with cough, fever, sore throat, runny nose or congestion, chills, muscle or body aches, loss of smell, loss of taste, shortness of breath, difficulty breathing, fatigue, vomitin, nausea, and/or diarrhea shall:

    i.    Not leave their residence without a mask or fabric face covering to prevent the spread to others.

    ii.    Be permitted to do the following while wearing a mask or fabric face covering:

        a.    Seek medical care or emergency medical care related or unrelated to COVID-19. In doing so, they shall notify first responders at the time of the call to 9-1-1 or prior to visiting other healthcare providers that they have tested positive for COVID-19, or been exposed to individuals who have tested positive, are suspected positive for COVID-19 or untested individuals with cough and/or fever.

        b.    Walk or exercise alone in the immediate vicinity of their residence.

        c.    Seek testing for COVID-19.

    iii.  Not leave the City of Austin without prior notification to Austin Public Health at APH.Preparedness@austintexas.gov.

    iv.  Practice Social Distancing and Hygiene within the residence, observe hygiene practices for prevention of household spread in accordance with the Centers for Disease Control (CDC) guidelines.

    v.    Notify Austin Public Health if the residence does not allow for physical separation from other household contacts (separate room and bathroom).

    vi.  Notify Austin Public Health if a member of their household is over the age of 65 and/or if they have underlying medical conditions identified by the CDC of increasing the risk of complications from COVID-19.

vii.  Remain in home quarantine for at least 10 days following the first appearance of systems, at least 24 hours with no fever (without use of fever-reducing medication), and symptoms have improved.

**B**. **Household Members of COVID-19 Positive Individuals**, Suspected Positives, those currently being tested, or Untested Individuals with cough, fever, sore throat, runny nose or congestion, chills, muscle or body aches, loss of smell, loss of taste, shortness of breath, difficulty breathing, vomiting, nausea, and/or diarrhea shall:

i.  Not leave the residence without a mask or fabric face covering to prevent the spread to others.

ii.  Be permitted to do the following while wearing a mask or fabric face covering:

a.  Seek medical care or emergency medical care related or unrelated to COVID-19. In doing so, they shall notify first responders at the time of the call to 9-1-1 or prior to visiting other healthcare providers that they have been exposed to individuals who have tested positive, are suspected positive for COVID-19 or untested individuals with cough and/or fever.

b.  Walk or exercise alone in the immediate vicinity of their residence.

iii.  Not leave the City of Austin without prior notification to Austin Public Health at APH.Preparedness@austintexas.gov.

iv.  Practice Social Distancing and Hygiene within the residence, observe hygiene practices for prevention of household spread in accordance with CDC guidelines.

v.  Notify Austin Public Health if the residence does not allow for physical separation from other household contacts (separate room and bathroom).

vi.  Notify Austin Public Health or your Primary Care Provider if they develop symptoms consistent with COVID-19 as defined by the CDC.

vii.  Remain in home quarantine for at least 14 days after the last contact with an individual known or suspected to be COVID-19 positive, regardless of the presence of symptoms.

**C.**  Individuals should refrain from reporting to work when falling within any of the following criteria:

i.  Has signs or symptoms of a COVID-19 infection, such as cough, fever, sore throat, runny nose or congestion, chills, muscle or body aches, loss of smell, loss of taste, shortness of breath, difficulty breathing, vomiting, nausea, and/or diarrhea;

ii.  Has a fever greater than 99.6°F;

iii. In the previous 14 days has had contact with someone with a confirmed diagnosis of COVID-19 and did not have the appropriate personal protective equipment designated by the Centers for Disease Control and Prevention (CDC); is under investigation for COVID-19; or is ill with a respiratory illness; or

iv. Has traveled to an area the World Health Organization or CDC considers a "Hotspot."

If someone in a household has tested positive for COVID-19, or is awaiting results of a COVID-19 test, and a member of the household is an employee of an government service or CISA industry, an exception may be made by Austin Public Health allowing that member of the household to voluntarily return to work after finding the risk of reduced essential services is greater than the risk of infection.

### D. Vulnerable Populations

  i. Vulnerable populations include people who:

    a. Are 65 years old and older; or

    b. Have certain health conditions such as heart disease, lung disease, diabetes, kidney disease, Human Immunodeficiency Virus (HIV), Acquired Immune Deficiency Syndrome (AIDS), and weakened immune systems.

  ii. Vulnerable Individuals shall:

    a. Avoid group gatherings unless it is essential;

    b. Avoid people who are sick,

    c. Wear a mask or fabric face covering at all times when in public, and

    d. Comply with the Governor's Special Guidance for Texans Over 65, found at: https://gov.texas.gov/uploads/files/organization/opentexas/OpenTexas-Special-Guidance-For-Texans-Over-65.pdf

### E. Individual Gatherings

  i. All social indoor or outdoor gatherings outside of a single household or dwelling should be avoided or minimized. No more than 10 individuals may stand or gather together, except as expressly permitted by this Order or the Governor's Order.

  ii. Do not attend any events or gatherings if sick.

  iii. For household and other gatherings permitted by the Order:

a.  Have hand washing capabilities, hand sanitizers, and tissues available;

b.  Frequently clean high-touch surface areas like countertops, doorknobs, and handrails; and

c.  Find ways to create physical space (minimum of six (6) feet distance between people) to minimize close contact as much as possible.

d.  Find ways to ensure six feet of social distancing from another group or gathering.

**F.  Schools and Daycare. To the extent that schools and daycare are open under current orders:**

i.  Do not have your child attend school or daycare if sick.

ii.  If you have a child with chronic health conditions, consult the child's doctor about school and daycare attendance.

iii.  Frequently re-educate students and staff regarding Social Distancing and Hygiene and Face Covering behaviors and ensure that appropriate signs are posted.

iv.  Explore remote teaching and online options to continue learning.

**II.**  **Businesses** shall operate only to the extent permitted by order of the Texas Governor.

**III.**  **Businesses** and services permitted to operate by the Governor's Order shall comply with the following:

**A.**  To prevent stigma and discrimination in the workplace, employers shall only adhere to the recommendations described in this Order to determine risk of COVID-19. Employers should contact their own human resources advisors and shall not make determinations of risk based on race, color, religion, sex, sexual orientation, gender identity, age, familial status, disability, marital status, student status, creed, or national origin. To the extent possible, employers should maintain confidentiality of people with suspected or confirmed COVID-19.

**B.**  Employers shall only allow persons in and around their premises that are: (1) essential employees not subject to any of the criteria in Section I of this Exhibit, (2) delivery personnel, suppliers, customers or members of the public practicing Social Distancing and Hygiene and Face Covering behaviors as set forth in Sections 2, 3, and 5 (Mandatory Health Plans) of this Order, and (3) persons with legal authority to enter such as law enforcement.

**C.** Prior to allowing employees into its facility, employers shall ask all employees if they meet any of the criteria in Section I of this Exhibit, and shall direct employees to return home or other appropriate shelter and services if the employee is exhibiting symptoms and presenting a threat of infecting others.

**D.** Employers shall immediately separate an employee who becomes sick or demonstrates a temperature greater than 99.6°F while at work from other employees and send that employee home or to other appropriate shelter and services.

**E.** Human resources departments shall create alternate work plans to help employees remain productive while keeping the workforce safe and healthy.

**F.** Employers are strongly encouraged to require employees (either those exhibiting symptoms or all employees) to undergo a COVID-19 symptom check and non-invasive temperature readings prior to entering a worksite; however, **employers are not mandated to take the temperature of employees prior to entrance to its worksite**. If the employer does take employees' temperatures and/or has first-hand knowledge that the employee's temperature exceeds 99.6°F, then the employer shall prohibit the employee from entering the facility or property.

**G.** Employers shall create and implement an infectious disease response plan.

**H.** Employers shall comply with the Governor's Minimum Standard Health Protocols, checklist for employers, found at: https://gov.texas.gov/uploads/files/organization/opentexas/OpenTexas-Checklist-Employers.pdf

**I.** Where appropriate employers shall:

    i.    Suspend nonessential employee travel;

    ii.    Prohibit employees working within six (6) feet of one another unless necessary to provide continuity of essential services;

    iii.    Minimize or cancel in-person meetings and conferences including canceling, postponing or moving to on-line formats for all indoor or outdoor gatherings of any number of people.

    iv.    Require employees to stay home when they are sick and maximize flexibility in sick leave benefits.

    v.    Permit sick employees to stay home without providing a doctor's note.

    vi.    Utilize telecommuting options to minimize person-to-person interaction.

vii.  Alter, stagger or otherwise schedule or separate employees or teams of employees so not all employees are present at one time but are present at alternative days and times, unless necessary to provide continuity of essential services.

viii. Limit or restrict the number of customers or visitors permitted in a workplace at one time.

ix.   Ensure that individuals (employees and clients) queuing inside and outside of the business or workplace can maintain six (6) feet of separation.

x.    Designate special separate shopping times for high-risk clients as designated by the CDC.

xi.   Increase the use and capability of on-line, drive-thru, curbside, or delivery services.

xii.  Provide hand washing capabilities, hand sanitizers, and tissues.

xiii. Clean high-touch surface areas like countertops, doorknobs, and handrails at least twice per day with CDC recommended surface cleaners for COVID-19.

xiv. Require and allow employees to practice the Face Covering Behaviors as set forth in Sections 3 and 5 and **Exhibit C** of this Order.

**Exhibit B**

**SAMPLE HEALTH AND SAFETY POLICY & SIGNAGE**
**[ATTACHED]**

# <u>COVID-19 HEALTH & SAFETY POLICY</u>

**POLICY.**   The virus that causes COVID-19 can be spread to others by infected persons who have few or no symptoms. Because of the hidden nature of this threat, it is the policy of this business, as required by City and County Orders, to require the following:

1. **FACE COVERING REQUIRED IN ORDER TO ENTER PREMISES.** All persons over the age of ten (10), including employees, customers, visitors, invitees, and contractors ("Patrons"), who enter this business MUST wear a face covering over their nose and mouth, such as a commercially made or homemade mask, scarf, bandana, or handkerchief. This requirement does not apply if covering the nose or mouth poses a greater mental or physical health, safety, or security risk to the Patron, such as anyone having trouble breathing due to a medical condition, or is unconscious, incapacitated, or otherwise unable to remove the cover without assistance.

2. **SOCIAL DISTANCING PROTOCOLS.** Even with the use of appropriate face coverings, individuals should maintain six (6) feet of social distancing from others outside their own household whenever possible.

   a. Employees should not work within six (6) feet of one another, except to the extent necessary to provide services.

   b. Patrons should maintain six (6) feet of separation from others outside their own household to the extent feasible when inside these premises and must do so while queuing or waiting.

3. **VIOLATIONS.** Patrons who do not wear a face covering will be asked to leave the premises and may not be provided goods or services until the face covering requirements of this policy and City and County Orders are followed.

4. **NOTICE AND SIGNAGE.** Notice of this Health and Safety Policy will be posted in a conspicuous location on these premises.

# Exhibit C

## Face Covering Behaviors

A significant percentage of individuals with the COVID-19 virus lack symptoms.  Because an infected person can transmit the virus to others before showing any symptoms, the covering of a person's nose and mouth when outside their home or residence is necessary to help prevent the spread of COVID-19. This is consistent with the findings of the CDC and Austin-Travis County Health Authority

Unless you already have your own personal used masks that cannot be donated, the fabric face coverings recommended are not surgical masks or N-95 respirators, which are critical supplies that must continue to be reserved for healthcare workers and first responders.  Staying home is the best way to help reduce the spread of the virus, but if an individual must leave their place of residence, wearing a fabric face covering shall be used as outlined in this Exhibit and this Order. **Wearing a face covering is not a substitute for maintaining 6-feet social distancing and hand washing, as these remain important steps to slowing the spread of the virus.**

**The public in general and employers and employees shall adhere to the following:**

a.  All persons shall wear some form of covering over their nose and mouth, such as a commercially made or homemade mask, scarf, or bandana, when outside of his or her residence.

b.  This section shall not apply to:

1.  any person younger than 10 years of age (though masks are recommended for children two years of age and older);

2.  any person with a medical condition or disability that prevents wearing a face covering;

3.  any person while the person is eating or drinking, or is seated at a restaurant to eat or drink;

4.  any person while the person is (a) exercising outdoors or engaging in physical activity outdoors and (b) maintaining a safe distance from others not in the same household;

5.  any person while the person is driving alone or with passengers of the same household as the driver;

6.  any person obtaining a service that requires temporary removal of the face covering for security surveillance, screening, or the need for specific access to the face, such as while visiting a bank or while obtaining a personal care service involving the face, but only to the extent necessary for the temporary removal;

7.  any person while the person is in a swimming pool, lake, or similar body of water;

8.  any person who is voting, assisting a voter, serving as a poll watcher, or actively administering an election, but wearing a face covering is strongly encouraged;

9.  any person who is actively providing or obtaining access to religious worship, but wearing a face covering is strongly encouraged;

10. any person while the person is giving a speech for a broadcast or to an audience;

11. any person while temporary removal of the face covering is necessary for communication by or with a person who is hearing impaired; or

12. any person while alone, or in the presence of only members of the same household or residence, in a separate room or single space not accessible to the public, and not in an indoor common area

Parents and Guardians of children under 10 shall be responsible for appropriately masking children when outside their residence.

c.  All non-residents in nursing homes, retirement and long-term care facilities shall wear a fabric face covering as provided for in this Exhibit and set forth in Section 3 of this Order (Face Covering Behaviors), except as otherwise required by an order issued by the Health Authority. In addition, residents in facilities with confirmed COVID-19 cases shall follow requirements of **Exhibit A**, except when doing so poses a greater mental or physical health, safety or security risk.

d.  All COVID-19 Positive Individuals, Suspected Positives, those currently being tested, and untested individuals with cough, fever, sore throat, runny nose or congestion, chills, muscle or body aches, loss of smell, loss of taste, shortness of breath, difficulty breathing, vomiting, nausea, and/or diarrhea and household members of same category of individuals shall not leave their residence without a mask or cloth face covering to prevent the spread to others.

e.  All individuals working for a business shall wear a mask or cloth face covering whenever in public and whenever performing job duties in the presence of others.

f.  Unless you already have your own personal used masks that cannot be donated, medical grade (N95) and surgical masks should be reserved and used only by medical professionals and first responders.

Examples of how to make cloth face coverings can be found online including underline guidance from the CDC and underline guidance from Austin/ Travis County Health Authority.

g.  The fabric face covering should:

1.  fit snugly but comfortably against the side of the face;

2.      be secured with ties or ear loops;

3.      include multiple layers of fabric;

4.      allow for breathing without restriction; and

5.      be able to be laundered and machine dried without damage or change to shape.

h.      Employers shall require and allow employees to practice Face Covering Behaviors as set forth in Section 3 and this **Exhibit C**.

i.      Even with the use of appropriate face coverings, individuals shall maintain six feet of social distancing whenever possible.

j.      Individuals should avoid touching their face and should wash their hands or use hand sanitizer.

k.      For further information, individuals can access information at https://traviscountytx.gov/news/2020/1945-novel-coronavirus-covid-19-information and www.AustinTexas.gov/COVID19.

# Exhibit D

# CONSTRUCTION REQUIREMENTS

**1.** The person in charge of the overall site ("Site Manager") shall ensure the following is implemented and maintained at the work site.  For sites not large enough by virtue of physical size or number of workers, or which do not have a general contractor, the responsibilities of a Site Manager in this document are also conferred on each subcontractor on a site.

    a.  Ensure workers practice the Social Distancing and Face Covering Behaviors as set forth in Sections 2 and 3 and **Exhibits A** and **C** of this Order during non-construction activities and, to the greatest extent possible, during construction activities, with careful attention paid to "choke points" and "high-risk areas" where workers are at greater risk to closely gather, such as hallways, hoists and elevators, and break areas;

    (1) Follow healthy work practices in **Exhibit A** of this Order;

    (2) Ensure all workers wear a fabric face covering consistent with Section 3 and **Exhibit C** of this Order;

    (3) For all construction sites within the City, except as noted, Site Manager shall:

        i.   Institute staggered shifts for sites with more than 10 active workers and post at these sites, in languages understood by all persons working there, a notice showing the sizes and types of shift crews working there, and directions on how the Site Manager is limiting crew sizes and rotating shifts.

        ii. Every day before the commencement of work, for and understood by each worker, conduct a jobsite pre-screening of the general health of each worker, provide a briefing reiterating the COVID-19 safety requirements, and check for personal protective equipment.

        iii. Ensure that the site has at least one handwashing station with soap or hand sanitizer and one portable restroom stocked with hand soap and/or hand sanitizer with at least 60% alcohol for every 15 workers, and the handwashing station and restroom(s) must be spaced six feet apart or more from each other.

        iv. Mandate handwashing of at least twenty seconds for workers as follows:

            (a)  Before workers begin work;
            (b)  After workers remove gloves;
            (c)  Before and after the use of high-touch items such as tools, electronic devices or multi-user devices;
            (d)  Before and after any meal or restroom breaks; and
            (e)  After a worker's shift or work time ends.

v. Prohibit the use of community water coolers and provide individual water bottles or instruct workers to bring their own.

vi. Ensure that shared tools are disinfected between users, and that common areas (lunch and break areas, toolbox talk areas, large equipment, electronic devices etc.) and collective touch points (doorknobs, counters, keyboards, etc.) are cleaned and disinfected at least twice a day.

vii. Post in a conspicuous place or places on a site where notices to employees are customarily posted, once such signage is made available by the City, a sign in English and Spanish providing the Social Distancing and Hygiene and Face Covering Behaviors as set forth in Sections 2 and 3 and **Exhibits A** and **C** of this Order, the Requirements and Recommendations for Employees in **Exhibit A** of this Order, and information for workers to submit complaints of any violations.

viii. Post at least one Austin Public Health "Help Prevent Disease" sign at each entrance and on each portable restroom door (available for download and print at: http://www.austintexas.gov/sites/default/files/files/Health/General%20Hygiene%20F lyer%20Final2-1-eng-051120.pdf).

ix. Provide single use disposable paper towels and no-touch trash receptacles.

x. Keep toilets clean, sanitary, and operational at all times and ensure proper disposal of waste from these facilities.

xi. Designate a COVID-19 Safety Monitor who has the authority to enforce these rules and shall be on-site at all times. The contact information for the Safety Monitor must be made available to the City. The Safety Monitor may also be the Site Manager and shall advise the City if that is the case when providing their contact information.

b. If a worker at a construction site is confirmed to have contracted COVID-19, the Site Manager shall immediately send the worker home, notify Austin Public Health, and follow all directions from Austin Public Health concerning that worker and workers that may have come in contact with the infected worker.

c. The Site Manager shall ensure that every worker who enters a jobsite has signed in and shall keep a list of and contact information for every worker that enters the jobsite every day for the purpose of identifying and notifying workers if they have shared a jobsite with someone who has been confirmed to have COVID-19.

d. All Construction Industry employers are encouraged to observe the following employment practices for the health of the workers, the health of the community generally, and for the benefit of the overall economy of the City:

(1) Take no adverse action against a worker who declines to work at a construction site if the worker believes in good faith that the site presents an imminent health risk of the worker or others due to COVID-19.

(2) Take no adverse action against a worker who has been quarantined, or advised to self-quarantine, due to possible exposure to COVID-19.

(3) Do not contest a claim for unemployment benefits filed by a worker temporarily furloughed as the result of the closure of a construction site due to COVID-19.

e. Continuing review of health conditions. The City will continue to monitor closely the health condition of the community and the statistical models for the likely spread of the COVID-19 virus in the community on an ongoing basis. If this evidence indicates that the City's ability to provide adequate care for those with serious cases of COVID-19 is significantly compromised, additional emergency orders or guidance may be issued. All persons in the construction industry should be aware of this risk and are strongly encouraged to take all feasible steps to eliminate person-to-person contact at construction sites, and to practice the City's Social Distancing and Hygiene and Face Covering Behaviors at all times.

# Exhibit E
# Phased-in Approach to On-Campus Instruction Based on Risk-Based Stages

Each school must follow this phased-in approach unless following this approach will result in a loss of funding from the Texas Education Agency (TEA). The percentages described below also apply to school gatherings and sports activities. A school can determine the stage by checking http://www.austintexas.gov/page/covid-19-risk-based-guidelines.

## COVID-19: Risk-Based Stages for Phased-in Learning

| | CDC Level of Community Transmission | On-campus Population |
|---|---|---|
| Stage 1 | No to minimal transmission | Up to 100% on-campus learning |
| Stage 2 | Minimal to moderate transmission | Up to 75% on-campus learning |
| Stage 3 | Substantial, controlled transmission | Up to 50% on-campus learning |
| Stage 4 | Substantial, uncontrolled transmission | Up to 25% on-campus learning |
| Stage 5 | Widespread uncontrolled transmission threatening our healthcare infrastructure | 100% virtual learning |

# **<u>EXHIBIT C</u>**

## Maryann Norwood

| | |
|---|---|
| **From:** | Adler, Steve <Steve.Adler@austintexas.gov> |
| **Sent:** | Wednesday, August 26, 2020 6:41 PM |
| **To:** | Maryann Norwood |
| **Cc:** | Varghese, Lesley; Shack, Barbara; Clark, Janine |
| **Subject:** | Re: Urgent Clarification Regarding Foreclosure Sales in Austin, Texas |

Ms. Norwood:

This email is to confirm that I have neither approved nor authorized any outdoor gatherings in Austin, Texas, in excess of 10 persons, except as specifically allowed by the Governor.  This restriction on such gatherings, which does not specify or call out call out particular types of gathering, are found in *Order No 20200815-019 issued by the Mayor of the City of Austin* and remain in effect through December 15, 2020.

Steve Adler
Mayor of the City of Austin

---

**From:** Maryann Norwood
**Sent:** Wednesday, August 19, 2020 6:13 PM
**To:** lesley.varghese@austintexas.gov; steve.adler@austintexas.gov
**Cc:** Barbara.shack@austintexas.gov
**Subject:** Urgent Clarification Regarding Foreclosure Sales in Austin, Texas

Mayor Adler and Ms. Varghese:

This letter is in follow-up to my contact with your offices yesterday through the City of Austin website. I am writing to request clarification from your office that foreclosure sales may not be held in Austin, Texas without your express approval so long as governmental orders remain in place prohibiting outdoor gatherings in excess of 10 persons.

There are currently three orders that restrict such gatherings:

1. ***Executive Order GA-28 (as amended)*** (*Addendum A*) issued by Governor Abbot provides that outdoor gatherings in excess of 10 people are prohibited unless the mayor of the city in which the gathering is held . . . approves of the gathering.
   a. Executive Order GA-28's application to foreclosure sales was specifically addressed in an informal guidance letter issued by the Attorney General's office (*Addendum B*), as further detailed below, in which the Attorney General's office confirmed that foreclosure sales may  not satisfy the public requirement without express approval from the city mayor to hold the sale gathering.

2. ***Order No 202-16 by the County Judge of Travis County*** (*Addendum C*), after reciting the restrictions in place on outdoor gatherings under GA-28, provides "any gatherings that exceed 10 people are hereby PROHIBITED, except as permitted by current Governor's Proclamations and Orders."

3. ***Order No 20200815-019 issued by the Mayor of the City of Austin*** (*Addendum D*) , after reciting the restrictions in place on outdoor gatherings under GA-28, provides in relevant part that through December 15, 2020 "Further, pursuant to the Governor's Order, and the advice of the local Health Authority, gatherings or presence at any outdoor area, event, or establishment of more than 10 persons are PROHIBITED except at provided in this Section."

As you know, Texas is generally considered to be the most lender-friendly state, as non-judicial foreclosures can be completed in as short as 21 days. The protection for owners against such lender-friendly and expeditious foreclosure is the assurance that foreclosures will only be conducted when there is strict compliance with Texas Property Code Section 51.002.

Governor Abbott's Executive Order 28 which prohibits gatherings of more than 10 persons is in direct contradiction with the requirement for a "public sale" under Texas Property Code Section 51.002(a) ("a sale of real property under a power of sale conferred by a deed of trust or other contract lien must be a public sale at auction held between 10 a.m. and 4 p.m. of the first Tuesday of a month."

This impact of GA-28 on the right to hold foreclosure sales in satisfaction of the public sale requirement was specifically discussed and addressed in by the Attorney General of the State of Texas in a letter to Senator Bryan Hughes on August 1, 2020 ("AG Guidance Letter"). The AG Guidance Letter provides in relevant part:

> *With this background in mind, we address your question concerning attendance limitations. Governor Abbott ordered in Executive Order GA-28 that "every business in Texas shall operate at no more than 50 percent of the total listed occupancy of the establishment." This general limitation, however, is subject to several exceptions. One such exception is found in paragraph five of the order, which limits outdoor gatherings to 10 persons or fewer without approval by the mayor or, in the case of unincorporated territory, the county judge in whose jurisdiction the gathering occurs. Accordingly, to the extent a foreclosure sale occurs outdoors, **attendance at the sale is limited to 10 persons or fewer unless greater attendance is approved by the relevant mayor or county judge**.*
>
> *. . .*
>
> ***If a foreclosure sale is subject to, and not exempted from, the 10-person attendance limit imposed in Executive Order GA-28, it should not proceed if one or more willing bidders are unable to participate because of the attendance limit.*** *"[A] sale of real property under a power of sale conferred by a deed of trust or other contract lien must be a public sale at auction held between 10 a.m. and 4 p.m. of the first Tuesday of a month." **The purpose of the public sale requirement is to "secure the attendance of purchasers and obtain a fair price for the property." Strict compliance with the Property Code is required for a trustee to properly make a foreclosure sale**. If an attendance limit precludes the conduct of a public sale for the purpose of securingsufficient bidders to obtain a fair price, the propriety of a foreclosure auction may be called into question. **Accordingly, to the extent attendance at a foreclosure sale is limited to ten or fewer persons, and that limit precludes the attendance of one or more willing bidders who otherwise would have appeared in person, the sale should not go forward as it likely would not comport with the Property Code requirement that the sale be a "public sale."***

(internal citations omitted)

2

In light of the standing orders above, and given that you have not approved outdoor gatherings in excess of 10 people in Austin, Texas, foreclosure sales held in Austin, Texas cannot satisfy the public sale requirement as outlined above.

Nevertheless, there are at least 35 properties listed for foreclosure in Austin, Texas for September 1, 2020, which indicates that lenders are attempting to go forward with the foreclosure sales despite the restrictions. Attached *Addendum E* is a listing of those noticed sales as found on the Travis County real property records website.

In light of the foregoing, we write to request that you formally clarify, by way of order, that foreclosure sales may not occur in Austin, Texas without your express approval. This clarification is necessary to protect citizens and constituents in the Austin community and time is of the essence.

Respectfully,

<image001.jpg>

Maryann Norwood | Corporate Counsel

World Class
814 Lavaca Street | Austin, TX 78701
T 512.420.4144 | F 512.597.0612 | M 512.962.3528
mnorwood@world-class.com | www.world-class.com

The information contained in this e-mail is strictly confidential and for the intended use of the addressee only and may also be privileged or otherwise protected by other legal rules. Any disclosure, use or copying of the information by anyone other than the intended recipient is prohibited. If you have received this message in error, please notify the sender immediately by return e-mail and delete this message from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender does not accept liability for any errors or omissions in the contents of this message or for any damage sustained as a result of software viruses and advise that you carry out your own virus checks before opening any attachment. This email contains the views of the author and should not be interpreted as the views of World Class Holding Company, LLC or its affiliates.
**CAUTION:** This email was received at the City of Austin, from an EXTERNAL source. Please use caution when clicking links or opening attachments. If you believe this to be a malicious and/or phishing email, please forward this email to cybersecurity@austintexas.gov.
<Letter to the Honorable Mayor Adler.pdf><Addenda A through E.pdf>

**CAUSE NO.** _____

| | | |
|---|---|---|
| WC 4811 SOUTH CONGRESS, LLC and | § | IN THE DISTRICT COURT OF |
| AFFILIATED COMMERCIAL SERVICES, | § | |
| INC. | § | TRAVIS COUNTY, TEXAS |
| Plaintiffs, | § | |
| | § | |
| v. | § | _____ JUDICIAL DISTRICT |
| | § | |
| | § | |
| 4811 SOCO LP, and | § | |
| BANCORPSOUTH BANK | § | |
| Defendant. | | |

## <u>TEMPORARY RESTRAINING ORDER</u>

This Court, having heard and considered WC 4811 South Congress, LLC, Texas a limited

liability corporation, ("Borrower")  and Affiliated Commercial Services, Inc., a Texas

Corporation ("Bidder", together with Borrower, the "Plaintiffs") Petition for a Temporary

Restraining Order, and all evidence and arguments of counsel with notice to 4811 Soco, LP,  a

foreign entity not authorized to do business in Texas, and BancorpSouth Bank, a Mississippi

banking corporation, it appears to the Court that immediate and irreparable injury, loss, or

damage will result to WC 4811 South Congress, LLC, Texas  unless a Temporary Restraining

Order is issued to restrain 4811 Soco, LP  from Lender from attempting to proceed with a non

judicial foreclosure sale on September 1, 2020,  on the steps of the Travis County Courthouse

located at 1000 Guadalupe Street, Austin, Texas, as doing so would be in violation of Borrower's

statutory right to a public sale under the Texas Property Code and would deny Bidder's and other

interested parties from attending the sale casing irreparable damage to both due to the unique

nature of real estate, Bidder's only claim hereunder

ORDERED that this Temporary Restraining Order will be operative until the _____ day of September, 2020, and pending the hearing ordered below. It is further ORDERED that 4811 Soco, LP and BancorpSouth Bank or any of its officers, agents, servants, employees, attorneys, representatives, or any persons in active concert or participation with them who receive actual notice of this Order are hereby restrained from taking any action in exercising the power of foreclosure, including but not limited to posting or foreclosing on the property described as follows:

**EXHIBIT A Legal Description**

Plaintiff shall file with the Clerk a bond executed by Plaintiff in the sum of _____, payable to the Travis County District Clerk to be deposited into the Registry of the Court,  approved and conditioned as the law requires. It is, further,

ORDERED that WC 4811 South Congress, LLC's  Petition for a Temporary Injunction, as contained in its verified Original Petition, will be heard before the Captioned Court on the _____ day of _____, 2020, at _____ _____.m.

SIGNED this ____ day of _____, 2020.

_____
JUDGE PRESIDING

APPROVED AS TO FORM AND SUBSTANCE:


_____
Manfred Sternberg
SBN: 19175775
1700 Post Oak Blvd. Suite 600
Houston, TX 77056
Telephone:   (713) 622-4300
Facsimile:    (713) 622-9899
Email: manfred@msternberg.com

**COUNSEL FOR PLAINTIFF**

# EXHIBIT A

## 4811 SOUTH CONGRESS

METES AND BOUNDS DESCRIPTION OF A SURVEY OF 14.993 ACRES OF LAND, A PORTION OF THE ISAAC DECKER LEAGUE SURVEY NO. 20, ABSTRACT NO. 8, IN THE CITY OF AUSTIN, TRAVIS COUNTY, TEXAS, SAID 14.993 ACRES OF LAND BEING ALL OF THAT CALLED 4.32 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, AS DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM ABEL J. & MARY ANN THERIOT FAMILY LIMITED PARTNERSHIP TO THERIOT FLP PROPERTIES – III OF RECORD IN DOCUMENT NO. 2010125121, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT CALLED 5.6839 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, DESIGNATED AS TRACT 1 AND DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM SASHA THERIOT SANDERS, TEAL THERIOT SANDERS AND ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC OF RECORD IN DOCUMENT NO. 2010125125, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT CALLED 2.62 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, DESIGNATED AS TRACT 2 AND DESCRIBED IN SAID SPECIAL WARRANTY DEED TO SANDERS CHILDREN INVESTMENTS, LLC OF RECORD IN DOCUMENT NO. 2010125125, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT 2.32 ACRES OF LAND, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, AS DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM SUZANNE MARIE SANDERS AND HER HUSBAND CURTIS NOLEN SANDERS TO SANDERS FLP PROPERTIES – I, LLC OF RECORD IN DOCUMENT NO. 2010125122, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, SAID 14.993 ACRES OF LAND, AS SURVEYED BY BOWMAN CONSULTING GROUP, LTD. AND SHOWN ON BOWMAN PLAN NO. 3562, BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

**BEGINNING** at a 5/8" iron rod found in the east right-of-way line of South Congress Avenue at the most westerly northwest corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and at the southwest corner of that 0.780 of one acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Cash Warranty Deed to MMGG Enterprises, L.P. in Document No. 2004036130, Official Public Records of Travis County, Texas, said 5/8" iron rod found being a common corner of the two parcels described in that Agreement of record in Document No. 2005099083, Official Public Records of Travis County, Texas, said 5/8" iron rod found being the **POINT OF BEGINNING** and most westerly northwest corner of the tract described herein, and from which 5/8" iron rod found, a 1/2" iron rod with plastic cap stamped "ALL POINTS" found at the southwest corner of that 0.066 of one acre tract described in a Street Deed from MMGG Enterprises, LTD., to the City of Austin of records in Document No. 2005102391, Official Public Records of Travis County, Texas, bears
N 63°59'01"W a distance of 0.67 feet;

**THENCE** S 61°50'30" E, with the most westerly north line of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the south line of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the agreed line referenced in the said Agreement of record in Document No. 2005099083 a distance of 239.20 feet to a 1/2" steel pin found at a reentrant corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the south east corner of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the corner referenced in said Agreement, for a reentrant corner of the tract described herein;



EXHIBIT  
PAGE __ OF __ PAGES

THENCE N 23°58'30" E, with the most northerly west line of the said Theriot FLP Properties – III, LLC 4.32 acre tract and with the east line of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the line referenced in the said Agreement, at a distance of 4.94 passing a 1/2" steel pin found 0.17 feet east of line, said 1/2" steel pin found being the southeast corner of that 0.708 of one acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Special Warranty Deed With Vendor's Lien to Area 51 Enterprises LLC in Document No.

2015028497, Official Public Records of Travis County, Texas, in all 149.96 feet to a 1/2" steel pin found in the south line of that 4.056 acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Special Warranty Deed to ID Bel Air Partners, LP of record in Document No. 2005017785, Official Public Records of Travis County, Texas, and being the most northerly northwest corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract, and the northeast corner of the said MMGG Enterprises, L.P. 0.780 of one acre tract and the northeast corner of the said Area 51 Enterprises LLC 0.708 of one acre tract, and being also the corner referenced in said Agreement, for the most northerly northwest corner of the tract described herein;

THENCE S 63°24'52" E, with the most easterly north line of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the south line of the said ID Bel Air Partners, LP 4.056 acre tract, a distance of 383.05 feet to a 1/2" steel pin found in the west line of Lot 2A, Block V, A Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, of record in Plat Book 51, Page 20, Plat Records of Travis County, Texas, and being also the southeast corner of the said ID Bel Air Partners, LP 4.056 acre tract and the northeast corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract, for the northeast corner of the tract described herein;

THENCE S 26°47'44" W, with the west line of said Lot 2A, Block V, A Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, and with the east line of the said Theriot FLP Properties – III, LLC 4.32 acre tract, a distance of 58.95 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found at the southwest corner of said Lot 2A, Block V and the northwest corner of Lot 1A, Block V, of said Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, for an angle point in the east line of the tract described herein;

THENCE S 26°41'23" W, with the west line of said Lot 1A, Block V and the west line of Lot 4, Block V, Greenwood Hills, Section Five, of record in Plat Book 42, Page 10, Plat Records of Travis County, Texas, and being also with the west line of Liverpool Drive as shown on said map or plat of Greenwood Hills, Section Five and being also with the east line of the said Theriot FLP Properties – III, LLC 4.32 acre tract, a distance of 237.88 feet to a 1/2" steel pin found at the southeast corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the northeast corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres of land, for an angle point in the east line of the tract described herein;

THENCE S 26°31'34" W, with the west line of Liverpool Drive and the west line of Lot 23, Block W, of said Greenwood Hills Section Five and being also with the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 152.96 feet to a 5/8" steel pin found at the southwest corner of said Lot 23, Block W and the northwest corner of Lot 16, Block W, of said Greenwood Hills Section Five, for an angle point in the east line of the tract described herein;

THENCE S 27°38'57" W, with the west line of said Lot 16, Block W, of said Greenwood Hills Section Five and being also with the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 40.08 feet to a 1/2" steel pin found at the southwest corner of said Lot 16, Block W and the northwest corner of Lot 15, Block W, of said Greenwood Hills Section Five, for an angle point in the east line of the tract described herein;

THENCE S 26°33'27" W, with the west line of said Lot 15, Block W and the west line of Lots 14, 13, 12, 11 and 10, Block W, of said Greenwood Hills Section Five and the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 473.14 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found in the west line of said Lot 10, Block W, Greenwood Hills Section Five at the southeast corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, for a southeast corner of the tract described herein;

THENCE N 34°50'27" W, with the southwest or west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 11.89 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found in the southwest or west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres and at the northeast corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, for a reentrant corner of the tract described herein;

THENCE S 27°22'12" W, with the east line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, at a distance of 25.77 feet, more or less, passing the most easterly northwest corner of that 2.002 acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Warranty Deed with Vendor's Lien of record in Document No. 2011133868, Official Public Records of Travis County, Texas, in all a distance of 261.28 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found at the southeast corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and a reentrant of the said Jim O'Brien 2.002 acre tract and the most southerly southeast corner of the tract described herein;

THENCE N 60°09'26" W, with the most westerly north line of the said Jim O'Brien 2.002 acre tract and with the south line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, a distance of 199.03 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found at an angle point in the most westerly north line of the said Jim O'Brien 2.002 acre tract and an angle point in the south line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres;

THENCE N 67°47'26" W, with the most westerly south line of the said Jim O'Brien 2.002 acre tract and with the south line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, a distance of 58.62 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found in the east line of Wasson Road (old State Highway No. 29) at the most westerly northwest corner of the said Jim O'Brien 2.002 of one acre tract and the southwest corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, for the most southerly southwest corner of the tract described herein;

THENCE with the east line of Wasson Road (old State Highway No. 29) and the west line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and with the west line of the said Sanders FLP Properties - 1, LLC 2.32 acre tract, courses numbered 1 through 5 inclusive as follows:
1. N 24°25'26" W, a distance of 42.22 feet to 3/4" iron pipe found;
2. N 14°47'26" W, a distance of 70.00 feet to a drill hole in top of a concrete curb found;
3. N 19°56'26" W, at a distance of 154.55 feet passing the northwest corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and the southwest corner of the said Sanders FLP Properties - 1, LLC 2.32 acre tract, in all a distance of 254.00 feet to a calculated point in a multi-trunk Pecan tree;
4. N 07°57'26" W, a distance of 138.98 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found, and
5. N 04°30'34" E, a distance of 36.10 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found at the intersection of the east line of Wasson Road and the east line of Congress Avenue;



EXHIBIT A
PAGE 3 OF 4 PAGES

**THENCE N 27°40'11" E**, with the east right-of-way of South Congress Avenue and the west line of the said Sanders FLP Properties - 1, LLC 2.32 acre tract and the west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, and being also with the west line of the said Theriot FLP Properties – III, LLC 4.32 acre tract, at a distance of 271.24 feet passing the northwest corner of the said Sanders FLP Properties - 1, LLC 2.32 acre tract and the southwest corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, and at a distance of 386.42 feet passing a northwest corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, and a southwest corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract, in all 666.83 feet to the **POINT OF BEGINNING** of the tract described herein containing 14.993 acres of land.

Bearing basis is Grid North, NAD 83, Texas Coordinate System, Central Zone.

Plan #: 3562

EXHIBIT A
PAGE 4 OF 4 PAGES