# TAB 8

9/9/2020 11:49 AM
**Velva L. Price
District Clerk
Travis County
D-1-GN-20-004507
Sandra Santos**

## BUSINESS RECORDS AFFIDAVIT OF JUSTIN BAYNE

THE STATE OF TEXAS       §
                             §

COUNTY OF TRAVIS       §

BEFORE ME, the undersigned authority, on this day personally appeared Justin Bayne, who after being duly sworn under oath, deposed as follows:

1.     My name is Justin Bayne.  I am over the age of eighteen years of age, of sound mind, and fully competent to make this declaration.  I have personal knowledge of the facts set forth in this declaration, and they are true and correct.  I obtained personal knowledge of these facts from my work experience as the President of 4811 SoCo, L.P. ("Lender").

2.     I am the custodian of records for Lender. I am familiar with the manner in which Lender's records are created and maintained by virtue of my duties and responsibilities as Lender's Manager. Attached hereto as Exhibits 1-8, 10-14, 16, 20, 28-30, 31-33 are records from Lender. Exhibits 1-4, 6, 8, 10-14, 16, 28-29, and 31 were transferred to Lender by Original Lender in the process of the loan sale, a number of which were pursuant to the loan sale agreement. Such records were prepared by persons with knowledge of the matters set forth therein. The records attached thereto are the originals or exact duplicates of the originals and are true and certified copies of the original documents.  It is the regular practice of Lender to make the attached type of records at or near the time of each act, event, condition, opinion, or diagnosis set forth in the records. Some of the records were from information transmitted by persons with knowledge of the matters set forth.  It is the regular practice of Lender for this type of records to be made by, or from information transmitted by, persons with knowledge of the matters set forth in them. The attached records are kept by Lender in the regular course of business, and it is the regular course of business of Lender

for such records to be made by, or from information transmitted by an employee, representative, or agent of Lender with knowledge of the act, event, or opinion recorded.

Justin Bayne
President, 4811 SoCo, L.P.

SIGNED AND SWORN BEFORE ME on the 9th day of September 2020, by Justin Bayne.

ROBERT HEED
Notary Public
Notary ID # 130945762
My Commission Expires
December 29, 2020

Notary Public

My Commission Expires: 12/29/20

*[Signature Page of Business Records Affidavit of Justin Bayne]*

3

11364000

**PROMISSORY NOTE**

5-17-17

$4,745,000.00                                                                     March ___, 2017

     For value received, after date, without grace and in the manner, on the dates and in the amounts herein stipulated, the undersigned, WC 4811 SOUTH CONGRESS, LLC ("Maker"), promises to pay to FIRST STATE BANK CENTRAL TEXAS ("Payee"), a state banking association, or order, in lawful money of the United States of America, at P. O. Box 6136, Temple, Bell County, Texas, or at such other place designated in writing by Payee, or other holder hereof:

(1)    The principal sum of FOUR MILLION SEVEN HUNDRED FORTY-FIVE THOUSAND AND NO/100 DOLLARS ($4,745,000.00), together with interest from the date hereof, on the principal amount remaining unpaid hereunder from time to time outstanding, at a rate per annum equal to the lesser of (a) the rate (the "Contract Rate"), which is equal to the sum of the prime interest rate (the "Base Rate") published in The Wall Street Journal (herein defined), plus ONE AND NO/100 percent (1.00%) per annum, which Base Rate shall be variable and shall be adjusted on each annual anniversary of this Note (this "Note") during the term hereof, effective at the commencement of business on the day of any such change in the Base Rate; or, (b) the Maximum Rate (as herein defined);

(2)    This Note shall be due and payable in sixty (60) monthly installments, the first fifty-nine (59) of which, shall be in the amount of THIRTY-ONE THOUSAND THREE HUNDRED FOURTEEN AND 90/100 DOLLARS ($31,314.90) each (the "Installment Sum"), with the first installment, in the amount of the Installment Sum, being due and payable on May 9, 2017, and additional installments in the amount of the Installment Sum shall be due and payable on the same day of each and every consecutive month thereafter until April 9, 2022 (the "Maturity Date"), the maturity hereof, at which time the final installment of all unpaid principal and all accrued and unpaid interest shall be due and payable in full; and,

    Interest shall accrue on a basis of actual days over a year of 365 or 366 days, as the case may be.

    The periodic payment amount of principal and interest specified above has been calculated to allow for the full amortization of a debt in the amount of this Note at the current interest rate over an amortization term of two hundred forty (240) months beginning on the date of this Note (the "Amortization Period"). Notwithstanding the amount of the monthly principal and interest payment referenced above, it is the intention of Maker and Payee that the monthly principal and interest payment allow for full amortization of the principal balance of this Note over the remaining term of the Amortization Period. This Note provides for a variable interest rate to be adjusted annually. Therefore, Payee shall have the unilateral right in Payee's sole discretion to change the amount of the monthly payments of principal and interest at any time during the term hereof, if the interest rate on this Note changes, in order to cause the then current monthly payment to be adequate to amortize the then remaining principal balance of this Note over the then remaining term of the Amortization Period.

    All scheduled payments as made shall be applied first to the interest then accrued, and the balance, if any, to the principal.

    Notwithstanding the foregoing, if at any time the Contract Rate shall exceed the Maximum Rate and thereafter, the Contract Rate shall become less than the Maximum Rate, the rate of interest payable hereunder shall, at the option of Payee, be the Maximum Rate until the cumulative interest received by Payee or other holder hereof, equals the interest which would have been received at the Contract Rate.

JNG17\FSBC1\WC4811\i17093Notev2.wpd
March 30, 2017 (1:33pm)

INITIAL FOR IDENTIFICATION    NOTE

This Note may be prepaid at any time, and from time to time, in whole or in part, without penalty or premium. Any prepayment shall be applied in any order at Payee's discretion as among any then unpaid collections costs or charges for which Maker is liable (either hereunder or under the terms of any document securing the payment hereof), accrued but unpaid interest hereof, or the principal hereof. In the case of partial prepayments, any amount of the partial prepayment that is applied by Payee to the principal hereof shall be applied in the inverse order of maturity, if applicable, such that the then remaining number of scheduled principal installments, if any, shall be reduced accordingly, but no such partial prepayment of principal shall reduce the amount of any scheduled installment of principal on any subsequent principal installment due date, until the entire indebtedness evidenced by this Note is fully paid, it being the intention that any such partial prepayment of principal shall advance the final maturity date hereof, but shall not affect, prior to such new final maturity, the amount or payment due date of any such scheduled principal installment.

If payment of principal or interest on this Note shall become due on a Saturday, Sunday or public holiday as defined under the laws of the State of Texas, such payment shall be made on the next succeeding business day and such extension of time shall in such case be included in computing interest in connection with such payment. Any check, draft, money order or other instrument given in payment of all or any portion hereof may be accepted by the holder hereof and handled in collection in the customary manner, but the same shall not constitute payment hereunder or diminish any rights of the holder hereof except to the extent that actual cash proceeds of such instrument are unconditionally received by the holder and applied to this Note in the manner herein provided. Maker agrees not to send Payee payments marked "paid in full", "without recourse", or similar language. If Maker sends such a payment, Payee may accept it without losing any of Payee's rights under this Note, and Maker shall remain obligated to pay any further amount owed to Payee. All written communications concerning disputed amounts from Maker, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount shall be mailed or delivered to Payee at the following address: P. O. Box 6136, Temple, Texas 76503-6136.

In the event any check used to make a payment to Payee is dishonored for any reason, Maker shall pay to Payee, in addition to any other amounts to which Payee may be entitled hereunder, a reasonable processing fee of $30.00 (or the maximum amount provided from time to time in Section 3.506.(b) of the Texas Business and Commerce Code as it may be amended). This processing fee should be paid once with respect to each dishonor of a check. It is further agreed that the imposition of any such processing fee shall in no way prejudice or limit Payee's rights or remedies against Maker under this Note or any of the loan documents or any other instrument securing or executed in connection with this Note.

Payments received by Payee in Payee's banking offices after 2:00 p.m. local time for purposes of posting of payments shall be considered as received on the next succeeding business day of Payee (excluding Saturdays, Sundays, and public holidays as defined under the laws of the State of Texas). Payments which are otherwise scheduled for the 29th, 30th or 31st day of any particular month that does not have the regularly scheduled day (e.g. - February, April, June, September or November) shall instead be due and payable on the last day of that particular month.

As an alternative to matured unpaid monthly installment amounts accruing interest at the Maximum Rate (or such lesser default rate as may be specified herein), in the event any installment (but not the principal amount due upon Maturity) shall become overdue for a period in excess of ten (10) calendar days, a late payment charge equal to a reasonable amount not to exceed five percent (5%) of the amount of each installment may be charged by the holder hereof for the purpose of defraying the expense incident to handling such delinquent payments. This late charge should be paid only once, but promptly, as to each respective late payment. The provisions of this paragraph shall not limit Payee's right to compel prompt

JNG17\FSBCT\WC4811\i17093Notev2.wpd
March 30, 2017 (1:33pm)

2

INITIAL FOR IDENTIFICATION          NOTE

performance under this Note, or grant an option to Maker to make late payments and the charging of such late fee shall not waive any default under this Note.

It is especially agreed that if an Event of Default be made in any of the payments of principal and/or interest due hereon beyond the notice and cure period in the Loan Agreement or if there is an Event of Default in any of the covenants or provisions set forth in the Loan Agreement of even date by and between Maker and Payee ("Loan Agreement"), or in any Deed of Trust, Security Agreement or other security document given to secure the payment hereof, or should any maker, endorser or guarantor revoke, or dispute the validity of, or liability under this Note or any guaranty of the indebtedness evidenced by this Note, or become insolvent or commit any act of bankruptcy or make an assignment for the benefit of creditors or enter into any type of creditor workout, or authorize the filing or file a voluntary Petition in Bankruptcy or should a receiver of any of their property be appointed, or should involuntary bankruptcy proceedings be filed or threatened against any of said parties, or should there occur commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Maker or by any governmental agency against any collateral securing this Note, including a garnishment of any of Maker's accounts, including deposit accounts, with Payee, then, in any such event, after applicable notice and failure to cure as provided for in the Loan Agreement, at the option of the holder hereof, at any time thereafter, without further notice, the unpaid principal of this Note and all accrued interest shall at once become due and payable and, at the option of Payee, shall bear interest at the rate aforesaid from the date of such default or event. Failure to exercise any of said options shall not constitute a waiver on the part of the holder hereof of the right to exercise the same at any other time. Terms not defined herein are as defined in the Loan Agreement.

For the purposes hereof, the term "Base Rate" shall mean the domestic "Prime Rate" as published in The Wall Street Journal on that day under the section entitled "Money Rates". If this section of The Wall Street Journal reflects more than one rate as being the domestic Prime Rate, then the highest domestic rate shall be the Base Rate. On days when The Wall Street Journal is not published, the Base Rate shall be the Prime Rate stated in the most recently published edition of The Wall Street Journal. In the event that The Wall Street Journal ceases to be published altogether, or ceases to publish the Prime Rate then Payee, its successors or assigns, shall establish and use a new Base Rate disclosed to the Maker which closely approximates the Prime Rate, as defined above; provided, however, that such new Base Rate is reasonably available to and verifiable by the Maker. The rate is used by Payee as a general reference rate of interest, taking into account such factors as Payee may deem appropriate. It is understood that many of Payee's commercial or other loans are priced in relation to such rate, but it is not necessarily the lowest or best rate actually charged to some customers of Payee and that Payee may make various commercial or other loans at rates of interest having no relationship to such rate.

It is further agreed that if Payee seeks to enforce collection on this Note or to realize on any collateral securing this Note, including Payee's hiring an attorney, for the purposes of bringing suit upon or establishing this debt in any manner in any court, or for judicial or non-judicial foreclosure, then in any of said events, Maker, any endorsers and guarantors hereof, promise to pay Payee's or other holder's reasonable attorney's fees and costs of collection, including, but not limited to, pre-foreclosure expenses, environmental report fees, unpaid ad valorem taxes, insurance premiums and appraisal fees, all of which sums shall become a part of the principal hereof.

It is the intention of the parties hereto to comply with applicable usury laws; accordingly, notwithstanding any provision to the contrary in this Note, or in any of the documents securing the payment hereof or otherwise relating hereto, in no event shall this Note or such documents require the payment or permit the collection of interest in excess of the maximum amount permitted by such laws. If any such excess of interest is contracted for, charged or received under this Note or under the terms of the documents

JNG17\FSBCT\WC4811\i17093Notev2.wpd
March 30, 2017 (1:33pm)

3

INITIAL FOR IDENTIFICATION          NOTE

securing the payment hereof, or otherwise relating hereto, or in the event the maturity of the indebtedness evidenced by this Note is accelerated in whole or in part, or in the event that all or any part of the principal or interest of this Note shall be prepaid, so that under any such circumstances the amount of interest contracted for, charged or received under this Note or under any of the instruments securing the payment hereof or otherwise relating hereto, on the amount of principal actually outstanding from time to time under this Note shall exceed the maximum amount of interest permitted by applicable usury laws, then in any such event, (a) the provisions of this paragraph shall govern and control, (b) any such excess which may have been collected shall, at final maturity of said indebtedness, either be applied as a credit against the then unpaid principal amount hereof or refunded to Maker, at Payee's option, and (c) upon such final maturity, the effective rate of interest shall automatically be reduced to the maximum lawful contract rate allowed under the applicable usury laws. Without limiting the foregoing, all calculations as to the rate of interest contracted for, charged or received under this Note or under such other documents which are made for the purposes of determining whether such rate exceeds the maximum lawful contract rate shall be made, to the extent permitted by applicable usury laws, by amortizing, prorating, allocating and spreading, in equal parts, during the period of the full stated term of the loan evidenced hereby, all interest at any time contracted for, charged or received from Maker or otherwise by Payee in connection with such indebtedness. NOTWITHSTANDING any term or provision of this Note to the contrary, Maker confirms to Payee that neither Maker nor its legal counsel, if any, is aware that this Note, or the transaction in connection with which the Note was issued, is or may be usurious in any respect. To induce Payee to make the loan evidenced by this Note, Maker agrees with and covenants to Payee that if at any time Maker believes or discovers that any term or provision of this Note or any action taken by Payee in connection with this Note is or may be in violation of the usury laws or any other applicable law, Maker will immediately give notice to Payee specifying with particularity the nature and extent of any such potential violation of the usury laws or any other applicable law, and afford to Payee a reasonable period (of not less than 60 days) within which to cure same. Maker agrees with and covenants to Payee that in no instance will Maker make any claim, bring any suit, prosecute or otherwise assert any cause of action, claim, counterclaim, or defense in respect of any violation of the usury laws or any other applicable law, unless, as a condition precedent thereto, Maker has given to Payee such notice and afforded to Payee such opportunity to cure as provided in this paragraph.

This Note and the Maximum Rate of nonusurious interest applicable to the loan evidenced hereby shall be governed by the laws of the United States of America and the State of Texas in effect on the date of the loan evidenced hereby, and, to the extent allowed by law, as now or as may hereafter be in effect. Unless changed in accordance with law, the applicable method of calculating the usury ceiling rate under Texas law shall be the weekly ceiling rate from time to time in effect, as provided for in Texas Finance Code Sections 303.002, 303.003 and 303.009; provided however, that the ceiling rate provided for in Texas Finance Code subsection 303.009(d) (which regulates certain open-end account credit agreements) shall not apply to the loan evidenced hereby.

As further security for this Note, Maker grants to Payee a first lien and contractual right of set-off in and to all money and property of Maker now or at any time hereafter coming within the custody or control of the Payee, including (without limitation) all certificates of deposit and other accounts, whether such certificates of deposit and/or accounts have matured or not, and whether the exercise of such right of set-off results in loss of interest or other penalty under the terms of the certificate of deposit or account agreement. It is further agreed that the Payee shall have a first lien on all deposits and other sums at any time credited by or due from the Payee to Maker or any guarantor, as security for the payment of this Note, and Payee, at its option and whether before, upon or after acceleration of the maturity of this Note (however said maturity may be brought about) may without notice and without any liability, hold all or any part of any such deposits or other sums until all amounts owing on this Note have been paid in full, and/or Payee may apply or set-off all or any part of any such deposits or other sums credited by or due from Payee to or against any sums due on this Note in any manner and in any order of preference which the Payee, in its sole discretion, chooses.

INITIAL FOR IDENTIFICATION          NOTE

EXHIBIT NO. 1                                                    EX. 1-004

This includes all accounts Maker holds jointly with someone else and all accounts Maker may open in the future.

The Maker, endorsers and guarantors hereof and all other persons who are or may become liable for all or any part of the obligations represented by this Note shall be considered as principals as to the making of this Note and shall have joint and several liability and except as provided for in the Loan Agreement, the Maker, endorsers and Guarantors hereof severally waive presentment for payment, protest, notice of protest, and of nonpayment, notices of intention to accelerate the maturity and notice of acceleration, as to this Note and as to each, every and all installments hereof, and consent to the renewal or extension of the time of payment hereof and to the release of all or any part of the security described herein or any person liable hereon upon the terms deemed by the holder hereof, in the holder's sole discretion, to be adequate. Any renewal or extension or release of any of such security or person may be made without notice to any of said parties and without affecting their liability.

Maker understands and agrees that (i) Payee's document retention policy may involve the imaging of executed loan documents and other miscellaneous documents, papers, reports and other correspondence, and the destruction of the paper originals, and (ii) the Maker hereby waives any right that Maker may have to claim that the imaged copies of the loan documents, other than this Note, and other miscellaneous documents, papers and other correspondence related thereto are not originals.

The payment of this Note is guaranteed by NATIN PAUL and WORLD CLASS CAPITAL GROUP, LLC. The payment of this Note is secured by a Vendor's Lien reserved and retained in favor of Payee herein in deed from THERIOT FLP PROPERTIES - III, LLC, SANDERS CHILDRENS INVESTMENTS, LLC and SANDERS FLP PROPERTIES - I, LLC to Maker, dated of even date herewith and additionally secured by a Collateral Assignment of Leases and Rents and by a Deed of Trust of even date herewith to T. GERRY GAMBLE, TRUSTEE, covering the following described real property:

14.993 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE SURVEY NO. 20, ABSTRACT NO. 8, IN TRAVIS COUNTY, TEXAS, BEING MORE FULLY DESCRIBED BY METES AND BOUNDS ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES, BEING THE FOLLOWING FOUR TRACTS:

TRACT 1:

4.32 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, BEING THE SAME PROPERTY CONVEYED BY ABEL J. & MARY ANN THERIOT FAMILY LIMITED PARTNERSHIP TO THERIOT FLP PROPERTIES - III, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125121, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

TRACT 2:

5.6839 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, BEING THE SAME PROPERTY AS TRACT ONE CONVEYED BY SASHA THERIOT SANDERS, TEAL THERIOT SANDERS AND ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 210125125, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

TRACT 3:

2.620 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, BEING THE SAME PROPERTY AS TRACT TWO CONVEYED BY SASHA THERIOT SANDERS, TEAL THERIOT SANDERS AND ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125125, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

TRACT 4:

2.32 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, AND BEING THE SAME PROPERTY CONVEYED BY SUZANNE MARIE SANDERS AND CURTIS NOLEN SANDERS TO SANDERS FLP PROPERTIES -I, LLC, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125122, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS..

**GOVERNING LAW AND VENUE**. THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS AND THE APPLICABLE LAWS OF THE UNITED STATES OF AMERICA. THIS NOTE IS DEEMED EXECUTED IN AND IS PERFORMABLE IN BELL COUNTY, TEXAS. Any action or proceeding under or in connection with this Note against Maker or any other party ever liable for payment of any sums of money payable on this Note may be brought in any state court located in Bell County, Texas, or in the federal court in Bell County, Texas. Maker and each such other party hereby irrevocably: (i) submits to the nonexclusive jurisdiction of such courts, and (ii) waives any objection it may now or hereafter have as to the venue of any such action or proceeding brought in such court or that such court is an inconvenient forum.

**DEFAULT INTEREST**. If an Event of Default exists as defined in the Loan Agreement, the outstanding principal balance of this Note shall, at the option of the Payee, bear interest at a rate (the "Default Rate") as follows: (i) in the event of a monetary default, interest on the loan shall accrue at a rate equal to the lesser of: (a) eighteen percent (18%) per annum, and (b) the maximum lawful rate permitted by applicable usury law (the "Maximum Rate"); and (ii) in the event of a non-monetary default, interest on the loan shall accrue at a rate equal to the lesser of (y) five percent (5%) over the contractual rate of interest under the loan documents, and (z) the maximum lawful rate. If interest has accrued at the Default Rate during any period, the difference between such accrued interest and interest which would have accrued at the Note Rate during such period shall be payable on demand. If a court of competent jurisdiction determines that any interest charged has exceeded the maximum rate allowed by law, the excess of the amounts collected over the legal rate of interest will be applied to the indebtedness as a principal prepayment without premium, retroactively, as of the date of receipt, or returned to the borrower if the indebtedness has been fully paid.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in this Note, Maker further covenants and agrees with Payee as follows:

(1)     In the event an interest in any of the Property is foreclosed upon pursuant to a judicial or non-judicial foreclosure sale, Maker agrees as follows. Notwithstanding the provisions of Sections 51.003, 51.004, and 51.005 of the Texas Property Code (as the same may be amended from time to time), and to the extent permitted by law, Maker agrees that Payee shall be entitled to seek a deficiency judgment from Maker and any other party obligated on this Note equal to the difference between the amount owing on this Note and the amount for which the Property was sold pursuant to judicial or non-judicial foreclosure sale. Maker

expressly recognizes that this Section constitutes a waiver of the above-cited provisions of the Texas Property Code which would otherwise permit Maker and other persons against whom recovery of deficiencies is sought or any guarantor independently (even absent the initiation of deficiency proceedings against them) to present competent evidence of the fair market value of the Property as of the date of the foreclosure sale and offset against any deficiency the amount by which the foreclosure sale price is determined to be less than such fair market value. Maker further recognizes and agrees that this waiver creates an irrebuttable presumption that the foreclosure sale price is equal to the fair market value of the Property for purposes of calculating deficiencies owed by Maker, any guarantor, and others against whom recovery of a deficiency is sought.

(2)     Alternatively, in the event the waiver provided for in Subsection (a) above is determined by a court of competent jurisdiction to be unenforceable, the following shall be the basis for the finder of fact's determination of the fair market value of the Property as of the date of the foreclosure sale in proceedings governed by Sections 51.003, 51.004 and 51.005 of the Texas Property Code (as amended from time to time): (i) the Property shall be valued in an "as is" condition as of the date of the foreclosure sale, without any assumption or expectation that the Property will be repaired or improved in any manner before a resale of the Property after foreclosure; (ii) the valuation shall be based upon an assumption that the foreclosure purchaser desires a resale of the Property for cash promptly (but no later than twelve (12) months) following the foreclosure sale; (iii) all reasonable closing costs customarily borne by the seller in commercial real estate transactions should be deducted from the gross fair market value of the Property, including, without limitation, brokerage commissions, title insurance, a survey of the Property, tax prorations, attorneys' fees, and marketing costs; (iv) the gross fair market value of the Property shall be further discounted to account for any estimated holding costs associated with maintaining the Property pending sale, including, without limitation, utilities expenses, Property management fees, taxes and assessments (to the extent not accounted for in (iii) above), and other maintenance, operational and ownership expenses; and (v) any expert opinion testimony given or considered in connection with a determination of the fair market value of the Property must be given by persons having at least ten (10) years experience in appraising Property similar to the Property and who have conducted and prepared a complete written appraisal of the Property taking into consideration the factor set forth above.

WC 4811 SOUTH CONGRESS, LLC, a
Delaware limited liability company

By:     World Class Holdings III, LLC, a
        Delaware limited liability company,
        Manager

        By: _____
        Natin Paul, President

METES AND BOUNDS DESCRIPTION OF A SURVEY OF 14.993 ACRES OF LAND, A PORTION OF THE ISAAC DECKER LEAGUE SURVEY NO. 20, ABSTRACT NO. 8, IN THE CITY OF AUSTIN, TRAVIS COUNTY, TEXAS, SAID 14.993 ACRES OF LAND BEING ALL OF THAT CALLED 4.32 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, AS DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM ABEL J. & MARY ANN THERIOT FAMILY LIMITED PARTNERSHIP TO THERIOT FLP PROPERTIES – III OF RECORD IN DOCUMENT NO. 2010125121, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT CALLED 5.6839 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, DESIGNATED AS TRACT 1 AND DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM SASHA THERIOT SANDERS, TEAL THERIOT SANDERS AND ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC OF RECORD IN DOCUMENT NO. 2010125125, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT CALLED 2.62 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, DESIGNATED AS TRACT 2 AND DESCRIBED IN SAID SPECIAL WARRANTY DEED TO SANDERS CHILDREN INVESTMENTS, LLC OF RECORD IN DOCUMENT NO. 2010125125, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT 2.32 ACRES OF LAND, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, AS DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM SUZANNE MARIE SANDERS AND HER HUSBAND CURTIS NOLEN SANDERS TO SANDERS FLP PROPERTIES – I, LLC OF RECORD IN DOCUMENT NO. 2010125122, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, SAID 14.993 ACRES OF LAND, AS SURVEYED BY BOWMAN CONSULTING GROUP, LTD. AND SHOWN ON BOWMAN PLAN NO. 3562, BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

**BEGINNING** at a 5/8" iron rod found in the east right-of-way line of South Congress Avenue at the most westerly northwest corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and at the southwest corner of that 0.780 of one acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Cash Warranty Deed to MMGG Enterprises, L.P. In Document No. 2004036130, Official Public Records of Travis County, Texas, said 5/8" iron rod found being a common corner of the two parcels described in that Agreement of record in Document No. 2005099083, Official Public Records of Travis County, Texas, said 5/8" iron rod found being the **POINT OF BEGINNING** and most westerly northwest corner of the tract described herein, and from which 5/8" iron rod found, a 1/2" iron rod with plastic cap stamped "ALL POINTS" found at the southwest corner of that 0.066 of one acre tract described in a Street Deed from MMGG Enterprises, LTD., to the City of Austin of records in Document No. 2005102391, Official Public Records of Travis County, Texas, bears
N 63°59'01"W a distance of 0.67 feet;

**THENCE** S 61°50'30" E, with the most westerly north line of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the south line of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the agreed line referenced in the said Agreement of record in Document No. 2005099083 a distance of 239.20 feet to a 1/2" steel pin found at a reentrant corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the south east corner of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the corner referenced in said Agreement, for a reentrant corner of the tract described herein;

EXHIBIT H
PAGE 1 OF 4 PAGES

THENCE N 23°58'30" E, with the most northerly west line of the said Theriot FLP Properties – III, LLC 4.32 acre tract and with the east line of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the line referenced in the said Agreement, at a distance of 4.94 passing a 1/2" steel pin found 0.17 feet east of line, said 1/2" steel pin found being the southeast corner of that 0.708 of one acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Special Warranty Deed With Vendor's Lien to Area 51 Enterprises LLC in Document No.

2015028497, Official Public Records of Travis County, Texas, in all 149.96 feet to a 1/2" steel pin found in the south line of that 4.056 acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Special Warranty Deed to ID Bel Air Partners, LP of record in Document No. 2005017785, Official Public Records of Travis County, Texas, and being the most northerly northwest corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract, and the northeast corner of the said MMGG Enterprises, L.P. 0.780 of one acre tract and the northeast corner of the said Area 51 Enterprises LLC 0.708 of one acre tract, and being also the corner referenced in said Agreement, for the most northerly northwest corner of the tract described herein;

THENCE S 63°24'52" E, with the most easterly north line of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the south line of the said ID Bel Air Partners, LP 4.056 acre tract, a distance of 383.05 feet to a 1/2" steel pin found in the west line of Lot 2A, Block V, A Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, of record in Plat Book 51, Page 20, Plat Records of Travis County, Texas, and being also the southeast corner of the said ID Bel Air Partners, LP 4.056 acre tract and the northeast corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract, for the northeast corner of the tract described herein;

THENCE S 26°47'44" W, with the west line of said Lot 2A, Block V, A Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, and with the east line of the said Theriot FLP Properties – III, LLC 4.32 acre tract, a distance of 58.95 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found at the southwest corner of said Lot 2A, Block V and the northwest corner of Lot 1A, Block V, of said Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, for an angle point in the east line of the tract described herein;

THENCE S 26°41'23" W, with the west line of said Lot 1A, Block V and the west line of Lot 4, Block V, Greenwood Hills, Section Five, of record in Plat Book 42, Page 10, Plat Records of Travis County, Texas, and being also with the west line of Liverpool Drive as shown on said map or plat of Greenwood Hills, Section Five and being also with the east line of the said Theriot FLP Properties – III, LLC 4.32 acre tract, a distance of 237.88 feet to a 1/2" steel pin found at the southeast corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the northeast corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres of land, for an angle point in the east line of the tract described herein;

THENCE S 26°31'34" W, with the west line of Liverpool Drive and the west line of Lot 23, Block W, of said Greenwood Hills Section Five and being also with the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 152.96 feet to a 5/8" steel pin found at the southwest corner of said Lot 23, Block W and the northwest corner of Lot 16, Block W, of said Greenwood Hills Section Five, for an angle point in the east line of the tract described herein;

THENCE S 27°38'57" W, with the west line of said Lot 16, Block W, of said Greenwood Hills Section Five and being also with the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 40.08 feet to a 1/2" steel pin found at the southwest corner of said Lot 16, Block W and the northwest corner of Lot 15, Block W, of said Greenwood Hills Section Five, for an angle point in the east line of the tract described herein;



EXHIBIT A
PAGE 2 OF 4 PAGES

THENCE S 26°33'27" W, with the west line of said Lot 15, Block W and the west line of Lots 14, 13, 12, 11 and 10, Block W, of said Greenwood Hills Section Five and the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 473.14 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found in the west line of said Lot 10, Block W, Greenwood Hills Section Five at the southeast corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, for a southeast corner of the tract described herein;

THENCE N 34°50'27" W, with the southwest or west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 11.89 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found in the southwest or west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres and at the northeast corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, for a reentrant corner of the tract described herein;

THENCE S 27°22'12" W, with the east line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, at a distance of 25.77 feet, more or less, passing the most easterly northwest corner of that 2.002 acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Warranty Deed with Vendor's Lien of record in Document No. 2011133868, Official Public Records of Travis County, Texas, in all a distance of 261.28 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found at the southeast corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and a reentrant of the said Jim O'Brien 2.002 acre tract and the most southerly southeast corner of the tract described herein;

THENCE N 60°09'26" W, with the most westerly north line of the said Jim O'Brien 2.002 acre tract and with the south line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, a distance of 199.03 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found at an angle point in the most westerly north line of the said Jim O'Brien 2.002 acre tract and an angle point in the south line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres;

THENCE N 67°47'26" W, with the most westerly south line of the said Jim O'Brien 2.002 acre tract and with the south line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, a distance of 58.62 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found in the east line of Wasson Road (old State Highway No. 29) at the most westerly northwest corner of the said Jim O'Brien 2.002 of one acre tract and the southwest corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, for the most southerly southwest corner of the tract described herein;

THENCE with the east line of Wasson Road (old State Highway No. 29) and the west line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and with the west line of the said Sanders FLP Properties - 1, LLC 2.32 acre tract, courses numbered 1 through 5 inclusive as follows:
1. N 24°25'26" W, a distance of 42.22 feet to 3/4" iron pipe found;
2. N 14°47'26" W, a distance of 70.00 feet to a drill hole in top of a concrete curb found;
3. N 19°56'26" W, at a distance of 154.55 feet passing the northwest corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and the southwest corner of the said Sanders FLP Properties - 1, LLC 2.32 acre tract, in all a distance of 254.00 feet to a calculated point in a multi-trunk Pecan tree;
4. N 07°57'26" W, a distance of 138.98 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found, and
5. N 04°30'34" E, a distance of 36.10 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found at the intersection of the east line of Wasson Road and the east line of Congress Avenue;



EXHIBIT A
PAGE 3 OF 4 PAGES

**THENCE** N 27°40'11" E, with the east right-of-way of South Congress Avenue and the west line of the said Sanders FLP Properties - 1, LLC 2.32 acre tract and the west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, and being also with the west line of the said Theriot FLP Properties – III, LLC 4.32 acre tract, at a distance of 271.24 feet passing the northwest corner of the said Sanders FLP Properties - 1, LLC 2.32 acre tract and the southwest corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, and at a distance of 386.42 feet passing a northwest corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, and a southwest corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract, in all 666.83 feet to the **POINT OF BEGINNING** of the tract described herein containing 14.993 acres of land.

Bearing basis is Grid North, NAD 83, Texas Coordinate System, Central Zone.

Plan #: 3562

EXHIBIT ___
PAGE ___ OF ___ PAGES

ALLONGE
($4,745,000.00)


## ALLONGE

Reference is hereby made to that certain promissory note executed by WC 4811 South Congress, LLC, dated March 31, 2017, First State Bank, Central Texas, a state banking association in the original principal amount of $4,745,000.00, bearing loan number 11364000. The undersigned BancorpSouth Bank is the owner and holder of said note as successor by merger to First State Bank, Central Texas, a Texas state banking association.

It is intended that this Allonge be attached to and become a part of said note and that the endorsement below shall be effective to assign said note as if set forth on the reverse of the original of said note.

PAY TO THE ORDER OF: 4811 SoCo, L.P., WITHOUT RECOURSE.


Dated: August 21, 2020


BANCORPSOUTH BANK

By:

Name: _Billy T. Babineaux, Jr._

Title: _SVP_

EXHIBIT NO. 1                    EX. 1-012

# LOAN AGREEMENT

THIS LOAN AGREEMENT ("Agreement") is made and delivered as of March **31**, 2017 (the "Effective Date"), by and between WC 4811 SOUTH CONGRESS, LLC ("Borrower") and FIRST STATE BANK CENTRAL TEXAS ("Lender"). For and in consideration of the mutual promises herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Lender agree as follows:

## ARTICLE I. DEFINITIONS

1.01    Defined Terms. In addition to terms defined elsewhere in this Agreement, the following terms, as used in this Agreement, shall have the meanings set forth below. The singular number shall be deemed to include the plural, the masculine gender shall include the feminine and neuter genders, and vice versa.

"Collateral" shall mean, as the context dictates, the Real Property and the Personal Property given, collaterally assigned, pledged or granted or to be given to secure the Indebtedness and all of the respective owner(s) rights, title and interest in and to the same.

"Default" shall mean any condition or event which, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

"GAAP" shall mean generally accepted accounting principles consistently applied.

"Grantor(s)" shall mean any Loan Party who shall own an interest in any property that is to be subject to a Lien which secures any of the Indebtedness.

"Guarantor(s)" shall mean, as the context dictates, any person(s) (other than the Borrower) who shall, at any time, guarantee or otherwise be or become obligated for the repayment or the performance of all or any part of the Indebtedness.

"Improvements" shall mean all existing and future buildings, structures and other improvements made to the Land, along with all fixtures and permanently installed machinery and equipment on the Land and personal property owned by a Loan Party and used to maintain or service the improvements on the Land.

"Indebtedness" shall mean all loans, advances, indebtedness, obligations and liabilities of Borrower to Lender under any Loan Document, together with all other indebtedness, obligations and liabilities whatsoever of Borrower to Lender, whether matured or unmatured, liquidated or unliquidated, direct or indirect, absolute or contingent, joint or several, due or to become due, now existing or hereafter arising, voluntary or involuntary, known or unknown, or originally payable to Lender or to a third party and subsequently acquired by Lender including, without limitation, any: late charges; loan fees or charges; overdraft indebtedness; costs incurred by Lender in establishing, determining, continuing or defending the validity or priority of any Lien or in pursuing any of its rights or remedies under any Loan Document or in connection with any proceeding involving Lender as a

result of any financial accommodation to Borrower; debts, obligations and liabilities for which Borrower would otherwise be liable to the Lender were it not for the invalidity or enforceability of them by reason of any Bankruptcy, insolvency or other law or for any other reason; and reasonable costs and expenses of attorneys and paralegals, whether any suit or other action is instituted, and to court costs if suit or action is instituted, and whether any such fees, costs or expenses are incurred at the trial court level or on appeal, in Bankruptcy, in administrative proceedings, in probate proceedings or otherwise; provided, however, that the term Indebtedness shall not include any consumer loan to the extent treatment of such loan as part of the Indebtedness would violate any law, rule or regulation.

"**Land**" shall mean the following described real property:

14.993 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE SURVEY NO. 20, ABSTRACT NO. 8, IN TRAVIS COUNTY, TEXAS, BEING MORE FULLY DESCRIBED BY METES AND BOUNDS ON **EXHIBIT "A"** ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES, BEING THE FOLLOWING FOUR TRACTS:

### TRACT 1:

4.32 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, BEING THE SAME PROPERTY CONVEYED BY ABEL J. & MARY ANN THERIOT FAMILY LIMITED PARTNERSHIP TO THERIOT FLP PROPERTIES - III, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125121, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

### TRACT 2:

5.6839 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, BEING THE SAME PROPERTY AS TRACT ONE CONVEYED BY SASHA THERIOT SANDERS, TEAL THERIOT SANDERS AND ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 210125125, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

### TRACT 3:

2.620 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, BEING THE SAME PROPERTY AS TRACT TWO CONVEYED BY SASHA THERIOT SANDERS, TEAL THERIOT SANDERS AND ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125125, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

TRACT 4:

2.32 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, AND BEING THE SAME PROPERTY CONVEYED BY SUZANNE MARIE SANDERS AND CURTIS NOLEN SANDERS TO SANDERS FLP PROPERTIES -I, LLC, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125122, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS..

"**Lease**" shall mean, individually and collectively, each lease that encumbers the Land by and between each respective tenant thereto as tenant (each and collectively the "Tenant") and Borrower as landlord.

"**Lien**" shall mean any valid and enforceable interest in any property, whether real, personal or mixed, securing an indebtedness, obligation or liability owed to or claimed by any person other than the owner of such property, whether such indebtedness is based on the common law or any statute or contract.

"**Loan**" shall mean, in general, that portion of the Indebtedness evidenced by the Note and the Loan Documents.

"**Loan Documents**" shall mean collectively, this Agreement, the Note and any other promissory notes evidencing Indebtedness, any approved subordination agreement, any reimbursement agreement or other documentation executed in connection with any letter of credit, and any other documents, instruments or agreements evidencing, governing, securing, guaranteeing or otherwise relating to or executed pursuant to or in connection with any of the Indebtedness or any Loan Document (whether executed and delivered prior to, concurrently with or subsequent to this Agreement), as such documents may have been or may hereafter be amended from time to time.

"**Loan Party**" shall mean Borrower and each other person who shall be liable for the payment or performance of any of the Indebtedness including any Guarantors, if any, and any Grantor who shall own any property that is subject to a Lien which secures any of the Indebtedness.

"**Material Adverse Effect**" shall mean any act, event, condition or circumstance which could materially and adversely affect the business, operations, condition (financial or otherwise), performance or assets of any Loan Party, the ability of any Loan Party to perform its obligations under any Loan Document to which it is a party or by which it is bound or the enforceability of any Loan Document.

"**Maximum Legal Rate**" shall mean the maximum rate of nonusurious interest per annum permitted to be paid by Borrower or, if applicable, another Loan Party or received by Lender with respect to the applicable portion of the Indebtedness from time to time under applicable state or federal law as now or as may be hereafter in effect, including Chapter 1 D of Title 79 Vernon's Texas Civil Statutes (and as the same may be incorporated by reference in other

EXHIBIT NO. 2                    EX. 2-003

Texas statutes), but otherwise without limitation, that rate based upon the "weekly ceiling rate" (as defined in §303 of the Texas Finance Code).

**"Note"** shall mean the Promissory Note of even date in the principal sum of FOUR MILLION SEVEN HUNDRED FORTY-FIVE THOUSAND AND NO/100 DOLLARS ($4,745,000.00) executed by Borrower and payable to the order of Lender and all modifications, renewals, rearrangements, extensions and increases thereof.

**"Permitted Encumbrances"** shall mean: (a) Liens in favor of the Lender; (b) Liens for taxes, assessments or other governmental charges which are not yet due and payable, incurred in the ordinary course of business and for which no interest, late charge or penalty is attaching or which are being contested in good faith by appropriate proceedings and, if requested by Lender, bonded in an amount and manner satisfactory to Lender; (c) Liens, not delinquent, arising in the ordinary course of business and created by statute in connection with worker's compensation, unemployment insurance, social security and similar statutory obligations; (d) Liens of mechanics, materialmen, carriers, warehousemen or other like statutory or common law Liens securing obligations incurred in good faith in the ordinary course of business without violation of any Loan Document that are not yet due and payable; and (e) Liens existing as of the date hereof which have been specifically disclosed in writing to Lender and have been approved by Lender in writing.

**"Person"** or **"person"** shall mean any individual, corporation, partnership, joint venture, limited liability company, association, trust, estate, unincorporated association, joint stock company, government, municipality, political subdivision or agency, or other entity.

**"Personal Property"** shall mean all machinery, equipment, fixtures and other tangible personal property or intangible personal property given or to be given by a Loan Party to secure the Indebtedness in which Lender has or is to have a security interest or rights.

**"Real Property"** shall mean, the Land and the Improvements given, pledged or granted or to be pledged to secure the Indebtedness.

**"Required Accounting Method"** shall mean, with respect to the financial covenants contained herein, cash basis accounting principles, consistently applied for any individual Guarantor and GAAP (accrued basis) for each other Loan Party.

1.02   Accounting Terms. All accounting terms not specifically defined in this Agreement shall be determined and construed in accordance with the Required Accounting Method.

## ARTICLE II. FEES AND MAXIMUM INTEREST RATE

2.01   Fees. Upon Borrower's execution hereof, Borrower shall pay to Lender an origination fee in the amount of $47,450.00, as well as Lender's out-of-pocket costs, expenses and advances expended towards the closing including reasonable attorney fees and title company fees.

2.02   Maximum Interest Rate. At no time shall any interest rate in respect of any Indebtedness, exceed the Maximum Legal Rate. In the event that any interest is charged or otherwise

EXHIBIT NO. 2                    EX. 2-004

received by Lender in excess of the Maximum Legal Rate, Borrower hereby acknowledges and agrees that any such excess interest shall be the result of an accidental and bona fide error, and any such excess shall be deemed to have been payment of principal, and not of interest, and shall be applied, first, to reduce the principal Indebtedness then outstanding, second, any remaining excess, if any, shall be applied to reduce any other Indebtedness, and third, any remaining excess, if any, shall be returned to Borrower. Notwithstanding the foregoing or anything to the contrary contained in this Agreement or any other Loan Document, but subject to all limitations contained in this Section, if at any time any rate of interest applicable to any portion of the Indebtedness is computed on the basis of the Maximum Legal Rate, any subsequent reduction in the rate of interest that would otherwise be applicable shall not reduce such applicable interest rate thereafter payable below the Maximum Legal Rate until the aggregate amount of interest accrued equals the total amount of interest that would have accrued if interest had, at all times, been computed solely on the basis of such applicable interest rate. This Section shall control all agreements between the Borrower and the Lender.

## ARTICLE III. REPRESENTATIONS AND WARRANTIES

Borrower represents and warrants, and such representations and warranties shall be deemed to be continuing representations and warranties during the entire life of this Agreement, and so long as Lender shall have any commitment or obligation to make any loans or issue any letter of credit and so long as any Indebtedness remains unpaid and outstanding under any Loan Document, as follows:

3.01    Due Authorization. Each Loan Party has all requisite power and authority to execute, deliver and perform its obligations under each Loan Document to which it is a party or is otherwise bound, all of which have been duly authorized by all necessary action, and are not in contravention of law or the terms of any Loan Party's organizational or other governing documents.

3.02    Title to Property. Each Loan Party has good title to all property and assets purported to be owned by it, including those assets identified on the financial statements most recently delivered by Borrower to Lender.

3.03    Encumbrances. There are no security interests or other Liens or encumbrances on, and no financing statements on file with respect to, any of the Collateral of Borrower, except for Permitted Encumbrances.

3.04    Non-contravention. The execution, delivery and performance by each Loan Party of the Loan Documents to which such Loan Party is a party or otherwise bound, are not in contravention of the terms of any indenture, agreement or undertaking to which any such Loan Party is a party or by which it is bound, except to the extent that such terms have been waived or that failure to comply with any such terms would not have a Material Adverse Effect.

3.05    Actions, Suits, Litigation or Proceedings. There are no actions, suits, litigation or proceedings, at law or in equity, and no proceedings before any arbitrator or by or before any governmental authority, pending, or, to the best knowledge of Borrower, threatened

against or affecting any Loan Party, which, if adversely determined, could materially impair the right of any Loan Party to carry on its business substantially as now conducted or could have a Material Adverse Effect. No Loan Party is under investigation by, or is operating under any restrictions imposed by, any governmental authority.

3.06    Bankruptcy. No Loan Party is involved as a debtor or obligor in any bankruptcy, reorganization, insolvency, readjustment of debt, dissolution or litigation proceeding, and to the best knowledge of Borrower, no such proceeding is contemplated by or threatened against any Loan Party.

3.07    Accuracy of Information. All financial statements previously furnished to Lender have been prepared in accordance with the Required Accounting Method and fairly present the financial condition of Borrower and, the results of Borrower's operations as of the dates and for the periods covered thereby; and since the date(s) of said financial statements, there has been no material adverse change in the financial condition of Borrower or any other person covered by such financial statements. Each Loan Party is solvent, able to pay its debts as they mature, has capital sufficient to carry on its business and has assets the fair market value of which exceed its liabilities, and no Loan Party will be rendered insolvent, under-capitalized or unable to pay debts generally as they become due by the execution or performance of any Loan Document to which it is a party or by which it is otherwise bound.

3.08    Enforceability of Agreement and Loan Documents. Each Loan Document has been duly executed and delivered by duly authorized officer(s) or other representative(s) of each Loan Party, and constitutes the valid and binding obligations of each such respective executing Loan Party, enforceable in accordance with their respective terms, except to the extent that enforcement thereof may be limited by applicable bankruptcy, reorganization, insolvency, moratorium or similar laws affecting the enforcement of creditors' rights generally at the time in effect.

### ARTICLE IV.  GENERAL NOTE TERMS AND ADVANCE REQUIREMENTS

4.01    Permitted Use. Lender and Borrower agree that the proceeds of the Note are to be used for the purpose of the purchase of the Real Property (the "Permitted Use").

4.02    Deed of Trust. The Note is primarily secured by a first lien Deed of Trust ("Deed of Trust") on the Real Property.

4.03    Additional Collateral. The Note shall be additionally secured by the following collateral:

    A.    Collateral Assignment of Leases and Rents with respect to the Real Property.

4.04    Disbursement of Note Proceeds. The proceeds of the Note may be disbursed for the Permitted Use in one or more installments as provided for herein or in the Note.

4.05    Limitation on Note Funding. Lender shall lend to Borrower under the Note such amounts as Borrower shall request up to, but not exceeding the lesser of (a) 65% of the appraised value of the Real Property, and (b) $4,745,000.00. Borrower shall execute and deliver to

Lender the Note to evidence the Loan. Payment of the Note shall be secured by the Deed of Trust and the liens, security interest and collateral assignments created or evidenced by the other Loan Documents. Lender's commitment is not revolving in nature and any amount paid hereunder which reduces the outstanding unpaid principal amount of the Loan may not be re-borrowed.

4.06   **Legal Lending Limit.  Any provision in the Loan Documents to the contrary notwithstanding, Lender shall have no obligation to make any advance under the Note or under any of the other Loan Documents if, as a result of such advance, Lender would be in violation of any applicable federal or state statute, law, regulation, or interpretation thereof, whether effective or prospective, regarding lending limits imposed upon Lender, including but not limited to the Garn-St. Germain Depository Institutions Act of 1982, the Federal Reserve Act, the Texas Finance Code and applicable interpretive letters issued by the Office of the Comptroller of the Currency, the Federal Deposit Insurance Corporation and or the Texas Department of Banking.**

4.07   Conditions to Lender's Obligations. Notwithstanding anything contained to the contrary in the Note, this Agreement or in any of the other Loan Documents, Lender shall have no liability or obligation under this Agreement, the Note, or any of the other Loan Documents until the following matters are received, reviewed by Lender and completed or resolved to the satisfaction of Lender:

    A.   Evidence that Borrower is in compliance with all of the conditions of the loan commitment letter dated March 2, 2017 by and between Borrower and Lender.

    B.   Lender shall have received originals of the Policies or Certificates of Insurance for each of the Required Insurance Policies as set forth in Article VI hereof.

    C.   Lender shall have received fully executed and complete Loan Documents.

    D.   Receipt of one or more fully executed Participation Agreement(s) with such third party lender(s) as Lender deems necessary or advisable.

    E.   Lender shall have received an appraisal ("Appraisal") of the Land and Improvements valued on an "as completed" basis reflecting a loan to value ratio of less than or equal to 65%.

    F.   Lender shall have received an Environmental Site Assessment report on the Real Property in form and content satisfactory to Lender.

In the event that Lender does advance funds prior to the above conditions being met, no such event of funding shall be a waiver by Lender of Borrower's obligations to meet the conditions set forth above as a condition to any subsequent advance of Loan proceeds, or an assumption or occurrence of any further liability or obligation by Lender under this Agreement, the Note, or any of the other Loan Documents until the said above matters are received, reviewed by Lender and completed or resolved to the satisfaction of Lender.

## ARTICLE V.  AFFIRMATIVE COVENANTS

Borrower covenants and agrees that, until all instruments and agreements evidencing each and every loan, letter of credit and other financial accommodation by the Lender to the Borrower or any Loan Party are fully discharged and terminated, and thereafter, so long as any Indebtedness remains outstanding, it will, and, as applicable, it will cause each Loan Party who is within its control or under common control to:

5.01    <u>Preservation of Existence, Payment of Taxes</u>.  Preserve and maintain its existence and preserve and maintain such of its rights, licenses, permits, franchise agreements, branding agreements and privileges as are material to the business and operations conducted by it; qualify and remain qualified to do business in each jurisdiction in which such qualification is material to its business and operations or ownership of its properties, continue to conduct and operate its business substantially as conducted and operated during the present and preceding calendar year; at all times maintain, preserve and protect all of its property and keep the same in good repair, working order and condition; and from time to time make, or cause to be made, all needed and proper repairs, renewals, replacements, betterments and improvements thereto. File, on or before their respective due dates, all federal, state, local and foreign tax returns which are required to be filed, or obtain extensions for filing such tax returns, and pay all taxes which have become due pursuant to those returns or pursuant to any assessments received by any such party, as the case may be, except to the extent such tax payments are being actively and diligently contested in good faith by appropriate proceedings and, if requested by Lender, have been bonded or reserved in an amount and manner satisfactory to Lender.

5.02    <u>Keeping of Books</u>.  Keep proper books of record and account in which full and correct entries shall be made of all of its financial transactions and its assets and businesses so as to permit the presentation of financial statements prepared in accordance with the Required Accounting Method; and permit Lender, or its representatives, at reasonable times and intervals upon reasonable advance notice on a confidential basis, at Borrower's cost and expense, to  examine its books and records and to discuss its financial matters with its officers and independent certified public accountants.

5.03    <u>Reporting Requirements</u>.  Furnish to Lender, or cause to be furnished to Lender, the financial statements and reports of each applicable Loan Party as provided for in that certain Agreement to Provide Financial Statements of even date by and among Lender and each applicable Loan Party.

5.04    <u>Further Assurances; Financing Statements</u>. Furnish Lender, at Borrower's cost and expense, upon Lender's request and in form satisfactory to Lender (and execute and deliver or cause to be executed and delivered), such additional pledges, assignments, mortgages, Lien instruments or other security instruments, consents, acknowledgments, subordinations, financing statements and other documents pertaining to any or all of the property and rights which may now or hereafter secure or be intended as security for any portion of the Indebtedness as Lender may require to effectuate more fully the purposes of any Loan Document.

EXHIBIT NO. 2                                                    EX. 2-008

5.05   Applicable Law and Environmental Covenants. Comply with all applicable laws, rules, regulations, orders decrees and directives of every governmental or quasi-governmental authority pertaining to hazardous waste, hazardous substances and other hazardous, toxic or dangerous materials ("Hazardous Material") including those governing the use, generation, manufacture, storage, disposal or treatment of same including but not limited to CERCLA, RCRA, SARA, the federal Clean Water Act and the Texas Water Code and those otherwise intended to regulate or improve health, safety or the environment and or relating to the release or threatened release of hazardous waste or any hazardous substance ("Environmental Laws"), and maintain all permits, licenses and approvals required under applicable Environmental Laws. Promptly notify Lender, in writing, as soon as Borrower becomes aware of any condition or circumstance which makes any of the environmental representations or warranties set forth in this Agreement or in the Loan Documents incomplete, incorrect or inaccurate in any material respect as of any date. Promptly notify Lender, in writing, as soon as Borrower becomes aware of any condition or circumstance which may indicate a violation of any Environmental Law; and promptly provide to Lender, immediately upon receipt thereof, copies of any material correspondence, notice, pleading, citation, indictment, complaint, order, decree, or other document from any source asserting or alleging a violation of any Environmental Law by Borrower, or of any circumstance or condition which requires or may require, a financial contribution by Borrower or a clean-up, removal, remedial action or other response by or on behalf of Borrower under applicable Environmental Law, or which seeks damages or civil, criminal or punitive penalties from Borrower or any violation or alleged violation of any Environmental Law. Provide to Lender a Phase 1 environmental site assessment (and if recommended by the Phase 1 report, a Phase 2 environmental review each performed in accordance with then existing industry standards) in the event that Lender has reason to believe that there may have been a release or a violation of any of the Environmental Laws on any Real Property as collateral for the Note, all at Borrower's sole cost and expense. **Borrower hereby agrees to indemnify, defend and hold Lender, and any of Lender's past, present and future officers, directors, shareholders, employees, representatives and consultants, harmless from any and all claims, losses, damages, suits, penalties, costs, liabilities, obligations and out-of-pocket expenses (including, without limitation, reasonable legal expenses and attorneys' fees) incurred or arising out of any claim, loss or damage of any property, injuries to or death of any persons, contamination of or adverse effects on the environment, or other violation of any applicable Environmental Law, in any case, caused by Borrower or in any way related to any property owned or operated by Borrower or due to any acts of Borrower or any of its officers, directors, shareholders, employees, consultants and/or representatives INCLUDING ANY CLAIMS, LOSSES, DAMAGES, SUITS, PENALTIES, COSTS, LIABILITIES, OBLIGATIONS OR EXPENSES, RESULTING FROM LENDER'S OWN NEGLIGENCE; provided however, that the foregoing indemnification shall not be applicable, and Borrower shall not be liable for any such claims, losses, damages, suits, penalties, costs, liabilities, obligations or expenses, to the extent (but only to the extent) the same arise or result from any GROSS NEGLIGENCE OR WILLFUL MISCONDUCT of Lender or any of its agents or employees.** The indemnities from Borrower contained herein shall survive the termination of this Agreement and the payment of the Note but shall terminate with respect to any claims arising out of any occurrences after Borrower no longer owns the Property due to Lender's foreclosure. The terms "hazardous waste", "hazardous substance",

EXHIBIT NO. 2                                            EX. 2-009

"disposal", "release", and "threatened release", as used in this Agreement, shall have the same meanings as set forth in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 49 U.S.C. Section 6901, et seq. ("RCRA"), or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. The terms "hazardous waste" and "hazardous substance" shall also include, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

5.06    Governmental and Other Approvals.  Apply for, obtain and/or maintain in effect, as applicable, all authorizations, consents, approvals, licenses, qualifications, exemptions, filings, declarations and registrations (whether with any court, governmental agency, regulatory authority, securities exchange or otherwise) which are necessary in connection with the execution, delivery and/or performance by any Loan Party of any Loan Document to which it is a party.

5.07    Lease.  Take all such actions as are commercially reasonable to maintain each Lease in full force and effect. Lender shall have the right, but no obligation, to cure any events of default by Borrower under the Lease in order to protect the Lease rights as collateral for Lender. Any such monetary amount as may be advanced by Lender may come from any then unadvanced portion of the Note, or may be advanced from Lender's own funds, which in either event, shall be deemed as a protective advance by Lender which shall be part of the Indebtedness evidenced by the Note and secured by the Loan Documents.

## ARTICLE VI.  INSURANCE

6.01    Insurance.

A.      Required Insurance.  Borrower shall, at Borrower's sole cost and expense, obtain, maintain or cause to be obtained and maintained the minimum insurance requirements set forth in this Agreement ("Required Insurance") beginning on the date this Agreement and, except as expressly provided to the contrary herein, continuing for as long any portion of the Loan is unadvanced or unpaid, and providing at least the following coverages:

(1)     Property Insurance.  Insurance with respect to the Improvements and Personal Property with coverage at least as broad as that provided by the current version of Insurance Services Office, Inc. ("ISO") ISO Form CP 10 30 Causes of Loss - Special Form (formerly referred to as an "all-risk" policy). Each such Property Insurance policy shall be maintained insuring against any peril now or hereafter included within the classification "Cause of Loss - Special Form" in amounts at all times sufficient to prevent Lender from becoming a co-insurer within the terms of the Policy and under applicable law, but in any event such Property Insurance Policies shall be maintained in an amount which, after application of the deductible, shall be

EXHIBIT NO. 2                                              EX. 2-010

equal to the full insurable value of the Improvements and Personal Property. The term "full insurable value" shall mean the actual replacement cost of the Improvements and Personal Property (without taking into account any depreciation, and exclusive of excavations, footings and foundations, landscaping and paving) determined annually by an insurer, a recognized independent insurance broker or an independent appraiser selected and paid by Borrower and in no event less than the coverage required pursuant to the terms of any Lease (the "Replacement Cost"). Each such Property Insurance policy shall not contain any protective safeguard warranties.

(2)     Liability Insurance. Commercial General Liability insurance (Occurrence Basis) with coverage at least as broad as ISO Form CG 00 01 and including liability claims for bodily injury, death and property damage liability, insurance against any and all claims, including all legal liability to the extent insurable and imposed upon Lender and all court costs and legal fees and expenses, arising out of or connected with the possession, use, leasing, operation, maintenance or condition of the Property in such amounts as are generally available at commercially reasonable premiums and are generally required by institutional lenders for properties comparable to the Property but in any event for a limit per occurrence of at least $1,000,000 and an annual aggregate of at least $2,000,000.

(3)     Flood Insurance. If required by Lender or applicable banking regulations, flood insurance in an amount at least equal to the greater of (A) the Replacement Cost together with business interruption coverage and (B) the maximum limit of coverage available for the Property under the National Flood Insurance Act of 1968, The Flood Disaster Protection Act of 1973 and the National Flood Insurance Reform Act of 1994, as each may be amended (the "Flood Insurance Acts");

(4)     Other Insurance. Such other insurance with respect to the Collateral Property or on any replacements or substitutions or additions or increased coverage limits as may from time to time be reasonably required by Lender against other insurable hazards or casualties which at the time are commonly insured against in the case of property similarly situated, including, without limitation, sinkhole, mine subsidence, earthquake and environmental insurance, due regard being given to the height and type of buildings, their construction, location, use and occupancy.

B.     General Requirements. All insurance policies for the Required Insurance shall be for a term of not less than one (1) year and obtained under valid and enforceable policies (the "Policies" or in the singular, the "Policy"), and shall be issued by one or more other domestic primary insurer(s) having a general policy rating of A or better and a financial class of X or better by A.M. Best Company, Inc. (or if a rating of A.M. Best Company Inc. is no longer available, a similar rating from a similar or successor service). All insurers providing Required Insurance shall be authorized

and admitted to issue insurance in the state in which the Collateral Property is located. Each Policy which is a liability policy shall name Lender as an additional insured. Each Policy which is a property insurance policy shall name Lender as insured under a standard mortgagee clause (also referred to as a "lender loss payable" clause and a "closed clause" or "standard/union" clause). Each Policy which is a property insurance policy shall also contain: (i) a standard "non-contributory mortgagee" endorsement or its equivalent relating, *inter alia,* to recovery by Lender notwithstanding the negligent or willful acts or omission of Borrower; (ii) to the extent available at commercially reasonable rates, a waiver of subrogation endorsement as to Lender; and (iii) an endorsement providing for a deductible per loss of an amount not more than that which is customarily maintained by prudent owners of similar properties in the general vicinity of the Property, but in no event in excess of **$25,000** except in the case of windstorm, flood, or earthquake, the deductible shall not be in excess of **$25,000** without Lender's prior approval. All Policies shall contain (i) a provision that such Policies shall not be denied renewal, materially changed (other than to increase the coverage provided), cancelled or terminated, nor shall they expire, without at least thirty (30) days' prior written notice to Lender in each instance; and (ii) include effective waivers by the insurer of all claims for applicable premiums ("Insurance Premiums") against any mortgagee, loss payees, additional insureds and named insureds (other than Borrower). All Policies shall be endorsed to be primary, with any applicable policies of Lender being excess, secondary and noncontributing. No Policy shall contain any endorsement restricting, limiting or excluding coverage in any manner without the prior written approval of Lender.

C.    Evidence of Insurance.

(1)    Insurance must be evidenced by an ACORD ™ Form 25 Certificate of Liability Insurance for each policy for liability coverages; and an ACORD ™ Form 28 Evidence of Commercial Property Insurance (2003 edition) for each property policy (or if required by Lender, an ACORD ™ Form 27 to the extent the Collateral is residential property or personal property) for such applicable property policies (each a "Certificate of Insurance");

(2)    Each Certificate of Insurance shall be delivered to Lender prior to commencing operations at the Property and at least 30 days prior to the expiration of current policies;

(3)    Each Certificate of Insurance shall must show the Lender as certificate holders (with Lender's mailing address), show Borrower as the "Named Insured", show the insurance companies producing each coverage and the policy number and policy date of each coverage, name the producer of the certificate (with correct address and telephone number) and have the signature of the authorized representative of the producer, specify the additional insured status (on a separate ACORD ™ Form 45) and/or waivers of subrogation, state the amounts of all deductibles and self-insured retentions, show the primary status and aggregate limit per project where

EXHIBIT NO. 2                                        EX. 2-012

required and be accompanied by copies of all required additional insured endorsements; and

(4)    In addition to the Certificates of Insurance, Borrower shall provide to Lender the originals or true and correct copies of each of the Policies and all endorsements thereon comprising the Required Insurance. In the event of the acquisition of a new Policy, a temporary insurance binder (evidenced by ACORD ™ Form 75) shall then be provided to Lender; the underlying actual Policy and all endorsements thereon or a true and correct copy thereof shall be delivered to Lender prior to the expiration of the applicable binder. Evidence of insurance with respect to all renewal and replacement Policies for Required Insurance shall be delivered to Lender not less than fifteen (15) days prior to the expiration date of any of the Policies which evidence shall bear notations evidencing payment of Insurance Premiums. Originals or evidence of such replacement Policies shall be delivered to Lender promptly after Borrower's receipt thereof but in any case within thirty (30) days after the effective date thereof and not less than fifteen (15) days prior to the termination of the then existing Policies previously delivered to Lender.

D.    <u>Forms</u>

(1)    If the forms of Policies, endorsements, certificates, or evidence of insurance required by this Agreement are superseded or discontinued, Lender will have the right to require other equivalent forms; and

(2)    Any policy or endorsement form other than a form specified in this Agreement must be approved in advance by Lender; and

(3)    If requested in writing by Lender, Borrower will provide to Lender a certified copy of any or all insurance policies or endorsements required by this Agreement.

E.    <u>Force Placed Insurance</u>. Borrower's failure to obtain and maintain the required insurance will constitute a material breach of, and default under, this Agreement. If Borrower fails to remedy such breach within two (2) days after notice from Lender, Lender may, in addition to any other remedy available to Lender, at Lender's option, purchase such insurance, at Borrower's expense. Borrower will indemnify the Lender against any claims arising from Borrower's failure to purchase and/or maintain the insurance coverages required by this Agreement.

Pursuant to Texas Finance Code Section 307.052, the Borrower or Grantor (as applicable, the "Debtor") as owner of the Collateral is notified as follows:

(1)    **DEBTOR IS REQUIRED TO (I) KEEP THE COLLATERAL INSURED AGAINST DAMAGE IN THE AMOUNT THE LENDER SPECIFIES; (II) PURCHASE INSURANCE FROM AN INSURER**

THAT IS AUTHORIZED TO DO BUSINESS IN THIS STATE OR
AN ELIGIBLE SURPLUS LINES INSURER; AND (III) NAME THE
LENDER AS THE PERSON TO BE PAID UNDER THE POLICY IN
THE EVENT OF A LOSS.

(2)    THE DEBTOR MUST, DELIVER TO THE LENDER A COPY OF
THE POLICY AND PROOF OF THE PAYMENT OF THE
PREMIUMS.

(3)    IF THE DEBTOR FAILS TO MEET ANY REQUIREMENT LISTED
IN SUBPARAGRAPH (1) OR (2) IMMEDIATELY ABOVE, THE
LENDER MAY OBTAIN COLLATERAL PROTECTION
INSURANCE ON BEHALF OF THE DEBTOR AT THE DEBTOR'S
EXPENSE.

F.    Prohibited Acts. Borrower shall comply with all insurance requirements and shall
not bring or keep or permit to be brought or kept any article upon any of the Real
Property or cause or permit any condition to exist thereon which would be
prohibited by an insurance requirement, or would invalidate the insurance coverage
required hereunder to be maintained by Borrower on or with respect to any part of
the Collateral Property pursuant to this Agreement and shall not purchase any
additional amounts of insurance that would cause Lender to become a co-insurer
within the terms of the Policies.

G.    Proof of Loss. During an Event of Default, Borrower hereby authorizes and
appoints Lender as attorney-in-fact for Borrower to make proof of loss, to adjust
and compromise any claims under policies of property damage insurance, to appear
in and prosecute any action arising from such property damage insurance policies,
to collect and receive the proceeds of property damage insurance, and to deduct
from such proceeds Lender's expenses incurred in the collection of such proceeds.
This power of attorney is coupled with an interest and therefore is irrevocable.
Nothing in this paragraph shall require Lender to incur any expense or take any
action.

H.    No Waiver. The failure of Lender to demand full compliance by Borrower with
respect to the minimum coverages and terms outlined herein will not constitute a
waiver by Lender with respect to Borrower's obligation to maintain such coverages.
Borrower will purchase such additional insurance policies and/or endorsements or
increase the policy limits of any policy set forth herein, if required by Lender.

I.    Indemnity and Waiver by Borrower. Borrower also agrees to indemnify, defend and
save Lender harmless from any and all claims, losses, costs, damages, liabilities,
obligations and expenses, including, without limitation, reasonable attorneys' fees,
incurred by Lender and waives as to the Lender, all claims and losses arising, or
alleged to arise, from all of the following during Borrower's period of ownership
of the Property:

(1)    the use, nonuse, possession, occupation, condition, operation, design, construction, acquisition, repair, maintenance or management of the Property;

(2)    failure by Borrower to maintain, or cause to be maintained, the Required Insurance;

(3)    any violation of or failure by a Loan Party to comply with applicable law;

(4)    any breach of a Loan Party's applicable covenants, representations or warranties under this Agreement or any other Loan Document; and

(5)    defending or protecting the Liens which secure or purport to secure all or any portion of the Indebtedness, whether existing under any Loan Document or otherwise or the priority thereof, or in enforcing the obligations of Borrower or any other Person under or pursuant to any Loan Document, or in the prosecution or defense of any action or proceeding concerning any matter growing out of or connected with the Collateral or any Loan Document.

THE INDEMNITIES AND WAIVERS OF BORROWER CONTAINED IN THIS AGREEMENT,

(1)    ARE INDEPENDENT OF THE REQUIRED INSURANCE,

(2)    **WILL NOT BE LIMITED BY ANY ONE ACTION RULE UNDER WORKERS' COMPENSATION OR SIMILAR EMPLOYEE BENEFIT ACTS OR ANY PROHIBITION AGAINST THE RIGHT OF CONTRIBUTION FROM JOINT TORTFEASORS UNDER COMPARATIVE NEGLIGENCE STATUTES,**

(3)    WILL SURVIVE REPAYMENT OF THE LOAN OR FORECLOSURE OF THE COLLATERAL BY LENDER OR EXECUTION BY GRANTOR OF A DEED IN LIEU OF FORECLOSURE WITH RESPECT TO THE COLLATERAL, and

(4)    **WILL APPLY EVEN IF THE LOSS IS CAUSED IN PART BUT NOT IN WHOLE BY THE ORDINARY NEGLIGENCE OR STRICT LIABILITY OF THE LENDER, BUT WILL NOT APPLY TO THE EXTENT THE LOSS IS CAUSED BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE LENDER.**

All applicable law affecting the validity or enforceability of any indemnity or waiver contained in this Agreement is made a part of such provision and will operate to amend such indemnity or waiver to the minimum extent necessary to bring the provision into conformity with applicable law and cause the provision, as modified, to continue in full force and effect.

J.      Blanket Policies. Unless Lender requires Borrower to obtain a separate Policy or Policies the insurance coverage required may be effected under a blanket Policy or Policies covering the Real Property; provided that any such blanket Policy shall specify, except in the case of commercial general liability insurance, the premises address of each building, the portion of the total coverage of such Policy that is allocated to the Real Property, and shall in any case provide the same protection as would a separate policy insuring only the Real Property and otherwise comply with all other respects with the requirements of this Agreement.

## ARTICLE VII. EVENTS OF DEFAULT

7.01    Events of Default. The occurrence or existence of any of the following conditions or events shall, after applicable notice and failure to cure as provided for in Section 7.03, constitute an "Event of Default" hereunder: (a) material breach of any representation or warranty contained in this Agreement or any other Loan Document or material default in the observance or performance of any of the other conditions, covenants or agreements of any Loan Party set forth in this Agreement or any other Loan Document; (b) any default or event of default, as the case may be, shall occur under any other Loan Document and shall continue beyond the applicable grace period, if any; (c) any change in the management or control of Borrower involving the replacement or removal of Natin Paul, whether by reason of incapacity, death, resignation, termination or otherwise which, in Lender's sole judgment, could become a Material Adverse Effect; subject to Section 7.04 hereof; (d) any change in the ownership of Borrower, whether by reason of incapacity, death, or otherwise which, in Lender's sole judgment, could become a Material Adverse Effect; subject to Section 7.04 hereof; provided however that from and after the date hereof a cumulative change of up to 100% of the ownership interests in Borrower shall not be deemed an Event of Default, so long as Lender is timely notified of the change in ownership of Borrower and Borrower is owned at least 50% directly or indirectly by Natin Paul and is controlled directly or indirectly by Natin Paul; and (e) if, during the loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Indebtedness.

7.02    Interim Remedies After Default. Upon and after a Default by any Loan Party under any of the Loan Documents, regardless of whether a Loan Party is entitled to notice and/or an opportunity to cure a Default, whether said notice or right to cure is provided for under the Loan Documents or provided by law, and regardless of whether said Default has matured into an Event of Default, each Loan Party hereto agrees that whether or not a Loan Party is given notice of the Default and whether or not, at the point in time of determination, the right to cure period has lapsed, Lender shall have the following rights, all without any prior notice to the applicable Loan Party:

A.      Lender shall not be obligated to further process any draw requests that have been submitted, or to fund any remaining portion of any draw requests that have been approved by Lender;

B.  Lender shall continue to have the right to post advances to the Note for interest carry to the extent of any accrued and unpaid interest on the Note but only to the extent that interest carry is available under the Budget for the Loan;

C.  Lender shall have the right to post advances to the Note for protective advances for the benefit of Lender as otherwise provided for in the Loan Documents; and

D.  Lender shall have the right to seek any equitable remedies available under law to protect any of the collateral securing the Note.

7.03  <u>Notice of Default and Right to Cure</u>. Any provision of this Loan Agreement or any of the Loan Documents to the contrary notwithstanding, Borrower and Guarantors shall not be in default under this Loan Agreement or the Loan Documents unless:

A.  in the case of a breach of a monetary covenant, Lender shall have given the applicable Loan Party written notice of such monetary breach setting forth the due date and the amount due on such date and Borrower shall not have cured the breach of the monetary covenant within ten (10) days after delivery of said notice; and

B.  in the case of a breach of a non-monetary covenant, Lender shall have given Borrower or other applicable Loan Party, written notice of such non-monetary breach setting forth in reasonable detail the nature and extent of such failure and Borrower or other applicable Loan Party, shall not have cured the breach of the non-monetary covenant within thirty (30) days after delivery of said notice;

provided however, all notices required under this paragraph regarding breaches, and all other notices permitted in this Loan Agreement or in the other Loan Documents, shall be in writing and shall be deemed to be delivered when delivered personally or when deposited with the United States Postal Service, postage prepaid, by registered or certified mail, return receipt requested, addressed to the Borrower, the Guarantors, other applicable Loan Party or the Lender, as the case may be, at the respective addresses given below or elsewhere in the Loan Documents, or to such other changed address, the notice of which change is given pursuant hereto or as otherwise provided elsewhere in the Loan Documents; and

provided further, however, that with respect to notices of monetary default, Borrower shall only be entitled to receive and Lender shall only be required to give two (2) such notices in any one twelve (12) month period from the date hereof and cumulative total of six (6) such notices during the term hereof, such that after the second notice in any twelve (12) month period or after the sixth such notice during the term hereof, Borrower and any other applicable Loan Party shall no longer be entitled to any notice and right to cure for monetary events of default.

7.04  <u>Death or Incapacity of a Guarantor</u>. Any provision herein or in the Loan Documents to the contrary notwithstanding, the Lender shall waive the death or incapacity of Natin Paul as a default hereunder or under any of the Loan Documents executed in connection with the Note including direct or indirect effects on the ownership, control or management of the Borrower, or the legal ability of Natin Paul to perform under his guaranty agreement as

EXHIBIT NO. 2                                                    EX. 2-017

Guarantor so long as within ninety (90) days from the date of death or adjudication of incapacity, a replacement guarantor acceptable to Lender in Lender's sole discretion has expressly assumed and ratified the deceased or incapacitated Guarantor's obligations under the guaranty agreement in the form of a replacement guaranty or assumption of guaranty, all in form and subject to such conditions as are acceptable to Lender in its sole discretion. References herein to the incapacity of an individual Guarantor shall mean that a court of competent jurisdiction has declared the individual as legally incompetent under applicable state law.

7.05    Remedies Upon Event of Default. Upon the occurrence and at any time during the existence or continuance of any Event of Default, but without impairing or otherwise limiting the Lender's right to demand payment of all or any portion of the Indebtedness which is payable on demand, at Lender's option, Lender may give notice to Borrower declaring all or any portion of the Indebtedness remaining unpaid and outstanding, whether under the notes evidencing the Indebtedness or otherwise, to be due and payable in full without presentation, demand, protest, notice of dishonor, notice of intent to accelerate, notice of acceleration or other notice of any kind, all of which are hereby expressly waived, whereupon all such Indebtedness shall immediately become due and payable. Furthermore, upon the occurrence of a Default or Event of Default and at any time during the existence or continuance of any Default or Event of Default, but without impairing or otherwise limiting the right of Lender, if reserved under any Loan Document, to make or withhold financial accommodations at its discretion, to the extent not yet disbursed, any commitment by Lender to make any further loans or, if applicable, issue any further letters of credit shall automatically terminate. The foregoing rights and remedies are in addition to any other rights, remedies and privileges Lender may otherwise have or which may be available to it, whether under this Agreement, any other Loan Document, by law, or otherwise.

7.06    Setoff. In addition to any other rights or remedies of Lender under any Loan Document, by law or otherwise, upon the occurrence and during the continuance or existence of any Event of Default, Lender may, at any time and from time to time, without notice to Borrower (any requirements for such notice being expressly waived by Borrower), setoff and apply against any or all of the Indebtedness (whether or not then due), in any manner and in any order of preference which the Lender, in its sole discretion, chooses any or all deposits (general or special, time or demand, provisional or final) at any time held by Borrower (whether owned outright or held with a third party) and other indebtedness at any time owing by Lender to or for the credit or for the account of Borrower, and any property of Borrower, from time to time in possession or control of Lender, irrespective of whether or not Lender shall have made any demand hereunder or for payment of the Indebtedness and although such obligations may be contingent or unmatured, regardless of whether any Collateral then held by Lender is adequate to cover the Indebtedness and regardless of whether the exercise of such right of set-off results in loss of interest or other penalty under the terms of the certificate of deposit or account agreement. The rights of Lender under this Section are in addition to any other rights and remedies (including, without limitation, other rights of setoff) which Lender may otherwise have. Borrower hereby grants Lender a Lien on and security interest in all such deposits, indebtedness and other property as additional collateral for the payment and performance of the Indebtedness.

7.07    Waiver of Defaults.  No Default or Event of Default shall be waived by Lender except in a written instrument specifying the scope and terms of such waiver and signed by an authorized officer of Lender, and such waiver and shall be effective only for the specific time(s) and purpose(s) given.  No single or partial exercise of any right, power or privilege hereunder, or any delay in the exercise thereof, shall preclude other or further exercise of Lender's rights.  No waiver of any Default or Event of Default shall extend to any other or further Default or Event of Default.  No forbearance on the part of Lender in enforcing any of Lender's rights or remedies under any Loan Document shall constitute a waiver of any of its rights or remedies.  Borrower expressly agrees that this Section may not be waived or modified by Lender by course of performance, estoppel or otherwise.

7.08    Receiver.  Lender, in any action or suit to foreclose upon any of the Collateral, shall be entitled, without notice or consent, and completely without regard to the adequacy of any security for the Indebtedness, to the appointment of a receiver of the business and premises in question, and of the rents and profits derived therefrom.  This appointment shall be in addition to any other rights, relief or remedies afforded Lender.  Such receiver, in addition to any other rights to which the receiver shall be entitled, shall be authorized to sell, foreclose or complete foreclosure on Collateral for the benefit of Lender, pursuant to provisions of applicable law.

7.09    Application of Proceeds of Collateral.  Notwithstanding anything to the contrary set forth in any Loan Document, after an Event of Default, the proceeds of any of the Collateral, together with any offsets, voluntary payments, and any other sums received or collected in respect of the Indebtedness, may be applied towards the Indebtedness in such order and manner as determined by Lender in its sole and absolute discretion.

## ARTICLE VIII.  MISCELLANEOUS

8.01    Notices.  Any notice, certificate, consent, determination or other communication required or permitted to be given or made under this Agreement shall be in writing and shall be effectively given and made if (i) delivered personally, (ii) sent by prepaid courier service or mail, or (iii) sent prepaid by fax or other similar means of electronic communication, in each case to the following respective addresses:

| If to Borrower: | WC 4811 SOUTH CONGRESS, LLC |
| | 401 Congress Avenue, 33rd Floor |
| | Austin, Texas 78701 |
| Phone: | (512) 327-3300 |
| Fax: | (512) 322-9238 |
| E-mail address: | Npaul@wccapitalgroup.com |
| | |
| With copy to: | WORLD CLASS CAPITAL GROUP, LLC |
| | 765 Fifth Avenue, 16th Floor |
| | New York, New York 10153 |
| | Attention: Samuel Mizrahi |
| Phone: | (917) 702-3344 |
| E-mail address: | smizrahi@wccapitalgroup.com |

If to Lender:            FIRST STATE BANK CENTRAL TEXAS
                        P. O. Box 6136
                        Temple, Texas 76503-6136
Phone:               (512) 231-8821
Fax:                 (512) 231-1625
Email address:      vivienen@fsbcentex.com

Any such communication so given or made shall be deemed to have been given or made and to have been received on the day of delivery if delivered, or on the day of faxing or sending by other means of recorded electronic communication, provided that such day in either event is a regular Business Day and the communication is so delivered, faxed or sent prior to 4:30 p.m. (local recipient time) on such day. Otherwise, such communication shall be deemed to have been given and made and to have been received on the next following Business Day. Any such communication sent by mail shall be deemed to have been given and made and to have been received on the earlier of actual receipt or the fifth Business Day following the mailing thereof; provided however that no such communication shall be mailed during any actual or apprehended irregular disruption of postal services. Any such communication given or made in any other manner shall be deemed to have been given or made and to have been received only upon actual receipt in writing.

8.02    Governing Law. Each Loan Document shall be deemed to have been delivered in the State of Texas, and shall be governed by and construed and enforced in accordance with the laws of the State of Texas, and applicable federal law except to the extent that the Uniform Commercial Code or other personal property law or real property law of another jurisdiction where Collateral is located is applicable, and except to the extent expressed to the contrary in any Loan Document.

8.03    Costs and Expenses. The Borrower agrees to pay Lender, on demand, all reasonable costs and expenses in connection with the preparation, execution, delivery and administration of this Agreement, the Note, the Loan Documents, and the other documents to be delivered hereunder, including, without limitation, the reasonable fees and out-of-pocket expenses of counsel for the Lender with respect thereto and with respect to advising the Lender as to its rights and responsibilities under this Agreement and/or under any of the other Loan Documents. Borrower shall pay Lender, on demand, all costs and expenses, including, without limitation, reasonable attorneys' fees and legal expenses, incurred by Lender in perfecting, revising, protecting or enforcing any of its rights or remedies against any Loan Party or any Collateral, or otherwise incurred by Lender in connection with any Default or Event of Default or the enforcement of the Loan Documents or the Indebtedness. Following Lender's demand upon Borrower for the payment of any such costs and expenses, and until the same are paid in full, the unpaid amount of such costs and expenses shall constitute Indebtedness and shall bear interest at the highest default rate of interest provided in any Loan Document.

8.04    Receipt of Payments by Lender. Any payment by Borrower of any of the Indebtedness made by mail will be deemed tendered and received by Lender only upon actual receipt thereof by Lender at the address designated for such payment, whether or not Lender has authorized payment by mail or in any other manner, and such payment shall not be deemed to have

been made in a timely manner unless actually received by Lender on or before the date due for such payment, time being of the essence. Borrower expressly assumes all risks of loss or liability resulting from non-delivery or delay of delivery of any item of payment transmitted by mail or in any other manner. Acceptance by Lender of any payment in an amount less than the amount then due shall be deemed an acceptance on account only, and any failure to pay the entire amount then due shall constitute and continue to be an Event of Default. Borrower waives the right to direct the application of any and all payments received by Lender hereunder at any time or times after the occurrence and during the continuance of any Default. Borrower further agrees that after the occurrence and during the continuance of any Default, Lender shall have the continuing exclusive right to apply and to reapply any and all payments received by Lender at any time or times, whether as voluntary payments, proceeds from any Collateral, offsets, or otherwise, against the Indebtedness in such order and in such manner as Lender may, in its sole discretion, deem advisable, notwithstanding any entry by Lender upon any of its books and records. Borrower hereby expressly agrees that, to the extent that Lender receives any payment or benefit of or otherwise upon any of the Indebtedness, and such payment or benefit, or any part thereof, is subsequently invalidated, declared to be fraudulent or preferential, set aside, or required to be repaid to a trustee, receiver, or any other Person under any bankruptcy act, state or federal law, common law, equitable cause or otherwise, then to the extent of such payment or benefit, the Indebtedness, or part thereof, intended to be satisfied shall be revived and continued in full force and effect as if such payment or benefit had not been made or received by Lender, and, further, any such repayment by Lender shall be added to and be deemed to be additional Indebtedness.

8.05    Successors and Assigns.  This Agreement shall be binding upon and shall inure to the benefit of Borrower and Lender and their respective heirs, administrators, executors, successors and assigns. The foregoing shall not authorize any assignment or transfer by Borrower, of any of its respective rights, duties or obligations hereunder, such assignments or transfers being expressly prohibited. Lender, however, may freely assign, whether by assignment, participation or otherwise, its rights and obligations hereunder, and is hereby authorized to disclose to any such assignee or participant (or proposed assignee or participant) any financial or other information in its knowledge or possession regarding any Loan Party or relating to the Indebtedness.

8.06    Participation.  Borrower expressly recognizes and agrees that Lender may sell to other lenders participations in the loans incurred by Borrower pursuant hereto. As security for the due payment and performance of all Indebtedness of Borrower to Lender under this Agreement and/or any other of the Loan Documents, whether now existing or hereafter arising, and to such lenders by reason of such participations, Borrower hereby grants to Lender and to such lenders a lien on and security interest in (i) any and all deposits or other sums at any time credited by or due from Lender and such lenders or either or any of them, to Borrower, whether in regular or special depository accounts or otherwise, (ii) any and all money, securities and other property of Borrower, and the proceeds thereof now or hereafter held or owned by or in transit to Lender and such lenders or either or any of them, from or for Borrower whether for safekeeping, custody, pledge, transmission, collection or otherwise. Any such deposit, sums, monies, securities and other property may at any time be set-off, appropriated and applied by the Lender and by such lenders, or either or any of

EXHIBIT NO. 2                    EX. 2-021

them, against any Indebtedness whether now existing or hereafter arising to Lender and to such lenders, or either or any of them, under this agreement or the Note or otherwise, whether or not such Indebtedness is then due or secured by any collateral or, if it is so secured, whether or not such collateral held by Lender or such lenders is considered to be adequate.

8.07    Sale of Loan. Lender may freely assign, whether by sale or transfer, all or any portion of its rights in and to all or any portion of the Indebtedness including the Note to any a third party or any Loan Party, including, but not limited to, a sale, transfer or assignment to any Guarantor, Grantor or other obligor on the Indebtedness.

8.08    Election of Remedies. Lender shall have all of the rights and remedies granted in the Loan Documents and available at law or in equity and these same rights and remedies shall be cumulative and may be pursued separately, successively, or concurrently against Borrower, any Guarantor, Grantor, other Loan Party or any collateral property covered under the Loan Documents, at the sole discretion of Lender.

8.09    Indulgence. No delay or failure of Lender in exercising any right, power or privilege hereunder or under any of the Loan Documents shall affect such right, power or privilege. Any single or partial exercise thereof shall not preclude any further exercise thereof.

8.10    Amendment and Waiver. No course of dealings by the Lender, its officers, employees, consultants, or agents in the exercise of any right hereunder, under the Note, or under any other of the Loan Documents shall operate as a waiver thereof. No amendment or waiver of any provision of any Loan Document, nor consent to any departure by any Loan Party therefrom, shall in any event be effective unless the same shall be in writing and signed by Lender, and then such waiver or consent shall be effective only in the specific instance(s) and for the specific time(s) and purpose(s) for which given.

8.11    Severability. In case any one or more of the obligations of any Loan Party under any Loan Document shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining obligations of such Loan Party shall not in any way be affected or impaired thereby, and such invalidity, illegally or unenforceability in one jurisdiction shall not affect the validity, legality or enforceability of the obligations of such Loan Party under any Loan Document in any other jurisdiction. Each term, covenant, and condition of this Agreement and/or any of the other Loan Documents shall be valid and enforceable to the fullest extent permitted by law.

8.12    Reliance on and Survival of Various Provisions. All terms, covenants, agreements, representations and warranties of any Loan Party made in any Loan Document, or in any certificate, report, financial statement or other document furnished by or on behalf of any Loan Party in connection with any Loan Document shall be deemed to have been relied upon by Lender, notwithstanding any investigation heretofore or hereafter made by Lender or on Lender's behalf. All representations and warranties of the Borrower herein or in the other Loan Documents and all covenants and agreements herein and in the other Loan Documents, shall survive until repayment in full of the Indebtedness.

8.13    Execution of Loan Documents in Counterparts. Each original of the Loan Documents executed in connection with the Loan including the Note may be executed as counterpart originals and may  contains multiple original signature pages and/or corresponding acknowledgments. Two or more counterparts of any particular Loan Document may be executed and/or acknowledged and one or more of the multiple original signature pages from one counterpart of that particular Loan Document executed in connection with the Loan may be replaced by one or more original signature pages from other counterparts thereof, in order to produce fully executed counterparts, each of which shall be considered as an original, and all of which shall constitute the same agreement or document.

8.14    Document Retention Policy. Each undersigned Loan Party understands and agrees that (i) Lender's document retention policy may involve the imaging of executed Loan Documents including the Note, as well as other miscellaneous documents, papers, reports and other correspondence, and the destruction of the paper originals, and (ii) each undersigned Loan Party waives any right that any Loan Party may have to claim that the imaged copies of the Loan Documents (other than the Note) and other miscellaneous documents, papers and other correspondence related thereto are not originals.

8.15    **NOTICE UNDER SECTION 26.02 OF THE TEXAS BUSINESS & COMMERCE CODE:**

**AN AGREEMENT FOR A LOAN IN WHICH THE AMOUNT INVOLVED IN THE LOAN EXCEEDS $50,000.00 IN VALUE IS NOT ENFORCEABLE UNLESS THE AGREEMENT IS IN WRITING AND SIGNED BY THE PARTY TO BE BOUND OR BY THAT PARTY'S AUTHORIZED REPRESENTATIVE.**

**THE RIGHTS AND OBLIGATIONS OF THE PARTIES TO AN AGREEMENT SUBJECT TO SUBSECTION (b) OF SECTION 26.02 OF THE TEXAS BUSINESS & COMMERCE CODE SHALL BE DETERMINED SOLELY FROM THE WRITTEN LOAN DOCUMENTS, AND ANY PRIOR ORAL AGREEMENTS BETWEEN THE PARTIES ARE SUPERSEDED BY AND MERGED INTO THE LOAN DOCUMENTS.**

**THE WRITTEN LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

8.16    Captions. The captions, headings, and arrangements used in this agreement are for convenience only and do not in any manner affect, limit, amplify, or modify the terms and provisions hereof.

8.17    Form and Substance. All documents, certificates, insurance policies, and other items required to be executed and/or delivered to Lender, whether under this Agreement or under any of the other Loan Documents, shall be in form and substance satisfactory to Lender.

8.18    Borrower In Control.  In no event shall Lender's rights and interests under the Loan Documents be construed to give Lender the right to control, or be deemed to indicate that Lender is in control of, the business, management or properties of Borrower or the daily management functions and operating decisions to be made by Borrower.

8.19    No Third Party Beneficiary.  This Agreement is made for the sole protection and benefit of Borrower and Lender and is not intended for the protection or benefit of any other Person, and no other Person shall be deemed to have any privity of contract hereunder nor any right of action of any kind hereon, or be entitled to rely hereon to any extent whatsoever.

8.20    Number and Gender.  Words of any gender used in this Agreement shall be held and construed to include any other gender, and words in the singular number shall be held to include the plural, and vice versa, unless the context requires otherwise. The duties, covenants, obligations, and warranties of each party defined as Borrower under this Agreement shall be joint and several obligations of each such Borrower.

8.21    References.  The words "herein," "hereof," "hereunder" and other words of similar import when used in this Agreement refer to this Agreement as a whole, and not to any particular article, section or subsection.

8.22    Ambiguities.  Borrower and Lender acknowledge that they were each represented by counsel or had the opportunity to be represented by counsel and waived such right in connection with this Agreement, that each of them and/or their respective counsel reviewed this Agreement to their satisfaction, that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement, and that the language in all parts of this Agreement shall in all cases be construed as a whole and in accordance with its fair meaning.

8.23    Exhibits.  The exhibits attached to this Agreement are incorporated herein and shall be considered a part of this Agreement for the purposes stated herein, except that in the event of any conflict between any of the provisions of such exhibits and the provisions of this Agreement, the provisions of this Agreement shall prevail; provided however, that any attached metes and bounds description of the Land shall control over the summary description defining the Land herein.

8.24    Time of the Essence.  Time is of the essence with respect to the dates, terms and provisions of this Agreement, and as to each and every other Loan Document executed in connection herewith.

8.25    Independent Party.  It is mutually understood and agreed that Borrower is an independent party in the performance of all activities, functions, duties and obligations pursuant to this Agreement and the other Loan Documents, and that nothing contained in this Agreement or in any of the other Loan Documents is intended or shall be construed in any manner or under any circumstances whatsoever as creating or establishing the relationship of co-partners, a partnership or joint venture, or joint ownership between Lender and Borrower, or with any officers, employees, agents, brokers or contractors, for any purpose or in any manner

EXHIBIT NO. 2                                    EX. 2-024

whatsoever.  Borrower hereby agrees not to represent to anyone that Borrower is an agent of Lender or has authority to act on behalf of Lender.

8.26  Days and Deadlines.  As used in this Agreement, "*days*" shall mean and refer to calendar days.  However, if a deadline falls or notice is required on a Saturday, Sunday, or a legal banking holiday, then the deadline or notice shall be extended to the next calendar day which is not a Saturday, Sunday, or a legal banking holiday.  As may be used in this Agreement, the term "*Business Days*" means any day which is not a Saturday, Sunday, or a legal banking holiday.

8.27  **GOVERNING LAW AND VENUE.**  THE LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS AND THE APPLICABLE LAWS OF THE UNITED STATES OF AMERICA. THE LOAN DOCUMENTS ARE DEEMED EXECUTED IN AND ARE PERFORMABLE BY EACH LOAN PARTY IN BELL COUNTY, TEXAS.  Any action or proceeding under or in connection with the Loan Documents against Borrower or any other party ever liable for payment of any sums of money payable on the Loan Documents may be brought in any state court located in Bell County, Texas, or in the federal court in Bell County, Texas.  Borrower and each such other party hereby irrevocably:  (i) submits to the nonexclusive jurisdiction of such courts, and (ii) waives any objection it may now or hereafter have as to the venue of any such action or proceeding brought in such court or that such court is an inconvenient forum.

Executed in one more counterpart originals to be effective on the Effective Date defined on page 1 hereof.

WC 4811 SOUTH CONGRESS, LLC, a
Delaware limited liability company

By:     World Class Holdings III, LLC, a
        Delaware limited liability company,
        Manager

By: _____
        Natin Paul, President

Address:     401 Congress Avenue, 33rd Floor
             Austin, Texas 78701

FIRST STATE BANK CENTRAL TEXAS

By: _____
Printed Name: _____
Title: _____

Address:     6500 North Mopac Expressway,
             Building One, Suite 1101
             Austin, Texas 78731

METES AND BOUNDS DESCRIPTION OF A SURVEY OF 14.993 ACRES OF LAND, A PORTION OF THE ISAAC DECKER LEAGUE SURVEY NO. 20, ABSTRACT NO. 8, IN THE CITY OF AUSTIN, TRAVIS COUNTY, TEXAS, SAID 14.993 ACRES OF LAND BEING ALL OF THAT CALLED 4.32 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, AS DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM ABEL J. & MARY ANN THERIOT FAMILY LIMITED PARTNERSHIP TO THERIOT FLP PROPERTIES – III OF RECORD IN DOCUMENT NO. 2010125121, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT CALLED 5.6839 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, DESIGNATED AS TRACT 1 AND DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM SASHA THERIOT SANDERS, TEAL THERIOT SANDERS AND ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC OF RECORD IN DOCUMENT NO. 2010125125, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT CALLED 2.62 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, DESIGNATED AS TRACT 2 AND DESCRIBED IN SAID SPECIAL WARRANTY DEED TO SANDERS CHILDREN INVESTMENTS, LLC OF RECORD IN DOCUMENT NO. 2010125125, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT 2.32 ACRES OF LAND, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, AS DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM SUZANNE MARIE SANDERS AND HER HUSBAND CURTIS NOLEN SANDERS TO SANDERS FLP PROPERTIES – I, LLC OF RECORD IN DOCUMENT NO. 2010125122, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, SAID 14.993 ACRES OF LAND, AS SURVEYED BY BOWMAN CONSULTING GROUP, LTD. AND SHOWN ON BOWMAN PLAN NO. 3562, BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

**BEGINNING** at a 5/8" iron rod found in the east right-of-way line of South Congress Avenue at the most westerly northwest corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and at the southwest corner of that 0.780 of one acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Cash Warranty Deed to MMGG Enterprises, L.P. in Document No. 2004036130, Official Public Records of Travis County, Texas, said 5/8" iron rod found being a common corner of the two parcels described in that Agreement of record in Document No. 2005099083, Official Public Records of Travis County, Texas, said 5/8" iron rod found being the **POINT OF BEGINNING** and most westerly northwest corner of the tract described herein, and from which 5/8" iron rod found, a 1/2" iron rod with plastic cap stamped "ALL POINTS" found at the southwest corner of that 0.066 of one acre tract described in a Street Deed from MMGG Enterprises, LTD., to the City of Austin of records in Document No. 2005102391, Official Public Records of Travis County, Texas, bears
N 63°59'01"W a distance of 0.67 feet;

**THENCE S 61°50'30" E**, with the most westerly north line of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the south line of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the agreed line referenced in the said Agreement of record in Document No. 2005099083 a distance of 239.20 feet to a 1/2" steel pin found at a reentrant corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the south east corner of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the corner referenced in said Agreement, for a reentrant corner of the tract described herein;

EXHIBIT H
PAGE \ OF 4 PAGES

EXHIBIT NO. 2                    EX. 2-026

THENCE N 23°58'30" E, with the most northerly west line of the said Theriot FLP Properties – III, LLC 4.32 acre tract and with the east line of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the line referenced in the said Agreement, at a distance of 4.94 passing a 1/2" steel pin found 0.17 feet east of line, said 1/2" steel pin found being the southeast corner of that 0.708 of one acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Special Warranty Deed With Vendor's Lien to Area 51 Enterprises LLC in Document No.

2015028497, Official Public Records of Travis County, Texas, in all 149.96 feet to a 1/2" steel pin found in the south line of that 4.056 acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Special Warranty Deed to ID Bel Air Partners, LP of record in Document No. 2005017785, Official Public Records of Travis County, Texas, and being the most northerly northwest corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract, and the northeast corner of the said MMGG Enterprises, L.P. 0.780 of one acre tract and the northeast corner of the said Area 51 Enterprises LLC 0.708 of one acre tract, and being also the corner referenced in said Agreement, for the most northerly northwest corner of the tract described herein;

THENCE S 63°24'52" E, with the most easterly north line of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the south line of the said ID Bel Air Partners, LP 4.056 acre tract, a distance of 383.05 feet to a 1/2" steel pin found in the west line of Lot 2A, Block V, A Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, of record in Plat Book 51, Page 20, Plat Records of Travis County, Texas, and being also the southeast corner of the said ID Bel Air Partners, LP 4.056 acre tract and the northeast corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract, for the northeast corner of the tract described herein;

THENCE S 26°47'44" W, with the west line of said Lot 2A, Block V, A Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, and with the east line of the said Theriot FLP Properties – III, LLC 4.32 acre tract, a distance of 58.95 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found at the southwest corner of said Lot 2A, Block V and the northwest corner of Lot 1A, Block V, of said Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, for an angle point in the east line of the tract described herein;

THENCE S 26°41'23" W, with the west line of said Lot 1A, Block V and the west line of Lot 4, Block V, Greenwood Hills, Section Five, of record in Plat Book 42, Page 10, Plat Records of Travis County, Texas, and being also with the west line of Liverpool Drive as shown on said map or plat of Greenwood Hills, Section Five and being also with the east line of the said Theriot FLP Properties – III, LLC 4.32 acre tract, a distance of 237.88 feet to a 1/2" steel pin found at the southeast corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the northeast corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres of land, for an angle point in the east line of the tract described herein;

THENCE S 26°31'34" W, with the west line of Liverpool Drive and the west line of Lot 23, Block W, of said Greenwood Hills Section Five and being also with the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 152.96 feet to a 5/8" steel pin found at the southwest corner of said Lot 23, Block W and the northwest corner of Lot 16, Block W, of said Greenwood Hills Section Five, for an angle point in the east line of the tract described herein;

THENCE S 27°38'57" W, with the west line of said Lot 16, Block W, of said Greenwood Hills Section Five and being also with the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 40.08 feet to a 1/2" steel pin found at the southwest corner of said Lot 16, Block W and the northwest corner of Lot 15, Block W, of said Greenwood Hills Section Five, for an angle point in the east line of the tract described herein;



EXHIBIT A
PAGE 2 OF 4 PAGES

THENCE S 26°33'27" W, with the west line of said Lot 15, Block W and the west line of Lots 14, 13, 12, 11 and 10, Block W, of said Greenwood Hills Section Five and the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 473.14 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found in the west line of said Lot 10, Block W, Greenwood Hills Section Five at the southeast corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, for a southeast corner of the tract described herein;

THENCE N 34°50'27" W, with the southwest or west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 11.89 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found in the southwest or west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres and at the northeast corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, for a reentrant corner of the tract described herein;

THENCE S 27°22'12" W, with the east line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, at a distance of 25.77 feet, more or less, passing the most easterly northwest corner of that 2.002 acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Warranty Deed with Vendor's Lien of record in Document No. 2011133868, Official Public Records of Travis County, Texas, in all a distance of 261.28 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found at the southeast corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and a reentrant of the said Jim O'Brien 2.002 acre tract and the most southerly southeast corner of the tract described herein;

THENCE N 60°09'26" W, with the most westerly north line of the said Jim O'Brien 2.002 acre tract and with the south line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, a distance of 199.03 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found at an angle point in the most westerly north line of the said Jim O'Brien 2.002 acre tract and an angle point in the south line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres;

THENCE N 67°47'26" W, with the most westerly south line of the said Jim O'Brien 2.002 acre tract and with the south line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, a distance of 58.62 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found in the east line of Wasson Road (old State Highway No. 29) at the most westerly northwest corner of the said Jim O'Brien 2.002 of one acre tract and the southwest corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, for the most southerly southwest corner of the tract described herein;

THENCE with the east line of Wasson Road (old State Highway No. 29) and the west line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and with the west line of the said Sanders FLP Properties - 1, LLC 2.32 acre tract, courses numbered 1 through 5 inclusive as follows:

1. N 24°25'26" W, a distance of 42.22 feet to 3/4" iron pipe found;
2. N 14°47'26" W, a distance of 70.00 feet to a drill hole in top of a concrete curb found;
3. N 19°56'26" W, at a distance of 154.55 feet passing the northwest corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and the southwest corner of the said Sanders FLP Properties - 1, LLC 2.32 acre tract, in all a distance of 254.00 feet to a calculated point in a multi-trunk Pecan tree;
4. N 07°57'26" W, a distance of 138.98 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found, and
5. N 04°30'34" E, a distance of 36.10 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found at the intersection of the east line of Wasson Road and the east line of Congress Avenue;



EXHIBIT A
PAGE 3 OF 4 PAGES

THENCE N 27°40'11" E, with the east right-of-way of South Congress Avenue and the west line of the said Sanders FLP Properties - 1, LLC 2.32 acre tract and the west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, and being also with the west line of the said Theriot FLP Properties – III, LLC 4.32 acre tract, at a distance of 271.24 feet passing the northwest corner of the said Sanders FLP Properties - 1, LLC 2.32 acre tract and the southwest corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, and at a distance of 386.42 feet passing a northwest corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, and a southwest corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract, in all 666.83 feet to the **POINT OF BEGINNING** of the tract described herein containing 14.993 acres of land.

Bearing basis is Grid North, NAD 83, Texas Coordinate System, Central Zone.

Plan #: 3562

EXHIBIT A
PAGE 4 OF 4 PAGES

ELECTRONICALLY RECORDED          2017052193

              TRV     31     PGS

### DEED OF TRUST, SECURITY AGREEMENT
### AND FINANCING STATEMENT

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

WC 4811 SOUTH CONGRESS, LLC (herein called "Grantor"), for and in consideration of the indebtedness hereinafter described, has granted, bargained, transferred, sold and conveyed, and by these presents does grant, bargain, transfer, sell and convey, in trust, unto T. GERRY GAMBLE, TRUSTEE and unto Trustee's successors in this trust and Trustee's substitutes and assigns (herein called "Trustee"), forever, for the use and benefit of the Beneficiary (hereinafter defined) all and singular the property hereinafter described situated in the County of TRAVIS, State of Texas, to-wit: (a)

14.993 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE SURVEY NO. 20, ABSTRACT NO. 8, IN TRAVIS COUNTY, TEXAS, BEING MORE FULLY DESCRIBED BY METES AND BOUNDS ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES, BEING THE FOLLOWING FOUR TRACTS:

TRACT 1:

4.32 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, BEING THE SAME PROPERTY CONVEYED BY ABEL J. & MARY ANN THERIOT FAMILY LIMITED PARTNERSHIP TO THERIOT FLP PROPERTIES - III, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125121, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

TRACT 2:

5.6839 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, BEING THE SAME PROPERTY AS TRACT ONE CONVEYED BY SASHA THERIOT SANDERS, TEAL THERIOT SANDERS AND ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 210125125, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

TRACT 3:

2.620 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, BEING THE SAME PROPERTY AS TRACT TWO CONVEYED BY SASHA THERIOT SANDERS, TEAL THERIOT SANDERS AND ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125125, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

EXHIBIT NO. 3                              EX. 3-001

TRACT 4:

2.32 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, AND BEING THE SAME PROPERTY CONVEYED BY SUZANNE MARIE SANDERS AND CURTIS NOLEN SANDERS TO SANDERS FLP PROPERTIES -I, LLC, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125122, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS. (all such real property in this subsection (a) herein sometimes called the "Land");

(b) all rights, titles, interests, estates, reversions and remainders now owned or hereafter acquired by Grantor in and to the Land and in and to all other properties covered hereby and all other lands now owned or hereafter acquired by Grantor abutting, adjacent or contiguous to the Land; (c) all buildings and other improvements now or hereafter situated on the Land and in and to the properties covered hereby (herein sometimes called the "Improvements"); (d) all rights, titles and interests now owned or hereafter acquired by Grantor in and to all drainage easements, easements, licenses, parking rights, streets and rights-of-way of every kind and nature adjoining, serving, belonging, appertaining or otherwise affording access, ingress and or egress to or otherwise benefitting the Land whether now existing or hereafter arising and all public or private utility connections thereto and all appurtenances, tenements, hereditaments, franchises, servitudes, rights, ways, privileges and prescriptions thereto; (e) all goods, equipment, fixtures, manufactured housing, mobile homes, furnishings, inventory, crops, other farm products, timber, shrubs, and any other vegetation, and any and all other personal property of any kind or character defined in and subject to the applicable provisions of the Texas Business and Commerce Code as now adopted and existing and as it may hereafter be amended or succeeded (herein called the "Uniform Commercial Code") now owned or hereafter acquired by Grantor and now or hereafter affixed to, planted or grown on, located on or within, or severed from the Land or the Improvements, and any and all personal property purchased with a portion of the proceeds of the Note (hereinafter defined), regardless of the location of such property, and all replacements thereof, substitutions therefor, additions thereto, and proceeds and products thereof, including without limitation, all rights, titles and interests of Grantor now owned or hereafter acquired in and to any of such personal property that may be subject to any title retention or security agreement superior in lien or security interest to the lien or security interest of this Deed of Trust, Security Agreement and Financing Statement (herein called "Deed of Trust"); (f) all rights and interests of Grantor now owned or hereafter acquired in and to (i) all development rights, rights as declarant, all rights to enforce easements, covenants and restrictions that benefit the Land and or Improvements, and all contracts, subcontracts, building permits, and plans and specifications relating to the Improvements and all deposits, funds, accounts, contract rights, instruments, documents, general intangibles (including but not limited to, trademarks, trade names and symbols used in connection therewith), contracts for deed, notes or chattel paper arising from or by virtue of any transactions relating to the Land or the Improvements; (ii) all water rights, all right, title and interest of Grantor in and to any and all wastewater capacity reservations of any kind or character covering the Land or Improvements, issued or which may be issued by any governmental agencies having jurisdiction thereof, and all other rights relating to sewage treatment capacity, water capacity and utilities serving the Land or Improvements, including easements, agreements, usage rights and course of dealings concerning irrigation, drainage lines, sheet-flow, surface drainage, flood control, drainage facilities and detention ponds (said rights described in this subparagraph (ii) being collectively sometimes called "Utilities Rights"), permits, licenses, franchises, certificates, and other rights and privileges obtained in connection with the Land or the Improvements; (iii) all proceeds and proceeds of proceeds arising from or by virtue of the sale, lease or other disposition of any of the real or personal property covered hereby; (iv) all proceeds and proceeds of proceeds (including premium refunds) payable or to be payable under each policy of insurance relating to the Land or the Improvements; and (v) all proceeds and proceeds of proceeds arising from the taking of all or any part of the Land or any rights appurtenant thereto, including, but not limited to, change of grade of streets, curb cuts or other rights of access, for any public or quasi-public use under any law, or by right of eminent domain, or by private or other purchase in lieu thereof (all of the items described in (e) and (f), inclusive, being herein called the "Goods"); and (g) without limiting the foregoing, any and all rights, royalties, rents, revenues, profits, benefits, leases, statutory landlord's liens, security interests, contracts, accounts, general intangibles (including but not limited to, trademarks, trade names and symbols used in connection therewith), money, instruments, chattel paper, insurance proceeds, documents, tenements, hereditaments and appurtenances now owned or hereafter acquired by Grantor and appertaining to, generated from, arising out of or belonging to any of the foregoing (all of the foregoing items described in (g) being herein called the "Intangibles" and all of the foregoing items described in (a) through (g), inclusive, being herein called the "Mortgaged Property". All of the Goods which constitute tangible personal property shall be deemed to be part of and affixed to the Land for all purposes to the maximum extent permitted by law.

JNG17\FSBCT\WC4811\j17093DTv3.wpd
March 30, 2017 (2:43pm)                                    2                                    DEED OF TRUST

TO HAVE AND TO HOLD the Mortgaged Property, unto Trustee, and Trustee's successors in this trust, and Trustee's assigns, forever, to secure the payment of the Indebtedness (hereafter defined) and to secure the performance of the covenants, agreements, and obligations of the Grantor herein contained, and Grantor does hereby bind Grantor, and Grantor's respective heirs, personal representatives, successors and assigns, to warrant and forever defend the Mortgaged Property unto Trustee, and Trustee's successors and assigns, forever, against the claim or claims of all persons whomsoever claiming or to claim the same, or any part thereof.

## ARTICLE I. INDEBTEDNESS SECURED

1.01    This conveyance is made in trust, however, to secure and enforce the payment and performance of all of the following obligations (herein collectively called the "Indebtedness"):

A.    All sums due or to become due pursuant to that one certain promissory note (herein called the "Note"), of even date herewith, executed by WC 4811 SOUTH CONGRESS, LLC (sometimes also referred to herein as the "Borrower"), payable to the order of FIRST STATE BANK CENTRAL TEXAS (said party or any subsequent owner or holder of the Note being herein called "Beneficiary"), whose address is as specified below, in the original principal amount of FOUR MILLION SEVEN HUNDRED FORTY-FIVE THOUSAND AND NO/100 DOLLARS ($4,745,000.00) bearing interest at the rate therein stated and finally maturing April 9, 2022, the Note providing that, if default occurs, the unpaid principal thereof and all accrued unpaid interest thereon may, at Beneficiary's option, be declared due and payable prior to the stated maturity thereof and providing further for the payment of attorneys' fees and other expenses of collection under certain circumstances;

B.    All funds advanced by Beneficiary to or for the benefit of Borrower and/or Grantor pursuant to the Loan Agreement ("Loan Agreement") of even date herewith by and between Borrower and Beneficiary; and

C.    All funds advanced by Beneficiary relating to costs or expenses that are Grantor's obligations hereunder and/or made to or for the benefit of Borrower and/or Grantor pursuant to any other document securing or relating to the Indebtedness or otherwise, and all other debts, obligations and liabilities of Grantor and/or Borrower to Beneficiary of whatever kind or character, whether now existing or hereafter arising, secured or unsecured, direct or indirect, fixed or contingent, primary or secondary, whether then due, not due or past due, and whether joint or several or both, including, without limitation, all present and future debts, obligations and liabilities of Grantor and/or Borrower (i) as principal, surety, endorser, guarantor, accommodation party or otherwise, (ii) arising by virtue of open accounts, overdraft, operation of law or otherwise, (iii) as a member of any partnership, joint venture, company, firm, trust or other association, or (iv) payable to or in favor of third parties and hereafter acquired by Beneficiary with or without the knowledge, consent or insistence of Grantor and/or Borrower. The payment of all such debts, obligations and liabilities of Grantor and/or Borrower shall not terminate this Deed of Trust unless the lien created hereby is released in writing by Beneficiary, it being contemplated that Grantor and/or Borrower from time to time will become additionally indebted to Beneficiary, all of which indebtedness shall be secured by this Deed of Trust until the lien hereof is so released in writing by Beneficiary; and

D.    All renewals, rearrangements, modifications and extensions of any of the foregoing.

1.02    The Indebtedness shall be payable at the address specified in the Note or at such other place as Beneficiary from time to time may hereafter designate in writing; and, unless otherwise expressly provided in the instruments evidencing the Indebtedness, all portions of the Indebtedness shall bear interest from the due date thereof until paid at the same rate per annum as provided in the Note for interest accruing on past due amounts; provided however, in no event shall Beneficiary compute the interest in a manner that would cause Beneficiary to contract for, charge or receive interest that would exceed the maximum legal contract rate of interest that Beneficiary may charge.

EXHIBIT NO. 3                                    EX. 3-003

1.03   All payments received by Beneficiary, whether designated as payments of principal or interest, shall be applied to the principal or interest of the Indebtedness or to expenses and liabilities provided for herein, or any combination of the foregoing, as directed by Beneficiary at Beneficiary's option, exercised in its sole discretion.

## ARTICLE II.  COVENANTS OF GRANTOR

2.01   In order to secure payment of the Indebtedness, and performance of Grantor's obligations hereunder, Grantor covenants and agrees with Beneficiary and with Trustee as follows:

A.   Grantor shall pay or cause there to be paid when due all of the Indebtedness, together with the interest and all other charges accruing thereon and thereunder in accordance with the terms of the Note and all other instruments evidencing, securing or otherwise relating to the Indebtedness.

B.   Grantor represents and warrants that (1) Grantor has good and indefeasible title in fee simple to the Mortgaged Property, (2) unless otherwise herein provided and in Beneficiary's title insurance policy, the Mortgaged Property is free from restrictions, easements, outstanding mineral or royalty interests, liens and security interests, (3) the Land has legal and sufficient access, for its intended use, to a public roadway, either by direct access or by virtue of Grantor's rights in one or more easements, which are part of the Mortgaged Property, and (4) Grantor has full right and authority to make this conveyance. Grantor agrees to maintain and preserve Grantor's legal existence and all related rights, franchises and privileges. If Grantor is an entity other than an individual, Grantor shall not amend its Articles of Formation or other governing documents that govern the formation or operation of Grantor or change its name or identity without Beneficiary's prior written consent. For purposes hereof, the term "Articles of Organization" shall include, as they exist on the date hereof, (a) Grantor's Articles of Formation or Articles of Incorporation and By-Laws, if Grantor is a corporation, (b) Grantor's Partnership Agreement or Joint Venture Agreement, if Grantor is a general partnership or joint venture, (c) Grantor's Limited Partnership Agreement and Certificate of Limited Partnership or Certificate of Formation, if Grantor is a limited partnership or a registered limited liability partnership, (d) the Trust Agreement creating Grantor, if Grantor is a trust or (e) Grantor's Articles of Organization, Articles of Formation, Company Agreement, Operating Agreement and/or Regulations, if Grantor is a limited liability company.

C.   Grantor shall promptly obtain, pay for and deliver to Beneficiary and maintain insurance policies with proof of premiums paid for at least one year in advance providing extended coverage for all Improvements and other property covered by this Deed of Trust against damage by fire, lightning and such other risks as Beneficiary shall reasonably require, all in amounts reasonably required by Beneficiary, but in any event in an amount at least equal to the Indebtedness, but not exceeding 100% of full replacement cost of all Improvements and all other property covered by this Deed of Trust, such insurance to be written on a replacement cost form promulgated by the Texas State Board of Insurance and with insurers that are authorized to do business in Texas or an eligible surplus lines insurer, but in any event with companies approved by Beneficiary, with (1) loss made payable to Beneficiary pursuant to the standard mortgagee clause promulgated by the Texas State Board of Insurance, without contribution; and (2) provision that (a) each of said policies shall not be terminated, reduced or limited, regardless of any breach of the representations and agreements set forth therein, and (b) no such policy shall be canceled, endorsed or amended to any extent unless the issuer thereof shall have first given Beneficiary at least thirty (30) days' prior written notice. If Grantor fails to furnish such policies, Beneficiary, at Beneficiary's option, may procure such insurance at Grantor's expense. All renewal and substitute policies of insurance shall be delivered to the office of Beneficiary, premiums paid

for at least one year, at least fifteen (15) days before expiration of the insurance protection to be replaced by such renewal or substituted policies. In case of loss to the Mortgaged Property, so long as the amount of the insurance proceeds is less than $250,000.00 and Grantor is not then in default under the Loan Agreement, Beneficiary shall allow Grantor to use the proceeds for the repair of the Improvements or for the erection of new improvements in their place, but Beneficiary shall not be obligated to see to the proper application of any amounts so paid to Grantor. Except as provided for in the preceding sentence, in case of loss to the Mortgaged Property, Beneficiary, at Beneficiary's option, shall be entitled to receive and retain the proceeds of the insurance policies, applying the same toward payment of the Indebtedness in such manner as Beneficiary may elect, or at Beneficiary's option, Beneficiary may pay the same over wholly or in part to Grantor for the repair of the Improvements or for the erection of new improvements in their place, or for any other purpose satisfactory to Beneficiary, but Beneficiary shall not be obligated to see to the proper application of any amounts so paid to Grantor. If Beneficiary elects to allow such payments to Grantor, disbursement shall be made on such terms and subject to such conditions as Beneficiary may specify, and any insurance proceeds in excess of the Indebtedness shall be refunded by Beneficiary to Grantor. Regardless of whether the insurance proceeds payable to Grantor are sufficient to pay the full costs of repair and restoration of the Mortgaged Property, Grantor shall promptly commence and carry out the repair, replacement, restoration and rebuilding of any and all of the Improvements damaged or destroyed so as to return same, to the extent practicable, to the same form and condition as existed immediately prior to such damage to or destruction thereof, with such modifications or additions as may be required to comply with applicable laws, ordinances, rules and regulations of all governmental agencies having jurisdiction thereof. Grantor shall not permit or carry on any activity within or relating to the Mortgaged Property that is prohibited by the terms of any insurance policy covering any part of the Mortgaged Property or which permits cancellation of or increase in the premium payable for any insurance policy covering any part of the Mortgaged Property. In the event of a foreclosure of this Deed of Trust, the purchaser of the Mortgaged Property shall succeed to all the rights of Grantor, including any right to unearned premiums, in and to all policies of insurance assigned and delivered to Beneficiary pursuant to the provisions of this instrument. Regardless of the types or amounts of insurance required and approved by Beneficiary, Grantor shall assign and deliver to Beneficiary all policies of insurance that insure against any loss or damage to the Mortgaged Property, as collateral and further security for the payment of the Indebtedness. Grantor also shall obtain and maintain in force and effect at Grantor's expense such liability and other insurance policies and protection as Beneficiary from time to time may require. Furthermore, if any portion of the Mortgaged Property is situated in an area, or is subsequently designated in an area, having special flood hazards (as defined in the Flood Disaster Protection Act of 1973, as amended from time to time, or any similar legislation), Grantor shall provide flood insurance to Beneficiary in an amount equal to the replacement cost of the improvements or the maximum amount of flood insurance available, whichever is the lesser.

D.      Grantor shall pay, prior to delinquency, all taxes, assessments, ground rents, maintenance charges, all other charges and impositions (herein called the "Impositions") now or hereafter assessed, levied or otherwise charged against the Mortgaged Property, or any part thereof, and shall promptly furnish proof, satisfactory in form and substance to Beneficiary, of such payment. Without the prior written express consent of Beneficiary, Grantor shall not be permitted to allow a third party or a property tax lender to finance the payment of ad valorem property taxes if any such related lien would result in a lien that is or is claimed to be superior to this Deed of Trust. Grantor shall not defer the collection of or payment of taxes on the Mortgaged Property, in the event deferral of such taxes is permitted under applicable law. In the event of the passage after date of this Deed of Trust of any law, ordinance, or regulation, deducting from the Mortgaged Property for the purposes of taxation any lien thereon, or changing in any way the laws now in force for the taxation of mortgages, deeds of trust, or indebtedness secured thereby, or the manner of the operation of any such taxes

so as to affect the interest of Beneficiary, then and in such event, Grantor shall bear and pay the full amount of such taxes, unless the payment thereof by Grantor would be unlawful or if the payment thereof would constitute usury or render the Indebtedness wholly or partially usurious. If Grantor fails to pay any such taxes and assessments, Beneficiary may pay the same, together with all costs and penalties thereon, at Grantor's expense; provided, however, that if for any reason payment by Grantor or by Beneficiary of any such new or additional taxes would be unlawful or if the payment thereof would constitute usury or render the Indebtedness wholly or partially usurious, Beneficiary, at Beneficiary's option, may declare the unpaid Indebtedness with all accrued interest thereon to be immediately due and payable, or Beneficiary, at Beneficiary' option, may pay the amount or portion of such taxes which otherwise would render the Indebtedness unlawful or usurious, in which event Grantor shall concurrently therewith pay the remaining lawful and non-usurious portion or balance of said taxes. Grantor represents and warrants that Grantor has paid all ad valorem property taxes ("Ad valorem Taxes") that are assessed or assessable against all property that Grantor owns or has an interest in which are taxable by the State of Texas or any taxing unit thereunder under the Texas Tax Code, whether said property is real, personal, mixed, tangible or intangible (the "Taxable Assets"), regardless of whether the Taxable Assets are pledged or assigned as collateral to Beneficiary. Grantor will pay all Ad valorem Taxes on the Taxable Assets before they are past due. Upon demand by Beneficiary, Grantor shall provide to Beneficiary, on or before January 31st in each year, written evidence in form and content satisfactory to Beneficiary of payment of all Ad valorem Taxes (and any and all related interest, penalties, court costs, and fees imposed by the taxing units) against Grantor's Taxable Assets and an accurate listing of all tax account numbers for all applicable taxing units which pertain to any of the Taxable Assets. Grantor represents and warrants to Beneficiary that all exemptions claimed by Grantor against any of the Ad valorem Taxes are valid exemptions under Texas law. Grantor represents and warrants to Beneficiary that Grantor has properly and accurately rendered for taxation all Taxable Assets and has filed all required rendition statements and property reports required by the Texas Tax Code. Grantor agrees that Grantor's execution of this document shall evidence Grantor's authority that any such rendition statements and/or property reports may be made available to Beneficiary by any applicable appraisal district or taxing unit.

E.     Grantor represents to Beneficiary that to Grantor's knowledge and belief no eminent domain proceedings affecting the Mortgaged Property or any part thereof are pending or threatened, nor has Grantor received notice of any proposed condemnation or other like proceeding affecting the Mortgaged Property, and no part of the Mortgaged Property has been transferred in lieu of condemnation or other like proceeding, and no Certificate of Taking for a limited or indefinite term has been issued with respect to the Mortgaged Property. In the event Grantor acquires knowledge or notice that any entity (public or private) having the right of eminent domain (herein called a "Condemning Authority") may or does intend to acquire or has threatened to institute or has instituted condemnation proceedings to acquire the Mortgaged Property, any part thereof or any interest therein, Grantor shall promptly give Beneficiary written notice of full details with regard thereto. Beneficiary shall be notified of and have the right to participate in all negotiations with any Condemning Authority and Grantor shall not grant to any Condemning Authority any right, title or interest in or to the Mortgaged Property or any part thereof (in lieu of eminent domain or condemnation proceedings or otherwise) without the prior written consent of Beneficiary to, and the joinder of Beneficiary with Grantor in, any such grant. Grantor has transferred and assigned, and does hereby transfer and assign unto Beneficiary (i) the full amount of and right to receive and be paid the full amount of all consideration and, or, damages for injury or damage to the Mortgaged Property paid or to be paid by any Condemning Authority for and, or, by virtue of the grant, in lieu of eminent domain or condemnation proceeding, of any right, title or interest in the Mortgaged Property, and (ii) all judgments, decrees and awards or payments for the taking of and, or, for injury or damage to the Mortgaged Property (including but not limited to all awards and judgments pursuant to any condemnation proceedings), including

interest thereon. Beneficiary shall apply all sums actually paid to and received by Beneficiary pursuant to any such grant, judgment, decree or award first to reimbursement of all costs and expenses (including but not limited to attorneys' fees) incurred by Beneficiary in connection with any such matters, and the balance shall be applied to the Indebtedness in such manner as Beneficiary may elect, subject to the terms hereof. Beneficiary shall have the right to participate in any such condemnation proceedings and Beneficiary is hereby authorized, in the name of Grantor, to direct the conduct of any such proceedings, compromise and settle any such proceedings and, or, to execute and deliver valid satisfactions of, and to appeal from, any award, judgment or decree in any such condemnation proceeding. In case of condemnation awards with respect to the Mortgaged Property, so long as the amount of the condemnation awards is less than $250,000.00 and Grantor is not then in default under the Loan Agreement, Beneficiary shall allow Grantor to use the proceeds for the repair of the Improvements or for the erection of new improvements in their place, but Beneficiary shall not be obligated to see to the proper application of any amounts so paid to Grantor. Except as provided for in the preceding sentence, in case of condemnation awards with respect to the Mortgaged Property, Beneficiary, at Beneficiary's option, shall be entitled to receive and retain the condemnation awards, applying the same toward payment of the Indebtedness in such manner as Beneficiary may elect, or at Beneficiary's option, Beneficiary may pay the same over wholly or in part to Grantor for the repair of the Improvements or for the erection of new improvements in their place, or for any other purpose satisfactory to Beneficiary, but Beneficiary shall not be obligated to see to the proper application of any amounts so paid to Grantor. If Beneficiary otherwise elects to allow a portion of the proceeds of any grant in lieu of threatened condemnation or condemnation proceedings to be paid to Grantor to be used in rebuilding, restoration or repair of the Mortgaged Property, then the disbursement of such proceeds shall be on such terms and subject to such conditions as Beneficiary may specify. In the event that as a result of any grant in lieu of threatened condemnation or of any such judgment, decree or award and notwithstanding application by Beneficiary of the proceeds thereof in any manner herein provided, Beneficiary nevertheless determines that the payment of the Indebtedness or performance of any obligations under this Deed of Trust is impaired, Beneficiary, without demand, notice or presentment to Grantor, may declare all of the Indebtedness immediately due and payable.

F.  Grantor shall keep every part of the Mortgaged Property maintained in at least its current condition and presenting a first-class appearance, make promptly all repairs, renewals and replacements necessary to such end, prevent waste to any part of the Mortgaged Property, and do promptly all else necessary to such end; and Grantor shall promptly discharge all claims for labor performed and material furnished therefor, and shall promptly discharge or bond over any lien of mechanics or materialmen therefor to attach to any part of the Mortgaged Property. Grantor shall guard every part of the Mortgaged Property from removal, destruction and damage, and shall not do or suffer to be done any act whereby the value of any part of the Mortgaged Property may be lessened. No building, improvement or other property now or hereafter covered by the lien or security interest of this Deed of Trust shall be removed, demolished or materially altered or enlarged, nor shall any new building or other improvements be constructed, without the prior written consent of Beneficiary. Grantor shall not release, modify or allow to terminate any easement that benefits the Mortgaged Property, and shall not initiate, join in, or consent to any change in any private restrictive covenants, zoning ordinances or other public or private restrictions limiting or defining the uses that may be made of the Mortgaged Property or any part thereof without the prior express written consent of Beneficiary which consent shall be unreasonably withheld, delayed or conditioned. Grantor at all times shall comply with and perform all obligations and maintain the Mortgaged Property in compliance with, and shall not cause or permit the Mortgaged Property to be in violation of any obligation imposed by any applicable environmental, air quality, water, zoning, planning, building, health, fire, traffic, safety, wetlands, endangered species, coastal and other governmental or regulatory rules, laws,

statutes, regulations, ordinances and restrictive covenants relating to the Mortgaged Property (collectively the "Applicable Governmental Law") and the existence, use and operation thereof. Grantor represents and warrants to Beneficiary that the Mortgaged Property does currently comply with and its intended use shall comply fully with (and no notices of violation have been received in connection with) Applicable Governmental Law with respect to the Mortgaged Property. Grantor represents and warrants to Beneficiary that zoning approval (if applicable) for the Property is not dependent upon the ownership or use of any other property or rights which are not included within the definition of the Property and covered by this Deed of Trust. In the event Grantor discovers any previously unknown or undiscovered violation of Applicable Governmental Law, Grantor shall immediately notify Beneficiary in writing and Grantor shall immediately take any such corrective action as may be necessary to bring the premises into compliance with Applicable Governmental Law. Beneficiary and Beneficiary's agents or representative shall have access to the Mortgaged Property at all reasonable times upon reasonable notice in order to inspect same and verify Grantor's compliance with Grantor's duties and obligations under this document. Grantor shall not, without the prior written consent of Beneficiary, engage in or permit any mining or drilling activities on the Land.

G.      If, without the prior written consent of Beneficiary, which consent may be given or withheld by Beneficiary in the exercise of its sole and absolute discretion, (a) all or any part of the Mortgaged Property, or any interest therein, is sold, transferred or otherwise conveyed, or (b) any contract or instrument for the sale, transfer or conveyance of all or any part of the Mortgaged Property, or any legal, equitable, beneficial or other interest therein, is entered into, or (c) [intentionally deleted], or (d) any lien or encumbrance is hereafter created or arises covering all or any part of the Mortgaged Property, or any interest therein (including but not limited to a tax lien or transfer of a tax lien as contemplated by Texas Tax Code Chapter 32, or as allowed to property tax lenders under Texas Finance Code Chapter 351), or all or any part of the Mortgaged Property, or any interest therein, is hereafter pledged or encumbered in any manner, or (e) any easement, right-of-way or any other right whatsoever with respect to the Mortgaged Property (excluding leasing activity occurring as a result of the exercise of sound business judgment of Grantor and in accordance with local market leasing standards), is hereafter created or granted, or released, modified or allowed to terminate, or (f) all or any portion of the Mortgaged Property, or any interest therein, is leased or possession thereof is transferred, for any purpose, including, without limitation, one or more oil, gas or other mineral leases, for a period longer than one (1) year (excluding leasing activity occurring as a result of the exercise of sound business judgment of Grantor and in accordance with local market leasing standards) (any of the above being hereinafter called a "Transfer" or collectively "Transfers"), and irrespective of whether any such Transfers are done directly or indirectly, voluntarily or involuntarily, by written instrument (whether or not filed for record), by operation of law or otherwise, then Beneficiary may, at its option, declare all or any part or parts of the Indebtedness immediately due and payable, and Beneficiary shall be entitled to exercise any and all rights and remedies provided under this Deed of Trust and under any other document securing payment of the Indebtedness or executed in connection therewith. Grantor shall immediately notify Beneficiary in writing of any Transfer (herein called "Transfer Notice") by certified mail, postage prepaid, return receipt requested, addressed to Beneficiary at the address set out herein (or to such other address as Beneficiary may have designated by notice to Grantor) or by any other method of notice in accordance with Article VIII of the Loan Agreement. The consent of Beneficiary to any Transfer may be given or withheld for any reason in the exercise of Beneficiary's sole and absolute discretion, unless in connection with the Transfer all of the Indebtedness as determined by Beneficiary shall be paid in full. Without limiting the foregoing or being limited thereby, Beneficiary's consent (1) may be withheld even though the Transfer will not (i) jeopardize or impair the security for the Indebtedness or Beneficiary's ability or right to enforce its liens and security interests against such security, or (ii) increase the risk of default in the payment of Indebtedness hereunder, or (iii) increase in the likelihood that Beneficiary

may have to resort to other collateral for the payment of the Indebtedness, or (iv) release or discharge any person or party liable, directly or indirectly, for the payment of the Indebtedness, and (2) may be conditioned upon, any one or more of, (a) an increase in the rate of interest payable on the Indebtedness or any part thereof to a rate acceptable to Beneficiary or the rearrangement or acceleration of the payment of the Indebtedness or any part thereof, (b) the payment to Beneficiary of a transfer fee, in an amount determined by Beneficiary, and all costs and expenses, including, without limitation, attorneys' fees, incurred by Beneficiary in connection with the Transfer or the giving of its consent, (c) the assumption or guarantee of the Indebtedness or any part thereof, by any party determined by Beneficiary to be necessary or desirable, (d) the payment of any part of the Indebtedness whether then otherwise due or not and regardless of whether the payment source would be from Grantor, Borrower, any other person liable for the Indebtedness or from any or all proceeds from the Mortgaged Property, (e) the pledge of additional collateral to secure the payment thereof, or (f) the amendment, modification, rearrangement or other change in any of terms and provisions of any document evidencing the Indebtedness, or any part thereof, or in any of the terms and provisions of any document securing the payment of the Indebtedness or any part thereof. The option of Beneficiary may be exercised at any time after the occurrence of the Transfer and until one (1) year after receipt by Beneficiary of said Transfer Notice; and if no such Transfer Notice is received by Beneficiary, then there shall be no limitation on the period of time within which Beneficiary may exercise said option.

H.   In the event the ownership of the Mortgaged Property or any part thereof becomes vested in a person other than Grantor, Beneficiary, at Beneficiary's option, may deal with such successor or successors in interest with reference to this Deed of Trust, the Mortgaged Property and the Indebtedness in the same manner and to the same extent as with Grantor, without in any way vitiating or discharging Grantor's liability hereunder or upon the Indebtedness.  No sale of the Mortgaged Property and no forbearance on the part of Beneficiary, or extension of the time for the payment of the Indebtedness, shall operate to release, discharge, modify, change or affect, either in whole or in part, any liability of Grantor or the liability of any guarantors or sureties of Grantor or of any other party liable for payment of the Indebtedness.

I.   In the event any part of the Indebtedness is not secured by this Deed of Trust, all payments hereafter made by Grantor or any other person shall be applied first to the part of the Indebtedness not so secured until such part is paid in full. In the event any lien or security interest securing part of the Indebtedness does not cover or apply to all of the Mortgaged Property, then all payments paid hereunder by Grantor or any other person shall be applied first to the part of such Indebtedness which is not secured by all of the Mortgaged Property and then to that part which is so secured by all of the Mortgaged Property.

J.   Grantor hereby unconditionally and presently assigns to Beneficiary all presently owing or future rents, royalties, issues, profits, revenue, income and other benefits derived or arising from (i) the Mortgaged Property, or (ii) the use or enjoyment of any portion thereof or interest therein, or (iii) any lease or agreement pertaining thereto (all of which being collectively hereinafter called "Rents and Profits"), such assignment being upon the following terms: (a) until receipt from Beneficiary of notice of the occurrence of a Default (as defined herein), each lessee may pay Rents and Profits directly to Grantor, but after Default Grantor covenants to hold all Rents and Profits so paid in trust for the use and benefit of Beneficiary; (b) upon receipt from Beneficiary of notice that a Default exists, each lessee is hereby authorized and directed to pay directly to Beneficiary all Rents and Profits thereafter accruing; and the receipt of Rents and Profits by Beneficiary shall be a release of such lessee's obligation to pay Rents and Profits to the extent of all amounts so paid; (c) Rents and Profits so received by Beneficiary shall be applied by Beneficiary first to the expenses, if any, of collection and then in accordance with Section 1.03 of this Deed of Trust; (d) without impairing its rights hereunder, Beneficiary may, at its option, at any time and from time to

time, release to Grantor Rents and Profits so received by Beneficiary, or any part thereof; (e) Beneficiary shall not be liable for its failure to collect, or its failure to exercise diligence in the collection of Rents and Profits, but shall be accountable only for Rents and Profits that it shall actually receive; and (f) the assignment contained in this Section 2.01 J. shall terminate upon the release of this Deed of Trust by Beneficiary, but no lessee shall be required to take notice of termination until a copy of such release shall have been delivered to such lessee. As between Beneficiary and Grantor, and any person claiming through or under Grantor, other than any lessee who has not received notice of Default pursuant to Section 2.01 J. (b), the assignment contained in this Section 2.01 J. is intended to be unconditional and presently effective and the provisions of Sections 2.01 J. (a) and 2.01 J. (b) are intended solely for the benefit of each lessee and shall never inure to the benefit of the Grantor or any person claiming through or under Grantor, other than a lessee who has not received such notice. It shall never be necessary for Grantor to institute legal proceedings of any kind whatsoever to enforce the provisions of this Section 2.01 J. No reference in this 2.01 J to leases or rents shall be deemed to allow any Transfer in violation of Section 2.01 G of the Deed of Trust.

K.  In addition to the foregoing, on any such Default, Beneficiary shall also have the right, but no obligation (i) either directly or through an action for forcible entry and detainer or other legal action, to take exclusive possession of the Mortgaged Property, remove all persons and property therefrom without being guilty of trespass or incurring any liability to Grantor or Grantor's tenants or assigns, (ii) rent the same for the account of Grantor, and employ such agents and attorneys as Beneficiary may deem necessary with respect thereto, and (iii) take possession of all books and records of Grantor that relate to the Mortgaged Property or any part thereof. Further, on any such Default, Beneficiary shall have the right, but no obligation, to have a receiver appointed to take possession of the Mortgaged Property and to collect the Rents and Profits, all without any notice to Grantor and without regard to the solvency or insolvency of Grantor or any other person liable for any part of the Indebtedness and without any showing as to the inadequacy of the Mortgaged Property as security. Beneficiary, or Beneficiary's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Mortgaged Property before or after giving notice of default to Grantor. However, Beneficiary, or Beneficiary's agents or a judicially appointed receiver, may do so at any time when a default occurs. The rights provided for in this Section 2.01, are cumulative of all other rights of Beneficiary, including those under Texas Property Code Chapter 64 and any separate Assignments of Rents, and no action of Beneficiary hereunder shall in any way minimize, subordinate or affect in any way the liens, security interests or rights or remedies hereunder of Beneficiary or any rights of a purchaser of the Mortgaged Property at a sale hereunder. Beneficiary shall not be deemed to be a mortgagee in possession prior to taking possession of the Mortgaged Property and shall not be obligated to perform or discharge any obligation of Grantor under any lease or other agreement, appear in or defend any action or proceeding relating to the same or the Mortgaged Property, to take any action hereunder, or to expend any money, incur any expenses or perform or discharge any obligation, duty or liability under any lease or other agreement, or assume any obligation or responsibility for any security or other deposit delivered to Grantor by any lessees and not delivered to Beneficiary, nor shall Beneficiary be liable in any way for any injury or damage to any person or property sustained by any person, or other legal entity in or about the Mortgaged Property; and Grantor hereby agrees to indemnify Beneficiary and hold Beneficiary harmless against and from any and all liability, loss or damage which Beneficiary may or might incur under any lease or other agreement or under or by reason of this Deed of Trust and of and from any and all claims and demands whatsoever which may be asserted against Beneficiary by reason of any alleged obligation or undertaking on its part to perform or discharge any of the terms of any lease or other agreement (excluding Beneficiary's gross negligence and willful misconduct); and should Beneficiary incur any such liability, loss or damage under any lease or other agreement or under or by reason of this Deed of Trust, or in defense against any such claims or demands, the amount thereof, including all costs,

expenses and reasonable attorneys' fees, together with interest thereon at the maximum lawful rate of interest permitted by applicable law, shall be secured hereby, and Grantor shall reimburse Beneficiary therefor immediately upon demand.

L.    Grantor will not, without Beneficiary's consent, (i) execute an assignment of any of its right, title or interest in the Rents and Profits, or (ii) unless required to do so by the terms of the lease, terminate or consent to the cancellation or surrender of any lease of the Mortgaged Property or any part thereof, now or hereafter existing, (iii) modify any lease of the Mortgaged Property or any part thereof so as to reduce the unexpired term thereof, to decrease the amount of rent payable thereunder, or release or discharge, in whole or in part, the lessee or any guarantor of lessee's liability under the lease from any obligation under the lease, or (iv) accept prepayment of any installments of rent to become due under any of such leases in excess of one month, except prepayments in the nature of security for the performance of the lessee thereunder, or (v) in any other manner impair the value of the Mortgaged Property or the security of this Deed of Trust. Grantor shall not execute any lease of all or any portion of the Mortgaged Property except for leases that contemplate actual occupancy by the lessee thereunder, and will at all times promptly and faithfully perform, or cause to be performed, each covenant, condition and agreement contained in each lease of the Mortgaged Property now or hereafter existing, on the part of lessor thereunder to be kept and performed. Grantor shall furnish to Beneficiary, within ten (10) days after a request by Beneficiary to do so, a written statement containing the names of all lessees of the Mortgaged Property, the terms of their respective leases, the space occupied and the rentals payable thereunder, and such other information relative to such lessees and leases as Beneficiary may request, together with copies of any and all written leases then existing which affect or pertain to the Mortgaged Property.

M.    To the extent that any advance of funds by Beneficiary is used to pay any indebtedness secured by an outstanding lien, security interest, charge or encumbrance against the Mortgaged Property or any part thereof, such funds have been advanced by Beneficiary at Grantor's request, shall constitute a part of the Indebtedness, and Beneficiary shall be subrogated to any and all rights, power, equities, liens and security interests owned or granted to any owner or holder of such indebtedness, irrespective of whether said security interests, liens, charges or encumbrances are transferred to Beneficiary or are released of record.

N.    Grantor agrees that Grantor shall execute and deliver such other and further documents and do and perform such other acts as may be reasonably necessary and proper in Beneficiary's judgment to carry out the intention of the parties as herein expressed and to effect the purposes of this Deed of Trust and the loan transaction referred to herein. Without limitation of the foregoing, Grantor agrees to execute and deliver such documents as may be necessary to cause the liens and security interests granted hereby to cover and apply to any property placed in, on or about the Mortgaged Property in addition to, or replacement or substitution for, any of the Mortgaged Property, and to execute and deliver such documents requested by Beneficiary as Beneficiary may deem necessary or desirable to transfer to Beneficiary the Utilities Rights.

O.    In order to further secure the Indebtedness, Grantor shall pay to Beneficiary, upon Beneficiary's request, in addition to all amounts of principal, interest and other sums required to be paid by the terms of the Note, this Deed of Trust or any other instruments evidencing, securing or otherwise relating to the Indebtedness, on the first day of each calendar month hereafter until the Indebtedness shall be paid in full, a sum determined from time to time by Beneficiary to be equal to 1/12th of (i) all Impositions, as herein defined, and (ii) all premiums for insurance required to be maintained in force and effect by Grantor pursuant to the foregoing terms hereof. Beneficiary shall not be required to post any bond for any such amount so deposited with it by Grantor and shall not be required to pay any interest or other compensation for or on account of any such sums so deposited with it. Likewise, Beneficiary

shall not be liable for any failure to pay any such taxes or other charges or premiums for which deposit has been made with it pursuant to the foregoing provisions. Beneficiary may use and invest any such sums so deposited with it without any duty or obligation to compensate Grantor for the use thereof or for any profit or benefit therefrom realized by Beneficiary. If the amount of the deposits paid to Beneficiary are insufficient to pay all of the Impositions and insurance premiums as and when same become due, Beneficiary may, but shall have no obligation to notify Grantor of the amount of such deficiency and, if so notified, Grantor shall deposit the full amount necessary to satisfy such deficiency with Beneficiary within five (5) days after its receipt of such notice of deficiency. Any sale and conveyance of the Mortgaged Property shall serve as a transfer by Grantor to the grantee of the Mortgaged Property of all of its rights to any sums then held by Beneficiary pursuant to the terms of this paragraph. Beneficiary shall have the right, at its option and without being required to do so, to advance its own funds for the purpose of paying any of the Impositions or insurance premiums, and any such amounts so paid shall bear interest from the date advanced at the maximum lawful rate of interest permitted by applicable law, now or hereafter mentioned, until the full amount thereof shall be paid in full and all such sums so advanced shall constitute a part of the Indebtedness and shall be secured by this Deed of Trust. Grantor hereby grants to Beneficiary a security interest in and right of setoff against any and all funds so held by Beneficiary in order to additionally secure the payment and performance of the Indebtedness and Grantor's observance of the covenants in this Deed of Trust and any other instruments securing the payment of the Indebtedness or relating thereto, and Beneficiary shall be entitled, at any time and without notice, demand or presentment to Grantor, to set off all or any part of such funds in said account against any sums then due and payable on the Indebtedness in such manner, order or priority, as determined by Beneficiary. In the event of a Default resulting in foreclosure, such conversion of such amounts so deposited with Beneficiary to the exclusive and sole ownership of Beneficiary shall be automatic without the necessity of any action on the part of the Beneficiary.

P.  Grantor shall keep proper books and records of accounts in accordance with generally accepted accounting principles, or other comprehensive basis of accounting, applied on a consistent basis, except as may be disclosed in the footnotes to such financial statements. Beneficiary shall have the right to examine the books of account of the Grantor, to discuss the affairs, finances and accounts of the Grantor and also the Mortgaged Property and Grantor's operation thereof, and to be informed as to the same by Grantor's officers or other duly authorized representatives, all at such times designated by Beneficiary. Grantor shall further furnish from time to time to Beneficiary, upon request, copies of balance sheets of Grantor, copies of statements of income and retained earnings of Grantor, and copies of statements of changes in financial position of Grantor, covering such periods of time and containing such reasonable detail as Beneficiary shall from time to time request, prepared and\or certified by a person or firm acceptable to Beneficiary.

Q.  Grantor represents and agrees that if Grantor is an individual, no part of the Mortgaged Property constitutes or shall constitute any part of Grantor's business, residential, urban or rural homestead.

R.  Grantor, at any time and from time to time, shall furnish promptly upon request, a written statement or affidavit, in such form as may be required by Beneficiary, stating the unpaid balance of the Note and that there are no offsets or defenses against full payment of the Note and performance of the terms hereof or of any document securing payment of the Note or executed in connection therewith, or if there are any such offsets and defenses, specifying them in reasonable detail.

S.  Grantor shall comply with all laws, ordinances, rules and regulations of all governmental or quasi-governmental agencies relating to the Mortgaged Property or any part thereof and shall secure and maintain in full force and effect all contracts, franchises, permits and licenses

EXHIBIT NO. 3

EX. 3-012

necessary or desirable for the construction and/or the efficient operation of the Improvements and/or business conducted on the Mortgaged Property.

T.    Grantor shall reimburse Beneficiary and Trustee for all reasonable attorneys' fees and other reasonable out-of-pocket costs and expenses of any kind which either of them may incur in connection with any collection, foreclosure or any legal proceedings or matters related to the Indebtedness including, but not limited to collection, judicial or non-judicial foreclosure, condemnation proceedings, probate proceedings or bankruptcy proceedings and reasonable out-of-pocket costs incurred relating to appraisals, environmental reports, inspection reports, title searches, ad valorem property taxes and insurance.

U.    Grantor shall not, without the prior written consent of Beneficiary, engage in or permit any person to conduct geologic and geophysical surveys, or investigate, explore, prospect, drill, mine for or produce, store, treat or transport oil, gas and all other minerals or engage in activities related thereto on the Land.

V.    Grantor hereby agrees that Beneficiary shall be entitled to obtain at any time, and from time to time, when deemed appropriate by Beneficiary (but no more frequently than annually if there is no default), a current appraisal of the Mortgaged Property from an appraiser acceptable to Beneficiary. The appraisals shall be at the sole cost and expense of Grantor.

W.    The terms "hazardous waste", "hazardous substance", "disposal", "release", and "threatened release", as used in this Deed of Trust, shall have the same meanings as set forth in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 49 U.S.C. Section 6901, et. seq., or other applicable state or Federal laws, rules, or regulations adopted pursuant to any of the foregoing. The terms "hazardous waste" and "hazardous substance" shall also include, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos. Grantor represents and warrants to Beneficiary that: (a) during the period of Grantor's ownership of the Mortgaged Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous waste or substance by any person on, under, or about the Mortgaged Property; (b) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Beneficiary in writing, (i) any use, generation, manufacture, storage, treatment, disposal, release, or threatened release of any hazardous waste or substance by any prior owners or occupants of the Mortgaged Property or (ii) any actual litigation or litigation threatened in writing or written claims of any kind by any person relating to such matters; and (c) except as previously disclosed to and acknowledged by Beneficiary in writing, (i) neither Grantor nor any tenant, contractor, agent or other authorized user of the Mortgaged Property shall use, generate, manufacture, store, treat, dispose of, or release any hazardous waste or substance on, under, or about the Mortgaged Property and (ii) should any such activity occur, it shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation those laws, regulations, and ordinances described above. Grantor further represents and warrants to Beneficiary that Grantor has no knowledge of or reason to believe that there have been or currently are any underground storage tanks located under the Mortgaged Property. Grantor authorizes Beneficiary and its agents to enter upon the Mortgaged Property to make such inspections and tests as Beneficiary may deem appropriate, from time to time, to determine compliance, or the continued compliance of the Mortgaged Property with this section of this Deed of Trust or to verify the then current environmental condition of the Mortgaged Property. Any inspections or tests made by Beneficiary shall be at Grantor's sole cost and expense and shall be for Beneficiary's purposes only and shall not be construed to create any responsibility or liability on the part of

Beneficiary to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Mortgaged Property for hazardous waste. Grantor hereby (a) releases and waives any future claims against Beneficiary for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless Beneficiary against any and all claims, losses, liabilities, damages, penalties, and expenses which Beneficiary may directly or indirectly sustain or suffer resulting from a breach of this section of this Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to or during Grantor's ownership or interest in the Mortgaged Property, whether or not the same was or should have been known to Grantor. The provisions of this section of this Deed of Trust, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and release of the lien of this Deed of Trust and shall not be affected by Beneficiary's acquisition of any interest in the Mortgaged Property, whether by foreclosure or otherwise.

X.  Grantor represents and warrants to Beneficiary that during Grantor's ownership of the Mortgaged Property neither Grantor nor any other person has committed any act or omission, or has consented to any act or omission, with respect to the Mortgaged Property, which would afford the federal government or any state or local government the right or remedy of forfeiture of all or any part of the Mortgaged Property, any other collateral securing the Note or the Indebtedness described herein, or any property (including but not limited to money paid) delivered to Beneficiary or any other party in performance of Grantor's obligations arising in connection with the Indebtedness, or any interest in or income, profits or proceeds of any of the property described in this sentence (the Mortgaged Property and such property, income, profits or proceeds collectively in this paragraph being referred to as the "Assets"). Grantor agrees not to engage in any act or permit any act or omission to exist which would afford the federal government or any state or local government the right or remedy of forfeiture of all or any part of the Assets. Without limiting the generality of the preceding sentence, the filing of any charges or the commencement or threatened commencement of any proceeding against Grantor or any other person liable on the Indebtedness, or against any of the Assets or anyone having an interest in, or use or possession of any of the Assets, which allows or could afford the federal government or any state or local government the right or remedy to forfeit any of such Assets, shall constitute, at Beneficiary's election, an event of default under this Deed of Trust and all Indebtedness described herein and secured hereby. Grantor shall protect, indemnify and hold harmless Beneficiary, its directors, officers, employees, agents, attorneys, successors and assigns from and against any and all loss, damage, cost, expense or liability (including attorneys fees and costs) directly or indirectly arising out of or attributable to any failure of the representations or breach of any agreement set forth in this paragraph.

2.02  If, while this Deed of Trust is in force, the title of Trustee to the Mortgaged Property, or any part thereof, or any interest therein, shall be endangered or shall be attacked directly or indirectly, Grantor hereby authorizes Beneficiary, at Grantor's cost and expense, to take all necessary and proper steps for the defense of said title, including the employment of counsel, the prosecution or defense of litigation, and the compromise or discharge of any such claims made against said title.

2.03  All costs, expenses, and attorneys' fees incurred by Grantor, or by Beneficiary on Grantor's behalf, in performing and complying with Grantor's covenants herein or which are the obligations of Grantor herein shall be borne solely by Grantor. Beneficiary shall have the right, at its option and without being required to do so, to advance its own funds for the purpose of paying any of the Grantor's obligations or liabilities herein. All out-of-pocket costs, expenses and reasonable attorney's fees incurred by Beneficiary relating to or otherwise in pursuance of any covenant herein contained shall be due and payable by Grantor to Beneficiary upon demand at the place where the Note is payable and all of such sums shall bear interest at the maximum lawful rate of interest permitted by applicable law, now or hereafter enacted, to be charged to and paid by Grantor from and after the date of Beneficiary's

making such payment. The sum of each such payment shall be added to the Indebtedness and thereafter shall form a part of the same and shall be secured by this Deed of Trust. Beneficiary shall be automatically subrogated to all the rights of the person, corporation, or body politic receiving such payment made by Beneficiary. Grantor does hereby appoint Beneficiary as its agent and attorney-in-fact to do, make, procure, execute and deliver, in the name of and on behalf of Grantor, without notice to Grantor, all acts, things, moneys, assignments, affidavits, financing statements, instruments and assurances as Beneficiary, from time to time, may deem proper or necessary in order to protect, assure or enforce its interests as created by and provided under this Deed of Trust or any other document evidencing, securing payment or otherwise relating to the Indebtedness. The power of attorney herein granted to Beneficiary shall be deemed to be coupled with an interest, shall not terminate on disability of Grantor, and may not be revoked or terminated until the Indebtedness shall have been paid in full.

2.04    Grantor, on behalf of Grantor and Grantor's heirs, devisees, personal representatives, successors or assigns, hereby waives to the full extent permitted by law, any right to assert any statute or rule of law pertaining to the marshaling of assets, a sale in inverse order of alienation, the exemption of homestead, the administration of estates of incompetents or decedents, or any other matter whatever, to defeat, reduce or affect the lien, security interest or other rights of Beneficiary under the terms hereof.

2.05    In the event that there be a trustee's sale hereunder, and, if at the time of such sale, Grantor, or Grantor's heirs, personal representatives, successors or assigns, is or are occupying the Mortgaged Property so sold, each and all shall immediately surrender and deliver possession of the Mortgaged Property so sold to the purchaser at such sale, and in the event of their failure to do so, they shall thereupon become the tenant of the purchaser at such sale, which tenancy shall be a tenancy at sufferance, terminable at the will of such purchaser as landlord, at a rental per day determined by such purchaser, such rental to be due and payable daily to such purchaser. An action of forcible entry and detainer and any other legal proceedings may be brought by any purchaser if the tenant holds over after a demand in writing for possession of any of the Mortgaged Property; and this Deed of Trust and the trustee's deed delivered at such sale shall constitute the lease and agreement under which any such tenant's possession arose.

2.06    The covenants herein contained shall inure to the benefit of Beneficiary and Trustee, their respective heirs, personal representatives, successors and assigns, and shall be binding upon the respective heirs, personal representatives, successors and assigns of Grantor and any other party now or hereafter liable for payment of the Indebtedness, but nothing in this paragraph shall constitute an authorization for Grantor to sell, transfer, lease or in any way dispose of the Mortgaged Property or any part thereof if otherwise prohibited by any of the terms hereof.

2.07    Pursuant to Texas Finance Code § 307.052, this Deed of Trust shall evidence notice by Beneficiary to Grantor of and Grantor's agreement to the following:

A.    THE GRANTOR IS REQUIRED TO (i) KEEP THE COLLATERAL INSURED AGAINST DAMAGE IN THE AMOUNT THE BENEFICIARY SPECIFIES; (ii) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER; AND (iii) NAME THE BENEFICIARY AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF A LOSS;

B.    THE GRANTOR MUST, IF REQUIRED BY THE BENEFICIARY, DELIVER TO THE BENEFICIARY A COPY OF THE POLICY AND PROOF OF THE PAYMENT OF THE PREMIUMS; AND,

C.    IF THE GRANTOR FAILS TO MEET ANY REQUIREMENT LISTED IN PARAGRAPH (A) OR (B), THE BENEFICIARY MAY OBTAIN COLLATERAL

EXHIBIT NO. 3                                    EX. 3-015

PROTECTION INSURANCE ON BEHALF OF THE GRANTOR AT THE GRANTOR'S EXPENSE.

D.      Nothing in this notice shall impair or be deemed a waiver by Beneficiary of any of Beneficiary's rights under Chapters 1 through 9 of the Texas Business and Commerce Code, or Beneficiary's other remedies, rights, or options available to Beneficiary under any law, rule, regulation, ruling, court order or agreement.

E.      Grantor will be given written notice in accordance with applicable Texas law if the Beneficiary places collateral protection insurance during the term of the Indebtedness on Grantor's behalf and at Grantor's expense. Insurance placed by the Beneficiary may be considerably more costly than comparable insurance Grantor could obtain for Grantor's own account and may not satisfy any need Grantor may have for property damage coverage or any mandatory liability insurance requirements imposed by applicable law. Any amounts disbursed by the Beneficiary to place collateral protection insurance in connection with the Indebtedness would become additional debt and will be secured by this Deed of Trust or other security interest instrument signed by Grantor securing the Indebtedness, shall bear interest at the applicable note interest rate of the Indebtedness from the date of disbursement of any such amounts until paid, and will be payable with such interest thereon upon notice to Grantor from Beneficiary requesting payment.

## ARTICLE III. DEFAULT AND REMEDIES

3.01    The term "Default" or "Event of Default" as used in this Deed of Trust shall mean the occurrence of one or more of the following:

A.      After applicable notice and failure to cure as provided for in the Loan Agreement, Grantor shall fail, refuse or neglect to promptly pay or cause there to be paid all Indebtedness due and payable under the Note, under this Deed of Trust or under any instrument relating to or securing the payment of the Indebtedness or any part thereof, as the same shall become due and payable;

B.      After applicable notice and failure to cure as provided for in the Loan Agreement, Grantor shall fail to keep and perform (or shall fail to furnish evidence of the performance of) any of the covenants or agreements contained herein or in the Note or in any other document evidencing, securing payment of, or otherwise relating to, the Indebtedness (collectively the "Loan Documents") including but not limited to the Loan Agreement of even date herewith by and between Borrower and Beneficiary;

C.      Grantor, or any other person liable for the Indebtedness, or any portion thereof, files a voluntary petition in bankruptcy or for corporate reorganization, makes an assignment for the benefit of any creditor, or is the subject of an Order of Relief entered in any bankruptcy, insolvency, reorganization, rehabilitation or other such proceeding;

D.      The Mortgaged Property or any property owned by a person now or hereafter liable for payment of the Indebtedness, or any interest therein or portion thereof, is placed under control or in the custody of any court or receiver;

E.      [Intentionally deleted];

F.      Dissolution, termination, cessation of business, merger or similar event affecting Grantor or any other party now or hereafter liable for payment of the Indebtedness or any part thereof or any material adverse change in the business, operations or financial condition of Grantor or any other party now or hereafter liable for payment of the Indebtedness or any part thereof;

EXHIBIT NO. 3                                                        EX. 3-016

G.  [Intentionally deleted];

H.  If, during the loan application process, Grantor or any persons or entities acting at the direction of Grantor or with Grantor's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Beneficiary (or failed to provide Beneficiary with material information) in connection with the Indebtedness; or if Beneficiary discovers that any statement, representation, or warranty in the Note, this Deed of Trust or in any other document or instrument delivered to or relied upon by Beneficiary in connection with the Indebtedness is false, misleading or erroneous in any respect;

I.  Grantor admits in writing Grantor's inability to pay its debts generally as they become due;

J.  Grantor abandons any of the Mortgaged Property;

K.  If anyone (besides Beneficiary) applies for or consents to the appointment of a custodian, trustee, or liquidator of Grantor (or any of them) or of any guarantor of or surety for the performance of any obligation hereunder or of all or a substantial part of Grantor's assets;

L.  Grantor institutes or voluntarily is or becomes a party to any judicial proceedings intended to effect a discharge of the debts of Grantor (or any of them) or of any guarantor or surety, in whole or in part, or to effect a postponement of the maturity or the collection thereof or to effect a suspension of any of the rights or powers of Beneficiary granted in the Note, this Deed of Trust or in any other document or instrument evidencing or securing payment of the Indebtedness;

M.  An order, judgment or decree shall be entered by any court of competent jurisdiction appointing a trustee, custodian or liquidator of Grantor (or any of them) or of any guarantor or surety or of all or any substantial part of the assets of Grantor (or any of them) or any such guarantor or surety, or if Grantor (or any of them) or any guarantor or surety shall fail to pay any money judgment against it at least ten (10) days prior to the date on which the assets of Grantor (or any of them) or any such guarantor or surety may be sold to satisfy such judgment; or

N.  If Grantor (or any of them) or any such guarantor or surety shall fail to have discharged within a period of thirty (30) days after the commencement thereof any attachment, sequestration, or similar proceeding against any assets of Grantor (or any of them) or of any guarantor or surety, or if any of the assets of Grantor (or any of them) or of any such guarantor or surety are levied upon, sequestered, garnished, attached or otherwise seized by or through any similar process.

Upon the occurrence of any Event of Default, Beneficiary, at Beneficiary's option, and without further notice of intention to accelerate, notice of acceleration or notice of any kind or nature whatsoever, demand or presentment, all of which are hereby expressly waived by Grantor and any and all other parties liable with respect to the Indebtedness or any part thereof, to the extent not prohibited by law, may declare the entire unpaid Indebtedness (other than interest therein which has not yet accrued) immediately due and payable, whereupon it shall be so due and payable, and may exercise or invoke all rights and remedies granted hereunder or in any other instrument securing payment of or relating to the Indebtedness and all rights and remedies available at law or in equity.

3.02  In addition, upon the occurrence of any Event of Default, Beneficiary shall have the option, without declaring the entire Indebtedness due, to proceed with foreclosure either through the courts or by directing Trustee to proceed as if under a full foreclosure, conducting the sale as hereinafter provided. Such sale may be made subject to the unmatured portion of the Note or other Indebtedness without any effect thereon, but as to such unmatured portion of the Note or other Indebtedness, this Deed of Trust shall remain in full force and effect just as though no sale had been made under the provisions

EXHIBIT NO. 3                                                    EX. 3-017

of this paragraph. In addition, several sales may be made hereunder without exhausting the right of sale for any unmatured portion of the Note or other Indebtedness, it being the intention of the parties hereto to provide for a foreclosure and sale of the security for any matured portion of the Indebtedness without exhausting the power to foreclose and to sell the security for any other portion of the Indebtedness whether matured at the time or subsequently maturing.

3.03   Upon the occurrence of any Event of Default, Grantor hereby authorizes and empowers Trustee, at any time thereafter, at the request of Beneficiary (which request is hereby conclusively presumed), to sell to any third party, including Beneficiary, at public sale the Mortgaged Property or any part thereof, or any interest therein, to the highest bidder, for cash, at the area of the county courthouse in which the Land (or any part thereof to be sold) is situated, as designated by the Commissioner's Court of such county as the area in which foreclosure sales are to take place, as evidenced by the designation of such area recorded in the real property records of the county in which the Land (or any part thereof to be sold) is situated, and, if no area is so designated, then in the area designated in the Notice of Sale as being the area for foreclosure sales to take place, between the hours of 10:00 a.m. and 4:00 p.m. of the first Tuesday of any month, after Trustee, or Trustee's agent, has given notice of the time, place and terms of said sale, and the property to be sold (such property in this Section 3.03 being called the "Posted Mortgaged Property"), by posting (or by having any person acting for Trustee post) for at least twenty-one (21) days preceding the date of the sale, written notice of the proposed sale at the Courthouse door of said county in which the Posted Mortgaged Property is situated and as otherwise required by the applicable provisions of the Texas Property Code, as then amended. If the Posted Mortgaged Property is in more than one county, one such notice of sale shall be posted at the courthouse door of each county in which part of the Posted Mortgaged Property is situated and the Posted Mortgaged Property may be sold in any one of such counties, and the notice so posted shall designate in which county the Posted Mortgaged Property shall be sold. In addition to such posting of notice, Trustee (or any person acting for Trustee), at least twenty-one (21) days preceding the date of the sale, shall file a copy of such written notice of the proposed sale in the office of the county clerk of the county in which the sale is to be made, and if the Posted Mortgaged Property is situated in more than one county, a copy of such written notice of sale shall be so filed in the office of the county clerk of each county in which any of the Posted Mortgaged Property is situated. In addition to such posting and filing of notice, Beneficiary (or any person acting for Beneficiary), at least twenty-one (21) days preceding the date of the sale, shall serve written notice of the proposed sale by certified mail on each debtor obligated to pay the Indebtedness according to records of Beneficiary and as otherwise required by the applicable provision of the Texas Property Code, as then amended. Service of such notice shall be completed upon deposit of the notice, enclosed in a postpaid wrapper, properly addressed to such debtor at said debtor's most recent address as shown by the records of Beneficiary, in a post office or official depository under the care and custody of the United States Postal Service. The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service. Grantor agrees that no notice of any sale other than as set out in this paragraph need be given by Trustee, Beneficiary or any other person. Grantor designates as Grantor's address for the purposes of such notice, the address set out below, and each other debtor, if any, obligated to pay the Indebtedness agrees that such address shall likewise constitute such other debtor's address for such notice, unless a different address is designated by such other debtor; no change of such address or designation of a different address shall be binding on Beneficiary until thirty (30) days after Beneficiary has received notice of such change sent to Beneficiary by certified mail postage prepaid, return receipt requested, addressed to Beneficiary at the address for Beneficiary set out herein (or to such other address as Beneficiary may have designated by notice given as above provided to Grantor and such other debtors). Any change of address of Beneficiary shall be effective three (3) business days after written notice thereof addressed to Grantor and sent by regular United States mail, postage prepaid, has been deposited in the care and custody of the United States Postal Service. Grantor authorizes and empowers Trustee to sell the Posted Mortgaged Property, or any part thereof (which partial sale shall be governed by Section 3.07 hereof) or any interest therein, as an entirety or in parcels, by one sale or by several sales held at one time or at different times as the Trustee shall deem advisable at the time of sale, and to execute and deliver to the purchaser or purchasers thereof good and sufficient deed or deeds of conveyance thereof and bills of sale with covenants of general

warranty binding on Grantor and Grantor's heirs, personal representatives, successors and assigns. Trustee making such sale shall receive the proceeds thereof and shall apply the same (or if Beneficiary is the successful bidder, Beneficiary shall allocate its bid price) as follows: (i) to the payment of all expenses of taking possession of, maintaining, leasing, repairing, equipping, guarding, improving, advertising, selling, and conveying the Mortgaged Property or part thereof, and /or prosecuting or otherwise collecting Rents, proceeds, premiums, or other sums including reasonable attorneys' fees, and a reasonable fee or commission to Trustee (which Trustee's fee shall not exceed five percent (5%) of the sales proceeds thereof or sums so received); (ii) to the remainder of the Indebtedness as follows: first, to any other expenses or liabilities of Grantor and/or Borrower comprising part of the Indebtedness, second, to the remaining accrued but unpaid interest, third, to the matured portion of principal of the Indebtedness, and fourth, to prepayment of the unmatured portion, if any, of principal of the Indebtedness applied to installments of principal in inverse order of maturity; (iii) the balance, if any and to the extent applicable, remaining after the full and final payment of the Indebtedness and full performance and discharge of the Obligations, to the holder or beneficiary of any inferior liens covering the Mortgaged Property, if any, in order of the priority of such inferior liens (Trustee and Beneficiary shall hereby be entitled to rely exclusively upon a commitment for title insurance issued to determine such priority); and (iv) the cash balance, if any, to Grantor and Grantor's respective heirs, personal representatives, successors or assigns. Payment of the purchase price to Trustee shall satisfy the obligation of the purchaser at such sale therefor, and such purchaser shall not be bound to look after the application thereof. Notwithstanding the foregoing, if any person or party other than the then owners of the Mortgaged Property shall notify Beneficiary or Trustee of a claim to said sums or any part thereof prior to disbursement thereof by Trustee, then Trustee or Beneficiary or both of them at their option, may interplead all or any part of said funds into a court of competent jurisdiction, and in such event, Beneficiary and Trustee each shall be entitled to recover from such sums so deposited an amount equal to the attorneys' fees and other costs and expenses incurred by them or either of them, in connection with such proceeding, to the full extent permitted by all applicable laws.

3.04     Grantor hereby ratifies and confirms any and all acts that Trustee shall do lawfully by virtue hereof. Grantor hereby agrees, on behalf of Grantor and Grantor's respective heirs, personal representatives, successors and assigns, that the recitals contained in any deed or deeds or other instrument executed in due form by any Trustee, acting under the provisions of this instrument, shall be prima facie evidence of the facts recited, and that it shall not be necessary to prove in any court, otherwise than by such recitals, the existence of the facts essential to authorize the execution and delivery of such deed or deeds or other instrument and the passing of title thereby, and all prerequisites and requirements of any sale or sales shall be conclusively presumed to have been performed, and all persons subsequently dealing with the Mortgaged Property purported to be conveyed by such deed or deeds or other instrument, including without limitation, the purchaser or purchasers thereof, shall be fully protected in relying upon the truthfulness of such recitals. Trustee, acting in accordance with the terms hereof, shall not be personally liable for any action taken pursuant hereto.

3.05     Beneficiary may bid, and being the highest bidder therefor, become the purchaser of any or all of the Mortgaged Property at any trustee's or foreclosure sale hereunder and shall have the right to credit the amount of the bid upon the unpaid amount of the Indebtedness in lieu of cash payment.

3.06     The purchaser at any trustee's or foreclosure sale hereunder may disaffirm any easement granted, or lease or other agreement made in violation of any provision of this Deed of Trust, and may take immediate possession of the Mortgaged Property free from and notwithstanding the terms of, such grant of easement, lease or other agreement.

3.07     The sale or sales by the Trustee of less than the whole of the Mortgaged Property shall not exhaust the power of sale herein granted, and the Trustee is specifically empowered to make successive sale or sales, under such power, of such portion of or interest in the Mortgaged Property and in such order as Trustee may determine until the whole of the Mortgaged Property shall be sold; and if the proceeds of such sale or sales of less than the whole of such Mortgaged Property shall be less than the aggregate of the Indebtedness and the expense of executing this trust, this Deed of Trust shall remain in full force

EXHIBIT NO. 3                                                    EX. 3-019

and effect as to the unsold portion of the Mortgaged Property just as though no sale or sales had been made; provided, however, that Grantor shall never have the right to require that the Mortgaged Property be sold, as an entirety or in parcels, but Beneficiary shall have the right, as a matter of Beneficiary's sole discretion, to request the Trustee to sell the Mortgaged Property as an entirety or to sell any portion of or interest in the Mortgaged Property. In addition, if any sale hereunder is not completed or is defective in the opinion of Beneficiary, such sale shall not exhaust the power of sale hereunder, and Beneficiary shall have the right to have a subsequent sale or sales to be made by the Trustee.

3.08    In the event Trustee mails, files and/or posts the notices of foreclosure sale as required hereunder, Beneficiary may decide not to proceed with a foreclosure sale on the date set forth in such notice, and such decision shall in no manner prevent Beneficiary from directing the Trustee to give notice of a foreclosure sale, as provided herein, at any future date, nor effect a waiver of any of Beneficiary's rights and remedies hereunder. Further, in the event a foreclosure sale is commenced hereunder by Trustee, Beneficiary, at any time prior to the completion of such sale, may direct such Trustee to abandon the sale and may thereafter institute suit for foreclosure of any of the liens and security interests created by this Deed of Trust. If Beneficiary shall so elect to institute a suit for collection of the Indebtedness or any part thereof and for foreclosure of the liens and security interests evidenced hereby, it is agreed further that Beneficiary, at any time before entry of final judgment, may cause such suit to be dismissed and thereafter direct and require that Trustee proceed to sell the Mortgaged Property, or any part thereof, in accordance with the terms hereof, including but not limited to, the terms of Section 3.03 hereof and the terms of the Uniform Commercial Code, as herein provided.

3.09    Each and all of the rights, powers and remedies hereunder are cumulative of and in addition to all other rights, powers and remedies herein contained or contained in any other instrument or document evidencing, securing or otherwise relating to the Indebtedness or which Beneficiary may have under all applicable laws. None of the terms and provisions hereof and no action or omission by or on behalf of Beneficiary shall ever make Beneficiary a trustee for, or otherwise create a trust, partnership or other fiduciary relationship between, Beneficiary and Grantor.

3.10    Upon the occurrence of an Event of Default by Grantor as set out in Section 3.01, Beneficiary may, without limitation of any other rights or remedies of Beneficiary, exercise the rights and remedies set forth in Section 2.01.J. hereof.

## ARTICLE IV. SUBSTITUTE AND SUCCESSOR TRUSTEE

4.01    If Trustee shall die or become disqualified from acting in the execution of this trust, or shall fail or refuse to execute the same when requested by Beneficiary so to do, or if, for any reason, Beneficiary shall prefer to appoint a substitute trustee to act instead of the herein named Trustee, Beneficiary shall have full power to appoint, at any time and without any formality other than by written instrument executed by Beneficiary, one or more successor or alternate successor trustees, each of whom shall succeed to all the estate, rights, powers and duties of Trustee named herein, and no notice of such appointment need be given to Grantor or to any other person or filed for record in any public office. Such appointment may be executed by Beneficiary or any agent of Beneficiary and, if Beneficiary is a corporation or other entity, such appointment shall be conclusively presumed to be executed with authority and shall be valid and sufficient without proof of any action by the board of directors or any executive officer of the corporation or otherwise.

## ARTICLE V. DEFEASANCE

5.01    All of the covenants and agreements of Grantor herein shall survive the execution and delivery of this document and shall continue in force until an express written release hereof is executed by Beneficiary. Accordingly, if Grantor shall perform faithfully each and all of the covenants and agreements herein contained and shall pay the Indebtedness in full, and shall satisfy all obligations secured hereby, then, and then only, this conveyance shall be released upon Grantor's written request

EXHIBIT NO. 3

and at Grantor's expense, by documentation in form and substance satisfactory to Beneficiary. No release of this conveyance or the lien thereof shall be valid unless executed by Beneficiary.

## ARTICLE VI. SECURITY AGREEMENT

6.01    To further secure the payment and performance of the Indebtedness and Grantor's observance of the covenants of this Deed of Trust and any other instruments securing the payment of the Indebtedness or relating thereto, Grantor hereby grants a security interest to Beneficiary in and to all the Goods and Intangibles, and the products and proceeds thereof (all of the Goods, and Intangibles, and the proceeds and products thereof being herein called the "Collateral", provided, however, (a) the mention of proceeds of Collateral herein shall not be construed as an authorization for the sale or surrender by Grantor of the Collateral, and (b) the term Collateral as used in this Article VI shall be included in the term "Mortgaged Property" when used in this Deed of Trust). This document shall constitute a security agreement as well as a mortgage and deed of trust. The following applies with respect to the Collateral:

A.    In addition to and cumulative of any other remedies granted in this Deed of Trust to Beneficiary, Beneficiary, upon default hereunder, may proceed under Chapter 9 of the Uniform Commercial Code as to all or any part of the Collateral and shall have and may exercise with respect to all or any part of the Collateral all of the rights, remedies and powers of a secured party under the Uniform Commercial Code, including, without limitation, the right and power to repossess, retain and sell, at public or private sale or sales, or otherwise dispose of, lease or utilize the Collateral or any part thereof and dispose of the proceeds and products in any manner authorized or permitted under the applicable provisions of the Uniform Commercial Code, and to apply the proceeds and products thereof toward payment of Beneficiary's attorneys' fees and other expenses and costs of pursuing, searching for, receiving, taking, keeping, storing, advertising, and selling the Collateral thereby incurred by Beneficiary, and toward payment of the Indebtedness in such order and manner as Beneficiary may elect consistent with the provisions of the Uniform Commercial Code. Nothing in this Article VI shall be construed to impair or limit any other right or power to which Beneficiary may be entitled at law or in equity.

B.    Among the rights of Beneficiary upon default and acceleration of the Indebtedness pursuant to the provisions hereof, and without limitation, Beneficiary shall have the right (but not the obligation), without being deemed guilty of trespass and without liability for damages thereby occasioned, and to the extent such may now or hereafter be permitted under Texas law (i) to enter upon any premises where the Collateral may be situated and take possession of the Collateral, or render it unusable, or dispose of the Collateral on Grantor's premises, and Grantor agrees not to resist or to interfere, and (ii) to take any action deemed necessary or appropriate or desirable by Beneficiary at Beneficiary's option and in Beneficiary's discretion, to repair, refurbish or otherwise prepare the Collateral for sale, lease or other use or disposition as herein authorized. Beneficiary, at Beneficiary's discretion, may require Grantor to assemble the Collateral and make it available to Beneficiary at a place designated by Beneficiary that is reasonably convenient to both parties.

C.    Beneficiary shall give Grantor notice, by certified mail, postage prepaid, of the time and place of any public sale of any of the Collateral or of the time after which any private sale or other intended disposition thereof is to be made by sending notice to Grantor at the address of Grantor as specified below at least ten (10) days before the time of the sale or other disposition, which provisions for notice Grantor and Beneficiary agree are reasonable and shall fully satisfy any requirement for giving of any such notice; notwithstanding the foregoing, Grantor further agrees that, upon the occurrence of an Event of Default, Beneficiary may sell or otherwise dispose of all or any part of the Mortgaged Property which is subject to the Uniform Commercial Code in the manner provided therein or as provided in this Deed of Trust, or under both the Uniform Commercial Code and this Deed of Trust,

EXHIBIT NO. 3                                      EX. 3-021

as Beneficiary may determine, and any and all proceeds received at any such sale shall be applied in the manner set forth in Section 3.03 hereof.

D.    To the extent such now or hereafter may be permitted under Texas law, Beneficiary is authorized to execute and/or file financing statements and continuation statements under the Uniform Commercial Code with respect to the Collateral without joinder of Grantor in such execution or filing. Grantor shall execute and deliver to Beneficiary such financing statements, continuation statements and other documents relating to the Collateral or any portion thereof as Beneficiary may reasonably request from time to time to preserve and maintain the perfection and control of the Collateral and the priority of the security interest created by this Deed of Trust and shall pay to Beneficiary on demand any expenses and attorneys' fees incurred by Beneficiary in connection with the preparation, execution, filing and perfection and continuation of the liens and security interest of this Deed of Trust and of any financing statements, continuation statements, partial releases, termination statements or other documents necessary or desirable to continue or confirm Beneficiary's security interest, or any modification thereof, and in connection with any Uniform Commercial Code searches performed by Beneficiary. This document or any reproduction of this document may be filed by Beneficiary and shall be sufficient as a financing statement. All or part of the Collateral is or is to become fixtures on the real estate constituting a portion of the Mortgaged Property, but this statement shall not impair or limit the effectiveness of this document as a security agreement or financing statement for other purposes, and, without limitation of any other provision hereof, this Deed of Trust shall constitute a fixture financing statement and, as such, shall be filed for record in the real estate records of each county in which the Land, or any part thereof, is located. Grantor shall not change Grantor's name, identity, structure or location without the prior express written consent of Beneficiary. The name of the record owner of the Land is the party or parties defined herein as Grantor.

E.    Grantor represents that, except for the security interest granted hereby in the Collateral, Grantor is the owner of the Collateral free of any adverse claim, security interest or encumbrance, and Grantor shall defend the Collateral against all claims and demands of any person at any time claiming the same or any interest therein. Grantor has not heretofore allowed or caused there to be filed any financing statement and no financing statement allowed or authenticated by Grantor is now on file in any public office except those statements, true and correct copies of which have been delivered to Beneficiary. So long as any amount remains unpaid on the Indebtedness, Grantor shall not allow and there shall not be filed in any public office any such financing statement or statements affecting the Collateral other than financing statements in favor of Beneficiary hereunder unless the express prior written consent and approval of the Beneficiary shall have first been obtained.

F.    The security interest granted herein shall not be construed or deemed to constitute Beneficiary or Trustee as a trustee or mortgagee in possession of the Mortgaged Property so as to obligate Beneficiary or Trustee to lease the Mortgaged Property or attempt to do the same, or take any action, incur any expenses or perform or discharge any obligation, duty or liability with respect to the Mortgaged Property or any part thereof or otherwise.

G.    Grantor's address is as stated below and Beneficiary's address is as stated below. Either party may notify the other of a new address in the manner specified in Section 3.03 above.

6.02    Grantor does hereby further grant and assign to Beneficiary a security interest in and right of setoff against all deposits and other sums now or at any time hereafter credited by or due from Beneficiary to Grantor, as security for the payment and performance of the Indebtedness and Grantor's observance of the covenants of this Deed of Trust and any other instruments securing the payment of the Indebtedness or relating thereto. In the event of any Default, Beneficiary, at its option, at any time thereafter and without notice, demand or presentment to Grantor, may hold all or any part of any such deposits or other sums until the Indebtedness shall have been paid in full, or may apply or set off all

or any part of such deposits or sums credited by or due from Beneficiary to or against any sums then due on the Indebtedness in any manner and in such order of preference as Beneficiary, in its sole discretion, shall determine.

## ARTICLE VII. MISCELLANEOUS

7.01    In the event Beneficiary shall elect to invoke any of the rights or remedies provided for herein, but shall thereafter determine to withdraw or discontinue same for any reason, Beneficiary shall have the unqualified right to do so, whereupon all parties shall be automatically restored and returned to their respective positions regarding the Indebtedness and this Deed of Trust as shall have existed prior to the invocation of Beneficiary's rights hereunder and the rights, powers and remedies of Beneficiary hereunder shall be and remain in full force and effect.

7.02    Any part of the Mortgaged Property, or any interest therein, may be released by Beneficiary without affecting Beneficiary's liens, security interests and other rights against the remainder of the Mortgaged Property; provided however, that nothing in this paragraph shall obligate Beneficiary to consider or grant any partial releases of the Land or the Mortgaged Property. The lien, security interest and other rights hereby granted shall not affect or be affected by any other security taken or acquired by the Beneficiary for the Indebtedness or any part thereof. The taking of additional security, or the modification, extension, renewal or increase of the Indebtedness or any part thereof, shall at no time release or impair the liens, security interests and the rights granted hereby, or affect the liability of any endorser, guarantor, surety, or any other party liable on the Indebtedness, or improve the right or priority of any junior lien holder; and this Deed of Trust, as well as any instrument given to secure any modification, renewal, extension or increase of the Indebtedness, or any part thereof, shall be and remain a first and prior lien and security interest on all of the Mortgaged Property not expressly released, unless otherwise herein provided. Any such release, the taking of additional collateral, or the modification, extension, renewal or increase of the Indebtedness or any part thereof shall be on any such terms as Grantor, Borrower and Beneficiary may agree to, and may be effected without notice to or consent of any endorser, guarantor, surety, or any other person now or hereafter obligated for the payment of the whole or any part of the Indebtedness, or any other third party, including any permitted subordinate lienholder (except for such notice and/or consent that may be agreed to by Beneficiary in writing). Any other lienholder of record whether now existing or hereafter arising is hereby given notice that all such rights of Grantor, Borrower and/or Beneficiary to modify, extend, renew or increase the Indebtedness secured hereby shall not be deemed to prejudice any other existing or future lienholder, and any other liens on the Mortgaged Property are and shall be subject to this limitation. At Beneficiary's request, Borrower and/or Grantor shall provide to Beneficiary a modification endorsement from a title company acceptable to Beneficiary covering the modification, extension or renewal of the Indebtedness, and in case of any increase, a new loan policy issued by a title insurance underwriter acceptable to Beneficiary; all at Borrower's sole cost and expense.

7.03    The invalidity, or unenforceability in particular circumstances, of any provision of this Deed of Trust shall not extend beyond such provision or such circumstances and no other provision of this Deed of Trust shall be affected thereby. It is the intention of the parties hereto to comply with the applicable usury laws, now or hereafter enacted (herein called "Applicable Usury Laws"); accordingly, notwithstanding any provisions to the contrary in the Note, in any document evidencing or securing the Indebtedness, in this Deed of Trust or in any document securing payment of the Indebtedness or otherwise relating thereto, in no event shall the Note or such documents require the payment or permit the collection of interest in excess of the maximum amount permitted by such Applicable Usury Laws. If any such excess of interest is contracted for, charged or received, under the Note or any document evidencing the Indebtedness, under this Deed of Trust or under the terms of any of the other documents securing payment of the Indebtedness or otherwise relating thereto, or in the event the maturity of any of the Indebtedness is accelerated in whole or in part, or in the event that all or part of the principal or interest of the Indebtedness shall be prepaid, so that under any of such circumstances, the amount of interest contracted for, charged or received, under the Note or any document evidencing the Indebtedness, under this Deed of Trust or under any document securing

EXHIBIT NO. 3                                    EX. 3-023

payment of the Indebtedness or otherwise relating thereto, on the amount of principal actually outstanding from time to time under the Note and other document evidencing or securing the Indebtedness, shall exceed the maximum amount of interest permitted by the Applicable Usury Laws, then in any such event (a) the provisions of this paragraph shall govern and control, (b) neither Grantor nor any other person or entity now or hereafter liable for the payment of the Note or any document evidencing the Indebtedness shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum amount of interest permitted by the Applicable Usury Laws, (c) any such excess that may have been collected shall be either applied as a credit against the then unpaid principal amount hereof or refunded to Grantor, at the Beneficiary's option, and (d) the effective rate of interest shall be automatically reduced to the maximum lawful contract rate allowed under the Applicable Usury Laws. Without limitation of the foregoing, all calculations of the rate of interest contracted for, charged or received under the Note, or any document evidencing the Indebtedness, under this Deed of Trust or under such other documents that are made for the purpose of determining whether such rate exceeds the maximum lawful contract rate, shall be made, to the extent permitted by the Applicable Usury Laws, by amortizing, prorating, allocating and spreading in equal parts during the period of the full stated term of the loans evidenced by the Note or the documents evidencing the Indebtedness, all interest at any time contracted for, charged or received from Grantor or otherwise by Beneficiary in connection with such loans.

7.04    Beneficiary may accept any payment tendered by Grantor after the due date of such payment or after acceleration of maturity of the Indebtedness and may apply the same to the principal, interest thereon or attorneys' fees and expenses of collection, or any combination thereof, as determined by Beneficiary, whether such payment was designated as a payment of principal, interest or otherwise; any such acceptance of a late payment shall not constitute a waiver of the rights of Beneficiary thereafter to accelerate the maturity of the Indebtedness because of such default and foreclose the liens securing the payment thereof or, if the maturity of the Indebtedness has theretofore been accelerated, such acceptance of late payment shall not constitute a reinstatement of the Indebtedness or otherwise affect the rights of Beneficiary to proceed with foreclosure of the liens securing the payment thereof. It is expressly agreed that (a) no waiver of any default on the part of Grantor or breach of any of the provisions of this Deed of Trust shall be considered a waiver of any other or subsequent default or breach, and no delay or omission in exercising or enforcing the rights and powers herein granted shall be construed as a waiver of such rights and powers, and likewise no exercise or enforcement of any rights or powers hereunder shall be held to exhaust such rights and powers, and every such right and power may be exercised from time to time; (b) any failure by Beneficiary to insist upon the strict performance by Grantor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms and provisions hereof, and Beneficiary, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by Grantor of any and all of the terms and provisions of this Deed of Trust; (c) neither Grantor nor any endorser, guarantor, surety, nor any other person now or hereafter obligated for the payment of the whole or any part of the Indebtedness shall be relieved of such obligation by reason of the failure of Beneficiary or Trustee to comply with any request of Grantor, or of any other person so obligated, to take action to foreclose this Deed of Trust or otherwise enforce any of the provisions of this Deed of Trust or of any obligations secured by this Deed of Trust, or by reason of the release, regardless of consideration, of the whole or any part of the security held for the Indebtedness, or by reason of the subordination in whole or in part by Beneficiary of the lien, security interest or other rights evidenced hereby, or by reason of any agreement or stipulation with any subsequent owner or owners of the Mortgaged Property renewing or extending the time of payment or modifying the terms of the Indebtedness or this Deed of Trust without first having obtained the consent of Grantor or such other person, and in the latter event, Grantor and all such other persons shall continue liable to make such payments according to the terms of any such agreement of renewal, extension or modification unless expressly released and discharged in writing by Beneficiary; (d) regardless of consideration, and without the necessity for any notice to or consent by the holder of any subordinate lien or security interest on the Mortgaged Property, Beneficiary may release the obligation of anyone at any time liable for any of the Indebtedness or any part of the security held for the Indebtedness and may renew or extend the time of payment or otherwise modify the terms of the documents evidencing or securing the Indebtedness or this Deed of

EXHIBIT NO. 3                                                    EX. 3-024

Trust without impairing or affecting the lien or security interest of this Deed of Trust or the priority of such lien or security interest over any subordinate lien or security interest; (e) the holder of any subordinate lien or security interest shall have no right to terminate any leases affecting the Mortgaged Property whether or not such lease be subordinate to this Deed of Trust; and (f) Beneficiary may resort for the payment of the Indebtedness to any security therefor held by Beneficiary in such order and manner as Beneficiary may elect.

7.05    The terms and provisions of this Deed of Trust shall be governed by and construed in accordance with the laws of the State of Texas.

7.06    Time is of the essence in the performance of this Deed of Trust.

7.07    Wherever used in this document, unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, the words "Deed of Trust" shall mean this Deed of Trust, Security Agreement and Financing Statement and any modifications, renewals or supplements hereto, the word "Grantor", shall mean Grantor, Grantor's heirs, personal representatives, successors and assigns, and/or any subsequent owner or owners of the Mortgaged Property, or any part thereof or any interest therein, the word "Beneficiary" shall mean Beneficiary and/or any subsequent transferee, assignee, owner or holder of the Note or any interest therein at the time in question, the word "Note" shall mean the Note secured by this Deed of Trust and any renewals, extensions and rearrangements thereof, the word "person" shall mean an individual, corporation, trust, partnership, joint venture or unincorporated association, and the pronouns of any gender shall include the other genders, and either the singular or plural shall include the other. In the event that the person who is the maker of the Note (herein called "Borrower") is not the same person as the Grantor, all terms and provisions of this Deed of Trust shall apply to and be binding on the Borrower, as well as the Grantor notwithstanding any term or provision contained herein to the contrary.

7.08    This Deed of Trust, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective on a grantor hereunder unless given in writing and signed by said party or parties sought to be charged or bound by the alteration or amendment.

7.09    Beneficiary may freely assign, whether by sale or transfer, all or any portion of its lien rights hereunder in and to all or any portion of the Indebtedness secured hereby to any purchaser of the Note or of any portion or participation in the Note, including, but not limited to, a sale, transfer or assignment to any guarantor or other obligor of the Indebtedness.

7.10    Notwithstanding anything to the contrary contained in this Deed of Trust, if any person executing this Deed of Trust is a "consumer" as defined in Regulation AA of the Board of Governors of the Federal Reserve System, 12 C.F.R. Part 227, or the Federal Trade Commission Credit Practices Act, 16 C.F.R. Part 444, as applicable, no lien or security interest created or evidenced by this Deed of Trust shall extend to or cover a nonpossessory lien or security interest in "household goods", other than a purchase money lien or security interest, in accordance with such regulations as applicable.

7.11    This Deed of Trust is executed and delivered by Grantor as security for, and in addition to the Vendor's Liens reserved and retained in respective Deeds from THERIOT FLP PROPERTIES - III, LLC, SANDERS CHILDRENS INVESTMENTS, LLC and SANDERS FLP PROPERTIES - I, LLC, dated of even date herewith, conveying the above described property and premises to Grantor herein. The above described Note was given in payment of all or a portion of the purchase price for said property and premises and the Vendor's Liens retained in said Deeds have been assigned to the Beneficiary is hereby recognized as valid and subsisting to this Deed of Trust. Each Vendor's Lien shall be a valid lien in favor of Beneficiary and be enforceable by judicial foreclosure suit which may be filed at Beneficiary's option, at any time until four (4) years from the latest recorded maturity date of this Deed of Trust as same shall appear of record from time to time. This Deed of Trust shall not

impair or affect the rights of the Vendor or Vendor's superior title, which lien has been assigned to Beneficiary, but the deed of trust lien hereby created shall be cumulative of and in addition thereto.

### WAIVER OF CERTAIN LAWS

7.12    ADDITIONAL COVENANTS. In addition to the covenants and agreements made in this Deed of Trust, Grantor further covenants and agrees with Beneficiary as follows:

A.    In the event an interest in any of the Mortgaged Property is foreclosed upon pursuant to a judicial or non-judicial foreclosure sale, Grantor agrees as follows. Notwithstanding the provisions of Sections 51.003, 51.004, and 51.005 of the Texas Property Code (as the same may be amended from time to time), and to the extent permitted by law, Grantor agrees that Beneficiary shall be entitled to seek a deficiency judgment from Borrower, Grantor and any other party obligated on the Note equal to the difference between the amount owing on the Note and the amount for which the Mortgaged Property was sold pursuant to judicial or non-judicial foreclosure sale. Grantor expressly recognizes that this Section constitutes a waiver of the above-cited provisions of the Texas Property Code which would otherwise permit Borrower, Grantor and other persons against whom recovery of deficiencies is sought or any guarantor independently (even absent the initiation of deficiency proceedings against them) to present competent evidence of the fair market value of the Mortgaged Property as of the date of the foreclosure sale and offset against any deficiency the amount by which the foreclosure sale price is determined to be less than such fair market value. Grantor further recognizes and agrees that this waiver creates an irrebuttable presumption that the foreclosure sale price is equal to the fair market value of the Mortgaged Property for purposes of calculating deficiencies owed by Borrower, Grantor, any guarantor, and others against whom recovery of a deficiency is sought.

B.    Alternatively, in the event the waiver provided for in Subsection (a) above is determined by a court of competent jurisdiction to be unenforceable, the following shall be the basis for the finder of fact's determination of the fair market value of the Mortgaged Property as of the date of the foreclosure sale in proceedings governed by Sections 51.003, 51.004 and 51.005 of the Texas Property Code (as amended from time to time): (i) the Mortgaged Property shall be valued in an "as is" condition as of the date of the foreclosure sale, without any assumption or expectation that the Mortgaged Property will be repaired or improved in any manner before a resale of the Mortgaged Property after foreclosure; (ii) the valuation shall be based upon an assumption that the foreclosure purchaser desires a resale of the Mortgaged Property for cash promptly (but no later than twelve (12) months) following the foreclosure sale; (iii) all reasonable closing costs customarily borne by the seller in commercial real estate transactions should be deducted from the gross fair market value of the Mortgaged Property, including, without limitation, brokerage commissions, title insurance, a survey of the Mortgaged Property, tax prorations, attorneys' fees, and marketing costs; (iv) the gross fair market value of the Mortgaged Property shall be further discounted to account for any estimated holding costs associated with maintaining the Mortgaged Property pending sale, including, without limitation, utilities expenses, Mortgaged Property management fees, taxes and assessments (to the extent not accounted for in (iii) above), and other maintenance, operational and ownership expenses; and (v) any expert opinion testimony given or considered in connection with a determination of the fair market value of the Mortgaged Property must be given by persons having at least ten (10) years experience in appraising Mortgaged Property similar to the Mortgaged Property and who have conducted and prepared a complete written appraisal of the Mortgaged Property taking into consideration the factor set forth above.

EXECUTED on or before the date(s) acknowledged below, to be effective March **31**, 2017.

WC 4811 SOUTH CONGRESS, LLC, a Delaware limited liability company

By:    World Class Holdings III, LLC, a Delaware limited liability company, Manager

By: _____
Natin Paul, President

Address of GRANTOR:    401 Congress Avenue, 33rd Floor
Austin, Texas 78701

Address of TRUSTEE:    P. O. Box 6136
Temple, Texas 76503-6136

Address of BENEFICIARY:    P. O. Box 6136
Temple, Texas 76503-6136

THE STATE OF **Texas** §

COUNTY OF **Travis** §

This instrument was acknowledged before me on the **31** day of **March**, 201**7**, by Natin Paul, President of World Class Holdings III, LLC, a Delaware limited liability company, on behalf of said limited liability company, in its capacity as Manager of WC 4811 SOUTH CONGRESS, LLC, a Delaware limited liability company, on behalf of said limited liability company.

LAURA BYRD
Notary Public, State of Texas
Comm. Expires 10-03-2020
Notary ID 130846548

_____
Notary Public in and for
The State of **Texas**

My commission expires: **10/3/20**

AFTER RECORDING RETURN TO:
Loan Services
FIRST STATE BANK CENTRAL TEXAS
P. O. Box 6136
Temple, Texas 76503-6136

PREPARED BY:

OPPER & GAMBRELL, P.L.L.C.
8582 Katy Freeway, Suite 200
Houston, Texas 77024

METES AND BOUNDS DESCRIPTION OF A SURVEY OF 14.993 ACRES OF LAND, A PORTION OF THE ISAAC DECKER LEAGUE SURVEY NO. 20, ABSTRACT NO. 8, IN THE CITY OF AUSTIN, TRAVIS COUNTY, TEXAS, SAID 14.993 ACRES OF LAND BEING ALL OF THAT CALLED 4.32 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, AS DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM ABEL J. & MARY ANN THERIOT FAMILY LIMITED PARTNERSHIP TO THERIOT FLP PROPERTIES – III OF RECORD IN DOCUMENT NO. 2010125121, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT CALLED 5.5839 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, DESIGNATED AS TRACT 1 AND DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM SASHA THERIOT SANDERS, TEAL THERIOT SANDERS AND ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC OF RECORD IN DOCUMENT NO. 2010125125, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT CALLED 2.62 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, DESIGNATED AS TRACT 2 AND DESCRIBED IN SAID SPECIAL WARRANTY DEED TO SANDERS CHILDREN INVESTMENTS, LLC OF RECORD IN DOCUMENT NO. 2010125126, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT 2.32 ACRES OF LAND, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, AS DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM SUZANNE MARIE SANDERS AND HER HUSBAND CURTIS NOLEN SANDERS TO SANDERS FLP PROPERTIES – I, LLC OF RECORD IN DOCUMENT NO. 2010125122, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, SAID 14.993 ACRES OF LAND, AS SURVEYED BY BOWMAN CONSULTING GROUP, LTD, AND SHOWN ON BOWMAN PLAN NO. 3562, BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING at a 5/8" iron rod found in the east right-of-way line of South Congress Avenue at the most westerly northwest corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and at the southwest corner of that 0.780 of one acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Cash Warranty Deed to MMGG Enterprises, L.P. in Document No. 2004036130, Official Public Records of Travis County, Texas, said 5/8" iron rod found being a common corner of the two parcels described in that Agreement of record in Document No. 2005099083, Official Public Records of Travis County, Texas, said 5/8" iron rod found being the POINT OF BEGINNING and most westerly northwest corner of the tract described herein, and from which 5/8" iron rod found, a 1/2" iron rod with plastic cap stamped "ALL POINTS" found at the southwest corner of that 0.066 of one acre tract described in a Street Deed from MMGG Enterprises, LTD., to the City of Austin of records in Document No. 2005102391, Official Public Records of Travis County, Texas, bears
N 63°59'01"W a distance of 0.67 feet;

THENCE S 61°50'30" E, with the most westerly north line of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the south line of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the agreed line referenced in the said Agreement of record in Document No. 2005099083 a distance of 239.20 feet to a 1/2" steel pin found at a reentrant corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the south east corner of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the corner referenced in said Agreement, for a reentrant corner of the tract described herein;

EXHIBIT A
PAGE 1 OF 4 PAGES

THENCE N 23°58'30" E, with the most northerly west line of the said Theriot FLP Properties – III, LLC 4.32 acre tract and with the east line of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the line referenced in the said Agreement, at a distance of 4.94 passing a 1/2" steel pin found 0.17 feet east of line, said 1/2" steel pin found being the southeast corner of that 0.708 of one acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Special Warranty Deed With Vendor's Lien to Area 51 Enterprises LLC in Document No.

2015028497, Official Public Records of Travis County, Texas, in all 149.96 feet to a 1/2" steel pin found in the south line of that 4.056 acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Special Warranty Deed to ID Bel Air Partners, LP of record in Document No. 2005017785, Official Public Records of Travis County, Texas, and being the most northerly northwest corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract, and the northeast corner of the said MMGG Enterprises, L.P. 0.780 of one acre tract and the northeast corner of the said Area 51 Enterprises LLC 0.708 of one acre tract, and being also the corner referenced in said Agreement, for the most northerly northwest corner of the tract described herein;

THENCE S 63°24'52" E, with the most easterly north line of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the south line of the said ID Bel Air Partners, LP 4.056 acre tract, a distance of 383.05 feet to a 1/2" steel pin found in the west line of Lot 2A, Block V, A Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, of record in Plat Book 51, Page 20, Plat Records of Travis County, Texas, and being also the southeast corner of the said ID Bel Air Partners, LP 4.056 acre tract and the northeast corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract, for the northeast corner of the tract described herein;

THENCE S 26°47'44" W, with the west line of said Lot 2A, Block V, A Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, and with the east line of the said Theriot FLP Properties – III, LLC 4.32 acre tract, a distance of 58.95 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found at the southwest corner of said Lot 2A, Block V and the northwest corner of Lot 1A, Block V, of said Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, for an angle point in the east line of the tract described herein;

THENCE S 26°41'23" W, with the west line of said Lot 1A, Block V and the west line of Lot 4, Block V, Greenwood Hills, Section Five, of record in Plat Book 42, Page 10, Plat Records of Travis County, Texas, and being also with the west line of Liverpool Drive as shown on said map or plat of Greenwood Hills, Section Five and being also with the east line of the said Theriot FLP Properties – III, LLC 4.32 acre tract, a distance of 237.88 feet to a 1/2" steel pin found at the southeast corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the northeast corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres of land, for an angle point in the east line of the tract described herein;

THENCE S 26°31'34" W, with the west line of Liverpool Drive and the west line of Lot 23, Block W, of said Greenwood Hills Section Five and being also with the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 152.96 feet to a 5/8" steel pin found at the southwest corner of said Lot 23, Block W and the northwest corner of Lot 16, Block W, of said Greenwood Hills Section Five, for an angle point in the east line of the tract described herein;

THENCE S 27°38'57" W, with the west line of said Lot 16, Block W, of said Greenwood Hills Section Five and being also with the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 40.08 feet to a 1/2" steel pin found at the southwest corner of said Lot 16, Block W and the northwest corner of Lot 15, Block W, of said Greenwood Hills Section Five, for an angle point in the east line of the tract described herein;

EXHIBIT A
PAGE 2 OF 4 PAGES

THENCE S 26°33'27" W, with the west line of said Lot 15, Block W and the west line of Lots 14, 13, 12, 11 and 10, Block W, of said Greenwood Hills Section Five and the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 473.14 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found in the west line of said Lot 10, Block W, Greenwood Hills Section Five at the southeast corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, for a southeast corner of the tract described herein;

THENCE N 34°50'27" W, with the southwest or west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 11.89 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found in the southwest or west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres and at the northeast corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, for a reentrant corner of the tract described herein;

THENCE S 27°22'12" W, with the east line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, at a distance of 25.77 feet, more or less, passing the most easterly northwest corner of that 2.002 acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Warranty Deed with Vendor's Lien of record in Document No. 2011133868, Official Public Records of Travis County, Texas, in all a distance of 261.28 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found at the southeast corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and a reentrant of the said Jim O'Brien 2.002 acre tract and the most southerly southeast corner of the tract described herein;

THENCE N 60°09'26" W, with the most westerly north line of the said Jim O'Brien 2.002 acre tract and with the south line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, a distance of 199.03 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found at an angle point in the most westerly north line of the said Jim O'Brien 2.002 acre tract and an angle point in the south line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres;

THENCE N 67°47'26" W, with the most westerly south line of the said Jim O'Brien 2.002 acre tract and with the south line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, a distance of 58.62 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found in the east line of Wasson Road (old State Highway No. 29) at the most westerly northwest corner of the said Jim O'Brien 2.002 of one acre tract and the southwest corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, for the most southerly southwest corner of the tract described herein;

THENCE with the east line of Wasson Road (old State Highway No. 29) and the west line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and with the west line of the said Sanders FLP Properties - 1, LLC 2.32 acre tract, courses numbered 1 through 5 inclusive as follows:
1. N 24°25'26" W, a distance of 42.22 feet to 3/4" iron pipe found;
2. N 14°47'26" W, a distance of 70.00 feet to a drill hole in top of a concrete curb found;
3. N 19°56'26" W, at a distance of 154.55 feet passing the northwest corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and the southwest corner of the said Sanders FLP Properties - 1, LLC 2.32 acre tract, in all a distance of 264.00 feet to a calculated point in a multi-trunk Pecan tree;
4. N 07°57'26" W, a distance of 138.98 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found, and
5. N 04°30'34" E, a distance of 36.10 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found at the intersection of the east line of Wasson Road and the east line of Congress Avenue;

EXHIBIT __
PAGE 3 OF 4 PAGES

THENCE N 27°40'11" E, with the east right-of-way of South Congress Avenue and the west line of the said Sanders FLP Properties - 1, LLC 2.92 acre tract and the west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, and being also with the west line of the said Theriot FLP Properties – III, LLC 4.32 acre tract, at a distance of 271.24 feet passing the northwest corner of the said Sanders FLP Properties - 1, LLC 2.92 acre tract and the southwest corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, and at a distance of 386.42 feet passing a northwest corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, and a southwest corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract, in all 666.83 feet to the POINT OF BEGINNING of the tract described herein containing 14.993 acres of land.

Bearing basis is Grid North, NAD 83, Texas Coordinate System, Central Zone.

Plan #: 3562

EXHIBIT ___
PAGE ___ OF ___ PAGES

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

Dana DeBeauvoir

DANA DEBEAUVOIR, COUNTY CLERK
TRAVIS COUNTY, TEXAS
April 03 2017 10:14 AM
EX: 8-031°° ²⁰¹⁷⁰⁵³¹⁹³

EXHIBIT NO. 3

## GUARANTY AGREEMENT

THIS GUARANTY (the "Guaranty") is dated effective March __31__, 2017 and is executed by **NATIN PAUL and WORLD CLASS CAPITAL GROUP, LLC** (hereinafter collectively referred to as "Guarantor"), for value received, and to induce **FIRST STATE BANK CENTRAL TEXAS,** having an address at P. O. Box 6136, Temple, Texas 76503-6136 ("Lender"), to lend to **WC 4811 SOUTH CONGRESS, LLC,** having an address at 401 Congress Avenue, 33rd Floor, Austin, Texas 78701 ("Borrower"), the principal sum of **FOUR MILLION SEVEN HUNDRED FORTY-FIVE THOUSAND AND NO/100 DOLLARS ($4,745,000.00)** (the "Loan"), evidenced by a certain promissory note (the note together with all extensions, renewals, modifications, substitutions, replacements, restatements and amendments thereof shall collectively be referred to as the "Note") dated of even date herewith, executed pursuant to the terms of that certain Loan Agreement dated of even date herewith by and between Lender and Borrower (the "Loan Agreement") and secured by, among other things, that certain Deed of Trust, Security Agreement and Financing Statement (together with any and all extensions, renewals, substitutions, replacements, amendments, modifications and/or restatements thereof, the "Security Instrument"), as described in **Exhibit "A"** attached hereto and made a part hereof for all purposes. Other than the Note, all of the documents and the Security Instrument now or hereafter executed by Borrower and/or others and by or in favor of Lender, which wholly or partially secure or guarantee payment of the Note or are otherwise executed and/or delivered in connection with the Loan including the Loan Agreement, together with any and all extensions, renewals, substitutions, replacements, amendments, modifications and/or restatements thereof, are referred to as the "Other Loan Documents".

(1)  Each undersigned Guarantor, jointly and severally (if more than one) hereby absolutely and unconditionally guarantees to Lender the prompt and unconditional payment and performance of the following (the "Guaranteed Obligations"):

    (a)  The entire Debt (as defined herein);

    (b)  The payment and performance of all of Borrower's monetary and non-monetary obligations to Lender under the Security Instrument and Other Loan Documents; and

    (c)  All costs and expenses, including reasonable fees and out of pocket expenses of attorneys and expert witnesses, incurred by Lender in enforcing its rights under this Guaranty.

(2)  If any of the Guaranteed Obligations shall become due and remain unpaid in whole or in part, each undersigned Guarantor will on demand (and without further notice of dishonor, and without any notice having been given to the Guarantor previous to such demand of the acceptance by the Lender of this Guaranty) pay to the Lender, its successors or assigns, at Lender's office in Temple, Bell County, Texas, the full amount due and owing on the Guaranteed Obligations and it shall not be necessary for the Lender, in order to enforce such payment by the Guarantor, to first institute suit, or exhaust its remedies against the Borrower, or others liable on the Guaranteed Obligations, or to enforce its rights or remedies against any security which shall have been given the Lender to secure any of the Guaranteed Obligations.

(3)     It is expressly understood and agreed that this is a continuing guaranty and that the obligations of Guarantor hereunder are and shall be absolute under any and all circumstances, without regard to the validity, regularity or enforceability of the Note, the Security Instrument, or the Other Loan Documents, a true copy of each of said documents Guarantor hereby acknowledges having received and reviewed.

(4)     The term "Debt" as used in this Guaranty shall mean the principal sum evidenced by the Note and secured by the Security Instrument, or so much thereof as may be outstanding from time to time, together with interest thereon at the rate of interest specified in the Note and all other sums other than principal or interest which may or shall become due and payable pursuant to the provisions of the Note, the Security Instrument or the Other Loan Documents.

(5)     Any indebtedness of Borrower to Guarantor now or hereafter existing (including, but not limited to, any rights to subrogation Guarantor may have as a result of any payment by Guarantor under this Guaranty), together with any interest thereon, shall be, and such indebtedness is, hereby deferred, postponed and subordinated to the prior payment in full of the Guaranteed Obligations. Until payment in full of the Guaranteed Obligations (and including interest accruing on the Note after the commencement of a proceeding by or against Borrower under the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. Sections 101 et seq., and the regulations adopted and promulgated pursuant thereto (collectively, the "Bankruptcy Code") which interest the parties agree shall remain a claim that is prior and superior to any claim of Guarantor notwithstanding any contrary practice, custom or ruling in cases under the Bankruptcy Code generally), Guarantor agrees not to accept any payment or satisfaction of any kind of indebtedness of Borrower to Guarantor and hereby assigns such indebtedness to Lender, including the right to file proof of claim and to vote thereon in connection with any such proceeding under the Bankruptcy Code, including the right to vote on any plan of reorganization. Further, if Guarantor shall comprise more than one person, firm or corporation, Guarantor agrees that until such payment in full of the Guaranteed Obligations, (a) no one of them shall accept payment from the others by way of contribution on account of any payment made hereunder by such party to Lender, (b) no one of them will take any action to exercise or enforce any rights to such contribution, and (c) if any of Guarantor should receive any payment, satisfaction or security for any indebtedness of Borrower to any of Guarantor or for any contribution by the others of Guarantor for payment made hereunder by the recipient to Lender, the same shall be delivered to Lender in the form received, endorsed or assigned as may be appropriate for application on account of, or as security for, the Guaranteed Obligations and until so delivered, shall be held in trust for Lender as security for the Guaranteed Obligations.

(6)     Guarantor agrees that, with or without notice or demand, Guarantor will reimburse Lender, to the extent that such reimbursement is not made by Borrower, for all reasonable out-of-pocket expenses (including reasonable counsel fees) incurred by Lender in connection with the collection of the Guaranteed Obligations or any portion thereof or with the enforcement of this Guaranty.

(7)     All moneys available to Lender for application in payment or reduction of the Guaranteed Obligations may be applied by Lender in such manner and in such amounts and at such time or times and in such order and priority as Lender may see fit to the payment or reduction of such portion of the Guaranteed Obligations as Lender may elect.

(8)    Guarantor hereby waives notice of the acceptance hereof, presentment, protest, notice of protest, or any and all notice of intention to accelerate, non-payment, non-performance or non-observance, or other proof, or notice or demand, whereby to charge Guarantor therefor. Guarantor shall receive the same notice and opportunity to cure given Borrower under the Loan Agreement, Note or Security Instrument, if any. At any time or from time to time and any number of times, without notice to or consent of Guarantor and without affecting the liability of Guarantor, (a) the time for payment of the principal of or interest on the Debt may be extended or the Debt may be renewed in whole or in part; (b) the time for Borrower's performance of or compliance with any covenant or agreement contained in the Note, the Security Instrument or any of the Other Loan Documents, whether presently existing or hereinafter entered into, may be extended or such performance or compliance may be waived; (c) the maturity of the Debt may be accelerated as provided in the Note, the Security Instrument, or any of the Other Loan Documents; (d) the Note, the Security Instrument, or any of the Other Loan Documents may be modified or amended by Lender and Borrower in any respect, including any increase in the principal amount of the Debt; and (e) any security for the Guaranteed Obligations may be modified, exchanged, surrendered or otherwise dealt with or additional security may be pledged or mortgaged for the Debt.

(9)    Guarantor further agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall in no way be terminated, affected or impaired (a) by reason of the assertion by Lender of any rights or remedies which it may have under or with respect to either the Note, the Security Instrument, or the Other Loan Documents, against any person obligated thereunder or against any owner of all or any portion of the Mortgaged Property (as defined in the Security Instrument), or (b) by reason of any failure to file or record any of such instruments or to take or perfect any security intended to be provided thereby, or (c) by reason of the release or exchange of any property covered by the Security Instrument or other collateral for the Loan, or (d) by reason of Lender's failure to exercise, or delay in exercising, any such right or remedy or any right or remedy Lender may have hereunder or in respect to this Guaranty, or (e) by reason of the commencement of a case under the Bankruptcy Code by or against any person obligated under the Note, the Security Instrument or the Other Loan Documents, or the death of any Guarantor, or (f) by reason of any payment made on the Debt or any other indebtedness arising under the Note, the Security Instrument or the Other Loan Documents, whether made by Borrower or Guarantor or any other person, which is required to be refunded pursuant to any bankruptcy or insolvency law; it being understood that no payment so refunded shall be considered as a payment of any portion of the Guaranteed Obligations, nor shall it have the effect of reducing the liability of Guarantor hereunder. It is further understood, that if Borrower shall have taken advantage of, or be subject to the protection of, any provision in the Bankruptcy Code, the effect of which is to prevent or delay Lender from taking any remedial action against Borrower, including the exercise of any option Lender has to declare the Debt or any of the other Guaranteed Obligations due and payable on the happening of any default or event by which under the terms of the Note, the Security Instrument or the Other Loan Documents, the Debt or any of the other Guaranteed Obligations shall become due and payable, Lender may, as against Guarantor, nevertheless, declare the Debt or any of the other Guaranteed Obligations due and payable and enforce any or all of its rights and remedies against Guarantor provided for herein.

EXHIBIT NO. 4                                      EX. 4-003

(10)    Guarantor further covenants that this Guaranty shall remain and continue in full force and effect as to any modification, extension or renewal of the Note, the Security Instrument, or any of the Other Loan Documents, that Lender shall not be under a duty to protect, secure or insure any security or lien provided by the Security Instrument or other such collateral, and that other indulgences or forbearance may be granted under any or all of such documents, all of which may be made, done or suffered without notice to, or further consent of, Guarantor.

(11)    As a further inducement to Lender to make the Loan and in consideration thereof, Guarantor further covenants and agrees (a) Guarantor will maintain a domicile, place of business or an agent for service of process in the state in which the Mortgaged Property is located (the "Property Jurisdiction") and give prompt notice to Lender of the address of any such domicile, place of business and of the name and address of any new agent appointed by it, as appropriate, (b) the failure of Guarantor's agent for service of process to give it notice of any service of process will not impair or affect the validity of such service or of any judgment based thereon, (c) if, despite the foregoing, there is for any reason no agent for service of process of Guarantor available to be served, and if Guarantor at that time has no place of business in the Property Jurisdiction then Guarantor irrevocably consents to service of process by registered or certified mail, postage prepaid, to it at its address given in or pursuant to the first paragraph hereof, Guarantor hereby waiving personal service thereof, (d) that within thirty days after such mailing, Guarantor so served shall appear or answer to any summons and complaint or other process and should Guarantor so served fail to appear or answer within said thirty-day period, said Guarantor shall be deemed in default and judgment may be entered by Lender against the said party for the amount as demanded in any summons and complaint or other process so served, (e) with respect to any claim or action arising hereunder, Guarantor (i) irrevocably submits to the nonexclusive jurisdiction of the courts of Bell County in the State of Texas and the United States District Court located in Temple, Texas, and appellate courts from any thereof, (ii) irrevocably waives any objection which it may have at any time to the laying on venue of any suit, action or proceeding arising out of or relating to this Guaranty brought in any such court, and (iii) irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum, and (f) nothing in this Guaranty will be deemed to preclude Lender from bringing an action or proceeding with respect hereto in any other jurisdiction.

(12)    This is a guaranty of payment and not of collection and upon any occurrence of an event of default under the Note, the Security Instrument or the Other Security Documents, after applicable notice and failure to cure as provided for in the Loan Agreement, Lender may, at its option, proceed directly and at once, without further notice, against Guarantor to collect and recover the full amount of the liability hereunder or any portion thereof, without proceeding against Borrower or any other person, or foreclosing upon, selling, or otherwise disposing of or collecting or applying against any of the mortgaged property or other collateral for the Loan.  Guarantor hereby waives the pleading of any statute of limitations as a defense to the obligation hereunder.

(13)    Guarantor hereby represents, warrants and certifies to Lender the following:

(a)     Neither the Guarantor nor any general partner or controlling stockholder or managing member of the Guarantor, as applicable, is currently a debtor in any bankruptcy, reorganization, insolvency or similar proceeding;

(b)     No material adverse change in the financial condition of the Guarantor or any general partner or controlling shareholder or managing member of the Guarantor, as applicable, has occurred since the respective dates of the most recent financial statements submitted to Lender;

(c)     The Guarantor is not presently insolvent, and entering into and performing its obligations under this Guaranty will not render the Guarantor insolvent. As used herein, the term "insolvent" means that the sum total of all of an entity's liabilities (whether secured or unsecured, contingent or fixed, or liquidated or unliquidated) is in excess of the value of all of such entity's non-exempt assets, i.e., all of the assets of the entity that are available to satisfy claims of creditors; and

(d)     After the Loan is made and this Guaranty executed and delivered, the Guarantor will have sufficient working capital to pay all of the Guarantor's outstanding debts as they come due.

(14)   As security for the payment of the Guaranteed Obligations, each Guarantor hereby grants to Lender a security interest in and a contractual pledge and assignment of, and a right to setoff and apply against this Guaranty or the Guaranteed Obligations or both, at any time and from time to time, to the fullest extent permitted by applicable law, (without demand upon or notice to Guarantor with respect to the right of setoff, any such demand or notice being hereby expressly waived by Guarantor to the fullest extent permitted by applicable law), any and all money, property, accounts, securities, documents, chattel paper, claims, demands, instruments, items or deposits of Guarantor, and each of them, or to which any of them is a party now, held or hereafter coming within Lender's custody or control, including, but not limited to certificates of deposit and other depository accounts, whether same shall have matured or the exercise of Lender's rights result in loss of interest or other penalty on any such deposit. Without prior notice to or demand upon any Guarantor, Lender may exercise any rights granted herein, as well as other rights and/or remedies at law or in equity, all of which are cumulative, at any time when a default has occurred in any of the Guaranteed Obligations and is continuing. If any notice is required by law, Guarantor hereby agrees that ten (10) days notice shall be deemed reasonable.

(15)   Each reference herein to Lender shall be deemed to include its successors and assigns, to whose favor the provisions of this Guaranty shall also inure. Each reference herein to Guarantor shall be deemed to include the heirs, executors, administrators, legal representatives, successors and assigns of Guarantor, all of whom shall be bound by the provisions of this Guaranty.

(16)   If any party hereto shall be a partnership, the agreements and obligations on the part of Guarantor herein contained shall remain in force and application notwithstanding any changes in the individuals composing the partnership and the term "Guarantor" shall include any altered or successive partnerships but the predecessor partnerships and their partners shall not thereby be released from any obligations or liability hereunder.

(17)  Guarantor (and its representative, executing below, if any) has full power, authority and legal right to execute this Guaranty and to perform all its obligations under this Guaranty.

(18)  All understandings, representations and agreements heretofore had with respect to this Guaranty are merged into this Guaranty which alone fully and completely expresses the agreement of Guarantor and Lender.

(19)  This Guaranty may be executed in one or more counterparts by some or all of the parties hereto, each of which counterparts shall be an original and all of which together shall constitute a single agreement of Guaranty. The failure of any party hereto to execute this Guaranty, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder. The liability of the Guarantors hereunder shall be joint and several with the liability of any other guarantors under separate guaranties.

(20)  **GOVERNING LAW AND VENUE**. THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS AND THE APPLICABLE LAWS OF THE UNITED STATES OF AMERICA. THIS GUARANTY IS DEEMED EXECUTED IN AND IS PERFORMABLE IN BELL COUNTY, TEXAS. Any action or proceeding under or in connection with this Guaranty against Guarantors or any other party ever liable for payment of any sums of money payable on this Guaranty may be brought in any state court located in Bell County, Texas, or in the federal court in Bell County, Texas. Each of the Guarantors and each such other party hereby irrevocably:  (i) submits to the nonexclusive jurisdiction of such courts, and (ii) waives any objection it may now or hereafter have as to the venue of any such action or proceeding brought in such court or that such court is an inconvenient forum.

## WAIVER OF CERTAIN LAWS

(21)  Additional Covenants. In addition to the covenants and agreements made in this Guaranty, each Guarantor further covenants and agrees with Lender as follows:

(22)  In the event an interest in any of the Collateral Property is foreclosed upon pursuant to a judicial or non-judicial foreclosure sale, each Guarantor agrees as follows. Notwithstanding the provisions of Sections 51.003, 51.004, and 51.005 of the Texas Property Code (as the same may be amended from time to time), and to the extent permitted by law, each Guarantor agrees that Lender shall be entitled to seek a deficiency judgment from Borrower, Guarantors and any other Loan Party obligated on the Note equal to the difference between the amount owing on the Note and the amount for which the Collateral Property was sold pursuant to judicial or non-judicial foreclosure sale. Each Guarantor expressly recognizes that this Section constitutes a waiver of the above-cited provisions of the Texas Property Code which would otherwise permit Borrower, Guarantors and other persons against whom recovery of deficiencies is sought or any guarantor independently (even absent the initiation of deficiency proceedings against them) to present competent evidence of the fair market value of the Collateral Property as of the date of the foreclosure sale and offset against any deficiency the amount by which the foreclosure sale price is determined to be less than such fair market value. Each Guarantor further recognizes and agrees that this waiver creates an irrebuttable presumption that the foreclosure sale price is equal to the fair market value of the Collateral Property for purposes of calculating deficiencies owed by Borrower, Guarantors, any other guarantor, and others against whom recovery of a deficiency is sought.

(23)    Alternatively, in the event the waiver provided for in Subsection (a) above is determined by a court of competent jurisdiction to be unenforceable, the following shall be the basis for the finder of fact's determination of the fair market value of the Collateral Property as of the date of the foreclosure sale in proceedings governed by Sections 51.003, 51.004 and 51.005 of the Texas Property Code (as amended from time to time): (i) the Collateral Property shall be valued in an "as is" condition as of the date of the foreclosure sale, without any assumption or expectation that the Collateral Property will be repaired or improved in any manner before a resale of the Collateral Property after foreclosure; (ii) the valuation shall be based upon an assumption that the foreclosure purchaser desires a resale of the Collateral Property for cash promptly (but no later than twelve (12) months) following the foreclosure sale; (iii) all reasonable closing costs customarily borne by the seller in commercial real estate transactions should be deducted from the gross fair market value of the Collateral Property, including, without limitation, brokerage commissions, title insurance, a survey of the Collateral Property, tax prorations, attorneys' fees, and marketing costs; (iv) the gross fair market value of the Collateral Property shall be further discounted to account for any estimated holding costs associated with maintaining the Collateral Property pending sale, including, without limitation, utilities expenses, Collateral Property management fees, taxes and assessments (to the extent not accounted for in (iii) above), and other maintenance, operational and ownership expenses; and (v) any expert opinion testimony given or considered in connection with a determination of the fair market value of the Collateral Property must be given by persons having at least ten (10) years experience in appraising Collateral Property similar to the Collateral Property and who have conducted and prepared a complete written appraisal of the Collateral Property taking into consideration the factor set forth above.

IN WITNESS WHEREOF, each Guarantor has duly executed this Guaranty on or before the respective date(s) acknowledged below, to be effective for all purposes as of the date first written above.

NATIN PAUL

Address:        7800 Cava Place
                Austin, Texas 78735

WORLD CLASS CAPITAL GROUP, LLC

By:

Natin Paul, Manager

Address:        401 Congress Avenue, 33rd Floor
                Austin, Texas 78701

NOTICE UNDER SECTION 26.02 OF THE TEXAS BUSINESS & COMMERCE CODE

A LOAN AGREEMENT IN WHICH THE AMOUNT INVOLVED IN THE LOAN AGREEMENT EXCEEDS $50,000.00 IN VALUE IS NOT ENFORCEABLE UNLESS

THE AGREEMENT IS IN WRITING AND SIGNED BY THE PARTY TO BE BOUND OR BY THAT PARTY'S AUTHORIZED REPRESENTATIVE.

THE RIGHTS AND OBLIGATIONS OF THE PARTIES TO AN AGREEMENT SUBJECT TO SUBSECTION (b) OF SECTION 26.02 OF THE TEXAS BUSINESS & COMMERCE CODE SHALL BE DETERMINED SOLELY FROM THE WRITTEN LOAN AGREEMENT, AND ANY PRIOR ORAL AGREEMENTS BETWEEN THE PARTIES ARE SUPERSEDED BY AND MERGED INTO THE LOAN AGREEMENT.

THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

_____

NATIN PAUL

WORLD CLASS CAPITAL GROUP, LLC

By: _____

Natin Paul, Manager

FIRST STATE BANK CENTRAL TEXAS

By: _____

Printed Name: _____

Title: _____

THE STATE OF TEXAS      §

COUNTY OF Travis _____      §

This instrument was subscribed and acknowledged before me on the 31 day of March , 201 7 , by NATIN PAUL.

_____
Notary Public in and for
The State of T E X A S

My commission expires: 10/3/20

LAURA BYRD
Notary Public, State of Texas
Comm. Expires 10-03-2020
Notary ID 130846548

THE STATE OF TEXAS §

COUNTY OF Travis §

    This instrument was subscribed and acknowledged before me on the **31** day of **March**, 201**7**, by Natin Paul, Manager of WORLD CLASS CAPITAL GROUP, LLC, a Texas limited liability company, on behalf of said limited liability company.



Notary Public in and for
The State of T E X A S

My commission expires: **10/3/20**

LAURA BYRD
Notary Public, State of Texas
Comm. Expires 10-03-2020
Notary ID 130846548

## EXHIBIT A

(DESCRIPTION OF NOTE AND SECURITY INSTRUMENT)

(1)     Promissory Note dated March 31, 2017, in the amount of $4,745,000.00, executed by WC 4811 SOUTH CONGRESS, LLC, payable to the order of FIRST STATE BANK CENTRAL TEXAS; and

(2)     Deed of Trust, Security Agreement and Financing Statement dated March 31, 2017 executed by WC 4811 SOUTH CONGRESS, LLC, for the benefit of FIRST STATE BANK CENTRAL TEXAS.

EXHIBIT NO. 4

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

*Dana DeBeauvoir*

Dana DeBeauvoir, County Clerk
Travis County, Texas
Aug 24, 2020 02:36 PM    Fee: $34.00
**2020151972**
*Electronically Recorded*

MORTGAGE ASSIGNMENT
($4,745,000.00)

## ASSIGNMENT OF NOTE AND SECURITY INSTRUMENTS

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF TRAVIS | § | |

BANCORPSOUTH BANK, a Mississippi banking corporation (the successor by merger to First State Bank, Central Texas, a Texas state banking association) (the "*Assignor*") for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration to Assignor in hand paid by 4811 SoCo, L.P., a Delaware limited partnership (the "*Assignee*"), the receipt and sufficiency of which are hereby acknowledged, has GRANTED, TRANSFERRED and ASSIGNED WITHOUT RECOURSE, and does hereby GRANT, TRANSFER and ASSIGN WITHOUT RECOURSE, unto the Assignee, the following:

(a)    Promissory Note executed by WC 4811 South Congress, LLC, a Delaware limited liability company (the "*Borrower*"), and payable to the order of First State Bank, Central Texas, a Texas banking association , dated March 31, 2017, in the original principal amount of FOUR MILLION SEVEN HUNDRED FORTY-FIVE THOUSAND AND 00/100 DOLLARS ($4,745,000.00), bearing loan number 11364000, and as such note may have been thereafter modified, amended, restated, or extended (collectively, the "*Note*") held by Assignor as successor to First State Bank, Central Texas, a Texas banking association;

(b)    All rights, titles, interests, liens, security interests, pledges, privileges, claims, demands and equities existing and to exist in connection with, pertaining to, governing, guaranteeing, renewing, extending, modifying, or as security for the payment of the Note including, without limitation, the following:

(i)    Deed of Trust, Security Agreement and Financing Statement dated March 31, 2017, executed by Borrower for the benefit of Assignor, and recorded in the Official Public Records of Travis County, Texas under Document No. 2017052193, as such deed of trust may have been thereafter further modified, amended, restated or extended

(ii)    Collateral Assignment of Leases and Rents dated March 31, 2017, executed by Borrower for the benefit of Assignor, and recorded in the Official Public Records of Travis County, Texas under Document No. 2017052194, as it may have been thereafter further modified, amended, restated or extended;

(iii)    Loan Agreement dated March 31, 2017, by and between the Assignor, the Borrower, the Guarantors;

1

(iv)    UCC Financing Statement recorded on April 11, 2018 under File No. 18-0013093318 with the Texas Secretary of State;

(v)    Guaranty Agreements dated March 31, 2017 executed by Natin Paul and World Class Capital Group, LLC (collectively, the "*Guarantors*") for the benefit of the Seller

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THAT LOAN SALE AGREEMENT DATED AUGUST 21, 2020 (THE "*Loan Sale Agreement*") EXECUTED BY THE ASSIGNOR, AS SELLER, AND ASSIGNEE, AS PURCHASER, IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT ASSIGNOR HAS NOT MADE AND HEREBY DISCLAIMS ANY AND ALL REPRESENTATIONS OR WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, REGARDING ANY ASPECT OF THE ASSETS OR THE UNDERLYING REALTY, PERSONALTY OR INTANGIBLE PROPERTY SECURING THE NOTE (THE "*Mortgaged Premises*"), INCLUDING, BUT NOT LIMITED TO THOSE RELATING TO ENFORCEABILITY OR TERMS OF THE ASSETS, THE NATURE AND CONDITION OF THE ASSETS AND THE MORTGAGED PREMISES (INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, AND THE SUITABILITY THEREOF FOR ANY AND ALL ACTIVITIES AND USES WHICH ASSIGNEE MAY ELECT TO CONDUCT THEREON, AND THE EXISTENCE OF ANY ENVIRONMENTAL HAZARDS OR CONDITIONS OF THE COLLATERAL), THE COMPLIANCE OF THE ASSETS OR MORTGAGED PREMISES WITH ALL APPLICABLE LAWS, ORDINANCES, RULES OR REGULATIONS (INCLUDING, WITHOUT LIMITATION, ENVIRONMENTAL LAWS); (B) THE NATURE AND EXTENT OF ANY RIGHT-OF-WAY, LEASE, POSSESSION, LIEN, ENCUMBRANCE, LICENSE, RESERVATION, CONDITION OR OTHERWISE AFFECTING THE MORTGAGED PREMISES; AND (C) THE COMPLIANCE OF THE ASSETS OR THE MORTGAGED PREMISES, OR ITS OPERATION, WITH ANY APPLICABLE LAWS, ORDINANCES OR REGULATIONS OF ANY GOVERNMENT OR OTHER BODY.

ASSIGNEE, FOR ITSELF, ITS SUCCESSORS AND ASSIGNS, EXPRESSLY ACCEPTS THE ASSIGNMENT OF THE ASSETS SUBJECT TO ALL OF THE TERMS, CONDITIONS, AGREEMENTS, DISCLAIMERS AND REPRESENTATIONS CONTAINED IN THE LOAN SALE AGREEMENT, INCLUDING, WITHOUT LIMITATION, THOSE SET FORTH IN SECTIONS 9 AND 11 THEREOF.

TO HAVE AND TO HOLD the Assets, together and along with all rights, titles, interests, privileges, claims, demands and equities under the foregoing instruments now or hereafter owned by Assignor, Assignor's successors or assigns, in connection therewith or as security therefor unto Assignee, its successors or assigns forever.

This transfer and assignment is made WITHOUT WARRANTY OR RECOURSE WHATSOEVER, except as expressly set forth in the Loan Sale Agreement.

2

EXHIBIT NO. 5                                    EX. 5-002

EXECUTED effective on this the _21st_ day of August, 2020.

> **BANCORPSOUTH BANK**
>
> By: _____
> Name: _Billy J. Babineaux Jr_
> Title: _Sr. Vice Presid_

STATE OF _Louisiana_ §
_Parish_ §
~~COUNTY~~ OF _Lafayette_ §

On _August 21_____, 2020 before me, ___Renée Rodrigue___, a notary public, personally appeared _Billy J. Babineaux, Jr._, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature ___Renée Rodrigue___
(Seal)



RENEE RODRIGUE
Notary Public
ID Number 150401
My Commission is For Life

**After Recording, Return to:**

4811 SoCo, L.P.
2726 Bissonnet St., #240-244
Houston, Texas 77005-1352

20170804.20190907/3795651 1

EXHIBIT NO. 5                    EX. 5-003



HIRSCH & WESTHEIMER
*Attorneys and Counselors*

T. 713.220.9165
F. 713.223.9319
mdurrschmidt@hirschwest.com

August 21, 2020

*Via CMRRR: 9414 7266 9904 2167 5085 92*
*and First Class U.S. Mail*

WC 4811 South Congress, LLC
c/o World Class
814 Lavaca St.
Austin, Texas 78701
Attn: Natin Paul

Re:     Promissory Note (the "Note") dated March 31, 2017 in the original
        principal sum of $4,745,000 executed by WC 4811 South Congress, LLC
        ("Maker" or "Borrower") and payable to BancorpSouth Bank, as
        successor by merger to First State Bank Central Texas, secured by a Deed
        of Trust, Security Agreement and Financing Statement dated March 31,
        2017 (the "Deed of Trust") on 14.993 acres of land, more or less, out of
        the Isaac Decker League Survey No. 20, Abstract No. 8, in Travis County,
        Texas (the "Collateral" or the "Property") and guaranteed by Natin Paul
        and World Class Capital Group, LLC (collectively the "Guarantors").

Dear Sir or Madam:

        On August 21, 2020, BancorpSouth Bank, successor by merger to First
State Bank Central Texas (the "**Bank**") sold to 4811 SoCo, L.P. (the "**Purchaser**")
all of the Bank's ownership, right, title and interest in the Note, Deed of Trust,
Guaranty and related documents and instruments (collectively the "**Loan**").

        Any and all future payments on the Note and all communications
regarding the Loan should be made to:

        4811 SoCo, L.P.
        500 West 2nd Street, #1900
        Austin, Texas 78701

20170804.20190907/3797012.1

EXHIBIT NO. 6                    EX. 6-001

WC 4811 South Congress, LLC
August 21, 2020
Page 2

      Should you have any further questions, please direct your inquiries to the Purchaser.

              Sincerely,

              HIRSCH & WESTHEIMER, P.C.

              By: */s/ Michael J. Durrschmidt*
                Michael J. Durrschmidt

cc:   Natin Paul
      c/o World Class
      814 Lavaca St.
      Austin, Texas 78701
      Attn: Natin Paul
      *Via CMRRR: 9414 7266 9904 2167 5085 47*

      World Class Capital Group, LLC
      c/o World Class
      814 Lavaca St.
      Austin, Texas 78701
      Attn: Natin Paul
      *Via CMRRR: 9414 7266 9904 2167 5085 61*

      Linda Thong
      World Class
      244 Fifth Avenue, Suite 2200
      New York, New York 10001
      *Via CMRRR: 9414 7266 9904 2167 5086 08*

      Maryann Norwood
      World Class
      814 Lavaca St.
      Austin, Texas 78701
      *Via email: mnorwood@world-class.com*

      Brian Elliott
      World Class Global Business Services
      814 Lavaca St.
      Austin, Tx 78701
      *Via email: belliott@world-class.com*

EXHIBIT NO. 6               EX. 6-002

# BRACEWELL

August 25, 2020

**BY E-MAIL AND CMRRR**

Maryann Norwood
WC 4811 South Congress, LLC
814 Lavaca Street
Austin, Texas 78701
mnorwood@world-class.com

Re:     September 1, 2020 foreclosure sale for that certain property secured by the Promissory Note (the "Note") dated March 31, 2017 in the original principal sum of $4,745,000 executed by WC 4811 South Congress, LLC ("Maker" or "Borrower") and payable to 4811 SoCo, LP, a Delaware limited partnership ("Lender"), successor by assignment to BancorpSouth Bank, as successor by merger to First State Bank Central Texas (the "Loan"), secured by a Deed of Trust, Security Agreement and Financing Statement dated March 31, 2017 (the "Deed of Trust") on 14.993 acres of land, more or less, out of the Isaac Decker League Survey No. 20, Abstract No. 8, in Travis County, Texas (the "Collateral" or the "Property") and guaranteed by Natin Paul and World Class Capital Group, LLC (collectively the "Guarantors")

Dear Ms. Norwood:

I write in response to your August 21, 2020 correspondence to Mr. Durrschmidt, counsel to BancorpSouth Bank ("Original Lender").  I am counsel to 4811 SoCo, LP, which on August 21, 2020 acquired from Original Lender all of Original Lender's rights, title, and interest in and to the Loan and the Loan Documents[1] under that certain Assignment of Note and Security Instruments, which was duly recorded on August 24, 2020 in the Office of the County Clerk of Travis County, Texas in Instrument No. 2020151972 and is attached hereto as Exhibit 1.  Original Lender sent you notice of such assignment on August 21, 2020, a copy of which is attached as Exhibit 2.

Lender is aware of the Attorney General's "Informal Guidance" but disagrees with Borrower's characterization of same in your letter.  Therefore, Lender does not agree to withdraw the Notice of Trustee's Sale of the Property schedule for September 1.

The Informal Guidance regarding foreclosure sales in Texas changes nothing in connection with the September 1 non-judicial foreclosure sale on the Property at issue.  Contrary to your characterization, the

---

[1] The Note, the Deed of Trust, the Collateral Assignment of Leases and Rents dated March 31, 2017, the Loan Agreement dated March 31, 2017, the UCC Financing Statement recorded on April 11, 2018, and the Guaranty Agreements dated March 31, 2017 executed by Guarantors are collectively referred to herein as the "Loan Documents."

**Christopher L. Dodson**
Partner

T: +1.713.221.1373      F: +1.800.404.3970
711 Louisiana Street, Suite 2300, Houston, Texas 77002-2770
chris.dodson@bracewell.com      bracewell.com

Maryann Norwood
August 25, 2020
Page 2

AG's "Informal Guidance" does not "confirm[] that foreclosure sales that have not been specifically approved by the Mayor of the city in which they will take place cannot satisfy the public sale requirement under Texas Property Code Chapter 51." Ltr. at 1. Rather, it states that a foreclosure sale may not proceed if more than 10 "willing bidders" are in attendance unless approved by the mayor. Exhibit 3.

While Borrower contends that the "proposed foreclosure sale will not satisfy the public sale requirement in the Texas Property Code," at this time, there is no evidence or suggestion that the September 1 foreclosure sale for this Property will be attended by more than 10 willing bidders, so it would be inappropriate to preemptively cancel the foreclosure sale on this basis. Ltr. at 3. Lender is aware of the relevant gathering restrictions, other state and local health and safety guidelines, and the AG's Informal Guidance, and Lender will fully comply therewith in conducting the foreclosure sale.

Moreover, the Informal Guidance states "this letter is not a formal Attorney General opinion under section 402.042 of the Texas Government Code; rather, it is intended only to convey informal legal guidance." Ex. 3 at 4. The Informal Guidance, therefore, does not deserve the weight Borrower recommends. Attorney general opinions, especially informal ones, are "not controlling on the courts." *See Comm'rs Ct. of Titus Cty. v. Agan*, 940 S.W.2d 77, 82 (Tex. 1997) (disagreeing with Attorney General's opinion).

Finally, as I am sure you are aware, your colleague, Brian Elliott, unsuccessfully made this same argument related to the August foreclosure sale in *Colorado Third Street, LLC v. WC 4th and Colorado, LP*, Cause No. D-1-GN-20-002781. In spite of this argument, a Travis County district court denied Mr. Elliott's request to enjoin a foreclosure sale in August. And after the issuance of this Informal Guidance, other foreclosure sales occurred in Travis County in August, without express Mayoral approval.

For all of these reasons, Lender intends to proceed with the posted foreclosure sale on September 1. If Borrower intends to seek legal action in connection with the Loan, we request that you provide us with notice as required by the Texas Rules and Travis County Local Rules.

Very truly yours,

Christopher L. Dodson

cc:    Mr. Brian Elliott
       814 Lavaca Street
       Austin, Texas 78701
       By Email: belliott@world-class.com

CLD
Enclosure

#6223889

EXHIBIT NO. 7                                                                    EX. 7-002

OFFICIAL PUBLIC RECORDS

*Dana DeBeauvoir*

Dana DeBeauvoir, County Clerk
Travis County, Texas
Aug 24, 2020 02:36 PM   Fee: $34.00
**2020151972**
*Electronically Recorded*

MORTGAGE ASSIGNMENT
($4,745,000.00)

## ASSIGNMENT OF NOTE AND SECURITY INSTRUMENTS

THE STATE OF TEXAS            §
                             §            KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF TRAVIS             §

BANCORPSOUTH BANK, a Mississippi banking corporation (the successor by merger to First State Bank, Central Texas, a Texas state banking association) (the "*Assignor*") for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration to Assignor in hand paid by 4811 SoCo, L.P., a Delaware limited partnership (the "*Assignee*"), the receipt and sufficiency of which are hereby acknowledged, has GRANTED, TRANSFERRED and ASSIGNED WITHOUT RECOURSE, and does hereby GRANT, TRANSFER and ASSIGN WITHOUT RECOURSE, unto the Assignee, the following:

(a)    Promissory Note executed by WC 4811 South Congress, LLC, a Delaware limited liability company (the "*Borrower*"), and payable to the order of First State Bank, Central Texas, a Texas banking association , dated March 31, 2017, in the original principal amount of FOUR MILLION SEVEN HUNDRED FORTY-FIVE THOUSAND AND 00/100 DOLLARS ($4,745,000.00), bearing loan number 11364000, and as such note may have been thereafter modified, amended, restated, or extended (collectively, the "*Note*") held by Assignor as successor to First State Bank, Central Texas, a Texas banking association;

(b)    All rights, titles, interests, liens, security interests, pledges, privileges, claims, demands and equities existing and to exist in connection with, pertaining to, governing, guaranteeing, renewing, extending, modifying, or as security for the payment of the Note including, without limitation, the following:

(i)    Deed of Trust, Security Agreement and Financing Statement dated March 31, 2017, executed by Borrower for the benefit of Assignor, and recorded in the Official Public Records of Travis County, Texas under Document No. 2017052193, as such deed of trust may have been thereafter further modified, amended, restated or extended

(ii)    Collateral Assignment of Leases and Rents dated March 31, 2017, executed by Borrower for the benefit of Assignor, and recorded in the Official Public Records of Travis County, Texas under Document No. 2017052194, as it may have been thereafter further modified, amended, restated or extended;

(iii)    Loan Agreement dated March 31, 2017, by and between the Assignor, the Borrower, the Guarantors;

1

20170804.20190907/3795651.1

(iv)     UCC Financing Statement recorded on April 11, 2018 under File No. 18-0013093318 with the Texas Secretary of State;

(v)     Guaranty Agreements dated March 31, 2017 executed by Natin Paul and World Class Capital Group, LLC (collectively, the "*Guarantors*") for the benefit of the Seller

EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THAT LOAN SALE AGREEMENT DATED AUGUST 21, 2020 (THE "*Loan Sale Agreement*") EXECUTED BY THE ASSIGNOR, AS SELLER, AND ASSIGNEE, AS PURCHASER, IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT ASSIGNOR HAS NOT MADE AND HEREBY DISCLAIMS ANY AND ALL REPRESENTATIONS OR WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, REGARDING ANY ASPECT OF THE ASSETS OR THE UNDERLYING REALTY, PERSONALTY OR INTANGIBLE PROPERTY SECURING THE NOTE (THE "*Mortgaged Premises*"), INCLUDING, BUT NOT LIMITED TO THOSE RELATING TO ENFORCEABILITY OR TERMS OF THE ASSETS, THE NATURE AND CONDITION OF THE ASSETS AND THE MORTGAGED PREMISES (INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL AND GEOLOGY, AND THE SUITABILITY THEREOF FOR ANY AND ALL ACTIVITIES AND USES WHICH ASSIGNEE MAY ELECT TO CONDUCT THEREON, AND THE EXISTENCE OF ANY ENVIRONMENTAL HAZARDS OR CONDITIONS OF THE COLLATERAL), THE COMPLIANCE OF THE ASSETS OR MORTGAGED PREMISES WITH ALL APPLICABLE LAWS, ORDINANCES, RULES OR REGULATIONS (INCLUDING, WITHOUT LIMITATION, ENVIRONMENTAL LAWS); (B) THE NATURE AND EXTENT OF ANY RIGHT-OF-WAY, LEASE, POSSESSION, LIEN, ENCUMBRANCE, LICENSE, RESERVATION, CONDITION OR OTHERWISE AFFECTING THE MORTGAGED PREMISES; AND (C) THE COMPLIANCE OF THE ASSETS OR THE MORTGAGED PREMISES, OR ITS OPERATION, WITH ANY APPLICABLE LAWS, ORDINANCES OR REGULATIONS OF ANY GOVERNMENT OR OTHER BODY.

ASSIGNEE, FOR ITSELF, ITS SUCCESSORS AND ASSIGNS, EXPRESSLY ACCEPTS THE ASSIGNMENT OF THE ASSETS SUBJECT TO ALL OF THE TERMS, CONDITIONS, AGREEMENTS, DISCLAIMERS AND REPRESENTATIONS CONTAINED IN THE LOAN SALE AGREEMENT, INCLUDING, WITHOUT LIMITATION, THOSE SET FORTH IN SECTIONS 9 AND 11 THEREOF.

TO HAVE AND TO HOLD the Assets, together and along with all rights, titles, interests, privileges, claims, demands and equities under the foregoing instruments now or hereafter owned by Assignor, Assignor's successors or assigns, in connection therewith or as security therefor unto Assignee, its successors or assigns forever.

This transfer and assignment is made WITHOUT WARRANTY OR RECOURSE WHATSOEVER, except as expressly set forth in the Loan Sale Agreement.

20170804.20190907/3795651.1

2

EXECUTED effective on this the 21st day of August, 2020.

**BANCORPSOUTH BANK**

By: _____

Name: _Billy J. Babineaux Jr_

Title: _Sr. Vice Presid_

STATE OF _Louisiana_ §

_Parish_ §

~~COUNTY~~ OF _Lafayette_ §

On _August 21_____, 2020 before me, _Renée Rodrigue_____, a notary public, personally appeared _Billy J. Babineaux, Jr._, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Renée Rodrigue_____

(Seal)

RENEE RODRIGUE
Notary Public
ID Number 150401
My Commission is For Life

**After Recording, Return to:**

4811 SoCo, L.P.
2726 Bissonnet St., #240-244
Houston, Texas 77005-1352

EXHIBIT NO. 7                                                    EX. 7-005



**HIRSCH & WESTHEIMER**
*Attorneys and Counselors*

T. 713.220.9165
F. 713.223.9319
mdurrschmidt@hirschwest.com

August 21, 2020

*Via CMRRR: 9414 7266 9904 2167 5085 92*
*and First Class U.S. Mail*

WC 4811 South Congress, LLC
c/o World Class
814 Lavaca St.
Austin, Texas 78701
Attn: Natin Paul

Re: Promissory Note (the "Note") dated March 31, 2017 in the original principal sum of $4,745,000 executed by WC 4811 South Congress, LLC ("Maker" or "Borrower") and payable to BancorpSouth Bank, as successor by merger to First State Bank Central Texas, secured by a Deed of Trust, Security Agreement and Financing Statement dated March 31, 2017 (the "Deed of Trust") on 14.993 acres of land, more or less, out of the Isaac Decker League Survey No. 20, Abstract No. 8, in Travis County, Texas (the "Collateral" or the "Property") and guaranteed by Natin Paul and World Class Capital Group, LLC (collectively the "Guarantors").

Dear Sir or Madam:

On August 21, 2020, BancorpSouth Bank, successor by merger to First State Bank Central Texas (the "**Bank**") sold to 4811 SoCo, L.P. (the "**Purchaser**") all of the Bank's ownership, right, title and interest in the Note, Deed of Trust, Guaranty and related documents and instruments (collectively the "**Loan**").

Any and all future payments on the Note and all communications regarding the Loan should be made to:

4811 SoCo, L.P.
500 West 2nd Street, #1900
Austin, Texas 78701

---

1415 Louisiana   36th Floor   Houston, Texas 77002   T. 713 223 5181   *hirschwest.com*

EXHIBIT NO. 7                    EX. 7-006

WC 4811 South Congress, LLC
August 21, 2020
Page 2


      Should you have any further questions, please direct your inquiries to the Purchaser.

                Sincerely,

                HIRSCH & WESTHEIMER, P.C.


                By: */s/ Michael J. Durrschmidt*
                   Michael J. Durrschmidt


cc:    Natin Paul
       c/o World Class
       814 Lavaca St.
       Austin, Texas 78701
       Attn: Natin Paul
       *Via CMRRR: 9414 7266 9904 2167 5085 47*

       World Class Capital Group, LLC
       c/o World Class
       814 Lavaca St.
       Austin, Texas 78701
       Attn: Natin Paul
       *Via CMRRR: 9414 7266 9904 2167 5085 61*

       Linda Thong
       World Class
       244 Fifth Avenue, Suite 2200
       New York, New York 10001
       *Via CMRRR: 9414 7266 9904 2167 5086 08*

       Maryann Norwood
       World Class
       814 Lavaca St.
       Austin, Texas 78701
       *Via email: mnorwood@world-class.com*

       Brian Elliott
       World Class Global Business Services
       814 Lavaca St.
       Austin, Tx 78701
       *Via email: belliott@world-class.com*

EXHIBIT NO. 7                EX. 7-007



## KEN PAXTON
### ATTORNEY GENERAL OF TEXAS

August 1, 2020

Honorable Bryan Hughes
Texas Senate
P.O. Box 12068
Capitol Station
Austin, TX 78711

Dear Senator Hughes,

You ask whether local governmental bodies have authority to limit in-person attendance at a judicial or non-judicial foreclosure sale to 10 persons or fewer. Your question concerns local emergency orders restricting or delaying such sales during the current COVID-19 pandemic. We conclude that a foreclosure sale of residential or commercial real property that is conducted outdoors is subject to the limitation on outdoor gatherings in excess of 10 persons imposed by Executive Order GA-28. Accordingly, an outdoor foreclosure sale may not proceed with more than 10 persons in attendance unless approved by the mayor in whose jurisdiction the sale occurs, or if in an unincorporated area, the county judge. However, to the extent a sale is so limited, and willing bidders who wish to attend are not allowed to do so as a result, the sale should not proceed as it may not constitute a "public sale" as required by the Texas Property Code.

When a mortgage loan is in default, a mortgagee may elect to institute either a judicial foreclosure or, when permitted by the deed of trust, a non-judicial foreclosure.[1] A judicial foreclosure begins with a lawsuit to establish the debt and fix the lien.[2] The judgment in a foreclosure lawsuit generally provides that an order of sale issue to any sheriff or constable directing them to seize the property and sell it under execution in satisfaction of the judgment.[3] After the sale is completed, the sheriff or other officer must provide to the new buyer possession of the property within 30 days.[4]

---

[1] *Bonilla v. Roberson*, 918 S.W.2d 17, 21 (Tex. App.—Corpus Christi 1996, no writ).

[2] *Id.* at 21.

[3] TEX. R. CIV. P. 309; *but see id.* (excepting judgments against executors, administrators, and guardians from orders of sale). The procedures for the sale under judicial foreclosure generally follow the same procedures as sales under non-judicial foreclosures. *Compare id.* 646a–648 *with* TEX. PROP. CODE § 51.002.

[4] TEX. R. CIV. P. 310.

A non-judicial foreclosure, in turn, must be expressly authorized in a deed of trust.[5] The Property Code prescribes the minimum requirements for a non-judicial sale of real property under a power of sale conferred by a deed of trust or other contract lien.[6] The Code requires that a sale under a non-judicial foreclosure be "a public sale at auction held between 10 a.m. and 4 p.m. of the first Tuesday of a month," unless that day is January 1 or July 4, in which cases the sale must be held on the first Wednesday of the month.[7] The deed of trust or other loan document can establish additional requirements, and if such requirements are established, those requirements must likewise be satisfied in order for there to be a valid foreclosure sale.[8]

We understand that many foreclosure sales in Texas, both judicial and non-judicial, are held outdoors. Frequently, such sales occur on the steps of a courthouse.

With this background in mind, we address your question concerning attendance limitations. Governor Abbott ordered in Executive Order GA-28 that "every business in Texas shall operate at no more than 50 percent of the total listed occupancy of the establishment."[9] This general limitation, however, is subject to several exceptions. One such exception is found in paragraph five of the order, which limits outdoor gatherings to 10 persons or fewer without approval by the mayor or, in the case of unincorporated territory, the county judge in whose jurisdiction the gathering occurs.[10] Accordingly, to the extent a foreclosure sale occurs outdoors, attendance at the sale is limited to 10 persons or fewer unless greater attendance is approved by the relevant mayor or county judge.

While certain services are exempt from the outdoor gathering limitation in Executive Order GA-28, we do not conclude that foreclosure sales are included within them. Executive Order GA-28 exempts from its limitations on outdoor gatherings services described in paragraphs 1, 2, and 4 of the order. Relevant here, paragraph 1 exempts from capacity limitations, *inter alia*, "any services listed by the U.S. Department of Homeland Security's Cybersecurity and Infrastructure Workforce, Version 3.1 or any subsequent version."[11] (CISA Guidance). Among the services listed in version 3.1 of

---

[5] *See* TEX. PROP. CODE § 51.002.

[6] *See id.* § 51.002.

[7] *Id.* §§ 51.002(a), (a-1); *see also id.* § 51.002(h) (requiring a sale to be held on or after the 90th day after the date the commissioners court records a designation of a sale at an area other than an area at the county courthouse).

[8] *See Bonilla*, 918 S.W.2d at 21.

[9] Gov. Greg Abbott Exec. Order GA-28.

[10] *Id.* at 3 (as amended by Gov. Greg Abbott Proc. of July 2, 2020).

[11] *Id.* at 2.

2

the CISA Guidance are "[r]esidential and commercial real estate services, including settlement services."[12]

A court's main objective in construing the law is to give effect to the intent of its provisions.[13] And there is no better indication of that intent than the words that are chosen.[14] One dictionary defines a "service" as "[w]ork that is done for others as an occupation or business."[15] A periodic foreclosure auction conducted at a courthouse— whether by an officer of the court, an attorney, an auction professional, or another person serving as trustee[16]—does not constitute the type of dedicated real estate service work contemplated by the CISA Guidance. Accordingly, we conclude that outdoor foreclosure sales are not exempted from the 10-person attendance limitation imposed by paragraph 5 of Executive Order GA-28.

If a foreclosure sale is subject to, and not exempted from, the 10-person attendance limit imposed in Executive Order GA-28, it should not proceed if one or more willing bidders are unable to participate because of the attendance limit. "[A] sale of real property under a power of sale conferred by a deed of trust or other contract lien must be a *public sale* at auction held between 10 a.m. and 4 p.m. of the first Tuesday of a month."[17] The purpose of the public sale requirement is to "secure the attendance of purchasers and obtain a fair price for the property."[18] Strict compliance with the Property Code is required for a trustee to properly make a foreclosure sale.[19] If an attendance limit precludes the conduct of a public sale for the purpose of securing sufficient bidders to obtain a fair price, the propriety of a foreclosure auction may be called into question. Accordingly, to the extent attendance at a foreclosure sale is limited to ten or fewer persons, and that limit precludes the attendance of one or more willing bidders who otherwise would have appeared in person, the sale should not go forward as it likely would not comport with the Property Code requirement that the sale be a "public sale."

---

[12] *See* Guidance on the Essential Critical Infrastructure Workforce: Ensuring Community and National Resilience in COVID-19 Response, at 16, available at https://www.cisa.gov/sites/default/files/ publications/Version_3.1_CISA_Guidance_on_Essential_Critical_Infrastructure_Workers.pdf.

[13] *See Summers*, 282 S.W.3d at 437.

[14] *See id.* ("Where text is clear, text is determinative of that intent.").

15 Am. Heritage Dictionary (5th ed. 2020), available at https://www.ahdictionary.com/word/ search.html?q=service; *see also Greater Houston P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015) (applying an undefined term's ordinary meaning, unless the context of the law in which the term appears suggests a different or more precise definition).

[16] The Texas Property Code does not set forth specific professional requirements for a foreclosure trustee, providing only that "[o]ne or more persons may be authorized to exercise the power of sale under a security instrument." TEX. PROP. CODE § 51.007(a).

[17] TEX. PROP. CODE § 51.002(a) (emphasis added).

[18] *Reisenberg v. Hankins*, 258 S.W. 904, 910 (Tex. Civ. App.–Amarillo 1924, writ dismissed w.o.j.).

[19] *Myrad Props. v. LaSalle Bank Nat'l Assoc.*, 252 S.W.3d 605, 615 (Tex. App.–Austin 2008), *rev'd on other grounds*, 300 S.W.3d 746 (Tex. 2009).

EXHIBIT NO. 7                                                          EX. 7-010

We trust this letter provides you with the advice you were seeking. Please note this letter is not a formal Attorney General opinion under section 402.042 of the Texas Government Code; rather, it is intended only to convey informal legal guidance.

Sincerely,

Ryan Bangert
Deputy First Assistant Attorney General

4



**HIRSCH & WESTHEIMER**
*Attorneys and Counselors*

T. 713.220.9165
F. 713.223.9319
mdurrschmidt@hirschwest.com

July 2, 2020

*Via CMRRR: 9414 7266 9904 2167 5063 76
and First Class U.S. Mail*

WC 4811 South Congress, LLC
c/o World Class
814 Lavaca St.
Austin, Texas 78701
Attn: Natin Paul

Re:  Promissory Note (the "Note") dated March 31, 2017 in the original principal sum of $4,745,000 executed by WC 4811 South Congress, LLC ("Maker" or "Borrower") and payable to BancorpSouth Bank, as successor by merger to First State Bank Central Texas, secured by a Deed of Trust, Security Agreement and Financing Statement dated March 31, 2017 on 14.993 acres of land, more or less, out of the Isaac Decker League Survey No. 20, Abstract No. 8, in Travis County, Texas (the "Collateral" or the "Property") and guaranteed by Natin Paul and World Class Capital Group, LLC (collectively the "Guarantors").

Dear Sir or Madam:

This law firm represents BancorpSouth Bank, successor by merger to First State Bank Central Texas (the "Bank") in connection with the above-referenced Note. As you know, the Note is delinquent.

Pursuant to the Collateral Assignment of Leases and Rents dated March 31, 2017, executed by the Borrower for the benefit of the Bank, please provide us with the names, addresses, the current lease for each tenant occupying a rental space on the Property, and the current rent roll for the Property.

Demand is hereby made for the immediate payment of the delinquent payments. The Note is currently past due in the amount of Ninety-Six Thousand Thirty-Six and 45/100 Dollars ($96,036.45).  In the event the Bank has not received $96,036.45 by 4:30 p.m. C.S.T. on July 12, 2020, then the Bank will accelerate the Note and has instructed us thereafter to take legal action against the Maker and Guarantor and pursue the Bank's remedies as to the Collateral.

WC 4811 South Congress, LLC
July 2, 2020
Page 2

If any payment by check is returned due to insufficient funds or for any other reason, "good funds" will not have been received.  No extension of time will be granted due to the return of payment.  The Bank reserves the right to accept or reject a partial payment of the total due without waiving any of its rights herein or otherwise.

The Bank reserves all of its rights, remedies, and recourses against the Maker and Guarantors under the Note and Guaranty Agreements.  This demand for payment is being made pursuant to section 38.001 of the Texas Civil Practice and Remedies Code and, as such, the Maker and Guarantors may be liable, in accordance with the terms of the Note and Guaranty Agreements, not only for the outstanding principal balance due and owing together with interest as it accrues at the pre- and post-maturity rate, but also for collection costs, including attorney fees.

By transmitting this demand to you, nothing is intended to suggest that all of the Bank's rights and remedies have been set forth.  Nothing contained in this letter is a waiver of the Bank's rights or remedies, under the Note or any of the other loan documents, at law or in equity.  Specifically, but not by way of limitation, the Maker and Guarantors continue to waive all notices consistent with the loan documents.

The Maker and Guarantors are not entitled to rely upon any oral statements made or purported to be made by or on behalf of the Bank in connection with any alleged agreement by the Bank to refrain from exercising any of its rights in connection with the indebtedness.  Acceptance by the Bank, or any other parties, on behalf of the Bank, of any debt service payment does not, and will not, constitute a waiver of any of the rights, remedies or recourses available under the loan documents, at law, or in equity.  Application of such payments should in no way be construed as a modification, rearrangement, or extension of the existing loan documents.

*This is an attempt to collect a debt and any information will be used for that purpose.*

Sincerely,

HIRSCH & WESTHEIMER, P.C.

By: */s/ Michael J. Durrschmidt*
     Michael J. Durrschmidt

EXHIBIT NO. 8                                                EX. 8-002

WC 4811 South Congress, LLC
July 2, 2020
Page 3

cc:     Natin Paul
        c/o World Class
        814 Lavaca St.
        Austin, Texas 78701
        Attn: Natin Paul
        *Via CMRRR: 9414 7266 9904 2167 5063 45*

        World Class Capital Group, LLC
        c/o World Class
        814 Lavaca St.
        Austin, Texas 78701
        Attn: Natin Paul
        *Via CMRRR: 9414 7266 9904 2167 5063 52*

        Linda Thong
        World Class
        244 Fifth Avenue, Suite 2200
        New York, New York 10001
        *Via CMRRR: 9414 7266 9904 2167 5063 69*

        Maryann Norwood
        World Class
        814 Lavaca St.
        Austin, Texas 78701
        *Via email: mnorwood@world-class.com*

EXHIBIT NO. 8

# USPS Tracking®

FAQs ›

## Track Another Package  +

**Tracking Number:** 9414726699042167506376                    Remove ✕

Your item has been delivered to an agent for final delivery in AUSTIN, TX 78701 on July 6, 2020 at 12:41 pm.

⊘ **Delivered to Agent**

July 6, 2020 at 12:41 pm
Delivered to Agent for Final Delivery
AUSTIN, TX 78701

**Get Updates** ⌄

Feedback

---

**Text & Email Updates**                                              ⌄

---

**Tracking History**                                                  ⌄

---

**Product Information**                                                ⌄

---

**See Less** ⌃

EXHIBIT NO. 8                                                    EX. 8-004

**Tracking Number:** 9414726699042167506345          Remove ✕

Your item was delivered to an individual at the address at 1:28 pm on July 8, 2020 in AUSTIN, TX 78701.

## ⊘ **Delivered**

July 8, 2020 at 1:28 pm
Delivered, Left with Individual
AUSTIN, TX 78701

**Get Updates** ⌄

**See More** ⌄

Feedback

**Tracking Number:** 9414726699042167506352          Remove ✕

Your item was delivered to an individual at the address at 1:28 pm on July 8, 2020 in AUSTIN, TX 78701.

## ⊘ **Delivered**

July 8, 2020 at 1:28 pm
Delivered, Left with Individual
AUSTIN, TX 78701

**Get Updates** ⌄

**See More** ⌄

EXHIBIT NO. 8                    EX. 8-005

**Tracking Number:** 9414726699042167506369          Remove ✕

Your item has been delivered to the original sender at 2:28 pm on July 16, 2020 in HOUSTON, TX 77002.

## ⊘ **Delivered**

July 16, 2020 at 2:28 pm
Delivered, To Original Sender
HOUSTON, TX 77002

**Get Updates** ∨

**See More** ∨

Feedback

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs**

EXHIBIT NO. 8          EX. 8-006



T. 713.220.9165
F. 713.223.9319
mdurrschmidt@hirschwest.com

July 23, 2020

NOTICE OF ACCELERATION

*Via CMRRR: 9414 7266 9904 2167 5069 94*
*and U.S. First Class Mail*

WC 4811 South Congress, LLC
c/o World Class
814 Lavaca St.
Austin, Texas 78701
Attn: Natin Paul

RE:     Promissory Note (the "*Note*") dated March 31, 2017 in the original principal sum of $4,745,000 executed by WC 4811 South Congress, LLC ("*Maker*" or "*Borrower*") and payable to BancorpSouth Bank, as successor by merger to First State Bank Central Texas, secured by a Deed of Trust, Security Agreement and Financing Statement dated March 31, 2017 (the "*Deed of Trust*") on 14.993 acres of land, more or less, out of the Isaac Decker League Survey No. 20, Abstract No. 8, in Travis County, Texas (the "*Collateral*") and guaranteed by Natin Paul and World Class Capital Group, LLC (collectively the "*Guarantors*"), the Collateral Assignment of Leases and Rents dated March 31, 2017 (the "*Assignment of Rents*"), the Loan Agreement dated March 31, 2017 (the "*Loan Agreement*"), and any other documents executed by Borrower, or any other party in connection with the loan (together with the Note, Deed of Trust, Assignment of Rents, and Loan Agreement collectively referred to hereinafter as the "*Loan Documents*").

Dear Sir/Madam:

As you know, this law firm represents BancorpSouth Bank, successor by merger to First State Bank Central Texas (the "*Bank*") in connection with the above-referenced Note, Guaranties, and Loan Documents.

By letter dated and sent to you on July 2, 2020, this firm, on behalf of the Lender, notified you that the Note was in default for delinquent payment and that the Lender may accelerate the entire outstanding balance of the Note and foreclose the collateral securing the Note under the Deed of Trust if the default was not cured by July 12, 2020.  The Lender has informed our firm that the default was not cured on or before July 12, 2020 or within the additional time that has elapsed to the date of this letter.  Therefore, the entire indebtedness owing on the Note, and all interest accrued but unpaid thereon, is hereby **ACCELERATED** and due and payable in full.

EXHIBIT NO. 10                                      EX. 10-001

WC 4811 South Congress, LLC
July 23, 2020
Page 2

Pursuant to the terms of the Note and the other Loan Documents, the Lender hereby accordingly requires immediate payment of the entire unpaid balance due under the Note and all interest accrued but unpaid thereon, and all costs and fees in enforcing the Lender's rights under the Note and the Loan Documents.  If you intend to pay the indebtedness in full, you may contact Bill Babineaux of BancorpSouth Bank at 315 Settlers Trace Blvd., Lafayette, LA 70508, phone no. (337) 354-8902 to obtain the outstanding balance of the amounts due and owing under the Note and the Loan Documents.  Payment in full will not be considered made unless the Lender receives "good funds" in the form of cash, a cashier's check or money order in the full amount due and owing at the time.  If any such cashier's check or money order is returned to us for insufficient funds or for any other reason, "good funds" will not have been received.

The Lender may seek to foreclose its Collateral unless payment of the full indebtedness is made in good funds as described above and delivered to Bill Babineaux at the address set forth above.

THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

ASSERT AND PROTECT YOUR RIGHTS AS A MEMBER OF THE ARMED FORCES OF THE UNITED STATES. IF YOU OR YOUR SPOUSE IS SERVING ON ACTIVE MILITARY DUTY, INCLUDING ACTIVE MILITARY DUTY AS A MEMBER OF THE TEXAS NATIONAL GUARD OR THE NATIONAL GUARD OF ANOTHER STATE OR AS A MEMBER OF A RESERVE COMPONENT OF THE ARMED FORCES OF THE UNITED STATES, PLEASE SEND WRITTEN NOTICE OF THE ACTIVE MILITARY SERVICE TO THE SENDER OF THIS NOTICE IMMEDIATELY.

IF YOU WERE A SERVICE MEMBER IN MILITARY SERVICE AT ANYTIME WITHIN THE LAST NINE (9) MONTHS, PLEASE CONTACT THE SENDER OF THIS NOTICE IMMEDIATELY UPON RECEIPT OF THIS LETTER. YOU MAY BE ENTITLED TO CERTAIN PROTECTIONS AFFORDED UNDER THE SERVICE MEMBERS CIVIL RELIEF ACT.

Nothing contained in this letter is a waiver of the Lender's rights or remedies under the Note, Deed of Trust, Guaranties, or any of the other Loan Documents, at law or in equity.  Accordingly, but not by way of limitation, you continue to waive all demands and notices in connection with the Note, including presentment, demand, and notice of dishonor, consistent with the terms of the Note.

Should this law firm file a lawsuit on behalf of the Lender, then the Lender will also seek recovery of its legal fees and expenses incurred in the prosecution of its rights under the Loan Documents, as well as all past due interest and costs.

Neither you nor any other party shall be entitled to rely upon any oral statements made or purported to be made by or on behalf of the Lender in connection with any alleged agreement by the Lender to refrain from exercising any of its rights in connection with the indebtedness.  Acceptance by the Lender, or any other parties on behalf of the Lender, of any payment does not and will not constitute a waiver of any of the rights, remedies or recourses available under the Loan Documents, at law,

EXHIBIT NO. 10                                    EX. 10-002

WC 4811 South Congress, LLC
July 23, 2020
Page 3

or in equity.  Application of such payments should in no way be construed as a modification, rearrangement, or extension of the existing Loan Documents.

Sincerely,

HIRSCH & WESTHEIMER, P.C.

By:/s/ Michael J. Durrschmidt
   Michael J. Durrschmidt

cc:   Natin Paul
      c/o World Class
      814 Lavaca St.
      Austin, Texas 78701
      Attn: Natin Paul
      Via CMRRR: 9414 7266 9904 2167 5070 07

      World Class Capital Group, LLC
      c/o World Class
      814 Lavaca St.
      Austin, Texas 78701
      Attn: Natin Paul
      Via CMRRR: 9414 7266 9904 2167 5070 69

      Linda Thong
      World Class
      244 Fifth Avenue, Suite 2200
      New York, New York 10001
      Via CMRRR: 9414 7266 9904 2167 5071 20

      Maryann Norwood
      World Class
      814 Lavaca St.
      Austin, Texas 78701
      Via email: mnorwood@world-class.com

EXHIBIT NO. 10                                    EX. 10-003

# USPS Tracking®

FAQs >

## Track Another Package  +

**Tracking Number:** 9414726699042167506994                 Remove ✕

Your item was delivered to the front desk, reception area, or mail room at 2:49 pm on July 27, 2020 in AUSTIN, TX 78701.

Feedback

## ⊘ Delivered

July 27, 2020 at 2:49 pm
Delivered, Front Desk/Reception/Mail Room
AUSTIN, TX 78701

**Get Updates** ⌄

---

**Text & Email Updates**                                    ⌄

---

**Tracking History**                                        ⌄

---

**Product Information**                                     ⌄

---

**See Less** ⌃

EXHIBIT NO. 10                          EX. 10-004

**Tracking Number:** 9414726699042167507007                Remove ✕

Your item was delivered to the front desk, reception area, or mail room at 2:49 pm on July 27, 2020 in AUSTIN, TX 78701.

## ⊘ **Delivered**

July 27, 2020 at 2:49 pm
Delivered, Front Desk/Reception/Mail Room
AUSTIN, TX 78701

**Get Updates** ⌄

                              **See More** ⌄

Feedback

**Tracking Number:** 9414726699042167507069                Remove ✕

Your item was delivered to the front desk, reception area, or mail room at 2:49 pm on July 27, 2020 in AUSTIN, TX 78701.

## ⊘ **Delivered**

July 27, 2020 at 2:49 pm
Delivered, Front Desk/Reception/Mail Room
AUSTIN, TX 78701

**Get Updates** ⌄

                              **See More** ⌄

**Tracking Number:** 9414726699042167507120                    Remove ✕

Your item was delivered to an individual at the address at 10:07 am on July 27, 2020 in
NEW YORK, NY 10001.

⊘ **Delivered**

July 27, 2020 at 10:07 am
Delivered, Left with Individual
NEW YORK, NY 10001

**Get Updates** ⌄

See More ⌄

Feedback

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs**

EXHIBIT NO. 10                    EX. 10-006

 9 pgs    202040409

## NOTICE OF TRUSTEE'S SALE

STATE OF TEXAS §
§    KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF TRAVIS §

WHEREAS, WC 4811 SOUTH CONGRESS, LLC, a Delaware limited liability company (the

"*Grantor*"), executed a Deed of Trust, Security Agreement and Financing Statement dated March 31, 2017,

and recorded April 3, 2017 in the Official Public Records of Travis County, Texas (the "*Records*") under

Document No. 2017052193 (together with all extensions, modification, and renewals, if any, collectively

referred to hereinafter as the "*Deed of Trust*");

WHEREAS, the Grantor, pursuant to the Deed of Trust, conveyed to T. Gerry Gamble (the

"*Original Trustee*") for the benefit of First State Bank Central Texas, its successors and assigns

("*Beneficiary*"), all of the personal property, real property and premises described and referred to in the

Deed of Trust (the "*Mortgaged Property*"), including the following described property located in Travis

County, Texas:

14.993 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE SURVEY NO. 20, ABSTRACT NO. 8, IN TRAVIS COUNTY, TEXAS, BEING MORE FULLY DESCRIBED BY METES AND BOUNDS ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES, BEING THE FOLLOWING FOUR TRACTS:

TRACT 1:
4.32 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, BEING THE SAME PROPERTY CONVEYED BY ABEL J. & MARY ANN THERIOT FAMILY LIMITED PARTNERSHIP TO THERIOT FLP PROPERTIES – III, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125121, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

TRACT 2:
5.6839 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, BEING THE SAME PROPERTY AS TRACT ONE CONVEYED BY SASHA THERIOT SANDERS, TEAL THERIOT SANDERS, AND ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125125, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

TRACT 3:
2.629 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, BEIGN THE SAME PROEPRTY AS TRACT TWO

1

20170804.20190907/3778366.1

EXHIBIT NO. 11    EX. 11-001

CONVEYED BY SASHA THERIOT SANDERS, TEAL THERIOT SANDERS, AND ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125125, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

TRACT 4:
2.32 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, BEIGN THE SAME PROEPRTY AS TRACT TWO CONVEYED BY SUZANNE MARIE SANDERS AND CURTIS NOLEN SANDERS TO SANDERS FLP PROPERTIES – 1, LLC, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125122, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

WHEREAS, the Deed of Trust secures payment of that certain Promissory Note dated March 31, 2017, executed by Grantor, as Maker, and payable to the order of Beneficiary, in the original stated amount of FOUR MILLION SEVEN HUNDRED FOFTY-FIVE THOUSAND AND 00/100 DOLLARS ($4,745,000.00) (together with all extensions, modification, and renewals, if any, collectively referred to hereinafter as the "*Note*");

WHEREAS, BancorpSouth Bank, a Mississippi banking corporation (the "*Holder*"), is the successor by merger to Beneficiary;

WHEREAS, the Holder is the current legal owner and holder of the indebtedness secured by the Deed of Trust (the "*Indebtedness*") and, if, for any reason, Holder prefers to appoint a substitute trustee to act instead of the trustee named in the Deed of Trust, Holder has the full power to appoint, at any time and without any formality other than by written instrument, one or more successor or alternate successor trustees, each of whom shall succeed to all the estate, rights, powers and duties conferred upon the Original Trustee in the Deed of Trust and by applicable law;

WHEREAS, Holder has named, constituted and appointed in writing BRADLEY E. RAUCH, a resident of Harris County, Texas, ZACHARY SCHNEIDER, a resident of Harris County, Texas, ANGELA ZAVALA, a resident of Travis County, Texas, and also MICHELLE JONES, a resident of Travis County, Texas, as Substitute Trustees, each with the power to act independently (and without the joinder of the others) under and by virtue of the Deed of Trust and to hold possess and execute all the estate, rights, powers and duties conferred upon the Original Trustee in the Deed of Trust and by applicable law;

WHEREAS, Grantor has defaulted in the performance of its obligations under the Note and the Deed of Trust, and notice of such defaults have been waived, and/or have occurred, and Grantor has failed to cure such default(s);

WHEREAS, acceleration of maturity and demand have been made upon Grantor for payment of the Indebtedness, and/or have been waived, and/or have occurred;

WHEREAS, the proceeds of the Note were used for commercial purposes, and the Mortgaged Property was not to be used by the debtor for residential purposes;

WHEREAS, the Holder has called upon and requested either or any of Bradley E. Rauch, Zachary Schneider, Angela Zavala, Michelle Jones, or any additional substitute trustee appointed pursuant to the terms of the Deed of Trust, as Substitute Trustees, to perform the Trustee's duties under the Deed of Trust and to post, mail and file, or have posted, mailed, and filed, notice and to sell the Mortgaged Property without prejudice and without creating an election not to proceed against any other collateral securing the obligations of the Grantor to the Holder, and without waiving any rights or remedies which the Holder has against the Grantor or any other parties obligated for payment of the Indebtedness;

NOW, THEREFORE, the undersigned Substitute Trustee, at the request of the Holder, hereby gives notice that after due posting of this Notice as required by the Deed of Trust and law, a Substitute Trustee will sell on **September 1, 2020** (that being the first Tuesday of said month, as provided for in Texas Property Code Sec. 51.002) at public auction to the highest bidder for cash, at THE REAR "SALLYPORT" OF THE TRAVIS COUNTY COURTHOUSE, 1000 GUADALUPE STREET, AUSTIN, TEXAS 78701, said location having been designated by the County Commissioners' Court of Travis County, Texas (or such other location as may be designated by said County Commissioners' Court), the sale to begin no earlier than 1:00 o'clock p.m. and no later than three (3) hours after such time, the Mortgaged Property, including without limitation, all personal property described in the Deed of Trust, owned by the Grantor, Grantor's heirs, legal representatives, successors and assigns, and originally covered by the Deed of Trust, whether or not herein specifically described.

THE SALE OF THE PROPERTY IS "AS IS" AND "WHERE IS" AND WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND BY THE SUBSTITUTE TRUSTEE OR HOLDERS OF SAID INDEBTEDNESS, EXPRESS, IMPLIED, STATUTORY, QUASI-STATUTORY OR OTHERWISE, ANY WARRANT OR MERCHANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE BEING EXPRESSLY DISCLAIMED. NEITHER THE HOLDER NOR THE TRUSTEE OR SUBSTITUTE TRUSTEE MAKES ANY REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE COMPLIANCE WITH LAWS, RULES, AGREEMENTS, OR SPECIFICATIONS, NOR WITH RESPECT TO CONDITION, QUALITY, CAPACITY, DESIGN, OPERATION, ABSENCE OF ANY LATENT DEFECTS OR ANY OTHER WARRANTY OR REPRESENTATION WHATSOEVER WITH RESPECT TO THE PROPERTY, ALL OF WHICH ARE EXPRESSLY WAIVED BY PURCHASER(S).

THE NEXT PAGE IS THE SIGNATURE PAGE

WITNESS BY HAND this **7th** day of **August, 2020**.

_____
Zachary Schneider, Trustee

COUNTY OF HARRIS      §
                            §

STATE OF TEXAS         §

         This document was acknowledged before me on this, the **7th** day of **August, 2020**, by Zachary Schneider, Trustee.



NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

**Name and Address of Substitute Trustees:**
Mr. Bradley E. Rauch
Hirsch & Westheimer, P.C.
1415 Louisiana, 36th Floor
Houston, Texas 77002

Mr. Zachary Schneider
Hirsch & Westheimer, P.C.
1415 Louisiana, 36th Floor
Houston, Texas 77002

Angela Zavala
Foreclosure Network of Texas
10406 Rockley Road
Houston, TX 77099

Michelle Jones
Foreclosure Network of Texas
10406 Rockley Road
Houston, TX 77099

**AFTER RECORDING, PLEASE RETURN TO:**
Mr. Zachary Schneider
Hirsch & Westheimer, P.C.
1415 Louisiana, 36th Floor
Houston, Texas 77002

KAREN M. WADE
My Notary ID # 7648266
Expires June 30, 2023

5

EXHIBIT NO. 11                                      EX. 11-005

## EXHIBIT "A"

### Legal Description

METES AND BOUNDS DESCRIPTION OF A SURVEY OF 14.993 ACRES OF LAND, A PORTION OF THE ISAAC DECKER LEAGUE SURVEY NO. 20, ABSTRACT NO. 8, IN THE CITY OF AUSTIN, TRAVIS COUNTY, TEXAS, SAID 14.993 ACRES OF LAND BEING ALL OF THAT CALLED 4.32 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, AS DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM ABEL J. & MARY ANN THERIOT FAMILY LIMITED PARTNERSHIP TO THERIOT FLP PROPERTIES – III OF RECORD IN DOCUMENT NUMBER 2010125121, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT CALLED 5.6839 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, DESIGNATED AS TRACT 1 AND DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM SASHA THERIOT SANDERS, TEAL THERIOT SANDERS, AND ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC, OF RECORD IN DOCUMENT NUMBER 2010125125, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT CALLED 2.629 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, DESIGNATED AS TRACT 2 IN SAID SPECIAL WARRANTY DEED TO SANDERS CHILDREN INVESTMENTS, LLC OF RECORD IN DOCUMENT NUMBER 2010125125, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT 2.32 ACRES OF LAND, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, AS DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM SUZANNE MARIE SANDERS AND HER HUSBAND CURTIS NOLEN SANDERS TO SANDERS FLP PROPERTIES – I, LLC OF RECORD IN DOCUMENT NUMBER 2010125122, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, SAID 14.993 ACRES OF LAND, AS SURVEYED BY BOWMAN CONSULTING GROUP, LTD. AND SHOWN ON BOWMAN PLAN NO. 3562, BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

**BEGINNING** at a 5/8" iron rod found I the east right-of-way line of South Congress Avenue at the most westerly northwest corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and at the southwest corner of that 0.780 of one acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Cash Warranty Deed to MMGG Enterprises, L.P. in Document No. 2004036130, Official Public Records of Travis County, Texas, said 5/8" iron rod found being a common corner of the two parcels describe din that Agreement of record in Document No. 2005099083, Official Public Records of Travis County, Texas, said 5/8" iron rod found being the **POINT OF BEGINNING** and most westerly northwest corner of the tract described herein, and from which 5/8" iron rod found, a 1/2" iron rod with plastic cap stamped "ALL POINTS" found at the southwest corner of that 0.066 of one acre tract described in a Street Deed form MMGG Enterprises, LTD., to the City of Austin of records in Document No. 2005102391, Official Public Records of Travis County, Texas bears N 63° 59' 01" W a distance of 0.67 feet;

**THENCE** S 61° 50' 30" E, with the most westerly north line of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the south line of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the agreed line referenced in the said Agreement of record in Document No. 2005099083 a distance of 239.20 feet to a ½" steel pin found at a reentrant corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the south east corner of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the corner referenced in said Agreement for a reentrant corner of the tract described herein;

**THENCE** N 23° 58' 30" E, with the most northerly west line of the said Theriot FLP Properties – III, LLC 4.32 acre tract and with the east line of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the agreed line referenced in the said Agreement, at a distance of 4.94 passing a ½" steel pin found 0.17 feet east of line, said ½" steel pin found being the southeast corner of that 0.708 of one acre tract, a

20170804.20190907/3778366.1

portion of the said Isaac Decker League Survey No. 20, as described in a Special Warranty Deed With Vendor's Lien to Area 51 Enterprises LLC in Document No. 2015028497, Official Public Records of Travis County, Texas, in all 149.96 feet to a ½" steel pin found in the south line of that 4.056 acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Special Warranty Deed to ID Bel Air Partners, LP or record in Document No. 2005017785, Official Public Records of Travis County, Texas, and being the most northerly northwest corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract, and the northeast corner of the said MMGG Enterprises, L.P. 0.780 of one acre tract and the northeast corner of the said Area 51 Enterprises LLC 0.708 of one acre tract, and being also the corner referenced in said Agreement for the most northerly northwest corner of the tract described herein;

**THENCE** S 63° 24' 52" E, with the most easterly north line of the said Theriot FLP Properties – III, LLC 4.32 are tract and the south line of the said ID Bel Air Partners, LP 4.056 acre tract, a distance of 383.05 feet to a ½" steel pin found in the west line of Lot 2A, Block V, a Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, of record in Plat Book 51, Page 20, Plat Records of Travis County, Texas, and being also the southeast corner of the said ID Bel Air Partners, LP 4.056 acre tract and the northeast corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract, for the northeast corner of the tract described herein;

**THENCE** S 26° 47' 44" W, with the west line of said Lot 2A, Block V, a Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, and with the east line of the said Theriot FLP Properties – III, LLC 4.32 acre tract, a distance of 58.95 feet o a ½" steel pin with plastic cap stamped "M&S 1838" found at the southwest corner of said Lot 2A, Block V and the northwest corner of Lot 1A, Block V, of said Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, for an angle point in the east line of the tract described herein;

**THENCE** S 26° 41' 23" W, with the west line of said Lot 1A, Block V and the west line of Lot 4, Block V, Greenwood Hills, Section Five, of record in Plat Book 42, Page 10, Plat Records of Travis County, Texas, and being also with the west line of Liverpool Drive as shown on said map or plat of Greenwood Hills, Section Five and being also with the east line of the said Theriot FLP Properties III, LLC 4.32 acre tract, a distance of 237.88 feet to a ½" steel pin found at the southeast corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the northeast corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres of land, for an angle point in the east line of the tract described herein;

**THENCE** S 26° 31' 34" W, with the west line of Liverpool Drive and the west line of Lot 23, Block W, of said Greenwood Hills Section Five and being also with the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 152.96 feet to a 5/8" steel pin found at the southwest corner of said Lot 23, Block W and the Norwest corner of Lot 16, Block W, of said Greenwood Hills Section Five, for an angle point in the east line of the tract described herein;

**THENCE** S 27° 38' 57" W, with the west line of said Lot 16, Block W, of said Greenwood Hills Section Five and being also with the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 40.08 feet to a ½" steel pin found at the southwest corner of said Lot 16, Block W and the northwest corner of Lot 15, Block W, of said Greenwood Hills Section Five, for an angle point in the east line of the tract described herein;

**THENCE** S 26° 33' 27" W, with the west line of said Lot 15, Block W and the west line of Lots 14, 13, 12, 11 and 10, Block W, of said Greenwood Hills Section Five and the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 473.14 feet to a ½" steel pin with plastic cap stamped "M&S 1838" found in the west line of said Lot 10, Block W, Greenwood Hills Section Five at the southeast corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, for a southeast corner of the tract described herein;

7

EXHIBIT NO. 11                    EX. 11-007

THENCE N 34° 50' 27" W, with the southwest or west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 11.89 feet to a ½" steel pin with plastic cap stamped "M&S 1838" found in the southwest or west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres and at the northeast corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, for a reentrant corner of the tract described herein;

THENCE S 27° 22' 12" W, with the east line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, at a distance of 25.77 feet, more or less, passing the most easterly northwest corner of that 2.002 acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Warranty Deed with Vendor's Lien of record in Document No. 2011133868, Official Public Records of Travis County, Texas, in all a distance of 261.28 feet to a ½" steel pin with plastic cap stamped "M&S 1838" found at the southeast corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and a reentrant of the said Jim O'Brien 2.002 acre tract and the moth southerly southeast corner of the tract described herein;

THENCE N 60° 09' 26" W, with the most westerly north line of the said Jim O'Brien 2.002 acre tract and with the south line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, a distance of 199.03 feet to a ½" steel pin with plastic cap stamped "M&S 1838" found at an angle point in the most westerly north line of the said Jim O'Brien 2.002 acre tract and an angle point the south line of the sand Sanders Children Investments, LLC Tract 2 of 2.62 acres;

THENCE N 67° 47' 26" W, with the most westerly south line of the said Jim O'Brien 2.002 acre tract and with the south line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, a distance of 58.62 feet to a ½" steel pin with plastic cap stamped "M&S 1838" found in the east line of Wasson Road (old State Highway No. 29) at the most westerly northwest corner of the said Jim O'Brien 2.002 of one acre tract and the southwest corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, for the most southerly southwest corner of the tract described herein;

THENCE with the east line of Wasson Road (old State Highway No. 29) and the west line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and with the west line of the said Sanders FLP Properties – 1, LLC 2.32 acre tract, courses numbered 1 through 5 inclusive as follows:
1. N 24° 25' 26" W, a distance of 42.22 feet to ¾" iron pipe found;
2. N 14° 47' 26" W, a distance of 70.00 feet to a drill hole in top of a concrete curb found;
3. N 19° 56' 26" W, at a distance of 154.55 feet passing the northwest corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and the southwest corner of the said Sanders FLP Properties – 1, LLC 2.32 acre tract, in all a distance of 254.00 feet to a calculated point in a multi-trunk Pecan tree;
4. N 07° 57' 26" W, a distance of 138.98 feet to a ½" steel pin with plastic cap stamped "M&S 1838" found; and
5. N 04° 30' 34" E, a distance of 36.10 feet to a ½" steel pin with plastic cap stamped "M&S 1838" found at the intersection of the east line of Wasson Road and the east line of Congress Avenue;

THENCE N 27° 40' 11" E, with the east right-of-way of South Congress Avenue and the west line of the said Sanders FLP Properties – 1, LLC 2.32 acre tract and the west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, and being also with the west line of the said Theriot FLP Properties – III, LLC 4.32 acre tract, at a distance of 271.24 feet passing the northwest corner of the said Sanders FLP Properties – 1, LLC 2.32 acre tract and the southwest corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, at a distance of 386.42 feet passing a northwest corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, and a southwest corner of the said Theriot FLP Properties – III, LLC 4.32 tract, in all 666.83 feet to the **POINT OF BEGINNING** of the tract described herein containing 14.993 acres of land.

**8**



FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

*Dana DeBeauvoir*

Dana DeBeauvoir, County Clerk
Travis County, Texas

**202040409**

Aug 10, 2020 11:12 AM
Fee: $3.00          MACEDOS

## AFFIDAVIT OF FILING AND POSTING
WC 4811 SOUTH CONGRESS, LLC

STATE OF TEXAS                    §
                                  §
COUNTY OF TRAVIS                  §

BEFORE ME, the undersigned authority, a notary public in and for the State of Texas, on this day personally appeared *Angela Zavala*, who being duly sworn, upon his oath deposes and says as follows:

That on the **10th** day of **August, 2020**, Affiant, for and on behalf of **BancorpSouth Bank, a Mississippi banking corporation,** filed the Notice of Substitute Trustee's Sale (the "**Notice**") attached hereto in the office of the County Clerk of Travis County and caused to be posted (which posting was confirmed by the undersigned), a copy of the Notice in the place where such notices are commonly posted by the public as designated by the County Commissioners of Travis County, at the Travis County Courthouse, Austin, Tx, Travis County, Texas.

*Angela Zavala*

Print Name: Angela Zavala

SIGNED AND SWORN TO BEFORE ME by **ANGELA ZAVALA** on the **10TH** day of **August, 2020**.

*Richard Zavala Jr.*

NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

RICHARD ZAVALA, JR.
Notary Public, State of Texas
Comm. Expires 08-03-2024
Notary ID 129076603

20170804.20190459/3778993.1

 **HIRSCH & WESTHEIMER**

*Attorneys and Counselors*

T. 713.220.9173
F. 713.223.9319
zschneider@hirschwest.com

August 11, 2020

*Via CMRRR #9414 7266 9904 2167 5077 24*
*and First Class U.S. Mail*
WC 4811 South Congress, LLC
c/o World Class
814 Lavaca St.
Austin, Texas 78701
Attn: Natin Paul

RE:   Promissory Note (the "*Note*") dated March 31, 2017 in the original principal sum
of $4,745,000 executed by WC 4811 South Congress, LLC ("*Maker*" or
"*Borrower*") and payable to BancorpSouth Bank, as successor by merger to
First State Bank Central Texas, secured by a Deed of Trust, Security Agreement
and Financing Statement dated March 31, 2017 (the "*Deed of Trust*") on 14.993
acres of land, more or less, out of the Isaac Decker League Survey No. 20,
Abstract No. 8, in Travis County, Texas (the "*Collateral*") and guaranteed by
Natin Paul and World Class Capital Group, LLC (collectively the "*Guarantors*"),
the Collateral Assignment of Leases and Rents dated March 31, 2017 (the
"*Assignment of Rents*"), the Loan Agreement dated March 31, 2017 (the "*Loan
Agreement*"), and any other documents executed by Borrower, or any other
party in connection with the loan (together with the Note, Deed of Trust,
Assignment of Rents, and Loan Agreement collectively referred to hereinafter
as the "*Loan Documents*").

Dear Sir/Madam:

As you know, this law firm represents BancorpSouth Bank, successor by merger
to First State Bank Central Texas (the "*Bank*") in connection with the above-referenced
Note, Guaranties, and Loan Documents.

As you are also aware, the Maker has defaulted under the terms of the Note and
the Deed of Trust due to, among other things, the failure of the Maker to make the
required monthly payments under the Note. This firm, on behalf of the Lender, sent
you written notice on July 2, 2020 of such defaults and provided you an opportunity
to cure such defaults, which were not timely cured and remain uncured as of the date
of this letter. This firm also sent you written notice on July 23, 2020 that the Note had
been accelerated and was immediately due and payable in full. You may contact the
undersigned to verify the amount of indebtedness due and owing under the Note,
Deed of Trust, and all related loan documents.

Please find enclosed a **Notice of Trustee's Sale** which was posted **August 10,
2020**, at the County Courthouse of Travis County, Texas (at the place regularly used
by the public for posting of such notices) and is being filed in the Office of the County
Clerk of Travis County, Texas.

1415 Louisiana   36th Floor   Houston, Texas 77002   T. 713 223 5181   *hirschwest.com*

EXHIBIT NO. 13                      EX. 13-001

WC 4811 South Congress, LLC
August 11, 2020
Page 2


The foreclosure sale shall take place as provided in the Notice of Trustee's Sale on **September 1, 2020.** The foreclosure sale will be conducted pursuant to the enclosed Notice of Trustee's Sale, Section 51.002 of the Texas Property Code, and other applicable law.

This is an attempt to collect a debt and any information will be used for that purpose.

Very truly yours,

HIRSCH & WESTHEIMER, P.C.

By:
Zachary Schneider


cc:     Natin Paul
        c/o World Class
        814 Lavaca St.
        Austin, Texas 78701
        *Via CMRRR# 9414 7266 9904 2167 5077 31*

        World Class Capital Group, LLC
        c/o World Class
        814 Lavaca St.
        Austin, Texas 78701
        Attn: Natin Paul
        *Via CMRRR# 9414 7266 9904 2167 5077 48*

        Linda Thong
        World Class
        244 Fifth Avenue, Suite 2200
        New York, New York 10001
        *Via CMRRR# 9414 7266 9904 2167 5077 55*

        Maryann Norwood
        World Class
        814 Lavaca St.
        Austin, Texas 78701
        *Via email: mnorwood@world-class.com*

        Brian Elliott
        World Class Global Business Services
        814 Lavaca St.
        Austin, Tx 78701
        Via CMRRR# 9414 7266 9904 2167 5077 62,
        First Class Mail and Email: belliott@world-class.com

 9 pgs    202040409

## NOTICE OF TRUSTEE'S SALE

STATE OF TEXAS §
§ KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF TRAVIS §

WHEREAS, WC 4811 SOUTH CONGRESS, LLC, a Delaware limited liability company (the

"*Grantor*"), executed a Deed of Trust, Security Agreement and Financing Statement dated March 31, 2017,

and recorded April 3, 2017 in the Official Public Records of Travis County, Texas (the "*Records*") under

Document No. 2017052193 (together with all extensions, modification, and renewals, if any, collectively

referred to hereinafter as the "*Deed of Trust*");

WHEREAS, the Grantor, pursuant to the Deed of Trust, conveyed to T. Gerry Gamble (the

"*Original Trustee*") for the benefit of First State Bank Central Texas, its successors and assigns

("*Beneficiary*"), all of the personal property, real property and premises described and referred to in the

Deed of Trust (the "*Mortgaged Property*"), including the following described property located in Travis

County, Texas:

14.993 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE
SURVEY NO. 20, ABSTRACT NO. 8, IN TRAVIS COUNTY, TEXAS, BEING MORE
FULLY DESCRIBED BY METES AND BOUNDS ON EXHIBIT "A" ATTACHED
HERETO AND MADE A PART HEREOF FOR ALL PURPOSES, BEING THE
FOLLOWING FOUR TRACTS:

TRACT 1:
4.32 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE,
IN TRAVIS COUNTY, TEXAS, BEING THE SAME PROPERTY CONVEYED BY
ABEL J. & MARY ANN THERIOT FAMILY LIMITED PARTNERSHIP TO THERIOT
FLP PROPERTIES – III, IN A DEED DATED MAY 6, 2010, RECORDED IN
DOCUMENT NUMBER 2010125121, OF THE OFFICIAL PUBLIC RECORDS OF
TRAVIS COUNTY, TEXAS.

TRACT 2:
5.6839 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE,
IN TRAVIS COUNTY, TEXAS, BEING THE SAME PROPERTY AS TRACT ONE
CONVEYED BY SASHA THERIOT SANDERS, TEAL THERIOT SANDERS, AND
ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC, IN
A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125125,
OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

TRACT 3:
2.629 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE,
IN TRAVIS COUNTY, TEXAS, BEIGN THE SAME PROEPRTY AS TRACT TWO

20170804 20190907/3778366.1

1

CONVEYED BY SASHA THERIOT SANDERS, TEAL THERIOT SANDERS, AND ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125125, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

### TRACT 4:

2.32 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, BEIGN THE SAME PROEPRTY AS TRACT TWO CONVEYED BY SUZANNE MARIE SANDERS AND CURTIS NOLEN SANDERS TO SANDERS FLP PROPERTIES – I, LLC, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125122, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

WHEREAS, the Deed of Trust secures payment of that certain Promissory Note dated March 31, 2017, executed by Grantor, as Maker, and payable to the order of Beneficiary, in the original stated amount of FOUR MILLION SEVEN HUNDRED FOFTY-FIVE THOUSAND AND 00/100 DOLLARS ($4,745,000.00) (together with all extensions, modification, and renewals, if any, collectively referred to hereinafter as the "*Note*");

WHEREAS, BancorpSouth Bank, a Mississippi banking corporation (the "*Holder*"), is the successor by merger to Beneficiary;

WHEREAS, the Holder is the current legal owner and holder of the indebtedness secured by the Deed of Trust (the "*Indebtedness*") and, if, for any reason, Holder prefers to appoint a substitute trustee to act instead of the trustee named in the Deed of Trust, Holder has the full power to appoint, at any time and without any formality other than by written instrument, one or more successor or alternate successor trustees, each of whom shall succeed to all the estate, rights, powers and duties conferred upon the Original Trustee in the Deed of Trust and by applicable law;

WHEREAS, Holder has named, constituted and appointed in writing BRADLEY E. RAUCH, a resident of Harris County, Texas, ZACHARY SCHNEIDER, a resident of Harris County, Texas, ANGELA ZAVALA, a resident of Travis County, Texas, and also MICHELLE JONES, a resident of Travis County, Texas, as Substitute Trustees, each with the power to act independently (and without the joinder of the others) under and by virtue of the Deed of Trust and to hold possess and execute all the estate, rights, powers and duties conferred upon the Original Trustee in the Deed of Trust and by applicable law;

20170804.20190907/3778366.1

2

WHEREAS, Grantor has defaulted in the performance of its obligations under the Note and the Deed of Trust, and notice of such defaults have been waived, and/or have occurred, and Grantor has failed to cure such default(s);

WHEREAS, acceleration of maturity and demand have been made upon Grantor for payment of the Indebtedness, and/or have been waived, and/or have occurred;

WHEREAS, the proceeds of the Note were used for commercial purposes, and the Mortgaged Property was not to be used by the debtor for residential purposes;

WHEREAS, the Holder has called upon and requested either or any of Bradley E. Rauch, Zachary Schneider, Angela Zavala, Michelle Jones, or any additional substitute trustee appointed pursuant to the terms of the Deed of Trust, as Substitute Trustees, to perform the Trustee's duties under the Deed of Trust and to post, mail and file, or have posted, mailed, and filed, notice and to sell the Mortgaged Property without prejudice and without creating an election not to proceed against any other collateral securing the obligations of the Grantor to the Holder, and without waiving any rights or remedies which the Holder has against the Grantor or any other parties obligated for payment of the Indebtedness;

NOW, THEREFORE, the undersigned Substitute Trustee, at the request of the Holder, hereby gives notice that after due posting of this Notice as required by the Deed of Trust and law, a Substitute Trustee will sell on **September 1, 2020** (that being the first Tuesday of said month, as provided for in Texas Property Code Sec. 51.002) at public auction to the highest bidder for cash, at THE REAR "SALLYPORT" OF THE TRAVIS COUNTY COURTHOUSE, 1000 GUADALUPE STREET, AUSTIN, TEXAS 78701, said location having been designated by the County Commissioners' Court of Travis County, Texas (or such other location as may be designated by said County Commissioners' Court), the sale to begin no earlier than 1:00 o'clock p.m. and no later than three (3) hours after such time, the Mortgaged Property, including without limitation, all personal property described in the Deed of Trust, owned by the Grantor, Grantor's heirs, legal representatives, successors and assigns, and originally covered by the Deed of Trust, whether or not herein specifically described.

THE SALE OF THE PROPERTY IS "AS IS" AND "WHERE IS" AND WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND BY THE SUBSTITUTE TRUSTEE OR HOLDERS OF SAID INDEBTEDNESS, EXPRESS, IMPLIED, STATUTORY, QUASI-STATUTORY OR OTHERWISE, ANY WARRANT OR MERCHANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE BEING EXPRESSLY DISCLAIMED. NEITHER THE HOLDER NOR THE TRUSTEE OR SUBSTITUTE TRUSTEE MAKES ANY REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE COMPLIANCE WITH LAWS, RULES, AGREEMENTS, OR SPECIFICATIONS, NOR WITH RESPECT TO CONDITION, QUALITY, CAPACITY, DESIGN, OPERATION, ABSENCE OF ANY LATENT DEFECTS OR ANY OTHER WARRANTY OR REPRESENTATION WHATSOEVER WITH RESPECT TO THE PROPERTY, ALL OF WHICH ARE EXPRESSLY WAIVED BY PURCHASER(S).

THE NEXT PAGE IS THE SIGNATURE PAGE

EXHIBIT NO. 13                    EX. 13-006

WITNESS BY HAND this 7th day of **August, 2020**.

Zachary Schneider, Trustee

COUNTY OF HARRIS          §
                          §
STATE OF TEXAS            §

    This document was acknowledged before me on this, the **7th** day of **August, 2020**, by Zachary Schneider, Trustee.

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS



KAREN M. WADE
My Notary ID # 7848255
Expires June 30, 2023

**Name and Address of Substitute Trustees:**
Mr. Bradley E. Rauch
Hirsch & Westheimer, P.C.
1415 Louisiana, 36th Floor
Houston, Texas 77002

Mr. Zachary Schneider
Hirsch & Westheimer, P.C.
1415 Louisiana, 36th Floor
Houston, Texas 77002

Angela Zavala
Foreclosure Network of Texas
10406 Rockley Road
Houston, TX 77099

Michelle Jones
Foreclosure Network of Texas
10406 Rockley Road
Houston, TX 77099

**AFTER RECORDING, PLEASE RETURN TO:**
Mr. Zachary Schneider
Hirsch & Westheimer, P.C.
1415 Louisiana, 36th Floor
Houston, Texas 77002

5

20170804.20190907/3778366.1

## EXHIBIT "A"

### Legal Description

METES AND BOUNDS DESCRIPTION OF A SURVEY OF 14.993 ACRES OF LAND, A PORTION OF THE ISAAC DECKER LEAGUE SURVEY NO. 20, ABSTRACT NO. 8, IN THE CITY OF AUSTIN, TRAVIS COUNTY, TEXAS, SAID 14.993 ACRES OF LAND BEING ALL OF THAT CALLED 4.32 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, AS DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM ABEL J. & MARY ANN THERIOT FAMILY LIMITED PARTNERSHIP TO THERIOT FLP PROPERTIES – III OF RECORD IN DOCUMENT NUMBER 2010125121, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT CALLED 5.6839 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, DESIGNATED AS TRACT 1 AND DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM SASHA THERIOT SANDERS, TEAL THERIOT SANDERS, AND ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC, OF RECORD IN DOCUMENT NUMBER 2010125125, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT CALLED 2.629 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, DESIGNATED AS TRACT 2 IN SAID SPECIAL WARRANTY DEED TO SANDERS CHILDREN INVESTMENTS, LLC OF RECORD IN DOCUMENT NUMBER 2010125125, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT 2.32 ACRES OF LAND, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, AS DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM SUZANNE MARIE SANDERS AND HER HUSBAND CURTIS NOLEN SANDERS TO SANDERS FLP PROPERTIES – I, LLC OF RECORD IN DOCUMENT NUMBER 2010125122, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, SAID 14.993 ACRES OF LAND, AS SURVEYED BY BOWMAN CONSULTING GROUP, LTD. AND SHOWN ON BOWMAN PLAN NO. 3562, BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

**BEGINNING** at a 5/8" iron rod found I the east right-of-way line of South Congress Avenue at the most westerly northwest corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and at the southwest corner of that 0.780 of one acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Cash Warranty Deed to MMGG Enterprises, L.P. in Document No. 2004036130, Official Public Records of Travis County, Texas, said 5/8" iron rod found being a common corner of the two parcels describe din that Agreement of record in Document No. 2005099083, Official Public Records of Travis County, Texas, said 5/8" iron rod found being the **POINT OF BEGINNING** and most westerly northwest corner of the tract described herein, and from which 5/8" iron rod found, a 1/2" iron rod with plastic cap stamped "ALL POINTS" found at the southwest corner of that 0.066 of one acre tract described in a Street Deed form MMGG Enterprises, LTD., to the City of Austin of records in Document No. 2005102391, Official Public Records of Travis County, Texas bears N 63° 59' 01" W a distance of 0.67 feet;

**THENCE** S 61° 50' 30" E, with the most westerly north line of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the south line of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the agreed line referenced in the said Agreement of record in Document No. 2005099083 a distance of 239.20 feet to a ½" steel pin found at a reentrant corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the south east corner of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the corner referenced in said Agreement for a reentrant corner of the tract described herein;

**THENCE** N 23° 58' 30" E, with the most northerly west line of the said Theriot FLP Properties – III, LLC 4.32 acre tract and with the east line of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the agreed line referenced in the said Agreement, at a distance of 4.94 passing a ½" steel pin found 0.17 feet east of line, said ½" steel pin found being the southeast corner of that 0.708 of one acre tract, a

6

portion of the said Isaac Decker League Survey No. 20, as described in a Special Warranty Deed With Vendor's Lien to Area 51 Enterprises LLC in Document No. 2015028497, Official Public Records of Travis County, Texas, in all 149.96 feet to a ½" steel pin found in the south line of that 4.056 acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Special Warranty Deed to ID Bel Air Partners, LP or record in Document No. 2005017785, Official Public Records of Travis County, Texas, and being the most northerly northwest corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract, and the northeast corner of the said MMGG Enterprises, L.P. 0.780 of one acre tract and the northeast corner of the said Area 51 Enterprises LLC 0.708 of one acre tract, and being also the corner referenced in said Agreement for the most northerly northwest corner of the tract described herein;

**THENCE S 63° 24' 52" E,** with the most easterly north line of the said Theriot FLP Properties – III, LLC 4.32 are tract and the south line of the said ID Bel Air Partners, LP 4.056 acre tract, a distance of 383.05 feet to a ½" steel pin found in the west line of Lot 2A, Block V, a Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, of record in Plat Book 51, Page 20, Plat Records of Travis County, Texas, and being also the southeast corner of the said ID Bel Air Partners, LP 4.056 acre tract and the northeast corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract, for the northeast corner of the tract described herein;

**THENCE S 26° 47' 44" W,** with the west line of said Lot 2A, Block V, a Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, and with the east line of the said Theriot FLP Properties – III, LLC 4.32 acre tract, a distance of 58.95 feet o a ½" steel pin with plastic cap stamped "M&S 1838" found at the southwest corner of said Lot 2A, Block V and the northwest corner of Lot 1A, Block V, of said Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, for an angle point in the east line of the tract described herein;

**THENCE S 26° 41' 23" W,** with the west line of said Lot 1A, Block V and the west line of Lot 4, Block V, Greenwood Hills, Section Five, of record in Plat Book 42, Page 10, Plat Records of Travis County, Texas, and being also with the west line of Liverpool Drive as shown on said map or plat of Greenwood Hills, Section Five and being also with the east line of the said Theriot FLP Properties III, LLC 4.32 acre tract, a distance of 237.88 feet to a ½" steel pin found at the southeast corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the northeast corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres of land, for an angle point in the east line of the tract described herein;

**THENCE S 26° 31' 34" W,** with the west line of Liverpool Drive and the west line of Lot 23, Block W, of said Greenwood Hills Section Five and being also with the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 152.96 feet to a 5/8" steel pin found at the southwest corner of said Lot 23, Block W and the Norwest corner of Lot 16, Block W, of said Greenwood Hills Section Five, for an angle point in the east line of the tract described herein;

**THENCE S 27° 38' 57" W,** with the west line of said Lot 16, Block W, of said Greenwood Hills Section Five and being also with the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 40.08 feet to a ½" steel pin found at the southwest corner of said Lot 16, Block W and the northwest corner of Lot 15, Block W, of said Greenwood Hills Section Five, for an angle point in the east line of the tract described herein;

**THENCE S 26° 33' 27" W,** with the west line of said Lot 15, Block W and the west line of Lots 14, 13, 12, 11 and 10, Block W, of said Greenwood Hills Section Five and the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 473.14 feet to a ½" steel pin with plastic cap stamped "M&S 1838" found in the west line of said Lot 10, Block W, Greenwood Hills Section Five at the southeast corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, for a southeast corner of the tract described herein;

**THENCE N 34° 50' 27" W,** with the southwest or west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 11.89 feet to a ½" steel pin with plastic cap stamped "M&S 1838" found in the southwest or west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres and at the northeast corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, for a reentrant corner of the tract described herein;

**THENCE S 27° 22' 12" W,** with the east line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, at a distance of 25.77 feet, more or less, passing the most easterly northwest corner of that 2.002 acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Warranty Deed with Vendor's Lien of record in Document No. 2011133868, Official Public Records of Travis County, Texas, in all a distance of 261.28 feet to a ½" steel pin with plastic cap stamped "M&S 1838" found at the southeast corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and a reentrant of the said Jim O'Brien 2.002 acre tract and the moth southerly southeast corner of the tract described herein;

**THENCE N 60° 09' 26" W,** with the most westerly north line of the said Jim O'Brien 2.002 acre tract and with the south line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, a distance of 199.03 feet to a ½" steel pin with plastic cap stamped "M&S 1838" found at an angle point in the most westerly north line of the said Jim O'Brien 2.002 acre tract and an angle point the south line of the sand Sanders Children Investments, LLC Tract 2 of 2.62 acres;

**THENCE N 67° 47' 26" W,** with the most westerly south line of the said Jim O'Brien 2.002 acre tract and with the south line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, a distance of 58.62 feet to a ½" steel pin with plastic cap stamped "M&S 1838" found in the east line of Wasson Road (old State Highway No. 29) at the most westerly northwest corner of the said Jim O'Brien 2.002 of one acre tract and the southwest corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, for the most southerly southwest corner of the tract described herein;

**THENCE** with the east line of Wasson Road (old State Highway No. 29) and the west line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and with the west line of the said Sanders FLP Properties – 1, LLC 2.32 acre tract, courses numbered 1 through 5 inclusive as follows:
1. N 24° 25' 26" W, a distance of 42.22 feet to ¾" iron pipe found;
2. N 14° 47' 26" W, a distance of 70.00 feet to a drill hole in top of a concrete curb found;
3. N 19° 56' 26" W, at a distance of 154.55 feet passing the northwest corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and the southwest corner of the said Sanders FLP Properties – 1, LLC 2.32 acre tract, in all a distance of 254.00 feet to a calculated point in a multi-trunk Pecan tree;
4. N 07° 57' 26" W, a distance of 138.98 feet to a ½" steel pin with plastic cap stamped "M&S 1838" found; and
5. N 04° 30' 34" E, a distance of 36.10 feet to a ½" steel pin with plastic cap stamped "M&S 1838" found at the intersection of the east line of Wasson Road and the east line of Congress Avenue;

**THENCE N 27° 40' 11" E,** with the east right-of-way of South Congress Avenue and the west line of the said Sanders FLP Properties – 1, LLC 2.32 acre tract and the west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, and being also with the west line of the said Theriot FLP Properties – III, LLC 4.32 acre tract, at a distance of 271.24 feet passing the northwest corner of the said Sanders FLP Properties – 1, LLC 2.32 are tract and the southwest corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, at a distance of 386.42 feet passing a northwest corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, and a southwest corner of the said Theriot FLP Properties – III, LLC 4.32 tract, in all 666.83 feet to the **POINT OF BEGINNING** of the tract described herein containing 14.993 acres of land.



**FILED AND RECORDED**
OFFICIAL PUBLIC RECORDS

*Dana De Beauvoir*

Dana DeBeauvoir, County Clerk
Travis County, Texas

202040409

Aug 10, 2020 11:12 AM
Fee: $3.00          MACEDOS

## AFFIDAVIT OF MAILING
### (WC 4811 South Congress, LLC)

STATE OF TEXAS     §
                           §
COUNTY OF HARRIS    §

BEFORE ME, the undersigned authority, a notary public in and for the State of Texas, on this day personally appeared Enrique DeLaMora, who being duly sworn, upon his oath deposes and says as follows:

That on the 11th day of August, 2020, Affiant, for and on behalf of BancorpSouth Bank, a Mississippi banking corporation, deposited a copy of the Notice of Substitute Trustee's Sale attached hereto in a post office or official depository under the care and custody of the United States Postal Service, enclosed in a post-paid wrapper marked "certified mail" and/or enclosed in a first class mail postage-paid wrapper, properly addressed to each of the following parties at the respective addresses indicated below, each address being the most recent address of the respective party as shown by the records of the Holder:

*Via CMRRR #9414 7266 9904 2167 5077 24*
*and First Class U.S. Mail*
WC 4811 South Congress, LLC
c/o World Class
814 Lavaca St.
Austin, Texas 78701
Attn: Natin Paul

Copies To:

| | |
|---|---|
| Natin Paul<br>c/o World Class<br>814 Lavaca St.<br>Austin, Texas 78701<br>*Via CMRRR# 9414 7266 9904 2167 5077 31* | World Class Capital Group, LLC<br>c/o World Class<br>814 Lavaca St.<br>Austin, Texas 78701<br>Attn: Natin Paul<br>*Via CMRRR# 9414 7266 9904 2167 5077 48* |
| Linda Thong<br>World Class<br>244 Fifth Avenue, Suite 2200<br>New York, New York 10001<br>*Via CMRRR# 9414 7266 9904 2167 5077 55* | Brian Elliott<br>World Class Global Business Services<br>814 Lavaca St.<br>Austin, Tx 78701<br>Via CMRRR# 9414 7266 9904 2167 5077 62,<br>And First Class Mail |

*Enrique de la Mora P.*
Enrique DeLaMora

SIGNED AND SWORN TO BEFORE ME by Enrique DeLaMora, this 11th day of August, 2020.

NOTARY PUBLIC, IN AND FOR
THE STATE OF TEXAS

MELISSA D. ECKART
My Notary ID # 11130019
Expires February 20, 2022

20170804.20190907/3786479.1

EXHIBIT NO. 14                           EX. 14-001

**ELECTRONICALLY RECORDED**      **2017052194**

          TRV     **19**     PGS

## COLLATERAL ASSIGNMENT OF LEASES AND RENTS

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

RECITALS:

THIS COLLATERAL ASSIGNMENT OF LEASES AND RENTS ("Assignment") made as of March __31__, 2017, by WC 4811 SOUTH CONGRESS, LLC, having an address at 401 Congress Avenue, 33rd Floor, Austin, Texas 78701, as assignor ("Assignor") to FIRST STATE BANK CENTRAL TEXAS, having an address at P. O. Box 6136, Temple, Texas 76503-6136, as assignee ("Lender").

RECITALS:

WC 4811 SOUTH CONGRESS, LLC by virtue of that certain Promissory Note of even date herewith is indebted to Lender in the principal sum of $4,745,000.00 in lawful money of the United States of America (together with all extensions, renewals, modifications, substitutions and amendments thereof, the "Note"), with interest from the date thereof at the rates set forth in the Note, and principal and interest being payable in accordance with the terms and conditions provided in the Note.

Assignor is the owner of or is acquiring the following described real property (the "Real Property"), (which together with the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located thereon collectively, the "Property") and which Real Property is described as follows:

14.993 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE SURVEY NO. 20, ABSTRACT NO. 8, IN TRAVIS COUNTY, TEXAS, BEING MORE FULLY DESCRIBED BY METES AND BOUNDS ON EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF FOR ALL PURPOSES, BEING THE FOLLOWING FOUR TRACTS:

TRACT 1:

4.32 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, BEING THE SAME PROPERTY CONVEYED BY ABEL J. & MARY ANN THERIOT FAMILY LIMITED PARTNERSHIP TO THERIOT FLP PROPERTIES - III, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125121, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

TRACT 2:

5.6839 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, BEING THE SAME PROPERTY AS TRACT ONE CONVEYED BY SASHA THERIOT SANDERS, TEAL THERIOT SANDERS AND ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 210125125, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

EXHIBIT NO. 16          EX. 15-001

TRACT 3:

2.620 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, BEING THE SAME PROPERTY AS TRACT TWO CONVEYED BY SASHA THERIOT SANDERS, TEAL THERIOT SANDERS AND ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125125, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS.

TRACT 4:

2.32 ACRES OF LAND, MORE OR LESS, OUT OF THE ISAAC DECKER LEAGUE, IN TRAVIS COUNTY, TEXAS, AND BEING THE SAME PROPERTY CONVEYED BY SUZANNE MARIE SANDERS AND CURTIS NOLEN SANDERS TO SANDERS FLP PROPERTIES -I, LLC, IN A DEED DATED MAY 6, 2010, RECORDED IN DOCUMENT NUMBER 2010125122, OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS..

The Note is secured by that certain Deed of Trust, Security Agreement and Financing Statement given by Assignor for the benefit of Lender, of even date herewith, covering the Property (defined below) and intended to be duly recorded (the "Security Instrument") and certain other documents (other than this Assignment) now or hereafter executed by Assignor and/or others in favor of Lender which by their terms wholly or partially secure or guarantee the payments under the Note (the "Other Security Documents").

Assignor desires to secure the payment of the principal sum, interest and all other sums due and payable under the Note, the Security Instrument, this Assignment and the Other Security Documents (collectively, the "Debt") and the performance of all of its obligations under the Note and those other obligations described in Section 1.01 of the Security Instrument ("Other Obligations").

## ARTICLE I. ASSIGNMENT

1.01 PROPERTY ASSIGNED. Assignor hereby irrevocably and unconditionally assigns and grants to Lender the right, title and interest of Assignor in and to all of the following property, rights, interests and estates, whether now owned, or hereafter acquired (the "Assigned Property"):

A. Leases and Other Agreements. All existing and future leases and all other agreements, whether or not in writing, affecting the use, enjoyment or occupancy of all or any part of the Property, now or hereafter made, whether before or after the filing by or against Assignor of any petition for relief under 11 U.S.C. § 101 *et seq.*, as the same may be amended from time to time (the "Bankruptcy Code"), together with any extension, renewal or replacement of the same (collectively the "Leases").

B. Rents. All rents, additional rents, revenues, income, issues and profits (including, without limitation, fixed rent, minimum rent and percentage rent, if any, and all oil and gas or other mineral royalties and bonuses), deposits, accounts and other benefits arising from the Leases or otherwise from the use, enjoyment and occupancy of the Property and any cash or security deposited in connection therewith, and all other monetary amounts of every type (including, without limitation, damages for breach) which are from time to time payable by tenants (at the Property) to Assignor (as landlord) under the Leases or which are otherwise

receivable by Assignor with respect to the Leases or Property including rights and proceeds of any rental interruption insurance, claims arising out of a default in the payment to be made to possess or occupy the Property, any Lease termination fees, reimbursements for tenant finish, as well as all items considered "Rents" under applicable Texas statute, including Texas Property Code Chapter 64 as same may be amended from time to time ("Chapter 64") and all of such previously mentioned sums which are from time to time payable by guarantors (of the obligations of tenants) to Assignor (as landlord) under the Leases and all amounts payable by tenants (and guarantors for tenants) to Assignor (as landlord) under the provisions of the Bankruptcy Code as amended from time to time, and all proceeds of Rents including identifiable proceeds and identifiable cash proceeds whether paid or accruing before or after the filing by or against Assignor of any petition for relief under the Bankruptcy Code (collectively, the "Rents").

C.     Bankruptcy Claims. All claims and rights to the payment of damages and other claims arising from any rejection by a lessee of any Lease under the Bankruptcy Code (the "Bankruptcy Claims").

D.     Lease Guaranties. All claims and rights under any and all lease guaranties, letters of credit and any other credit support (individually, a "Lease Guaranty", and collectively, the "Lease Guaranties") given to Assignor by any guarantor in connection with any of the Leases (individually, a "Lease Guarantor", and collectively, the "Lease Guarantors").

E.     Proceeds. All proceeds from any sale or other disposition of the Leases, the Rents, the Lease Guaranties and the Bankruptcy Claims.

F.     Other Rights of Lessor. All rights, powers, privileges, options and other benefits of Assignor as lessor under the Leases and beneficiary under the Lease Guaranties, including without limitation the immediate and continuing right to make claim for, receive, collect and apply all Rents payable or receivable under the Leases and all sums payable under the Lease Guaranties or pursuant thereto (and to apply the same to the payment of the Debt or the Other Obligations), and to do all other things which Assignor or any lessor is or may become entitled to do under the Leases or the Lease Guaranties.

G.     Entry and Possession. The right, at Lender's option, to enter upon the Property in person, by agent or by court-appointed receiver, to collect the Rents and enforce the Leases.

H.     Power of Attorney. Assignor's irrevocable power of attorney, coupled with an interest, to take any and all of the actions set forth in Section 5.01 of this Assignment and any or all other actions designated by Lender for the proper management and preservation of the Property.

I.     Other Rights and Agreements. Any and all other rights of Assignor in and to the items set forth in subsections (a) through (h) above, and all amendments, modifications, replacements, renewals, extensions, supplements, restatements and substitutions thereof.

## ARTICLE II. CONSIDERATION

2.01 CONSIDERATION. This Assignment is made in consideration of that certain loan made by Lender to Assignor evidenced by the Note and secured by the Security Instrument and the Other Security Documents.

## ARTICLE III. TERMS OF ASSIGNMENT

3.01 PRESENT ASSIGNMENT. It is intended by Assignor that this Assignment constitutes a present, irrevocable and collateral assignment of the Assigned Property which immediately vests into Lender a perfected security interest in the Assigned Property. This Assignment effects a transfer of the Rents to Lender and grants Lender a first priority lien on the Rents, and is intended to and creates in Lender all the rights of an assignee of Rents as established under Chapter 64 and constitutes Lender as the assignee of the Rents in accordance with the terms and provisions of this Assignment. It shall never be necessary for Lender to institute legal proceedings of any kind to enforce the provisions of this Assignment. This Assignment of all such present and future Leases and present and future agreements comprising the Assigned Property is effective without further or supplemental assignment.

3.02 NOTICE TO LESSEES. Assignor hereby agrees to authorize and direct the lessees named in the Leases or any other or future lessees or occupants of the Property and all Lease Guarantors to pay over to Lender or to such other party as Lender directs all Rents and all sums due under any Lease Guaranties upon receipt from Lender of written notice to the effect that Lender is then the holder of the Security Instrument and that an Event of Default (defined herein) exists, and to continue so to do until otherwise notified by Lender. Lender also has the right to give written enforcement notice ("Enforcement Notice") to Assignor and/or to each tenant under Chapter 64. Upon the occurrence of any such Event of Default and the resulting automatic termination of such Right to Collect (as defined herein), unless Lender gives Assignor notice to the contrary (a matter within the sole discretion of Lender), or upon Assignor's receipt of the Enforcement Notice, all Rents thereafter received by Assignor shall, in their entirety, be promptly (and in no event beyond five (5) calendar days) paid over by Assignor to Lender and Lender may exercise any and all legal and equitable remedies including, without limitation the remedies provided for under this Assignment and/or Chapter 64.

3.03 NO PRO TANTO PAYMENT. Assignor acknowledges and agrees that the execution and deliver of this Assignment does not constitute any nature of pro tanto payment of the Debt to Lender. In the case of Rents which may hereafter be paid to Assignor, such Rents will not constitute payment to Lender (and hence will not be credited on the Debt) unless and until such Rents are actually paid by Assignor to Lender and applied by Lender in such manner. In the case of Rents paid to Lender by the tenants, such Rents will be pro tanto credited on the Debt only to the extent, if any, that such Rents paid to Lender are neither disbursed by Lender to Assignor nor paid directly by Lender for utilities, maintenance, repairs, taxes, assessments, insurance or other expenses relating to the Property.

3.04 NO COMMINGLING OF RENTS. The Rents (and interest, if any) shall not be commingled with any other funds of Assignor and Assignor shall not deposit any other funds in the accounts containing the Rents other than the Rents.

EXHIBIT NO. 16                                        EX. 15-004

3.05    NON-PAYMENT OF RENTS. In the event any lessee receiving any such written notice from Lender as described in Section 3.02 hereof, or withholding of such Rents by such lessee or such lessee's paying Rents into the registry of the court in connection with an interpleader or other action, or any other non-payment of such Rents to lender by any lessee, such lessee will be liable to Lender for the Rents not so paid to Lender plus costs of court plus attorney's fees of Lender.

3.06    TERMINATION OF ASSIGNMENT. Upon payment in full of the Debt and the delivery and recording of a satisfaction or discharge of Security Instrument duly executed by Lender, this Assignment shall become null and void and shall be of no further force and effect.

3.07    INCORPORATION BY REFERENCE. All representations, warranties, covenants, conditions and agreements contained in the Security Instrument as same may be modified, renewed, substituted or extended are hereby made a part of this Assignment to the same extent and with the same force as if fully set forth herein.

### ARTICLE IV.  RIGHT OF ASSIGNOR
### TO COLLECT RENTS

4.01    RIGHTS OF COLLECTION BY ASSIGNOR. So long as there exists no Event of Default, Assignor shall have the right to receive and collect the Rents (the "Right to Collect"). It is the intent of Assignor and Lender that Lender shall have a perfected security interest in the Rents and identifiable proceeds and identifiable cash proceeds. As such, Assignor specifically agrees to the terms of this Article. The Rents so received and collected by Assignor shall be deposited by Assignor in one or more accounts containing only the Rents so deposited in such accounts (each and collectively a "Rental Deposit Account") plus any interest paid by the depository on the amount from time to time in such accounts. Rents (and interest, if any) shall not be commingled with any other funds of Assignor and Assignor shall not deposit any other funds in such accounts other than the Rents. Assignor shall, within seven (7) days following notice from Lender to Assignor, advise Lender in writing of the names and locations of each Rental Deposit Account as well as the account number of each such account, Assignor shall advise Lender of the balance in each Rental Deposit Account to the extent that such information may be requested by Lender. Assignor acknowledges and agrees that Assignor's Right to Collect the Rents does not negate or otherwise affect the status of this Assignment as being a valid security interest and lien in favor of Lender as to the Rents.

4.02    USE OF RENTS BY ASSIGNOR. All of the Rents so received or collected by Assignor pursuant to the Right to Collect hereby granted pursuant to Section 4.01 hereof shall be utilized by Assignor for payment of the Note, for timely payment of taxes and assessments on the Property before the accrual of any penalty or interest with respect thereto, for payment of premiums on insurance required under the Security Documents, for payment of the costs of maintenance and repairs which are the obligation of Assignor under the Leases with respect to the Property, for fulfillment of Assignor's other obligations under the Security Documents, all of such previously stated obligations of Assignor to be fulfilled by Assignor prior to Assignor's utilization of the Rents for any other purpose whatsoever.

4.03    AUTOMATIC TERMINATION OF ASSIGNOR'S RIGHT TO COLLECT. Upon and during the occurrence of any Event of Default, upon Lender's sending a written Enforcement Notice (an "Enforcement Notice") to Assignor, the Assignor's Right to Collect under Section 4.01

EXHIBIT NO. 16                                        EX. 15-005

of this Agreement shall, automatically terminate without the necessity that Lender give Assignor any further notice or institute against Assignor any nature of legal proceedings or take any other action, and Lender also has the right to give a written Enforcement Notice to each tenant under Chapter 64. Upon the occurrence of any such Event of Default and the sending the Enforcement Notice terminating the Right to Collect, upon Assignor's receipt of the Enforcement Notice, all Rents then held or thereafter received by Assignor shall, in their entirety, be promptly (and in no event beyond five (5) calendar days) paid over by Assignor to Lender and Lender may exercise any and all legal and equitable remedies including, without limitation the remedies provided for under Article 6 of this Assignment and/or Chapter 64.

4.04    IMPACT ON TENANTS OF TERMINATION OF ASSIGNOR'S RIGHT TO COLLECT. Notwithstanding any of the other terms or provisions of this Assignment, until receipt from Lender of notice of the occurrence of any Event of Default, or an Enforcement Notice, each tenant may pay rentals directly to Assignor. Upon receipt by any tenant under the Leases, however, of notice from Lender that an Event of Default has occurred, or an Enforcement Notice, irrespective of whether Assignor contests the occurrence or existence of such Event of Default or contests Lender's entitlement to receive the Rents, each such tenant under the Leases is hereby authorized and directed and required to pay directly to Lender all Rents accruing after the date of the Event of Default notice or the date of the Enforcement Notice from Lender (irrespective of any contrary provision of the lease to such tenant or any other circumstances whatsoever); and the receipt by Lender of Rents shall constitute a release of each tenant paying such Rents to the extent of the amounts so paid to Lender by such tenant. The receipt by a tenant of any such notice from Lender constitutes full authorization and mandate for such tenant to make all future payment of Rents directly to Lender and each tenant paying such future Rents to Lender after such notice from Lender shall be permitted to rely on such notice and shall have no liability to Assignor after such notice for any Rents so paid to Lender by such tenant. In the event that any tenant receiving any such notice from Lender does not timely pay such future Rents to Lender, whether on account of continued payment of such Rents by such tenant to Assignor or withholding of such Rents by such tenant or such tenant's paying such Rents into the registry of the court in connection with an interpleader or other action or any other non-payment of such Rents to Lender by any tenant, such tenant will be liable to Lender for the Rents not so paid to Lender plus costs of court plus attorneys' fees of Lender. Lender may also contact each Tenant before an Event of Default and shall cause each tenant to agree in writing to the terms and provisions of this Section 4.04. Whenever requested by Lender, Assignor shall promptly obtain from each tenant and deliver to Lender an agreement executed by such tenant which provides that tenant has agreed to the terms and provisions hereinabove set forth in this Section 4.04.

## ARTICLE V.  COVENANTS, REPRESENTATIONS AND WARRANTIES OF ASSIGNOR

5.01    COVENANTS OF ASSIGNOR. Assignor hereby unconditionally covenants and agrees with Lender as follows:

A.    to observe, perform and discharge, diligently and punctually, all the obligations imposed upon the landlord under the Leases and not to do or permit to be done anything to impair the Leases or the Rents obligations or any of the other obligations of the tenants under the Leases; and Assignor shall give prompt notice to Lender of any failure on the part of the Assignor to observe, perform and

EXHIBIT NO. 16                                                          EX. 15-006

discharge any of Assignor's obligations under this paragraph or under any other portion of this Assignment;

B.   not to receive and accept or collect any of the Rents arising or accruing under any of the Leases or from the Property more than one (1) calendar month in advance, unless Assignor notifies Lender in advance of such pre-payment.

C.   except as required by prudent business judgement exercised by Assignor in good faith, not to grant any period of free rental or abated rental under any of the Leases;

D.   not to execute any further assignment of the rights or interests of Assignor (as landlord) in the Leases without Lender's prior written consent and not to execute any other assignment or transfer of Rents arising or accruing from the Leases or from the Property;

E.   not to subordinate any of the Leases to any of the Security Documents or any other mortgage or other encumbrance, or permit, consent or agree to such subordination without Lender's prior express written consent;

F.   except as required by prudent business judgement exercised by Assignor in good faith, not to alter, modify or change the terms of any of the Leases (or the terms of any guaranty of any of the Leases) or give any consent or exercise any option required or permitted by such terms without the prior written consent of Lender which consent shall not be unreasonably withheld or delayed, or cancel or terminate any of the Leases (or any guaranty of any of the Leases) or accept a surrender of any of the Leases or take or permit any action the effect of which is to result in a surrender of any Lease by operation of law;

G.   not to consent to any assignment of or subletting under any of the Leases, except as required in accordance with their terms, without the prior written consent of Lender; and not to grant any renewal or extension option under any of the Leases or agree to the enlargement or diminution in size or relocation of the leased premises under any Lease without the prior written approval of Lender which consent shall not be unreasonably withheld or delayed;

H.   to execute and deliver to Lender, at the request of Lender all such further assurances and written instruments and take all such other action with respect to the Property and/or the Leases as Lender shall from time to time request in writing in order to carry out the purpose and intent of this Assignment;

I.   to enforce, in the name of Assignor (as landlord), and at the cost, expense and risk of Assignor, the performance of each and every obligation, term, covenant, condition and agreement in the Leases to be performed by any tenant; and Assignor (as landlord) shall appear in and defend any action or proceeding arising under, occurring out of or in any manner connected with the Leases or the obligations, duties or liabilities of Assignor (as landlord) and any tenant thereunder, and, upon request by Lender, Assignor will do so in the name and on behalf of Lender, but at the expense of the Assignor, and Assignor shall pay all costs and expenses of Lender, including attorneys' fees and disbursements, in any action or proceeding in which Lender may appear;

EXHIBIT NO. 16                                    EX. 15-007

J.     not to waive, excuse, discount, set-off, compromise or in any manner release or discharge any tenant under any Lease (or any guarantor for any such tenant) of and from any monetary or other obligations, covenants, conditions and agreements to be kept, observed and performed by such tenant (or guarantor for such tenant), including, without limitation, the obligation to pay Rents thereunder, in the manner and at the time and place specified therein;

K.    not to incur any indebtedness to any tenant (or guarantor for any tenant) under any of the Leases unless each such tenant (or guarantor) contemporaneously expressly waives in writing any right to offset against (or recoup) any portion of such indebtedness from Rents;

L.    not to grant any Lease such that the effective lease rate over the term of the Lease is substantially below the market rate for similar leases for similar terms in the county where the Property is located without the Lender's prior written consent;

M.    to deliver to Lender, at the request of Lender from time to time, executed copies of all or a portion of the Leases upon all or any part of the Property;

N.    that any non-compliance by Assignor shall after applicable notice and failure to cure as provided for in the Loan Agreement constitute an Event of Default; and

O.    that no option to purchase the Property or right of first refusal in connection with any transfer of the Property will be granted by Assignor under any of the Leases.

5.02   REPRESENTATIONS AND WARRANTIES OF ASSIGNOR. Assignor unconditionally represents and warrants to Lender now and continuing throughout the term of this Assignment as follows:

A.    Assignor is the sole owner of the Property, and the landlord's interests in the Leases;

B.    Assignor has all of the requisite right, power and authority to assign the Rents to Lender, and no other person, firm, corporation or entity has any right, title or interest in the Rents;

C.    to the best knowledge of Assignor, the Leases are valid and enforceable, in full force and effect and have not been altered, modified or amended in any manner whatsoever;

D.    to the best knowledge of Assignor, the tenants named in the Leases are not in default under any of the terms, covenants or conditions of the leases and Assignor has duly and punctually performed and shall at all times hereafter duly and punctually perform all and singular, the terms, covenants, conditions and warranties of the leases on the Assignor's part to be kept, observed and performed;

E.    no Rents provided for under any of the Leases have been previously sold, assigned, transferred, mortgaged or pledged by Assignor, and no Rents for any period subsequent to the date of this Assignment have been collected by Assignor or shall be collected by Assignor earlier than the calendar month next preceding the

calendar month with respect to which such Rents are due and payable under the terms of any of the Leases;

F.  to the best knowledge of Assignor, no period of free or abated rental has been granted to any tenant under any of the Leases except as is disclosed on the most recent rent roll provided by Assignor to Lender; and

G.  Except as has been subordinated to the liens in favor of Lender, no option to purchase or right of first refusal in favor of a tenant in connection with any transfer of the Property exists in any of the Leases.

## ARTICLE VI. REMEDIES

6.01  REMEDIES OF LENDER.  Assignor hereby unconditionally covenants and agrees with Lender as follows:

A.  Upon or at any time after the occurrence of an Event of Default, without waiving such Event of Default, to the extent permitted by law, without notice and without regard to the adequacy of the security for the Debt, with or without bringing any action or proceeding, either in person or by agent, nominee, attorney, or a receiver appointed by a court, in addition to Lender's rights under Section 4.03 hereof, Lender, at its option, may dispossess Assignor and its agents and servants from the Property, and exclude Assignor and its agents or servants wholly therefrom and take possession of the Property and all books, records and accounts relating thereto without liability for trespass, damages or otherwise. Thereafter, Lender may have, hold, manage, lease and operate the Property on such terms and for such period of time as Lender may deem proper and either with or without taking possession of the Property in its own name, demand, sue for or otherwise collect and receive all Rents and other sums payable pursuant to any of the Assigned Property, including those past due and unpaid, with full power to make from time to time all alterations, renovations, repairs or replacements thereto or thereof as may seem proper to Lender.  Subject to the requirements of Chapter 64 of the Texas Property Code, Lender may apply the Rents and sums received pursuant to any of the Assigned Property to the payment of the following in such order and proportion as Lender in its sole discretion may determine: (i) all expenses of managing and securing the Property, including, without limitation, the salaries, fees and wages of a managing agent and such other employees or agents as Lender may deem necessary or desirable; (ii) all expenses of operating and maintaining the Property, including, without limitation, all utility charges, Taxes, and Other Charges (as such terms are defined in the Security Instrument) and any other liens, charges and expenses which Lender may deem necessary or desirable; (iii) the cost of all alterations, renovations, repairs or replacements; (iv) all expenses incident to taking and retaining possession of the Property; and (v) the Debt, together with all costs and reasonable attorneys' fees.

B.  In addition, upon the occurrence of an Event of Default, Lender, at its option, may (i) exercise such other rights and remedies as Lender shall have under applicable law, including Chapter 64; (ii) exercise all rights and powers of Assignor, including, without limitation, the right to enter into, negotiate, execute, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive

EXHIBIT NO. 16                    EX. 15-009

all Rents from the Property and all sums payable under the Assigned Property; (iii) either require Assignor to pay monthly in advance to Lender, or to any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupancy of such part of the Property as may be in possession of Assignor, or require Assignor to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Assignor may be evicted by summary proceedings or otherwise.

6.02 OTHER REMEDIES. Nothing contained in this Assignment and no act done or omitted by Lender pursuant to the power and rights granted to Lender hereunder shall be deemed to be a waiver by Lender of its rights and remedies under the Note, the Security Instrument, or the Other Security Documents and this Assignment is made and accepted without prejudice to any of the rights and remedies possessed by Lender under the terms thereof. The right of Lender to collect the Debt and to enforce any other security therefor held by it may be exercised by Lender either prior to, simultaneously with, or subsequent to any action taken by it hereunder. Assignor hereby absolutely, unconditionally and irrevocably waives any and all rights to assert any setoff, counterclaim or crossclaim of any nature whatsoever with respect to the obligations of Assignor under this Assignment, the Note, the Security Instrument, the Other Security Documents or otherwise with respect to the loan secured hereby in any action or proceeding brought by Lender to collect same, or any portion thereof, or to enforce and realize upon the lien and security interest created by this Assignment, the Note, the Security Instrument, or any of the Other Security Documents (provided, however, that the foregoing shall not be deemed a waiver of Assignor's right to assert any compulsory counterclaim if such counterclaim is compelled under local law or rule of procedure, nor shall the foregoing be deemed a waiver of Assignor's right to assert any claim which would constitute a defense, setoff, counterclaim or crossclaim of any nature whatsoever against Lender in any separate action or proceeding).

6.03 OTHER SECURITY. Lender may take or release other security for the payment of the Debt, may release any party primarily or secondarily liable therefor and may apply any other security held by it to the reduction or satisfaction of the Debt without prejudice to any of its rights under this Assignment.

6.04 NON-WAIVER. The exercise by Lender of the option granted it in Section 5.01 of this Assignment and the collection of the Rents and other sums payable pursuant to the Assigned Property and the application thereof as herein provided shall not be considered a waiver of any default by Assignor under the Note, the Security Instrument, the Leases, this Assignment or the Other Security Documents. The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Assignment. Assignor shall not be relieved of Assignor's obligations hereunder by reason of (a) the failure of Lender to comply with any request of Assignor or any other party to take any action to enforce any of the provisions hereof or of the Security Instrument, the Note or the Other Security Documents, (b) the release regardless of consideration, of the whole or any part of the Property, or (c) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of this Assignment, the Note, the Security Instrument or the Other Security Documents. Lender may resort for the payment of the Debt to any other security held by Lender in such order and manner as Lender, in its discretion, may elect. Lender may take any action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Lender thereafter to enforce its rights under this Assignment. The rights of Lender under this

EXHIBIT NO. 16                                              EX. 15-010

Assignment shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

6.05    BANKRUPTCY.  Assignor hereby unconditionally covenants and agrees with Lender as follows:

A.    Upon or at any time after the occurrence of an Event of Default, Lender shall have the right to proceed in its own name or in the name of Assignor in respect of any claim, suit, action or proceeding relating to the rejection of any Lease, including, without limitation, the right to file and prosecute, to the exclusion of Assignor, any proofs of claim, complaints, motions, applications, notices and other documents, in any case in respect of the lessee under such Lease under the Bankruptcy Code.

B.    If there shall be filed by or against Assignor a petition under the Bankruptcy Code, and Assignor, as lessor under any Lease, shall determine to reject such Lease pursuant to Section 365(a) of the Bankruptcy Code, then Assignor shall give Lender not less than ten (10) days' prior notice of the date on which Assignor shall apply to the bankruptcy court for authority to reject the Lease.  Lender shall have the right, but not the obligation, to serve upon Assignor within such ten-day period a notice stating that (i) Lender demands that Assignor assume and assign the Lease to Lender pursuant to Section 365 of the Bankruptcy Code and (ii) Lender covenants to cure or provide adequate assurance of future performance under the Lease.  If Lender serves upon Assignor the notice described in the preceding sentence, Assignor shall not seek to reject the Lease and shall comply with the demand provided for in clause (i) of the preceding sentence within thirty (30) days after the notice shall have been given, subject to the performance by Lender of the covenant provided for in clause (ii) of the preceding sentence.

## ARTICLE VII.  FURTHER ASSURANCES/NO LIABILITY

7.01    FURTHER ASSURANCES.  Assignor will, at the cost of Assignor, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, conveyances, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, require for the better assuring, conveying, assigning, transferring and confirming unto Lender the property and rights hereby assigned or intended now or hereafter so to be, or which Assignor may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Assignment or for filing, registering or recording this Assignment and, on demand, will execute and deliver and hereby authorizes Lender to execute in the name of Assignor to the extent Lender may lawfully do so, one or more financing statements, chattel mortgages or comparable security instruments, to evidence more effectively the lien and security interest hereof in and upon the Leases.

7.02    NO LIABILITY OF LENDER.  THIS ASSIGNMENT SHALL NOT BE CONSTRUED TO BIND LENDER TO THE PERFORMANCE OF ANY OF THE COVENANTS, CONDITIONS OR PROVISIONS CONTAINED IN ANY LEASE OR LEASE GUARANTY OR OTHERWISE IMPOSE ANY OBLIGATION UPON LENDER. LENDER SHALL NOT BE LIABLE FOR ANY LOSS SUSTAINED BY GRANTOR RESULTING FROM LENDER'S FAILURE TO LET THE PROPERTY AFTER AN

EXHIBIT NO. 16                    EX. 15-011

EVENT OF DEFAULT OR FROM ANY OTHER ACT OR OMISSION OF LENDER IN MANAGING THE PROPERTY AFTER AN EVENT OF DEFAULT UNLESS SUCH LOSS IS CAUSED BY THE WILLFUL MISCONDUCT OR BAD FAITH OF LENDER.  LENDER SHALL NOT BE OBLIGATED TO PERFORM OR DISCHARGE ANY OBLIGATION, DUTY OR LIABILITY UNDER THE LEASES OR ANY LEASE GUARANTIES OR UNDER OR BY REASON OF THIS ASSIGNMENT AND GRANTOR SHALL, AND HEREBY AGREES, TO INDEMNIFY LENDER FOR, AND TO HOLD LENDER HARMLESS FROM, ANY AND ALL LIABILITY, LOSS OR DAMAGE WHICH MAY OR MIGHT BE INCURRED UNDER THE ASSIGNED PROPERTY OR UNDER OR BY REASON OF THIS ASSIGNMENT AND FROM ANY AND ALL CLAIMS AND DEMANDS WHATSOEVER, INCLUDING THE DEFENSE OF ANY SUCH CLAIMS OR DEMANDS WHICH MAY BE ASSERTED AGAINST LENDER BY REASON OF ANY ALLEGED OBLIGATIONS AND UNDERTAKINGS ON ITS PART TO PERFORM OR DISCHARGE ANY OF THE TERMS, COVENANTS OR AGREEMENTS CONTAINED IN THE LEASES OR ANY LEASE GUARANTIES, EVEN IF SUCH LOSS IS THE RESULT OF OR CAUSED BY THE NEGLIGENT ACTS OR OMISSIONS OF LENDER (WHETHER SOLE OR CONCURRENT). SHOULD LENDER INCUR ANY SUCH LIABILITY, THE AMOUNT THEREOF, INCLUDING COSTS, EXPENSES AND REASONABLE ATTORNEYS' FEES, SHALL BE SECURED BY THIS ASSIGNMENT AND BY THE SECURITY INSTRUMENT AND THE OTHER SECURITY DOCUMENTS AND GRANTOR SHALL REIMBURSE LENDER THEREFOR IMMEDIATELY UPON DEMAND AND UPON THE FAILURE OF GRANTOR SO TO DO LENDER MAY, AT ITS OPTION, DECLARE ALL SUMS SECURED BY THIS ASSIGNMENT AND BY THE SECURITY INSTRUMENT AND THE OTHER SECURITY DOCUMENTS IMMEDIATELY DUE AND PAYABLE.  THIS ASSIGNMENT SHALL NOT OPERATE TO PLACE ANY OBLIGATION OR LIABILITY FOR THE CONTROL, CARE, MANAGEMENT OR REPAIR OF THE PROPERTY UPON LENDER, NOR FOR THE CARRYING OUT OF ANY OF THE TERMS AND CONDITIONS OF THE LEASES OR ANY LEASE GUARANTIES; NOR SHALL IT OPERATE TO MAKE LENDER RESPONSIBLE OR LIABLE FOR ANY WASTE COMMITTED ON THE PROPERTY BY THE TENANTS OR ANY OTHER PARTIES, OR FOR ANY DANGEROUS OR DEFECTIVE CONDITION OF THE PROPERTY, INCLUDING WITHOUT LIMITATION THE PRESENCE OF ANY HAZARDOUS SUBSTANCES (AS DEFINED IN THE SECURITY INSTRUMENT), OR FOR ANY NEGLIGENCE IN THE MANAGEMENT, UPKEEP, REPAIR OR CONTROL OF THE PROPERTY RESULTING IN LOSS OR INJURY OR DEATH TO ANY TENANT, LICENSEE, EMPLOYEE OR STRANGER.

7.03    NO MORTGAGEE IN POSSESSION.  Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession" in the absence of the taking of actual possession of the Property by Lender.  In the exercise of the powers herein granted Lender, no liability shall be asserted or enforced against Lender, all such liability being expressly waived and released by Assignor.

## ARTICLE VIII. DEFINITIONS

8.01    CERTAIN DEFINITIONS. Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, the phrases "attorneys' fees" and "counsel fees" shall include any and all attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder, the word "Assignor" shall mean each Assignor and any subsequent owner or owners of the Property or any part thereof or interest therein, the word "Lender" shall mean Lender and any subsequent holder of the Note, the word "Note" shall mean the Note and any other evidence of indebtedness secured by the Security Instrument, the word "person" shall include an individual, corporation, partnership, limited liability company, trust, unincorporated association, government, governmental authority, and any other entity, and the word "Property" shall include any portion of the Property and any interest therein.

8.02    NUMBER AND GENDER. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

8.03    EVENT OF DEFAULT. "Event of Default" shall mean any event of default as set forth in the Note or in any of the Other Security Documents, or under the terms of any other instrument given as collateral to Lender as security for the payment of the Note after applicable notice and failure to cure as provided for in the Loan Agreement of even date by and between Assignor and Lender.

## ARTICLE IX. APPLICABLE LAW

9.01    CHOICE OF LAW. This Assignment shall be governed, construed, applied and enforced in accordance with the laws of the State of Texas. Venue shall lie in Bell County, Texas.

9.02    PROVISIONS SUBJECT TO APPLICABLE LAW. All rights, powers and remedies provided in this Assignment may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Assignment invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable laws.

## ARTICLE X. MISCELLANEOUS PROVISIONS

10.01    CONFLICT OF TERMS. In case of any conflict between the terms of this Assignment and the terms of the Security Instrument, the terms of the Security Instrument shall prevail.

10.02    NO ORAL CHANGE. This Assignment and any provisions hereof may not be modified, amended, waived, extended, changed, discharged or terminated orally, or by any act or failure to act on the part of Assignor or Lender, but only by an agreement in writing signed by the party against whom the enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

10.03    AUTHORITY. Assignor represents and warrants that it has full power and authority to execute and deliver this Assignment and the execution and delivery of this Assignment has

EXHIBIT NO. 16      EX. 15-013

been duly authorized and does not conflict with or constitute a default under any law, judicial order or other agreement affecting Assignor or the Property.

10.04 DUPLICATE ORIGINALS; COUNTERPARTS. This Assignment may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original. This Assignment may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Assignment. The failure of any party hereto to execute this Assignment, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

10.05 NOTICES. All notices required or permitted hereunder shall be given as provided in the Security Instrument.

10.06 LIABILITY. If Assignor consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. This Assignment shall be binding upon and inure to the benefit of Assignor and Lender and their respective successors and assigns forever.

10.07 HEADINGS, ETC. The headings and captions of various paragraphs of this Assignment are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

10.08 SOLE DISCRETION OF LENDER. Wherever pursuant to this Assignment (a) Lender exercises any right given to it to approve or disapprove, (b) any arrangement or term is to be satisfactory to Lender, or (c) any other decision or determination is to be made by Lender, the decision of Lender to approve or disapprove, all decisions that arrangements or terms are satisfactory or not satisfactory and all other decisions and determinations made by Lender, shall be in the sole discretion of Lender, except as may be otherwise expressly and specifically provided herein.

10.09 COSTS AND EXPENSES OF ASSIGNOR. Wherever pursuant to this Assignment it is provided that Assignor pay any costs and expenses, such costs and expenses shall include, but not be limited to, legal fees.

IN WITNESS WHEREOF, Assignor has executed this instrument as of the day and year first above written.

Assignor:

WC 4811 SOUTH CONGRESS, LLC, a
Delaware limited liability company

By:    World Class Holdings III, LLC, a
Delaware limited liability company,
Manager

By: _____
Natin Paul, President

EXHIBIT NO. 16    EX. 15-014

THE STATE OF _Texas_ §

COUNTY OF _Travis_ §

This instrument was acknowledged before me on the __31__ day of __March__, 201_7_, by Natin Paul, President of World Class Holdings III, LLC, a Delaware limited liability company, on behalf of said limited liability company, in its capacity as Manager of WC 4811 SOUTH CONGRESS, LLC, a Delaware limited liability company, on behalf of said limited liability company.



_Notary signature_

Notary Public in and for
The State of _Texas_

My commission expires: _10/3/20_

LAURA BYRD
Notary Public, State of Texas
Comm. Expires 10-03-2020
Notary ID 130846648

AFTER RECORDING RETURN TO:
Loan Services
FIRST STATE BANK CENTRAL TEXAS
P. O. Box 6136
Temple, Texas 76503-6136

PREPARED BY:

OPPER & GAMBRELL, P.L.L.C.
8582 Katy Freeway, Suite 200
Houston, Texas 77024

METES AND BOUNDS DESCRIPTION OF A SURVEY OF 14.993 ACRES OF LAND, A PORTION OF THE ISAAC DECKER LEAGUE SURVEY NO. 20, ABSTRACT NO. 8, IN THE CITY OF AUSTIN, TRAVIS COUNTY, TEXAS, SAID 14.993 ACRES OF LAND BEING ALL OF THAT CALLED 4.32 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, AS DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM ABEL J. & MARY ANN THERIOT FAMILY LIMITED PARTNERSHIP TO THERIOT FLP PROPERTIES – III OF RECORD IN DOCUMENT NO. 2010125121, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT CALLED 6.6839 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, DESIGNATED AS TRACT 1 AND DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM SASHA THERIOT SANDERS, TEAL THERIOT SANDERS AND ZACHARY CURTIS SANDERS TO SANDERS CHILDREN INVESTMENTS, LLC OF RECORD IN DOCUMENT NO. 2010125125, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT CALLED 2.62 ACRE TRACT, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, DESIGNATED AS TRACT 2 AND DESCRIBED IN SAID SPECIAL WARRANTY DEED TO SANDERS CHILDREN INVESTMENTS, LLC OF RECORD IN DOCUMENT NO. 2010125125, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING ALSO ALL OF THAT 2.32 ACRES OF LAND, A PORTION OF THE SAID ISAAC DECKER LEAGUE SURVEY NO. 20, AS DESCRIBED IN THAT SPECIAL WARRANTY DEED FROM SUZANNE MARIE SANDERS AND HER HUSBAND CURTIS NOLEN SANDERS TO SANDERS FLP PROPERTIES – I, LLC OF RECORD IN DOCUMENT NO. 2010125122, OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, SAID 14.993 ACRES OF LAND, AS SURVEYED BY BOWMAN CONSULTING GROUP, LTD. AND SHOWN ON BOWMAN PLAN NO. 3562, BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING at a 5/8" iron rod found in the east right-of-way line of South Congress Avenue at the most westerly northwest corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and at the southwest corner of that 0.780 of one acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Cash Warranty Deed to MMGG Enterprises, L.P. in Document No. 2004036130, Official Public Records of Travis County, Texas, said 5/8" iron rod found being a common corner of the two parcels described in that Agreement of record in Document No. 2005099083, Official Public Records of Travis County, Texas, said 5/8" iron rod found being the POINT OF BEGINNING and most westerly northwest corner of the tract described herein, and from which 5/8" iron rod found, a 1/2" iron rod with plastic cap stamped "ALL POINTS" found at the southwest corner of that 0.066 of one acre tract described in a Street Deed from MMGG Enterprises, LTD., to the City of Austin of records in Document No. 2005102391, Official Public Records of Travis County, Texas, bears
N 63°59'01"W a distance of 0.67 feet;

THENCE S 61°50'30" E, with the most westerly north line of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the south line of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the agreed line referenced in the said Agreement of record in Document No. 2005099083 a distance of 239.20 feet to a 1/2" steel pin found at a reentrant corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the south east corner of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the corner referenced in said Agreement, for a reentrant corner of the tract described herein;

EXHIBIT A

PAGE 1 OF 4 PAGES

THENCE N 23°58'30" E, with the most northerly west line of the said Theriot FLP Properties – III, LLC 4.32 acre tract and with the east line of the said MMGG Enterprises, L.P. 0.780 of one acre tract, and being also the line referenced in the said Agreement, at a distance of 4.94 passing a 1/2" steel pin found 0.17 feet east of line, said 1/2" steel pin found being the southeast corner of that 0.708 of one acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Special Warranty Deed With Vendor's Lien to Area 51 Enterprises LLC in Document No.

2015028487, Official Public Records of Travis County, Texas, in all 149.98 feet to a 1/2" steel pin found in the south line of that 4.056 acre tract, a portion of the said Isaac Decker League Survey No. 20, as described in a Special Warranty Deed to ID Bel Air Partners, LP of record in Document No. 2005017765, Official Public Records of Travis County, Texas, and being the most northerly northwest corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract, and the northeast corner of the said MMGG Enterprises, L.P. 0.780 of one acre tract and the northeast corner of the said Area 51 Enterprises LLC 0.708 of one acre tract, and being also the corner referenced in said Agreement, for the most northerly northwest corner of the tract described herein;

THENCE S 63°24'52" E, with the most easterly north line of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the south line of the said ID Bel Air Partners, LP 4.056 acre tract, a distance of 383.05 feet to a 1/2" steel pin found in the west line of Lot 2A, Block V, A Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, of record in Plat Book 51, Page 20, Plat Records of Travis County, Texas, and being also the southeast corner of the said ID Bel Air Partners, LP 4.056 acre tract and the northeast corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract, for the northeast corner of the tract described herein;

THENCE S 26°47'44" W, with the west line of said Lot 2A, Block V, A Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, and with the east line of the said Theriot FLP Properties – III, LLC 4.32 acre tract, a distance of 58.95 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found at the southwest corner of said Lot 2A, Block V and the northwest corner of Lot 1A, Block V, of said Resubdivision of Lot 1, Block V, Greenwood Hills, Section Five, for an angle point in the east line of the tract described herein;

THENCE S 26°41'23" W, with the west line of said Lot 1A, Block V and the west line of Lot 4, Block V, Greenwood Hills, Section Five, of record in Plat Book 42, Page 10, Plat Records of Travis County, Texas, and being also with the west line of Liverpool Drive as shown on said map or plat of Greenwood Hills, Section Five and being also with the east line of the said Theriot FLP Properties – III, LLC 4.32 acre tract, a distance of 237.88 feet to a 1/2" steel pin found at the southeast corner of the said Theriot FLP Properties – III, LLC 4.32 acre tract and the northeast corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres of land, for an angle point in the east line of the tract described herein;

THENCE S 26°31'34" W, with the west line of Liverpool Drive and the west line of Lot 23, Block W, of said Greenwood Hills Section Five and being also with the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 152.98 feet to a 5/8" steel pin found at the southwest corner of said Lot 23, Block W and the northwest corner of Lot 16, Block W, of said Greenwood Hills Section Five, for an angle point in the east line of the tract described herein;

THENCE S 27°38'57" W, with the west line of said Lot 16, Block W, of said Greenwood Hills Section Five and being also with the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 40.08 feet to a 1/2" steel pin found at the southwest corner of said Lot 16, Block W and the northwest corner of Lot 15, Block W, of said Greenwood Hills Section Five, for an angle point in the east line of the tract described herein;

EXHIBIT A
PAGE 2 OF 4 PAGES

THENCE S 26°33'27" W, with the west line of said Lot 15, Block W and the west line of Lots 14, 13, 12, 11 and 10, Block W, of said Greenwood Hills Section Five and the east line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 473.14 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found in the west line of said Lot 10, Block W, Greenwood Hills Section Five at the southeast corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, for a southeast corner of the tract described herein;

THENCE N 34°50'27" W, with the southwest or west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, a distance of 11.89 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found in the southwest or west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres and at the northeast corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, for a reentrant corner of the tract described herein;

THENCE S 27°22'12" W, with the east line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, at a distance of 25.77 feet, more or less, passing the most easterly northwest corner of that 2.002 acre tract, as described in a Warranty Deed with Vendor's Lien of record in Document No. 2011133868, Official Public Records of Travis County, Texas, in all a distance of 261.28 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found at the southeast corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and a reentrant of the said Jim O'Brien 2.002 acre tract and the most southerly southeast corner of the tract described herein;

THENCE N 60°09'26" W, with the most westerly north line of the said Jim O'Brien 2.002 acre tract and with the south line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, a distance of 199.03 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found at an angle point in the most westerly north line of the said Jim O'Brien 2.002 acre tract and an angle point in the south line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres;

THENCE N 67°47'26" W, with the most westerly south line of the said Jim O'Brien 2.002 acre tract and with the south line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, a distance of 58.62 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found in the east line of Wasson Road (old State Highway No. 29) at the most westerly northwest corner of the said Jim O'Brien 2.002 of one acre tract and the southwest corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres, for the most southerly southwest corner of the tract described herein;

THENCE with the east line of Wasson Road (old State Highway No. 29) and the west line of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and with the west line of the said Sanders FLP Properties - 1, LLC 2.32 acre tract, courses numbered 1 through 5 inclusive as follows:

1. N 24°25'26" W, a distance of 42.22 feet to 3/4" iron pipe found;
2. N 14°47'26" W, a distance of 70.00 feet to a drill hole in top of a concrete curb found;
3. N 19°56'26" W, at a distance of 154.55 feet passing the northwest corner of the said Sanders Children Investments, LLC Tract 2 of 2.62 acres and the southwest corner of the said Sanders FLP Properties - 1, LLC 2.32 acre tract, in all a distance of 254.00 feet to a calculated point in a multi-trunk Pecan tree;
4. N 07°57'26" W, a distance of 138.98 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found, and
5. N 04°30'34" E, a distance of 36.10 feet to a 1/2" steel pin with plastic cap stamped "M&S 1838" found at the intersection of the east line of Wasson Road and the east line of Congress Avenue;

EXHIBIT  A
PAGE 3 OF 4 PAGES

THENCE N 27°40'11" E, with the east right-of-way of South Congress Avenue and the west line of the said Sanders FLP Properties - 1, LLC 2.32 acre tract and the west line of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, and being also with the west line of the said Therlot FLP Properties – III, LLC 4.32 acre tract, at a distance of 271.24 feet passing the northwest corner of the said Sanders FLP Properties - 1, LLC 2.32 acre tract and the southwest corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, and at a distance of 386.42 feet passing a northwest corner of the said Sanders Children Investments, LLC Tract 1 of 5.6839 acres, and a southwest corner of the said Therlot FLP Properties – III, LLC 4.32 acre tract, in all 666.83 feet to the POINT OF BEGINNING of the tract described herein containing 14.993 acres of land.

Bearing basis is Grid North, NAD 83, Texas Coordinate System, Central Zone.

Plan #: 3662

EXHIBIT A
PAGE 4 OF 4 PAGES

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

Dana Debeauvoir

DANA DEBEAUVOIR, COUNTY CLERK
TRAVIS COUNTY, TEXAS
April 03 2017 10:14 AM

EXFP15-019 2017052194

EXHIBIT NO. 16

| Form 306 |   Application for Registration of a Foreign Limited Partnership | Filed in the Office of the Secretary of State of Texas Filing #: 803741770 08/28/2020 Document #: 992993640005 Image Generated Electronically for Web Filing |
|---|---|---|
| Secretary of State P.O. Box 13697 Austin, TX 78711-3697 FAX: 512/463-5709  **Filing Fee: $750** | | |

1. The entity is a foreign limited partnership. The name of the entity is:

**4811 SoCo, L.P.**

2A. The name of the entity in its jurisdiction of formation does not contain the word "limited partnership," or "limited" (or an abbreviation thereof). The name of the entity with the word or abbreviation that it elects to add for use in Texas is:

2B. The entity name is not available in Texas. The assumed name under which the entity will qualify and transact business in Texas is:

3. Its federal employer identification number is: **851384005**
☐ Federal employer identification number information is not available at this time.

4. It is organized under the laws of: **DELAWARE, USA**
and the date of its formation in that jurisdiction is: **6/1/2020**

5. As of the date of filing, the undersigned certifies that the foreign limited partnership currently exists as a valid limited partnership under the laws of the jurisdiction of its formation.

6. The date on which the foreign entity intends to transact business in Texas, or the date on which the foreign entity first transacted business in Texas is: **08/21/2020**

7. The principal office address of the limited partnership is:
**2726 BISSONNET ST STE 244, HOUSTON, TX, USA 77005-1353**

☑ 8A. The initial registered agent is an organization by the name of:
**Capital Corporate Services, Inc.**
☐ 8B. The initial registered agent is an individual resident of the state whose name is:
___
☐ 8C. The business address of the registered agent and the registered office address is:
**206 E 9TH ST STE 1300    AUSTIN  TX  78701-4411**

### Consent of Registered Agent
☐ A. A copy of the consent of Registered Agent is attached.
**OR**
☑ B. The consent of the registered agent is maintained by the entity.

EXHIBIT NO. 20                                                                                    EX. 20-001

9. The entity hereby appoints the Secretary of State of Texas as its agent for service of process under the circumstances set forth in section 5.251 of the Texas Business Organizations Code.

10. The name and address of each governing person is:

| NAME OF GOVERNING PERSON (Enter the name of either an individual or an organization, but not both:) : |
| --- |
| IF INDIVIDUAL |
| |
| OR |
| IF ORGANIZATION |
| **4811 SoCo GP, LLC** |
| ADDRESS OF GOVERNING PERSON : |
| **2726 BISSONNET ST STE 244    HOUSTON  TX, USA  77005-1353** |

**Supplemental Provisions / Information**

[The attached addendum, if any, is incorporated herein by reference.]

**Effectiveness of Filing**

☑A. This document becomes effective when the document is filed by the secretary of state.

**OR**

☐ B. This document becomes effective at a later date, which is not more than ninety (90) days from the date of its signing. The delayed effective date is:

**Execution**

The undersigned affirms that the person designated as registered agent has consented to the appointment. The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument and certifies under penalty of perjury that the undersigned is authorized under the provisions of law governing the entity to execute the filing instrument.

Date: **August 28, 2020**      **4811 SoCo GP, LLC**

Signature and title of authorized person on behalf of the foreign limited partnership

FILING OFFICE COPY

```
MAI           08/18/20           ACCOUNT INQUIRY              10:16:13
UR
TL2 000   CTL3 000   CTL4 0000   ACCT 93300011364000      EFF DATE      08/06/2
TL2 000   CTL3 000   CTL4 0000   CUST 00000820648619      NON-ACCRUAL
CRA IND N                        ******** RATES ********  SIMPLE INT - VAR RATE
AYOFF            4450284.50                               AUTO DR
RIG LOAN AMT    4745000.00       CURR RATE     4.2500000  PROD TYPE         CV0
RIG PROCEEDS    4745000.00       ORIG RATE     5.7500000  PRIM OFFICER     2305
T CHG DUE             0.00       PER DIEM   507.5646629   GL KEY 0103  912
EES DUE              0.00        ******** DATES ********  CALL CODE         01E
URRENT PRIN     4371027.45       CONTRACT DATE   03/31/17 ***** REPAYMENTS *****
URRENT INT        79257.05       CURR MATURITY   04/09/22 CURR TERM           6
CH PYMT AMT       30233.75       CLOSED DATE              PYMTS MADE          3
UR PYMT AMT       30233.75       SCHED DUE DATE  08/09/20 PYMTS REM           2
AST DUE AMT      123457.85       OLDEST DUE DATE 04/09/20 MONTHS EXTD  0 REN 00
ARTIAL PAID        2812.35       LAST MAINT DT   08/03/20 MAT DT EXTD  0
*************************        LST BAL CHG DT  03/19/20 YTD INT COL   73928.64
C 4811 SOUTH CONGRESS LLC                                 INT COL PRV  280726.34
14 LAVACA ST                                              ***** CREDIT HIST ****
                                 COLLATERAL               011 016 031 061 091 12
USTIN              TX 78701      CODE: R10                000 001 001 001 001 00
H (    ) ( 000 ) 000-0000        DESC: 1ST RE UNIMP COM
F1-NEXT STAT  PF2-PREV STAT  PF3-ADDL INFO  PF6-ESCROW
MPCGIS1 AM7294 I: FIRST STATUS DISPLAYED                             LAST
```

EXHIBIT NO. 28

| WC 4811 South Congress LLC LLC Loan History | | | |
|---|---|---|---|
| Transaction Date | Transaction Type | Transaction Amount | Balance after Transaction |
| 03.31.2017 | Loan Set Up - Interest Rate @ 5.00% | | $ 4,750,000.00 |
| 05.16.2017 | Regular Payment | $ 31,314.90 | $ 4,739,035.10 |
| 06.12.2017 | Regular Payment | $ 31,314.90 | $ 4,727,850.58 |
| 07.12.2017 | Regular Payment | $ 31,314.90 | $ 4,715,969.80 |
| 08.09.2017 | Regular Payment | $ 31,314.90 | $ 4,704,686.51 |
| 09.08.2017 | Regular Payment | $ 31,314.90 | $ 4,693,350.41 |
| 10.06.2017 | Regular Payment | $ 31,314.90 | $ 4,681,321.70 |
| 11.09.2017 | Regular Payment | $ 31,314.90 | $ 4,669,881.44 |
| 12.08.2017 | Regular Payment | $ 31,314.90 | $ 4,657,757.84 |
| 01.09.2018 | Regular Payment | $ 31,314.90 | $ 4,646,220.80 |
| 02.09.2019 | Regular Payment | $ 31,314.90 | $ 4,634,636.42 |
| 03.09.2018 | Regular Payment | $ 31,314.90 | $ 4,621,098.21 |
| 04.02.2018 | Interest Rate Change to 5.75% | | |
| 04.09.2018 | Regular Payment | $ 31,314.90 | $ 4,609,407.15 |
| 05.09.2018 | Regular Payment | $ 31,314.90 | $ 4,600,731.02 |
| 06.08.2018 | Regular Payment | $ 31,314.90 | $ 4,591,884.08 |
| 07.09.2018 | Regular Payment - Auto Debit | $ 31,314.90 | $ 4,582,269.15 |
| 08.09.2018 | Regular Payment - Auto Debit | $ 31,314.90 | $ 4,573,332.04 |
| 09.09.2018 | Regular Payment - Auto Debit | $ 31,314.90 | $ 4,564,351.29 |
| 10.09.2018 | Regular Payment - Auto Debit | $ 31,314.90 | $ 4,554,607.64 |
| 11.09.2018 | Regular Payment - Auto Debit | $ 31,314.90 | $ 4,545,535.45 |
| 12.09.2018 | Regular Payment - Auto Debit | $ 31,314.90 | $ 4,535,702.87 |
| 01.09.2019 | Regular Payment - Auto Debit | $ 31,314.90 | $ 4,526,538.36 |
| 02.09.2019 | Regular Payment - Auto Debit | $ 31,314.90 | $ 4,517,329.08 |
| 03.09.2019 | Regular Payment - Auto Debit | $ 31,314.90 | $ 4,505,939.94 |
| 03.31.2019 | Interest Rate Change to 6.50% | | |
| 04.09.2019 | Regular Payment - Auto Debit | $ 31,314.90 | $ 4,496,630.07 |
| 05.09.2019 | Regular Payment - Auto Debit | $ 35,568.95 | $ 4,485,917.51 |
| 06.09.2019 | Regular Payment - Auto Debit | $ 35,568.95 | $ 4,475,113.28 |
| 07.09.2019 | Regular Payment - Auto Debit | $ 35,568.95 | $ 4,463,452.47 |
| 08.09.2019 | Regular Payment - Auto Debit | $ 35,568.95 | $ 4,452,524.22 |
| 09.09.2019 | Regular Payment - Auto Debit | $ 35,568.95 | $ 4,441,535.64 |
| 10.09.2019 | Regular Payment - Auto Debit | $ 35,568.95 | $ 4,429,695.45 |
| 11.09.2019 | Regular Payment - Auto Debit | $ 35,568.95 | $ 4,418,580.84 |
| 12.09.2019 | Regular Payment - Auto Debit | $ 35,568.95 | |
| 12.09.2019 | Regular Payment - Reversal (NSF) | $ (35,568.95) | $ 4,418,580.84 |
| 12.17.2019 | Regular Payment | $ 35,568.95 | $ 4,406,618.01 |
| 01.09.2020 | Regular Payment | $ 35,568.95 | |
| 01.09.2020 | Regular Payment - Reversal (NSF) | $ (35,568.95) | $ 4,406,618.01 |
| 01.15.2020 | Regular Payment | $ 35,568.95 | $ 4,395,375.90 |
| 01.15.2020 | Regular Payment | $ 35,568.95 | |
| 01.15.2020 | Regular Payment - Reversal | $ (35,568.95) | $ 4,395,375.90 |
| 02.09.2020 | Regular Payment - Auto Debit | $ 35,568.95 | $ 4,384,017.51 |
| 03.09.2020 | Regular Payment - Auto Debit | $ 35,568.95 | |
| 03.09.2020 | Regular Payment - Reversal (NSF) | $ (35,568.95) | $ 4,384,017.51 |
| 03.19.2020 | Regular Payment | $ 35,568.95 | $ 4,371,027.45 |
| 03.31.2020 | Interest Rate Change to 4.25% | | |
| 04.09.2019 | Regular Payment | $ 35,568.95 | |
| 04.09.2019 | Regular Payment - Reversal (NSF) | $ (35,568.95) | $ 4,371,027.45 |
| 04.09.2019 | Regular Payment | $ 35,568.95 | |
| 04.09.2019 | Regular Payment - Reversal (NSF) | $ (35,568.95) | $ 4,371,027.45 |
| 05.09.2020 | Regular Payment | $ 35,568.95 | |
| 05.09.2020 | Regular Payment - Reversal (NSF) | $ (35,568.95) | $ 4,371,027.45 |
| 06.09.2020 | Regular Payment | $ 35,568.95 | |
| 06.09.2020 | Regular Payment - Reversal (NSF) | $ (35,568.95) | $ 4,371,027.45 |
| 07.09.2020 | Regular Payment | $ 35,568.95 | |
| 07.09.2020 | Regular Payment - Reversal (NSF) | $ (35,568.95) | $ 4,371,027.45 |
| 08.03.2020 | Regular Payment - Rent Payment (tenant) | $ 2,812.35 | $ 4,371,027.45 |

WC 4811 SOUTH CONGRESS, LLC

February 25, 2020

First State Bank Central Texas
P. O. Box 6136
Temple, TX 76503-6136

Bancorp South
6500 N Mopac, Suite 1101
Austin, TX 78731
Attention: Vivienne Ngo

**Re:    Notice of Updated Notice Address for Borrower and Guarantors**
**Loan Ref. No.: 93300011364000**

To Whom It May Concern:

Please refer to that certain Loan Agreement ("Loan") dated as of March 31, 2017 between WC 4811 South Congress ("Borrower") and First State Bank Central Texas ("Lender"). Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Loan.

Each of the Borrower and the Guarantors hereby amends its notice address under the Loan Documents. Notices and communications to Borrower and/or Guarantors, as applicable, should hereafter be sent to the following addresses in lieu of the addresses set forth therein:

> c/o World Class
> 814 Lavaca St.
> Austin, Texas 78701
> Attention: Natin Paul

> with a copy to:

> 244 Fifth Avenue, Suite 2200
> New York, NY 10001

Should you require any additional information or have any questions or concerns, please feel free to contact me at lthong@world-class.com.com or 512-327-3300.

Thank you for your attention to this matter.

Sincerely,

Linda Thong, Special Counsel



EXHIBIT NO. 29                    EX. 29-001

| FEE | $66.25 | | | |
|---|---|---|---|---|
| | UPDATE | | **TAX CERTIFICATE** | *REMIT CERT FEE TO:* |
| | | | **DATA TRACE** | *DATA TRACE* |
| | | | 10920 W. SAM HOUSTON PKWY N. SUITE 400 | *P.O BOX 31001-2283* |
| | | | HOUSTON~ TX. 77064 | *PASADENA, CA 91110-2283* |
| | | | PHONE (281)890-0381 FAX (281)890-2114 | |

**CUST: HERITAGE TITLE COMPANY**        **BRANCH: DT**

**ORDER: 202001631**    **CLOSER: JPB**    **ORDER TYPE: A-2**    **SUBTYPE: R**    **DATE: 08/20/2020**

### CAD ACCOUNT NUMBER SUMMARY

| 04-1405-0101-0000 | 04-1405-0102-0000 | 04-1405-0103-0000 | 04-1405-0107-0000 |
|---|---|---|---|

### SUMMARY OF ALL ACCOUNT(S)

| | SUMMARY OF CURRENT YEAR | | SUMMARY OF ALL TAXES DUE | |
|---|---|---|---|---|
| | **TAX YEAR** | **BASE TAX** | **DUE 08/2020** | **DUE 09/2020** |
| TRAVIS COUNTY | **2019** | 16,072.81 | 19,126.64 | 19,287.37 |
| CITY OF AUSTIN (TRAVIS CO | **2019** | 19,285.13 | 22,949.30 | 23,142.15 |
| ISD - AUSTIN | **2019** | 48,833.04 | 58,111.32 | 58,599.64 |
| TRAVIS COUNTY HOSPITAL | **2019** | 4,594.87 | 5,467.90 | 5,513.84 |
| AUSTIN COMMUNITY COLLEGE | **2019** | 4,565.58 | 5,433.04 | 5,478.69 |
| TOTAL TAX | | 93,351.43 | 111,088.20 | 112,021.69 |

### ********** COMMENTS ********** CAUTION ********** READ BEFORE CLOSING **********

| CAD# 04-1405-0101-0000 | - | **2020 PROPOSED TOTAL VALUE: 1,624,898** |
| | | **NO AG EXEMPTION FOUND ON ACCOUNT FOR TAX YEARS 2007-2011.** |
| CAD# 04-1405-0102-0000 | - | **2020 PROPOSED TOTAL VALUE: 1,480,455** |
| | | **NO AG EXEMPTION FOUND ON ACCOUNT FOR TAX YEARS 2007-2011.** |
| CAD# 04-1405-0103-0000 | - | **2020 PROPOSED TOTAL VALUE: 966,744** |
| | | **NO AG EXEMPTION FOUND ON ACCOUNT FOR TAX YEARS 2007-2011.** |
| CAD# 04-1405-0107-0000 | - | **THIS PROPERTY MAY BE SUBJECT TO AG ROLLBACK TAXES FOR 2014 AND PRIOR YEARS** |
| | | **2020 PROPOSED TOTAL VALUE: 280,223** |
| | | **NO AG EXEMPTION FOUND ON ACCOUNT FOR TAX YEARS 2007-2011.** |
| TRAVIS COUNTY | - | EXEMPTS: HS-20%/5,000; O65-85,000; DIS-85,000 |
| CITY OF AUSTIN (TRAVIS COU | - | EXEMPTS: HS-10%/5000; O65-88,000; DIS-88,000 |
| ISD - AUSTIN | - | EXEMPTS: HS-25,000; O65-35,000; DIS-25,000 |
| TRAVIS COUNTY HOSPITAL | - | EXEMPTS: HS-20%/5,000; O65-85,500; DIS-85,500 |
| AUSTIN COMMUNITY COLLEGE | - | EXEMPTS: HS-1%/5,000; O65-160,000; DIS-160,000 |

| | |
|---|---|
| **TAX CERTIFICATE**<br>**DATA TRACE**<br>10920 W. SAM HOUSTON PKWY N. SUITE 400<br>HOUSTON~ TX. 77064<br>PHONE (281)890-0381 FAX (281)890-2114 | *REMIT CERT FEE TO:*<br>*DATA TRACE*<br>*P.O BOX 31001-2283*<br>*PASADENA, CA 91110-2283* |

**CUST: HERITAGE TITLE COMPANY**     **BRANCH: DT**

**ORDER: 202001631**     **CLOSER: JPB**     **ORDER TYPE: A-2**     **SUBTYPE: R**     **DATE: 08/20/2020**

01 02 03 2J 68

CAD#     **04-1405-0101-0000**     **HE6/J01**
DESC     **ABS 8 SUR 20 DECKER I ACR 2.320 ABST/SUB ID A0008**
ACREAGE     **2.320**
SITUS     *4917 S CONGRESS AVE 02*
MAIL     401 CONGRESS AVE 33RD FL AUSTIN TX 78701-3792
ASSESSED OWNER(S)     **2019 ASSESSED VALUES**

**WC 4811 SOUTH CONGRESS LLC**     LAND     757,944
IMPROVEMENT     866,954
CLASS CODE   **F1 - COMMERCIAL IMPROVED**     **TOTAL VALUE**     **1,624,898**
**HIGH LIABILITY**

TOTAL TAX RATE     2.1448660
TOTAL EST TAXES
W/O EXEMPT     34851.88

## TAX ENTITY INFORMATION

| **TRAVIS COUNTY** | | **PAYMENTS AS OF** | | | **07/13/2020** |
|---|---|---|---|---|---|
| PO BOX 149328 AUSTIN, TX 78714-9328 | | | | 19 TAX RATE | 0.3692930 |
| PHONE 512-854-9473 | | | | **W/O EXEMPT** | **6,000.63** |
| **EXEMPTIONS NONE** | **YR** | **BASE TAX** | **BASE DUE** | **DUE 08/2020** | **DUE 09/2020** |
| AC# 171806 | 19 | 6,000.63 | 6,000.63 | **7,140.75** | **7,200.76** |
| TS 08-20-20 | SUBTOTAL | 6,000.63 | 6,000.63 | **7,140.75** | **7,200.76** |
| **CITY OF AUSTIN (TRAVIS COUNTY)** | | **PAYMENTS AS OF** | | | **07/13/2020** |
| COLLECTED BY TRAVIS CO | | | | 19 TAX RATE | 0.4431000 |
| PHONE 512-854-9473 | | | | **W/O EXEMPT** | **7,199.92** |
| **EXEMPTIONS NONE** | **YR** | **BASE TAX** | **BASE DUE** | **DUE 08/2020** | **DUE 09/2020** |
| AC# 171806 | 19 | 7,199.92 | 7,199.92 | **8,567.90** | **8,639.90** |
| TS 08-20-20 | SUBTOTAL | 7,199.92 | 7,199.92 | **8,567.90** | **8,639.90** |
| **ISD - AUSTIN** | | **PAYMENTS AS OF** | | | **07/13/2020** |
| COLL BY TRAVIS COUNTY | | | | 19 TAX RATE | 1.1220000 |
| PHONE 512-854-9473 | | | | **W/O EXEMPT** | **18,231.36** |
| **EXEMPTIONS NONE** | **YR** | **BASE TAX** | **BASE DUE** | **DUE 08/2020** | **DUE 09/2020** |
| AC# 171806 | 19 | 18,231.36 | 18,231.36 | **21,695.32** | **21,877.63** |
| TS 08-20-20 | SUBTOTAL | 18,231.36 | 18,231.36 | **21,695.32** | **21,877.63** |
| **TRAVIS COUNTY HOSPITAL** | | **PAYMENTS AS OF** | | | **07/13/2020** |
| COLLECTED BY TRAVIS CO | | | | 19 TAX RATE | 0.1055730 |
| PHONE 512-854-9473 | | | | **W/O EXEMPT** | **1,715.45** |
| **EXEMPTIONS NONE** | **YR** | **BASE TAX** | **BASE DUE** | **DUE 08/2020** | **DUE 09/2020** |
| AC# 171806 | 19 | 1,715.45 | 1,715.45 | **2,041.39** | **2,058.54** |
| TS 08-20-20 | SUBTOTAL | 1,715.45 | 1,715.45 | **2,041.39** | **2,058.54** |
| **AUSTIN COMMUNITY COLLEGE** | | **PAYMENTS AS OF** | | | **07/13/2020** |
| COLLECTED BY TRAVIS CO | | | | 19 TAX RATE | 0.1049000 |
| PHONE 512-854-9473 | | | | **W/O EXEMPT** | **1,704.52** |
| **EXEMPTIONS NONE** | | **BASE TAX** | **BASE DUE** | **DUE 08/2020** | **DUE 09/2020** |

EXHIBIT PAGE TAX   EXH 20-002

| TS 08-20-20 | SUBTOTAL | 1,704.52 | 1,704.52 | 2,028.38 | 2,045.42 |

## TAX CERTIFICATE
### DATA TRACE
10920 W. SAM HOUSTON PKWY N. SUITE 400
HOUSTON~ TX. 77064
PHONE (281)890-0381 FAX (281)890-2114

*REMIT CERT FEE TO:*
*DATA TRACE*
*P.O BOX 31001-2283*
*PASADENA, CA 91110-2283*

**CUST: HERITAGE TITLE COMPANY**          **BRANCH: DT**
**ORDER: 202001631        CLOSER: JPB        ORDER TYPE: A-2        SUBTYPE: R                DATE: 08/20/2020**

### SUMMARY OF ACCOUNT 04-1405-0101-0000

| | TAX YEAR | BASE TAX | DUE 08/2020 | DUE 09/2020 |
|---|---|---|---|---|
| TRAVIS COUNTY | **2019** | 6,000.63 | 7,140.75 | 7,200.76 |
| CITY OF AUSTIN (TRAVIS CO | **2019** | 7,199.92 | 8,567.90 | 8,639.90 |
| ISD - AUSTIN | **2019** | 18,231.36 | 21,695.32 | 21,877.63 |
| TRAVIS COUNTY HOSPITAL | **2019** | 1,715.45 | 2,041.39 | 2,058.54 |
| AUSTIN COMMUNITY COLLEGE | **2019** | 1,704.52 | 2,028.38 | 2,045.42 |
| TOTAL TAX | | **34,851.88** | **41,473.74** | **41,822.25** |

|  |  |
|---|---|
| | 01 02 03 2J 68 |
| CAD#      **04-1405-0102-0000** | **HE6/J01** |
| DESC      **ABS 8 SUR 20 DECKER I ACR 5.6839 ABST/SUB ID A0008** | |
| ACREAGE    **5.683** | |
| SITUS      *4917 S CONGRESS AVE 02* | |
| MAIL       401 CONGRESS AVE 33RD FL AUSTIN TX 78701-3792 | |
| ASSESSED OWNER(S) | **2019 ASSESSED VALUES** |

| | |
|---|---|
| **WC 4811 SOUTH CONGRESS LLC** | |
| | LAND                          1,449,120 |
| | IMPROVEMENT                     31,335 |
| CLASS CODE   **F1 - COMMERCIAL IMPROVED** | **TOTAL VALUE          1,480,455** |
| **HIGH LIABILITY** | |
| | TOTAL TAX RATE          2.1448660 |
| | TOTAL EST TAXES |
| | W/O EXEMPT              31753.79 |

### TAX ENTITY INFORMATION

| **TRAVIS COUNTY** | | | **PAYMENTS AS OF** | **07/13/2020** |
|---|---|---|---|---|
| PO BOX 149328 AUSTIN, TX 78714-9328 | | | 19 TAX RATE | 0.3692930 |
| PHONE 512-854-9473 | | | **W/O EXEMPT** | **5,467.22** |

| **EXEMPTIONS NONE** | YR | BASE TAX | BASE DUE | DUE 08/2020 | DUE 09/2020 |
|---|---|---|---|---|---|
| AC# 171807 | 19 | 5,467.22 | 5,467.22 | **6,505.99** | **6,560.66** |
| TS 08-20-20 | SUBTOTAL | 5,467.22 | 5,467.22 | **6,505.99** | **6,560.66** |

| **CITY OF AUSTIN (TRAVIS COUNTY)** | | | **PAYMENTS AS OF** | **07/13/2020** |
|---|---|---|---|---|
| COLLECTED BY TRAVIS CO | | | 19 TAX RATE | 0.4431000 |
| PHONE 512-854-9473 | | | **W/O EXEMPT** | **6,559.90** |

| **EXEMPTIONS NONE** | YR | BASE TAX | BASE DUE | DUE 08/2020 | DUE 09/2020 |
|---|---|---|---|---|---|
| AC# 171807 | 19 | 6,559.90 | 6,559.90 | **7,806.28** | **7,871.88** |
| TS 08-20-20 | SUBTOTAL | 6,559.90 | 6,559.90 | **7,806.28** | **7,871.88** |

| **ISD - AUSTIN** | | | **PAYMENTS AS OF** | **07/13/2020** |
|---|---|---|---|---|
| COLL BY TRAVIS COUNTY | | | 19 TAX RATE | 1.1220000 |
| PHONE 512-854-9473 | | | **W/O EXEMPT** | **16,610.71** |

| **EXEMPTIONS NONE** | YR | BASE TAX | BASE DUE | DUE 08/2020 | DUE 09/2020 |
|---|---|---|---|---|---|
| AC# 171807 | 19 | 16,610.71 | 16,610.71 | **19,766.74** | **19,932.85** |
| TS 08-20-20 | SUBTOTAL | 16,610.71 | 16,610.71 | **19,766.74** | **19,932.85** |

## TAX CERTIFICATE
**DATA TRACE**
10920 W. SAM HOUSTON PKWY N. SUITE 400
HOUSTON~ TX. 77064
PHONE (281)890-0381 FAX (281)890-2114

*REMIT CERT FEE TO:*
*DATA TRACE*
*P.O BOX 31001-2283*
*PASADENA, CA 91110-2283*

**CUST: HERITAGE TITLE COMPANY**          **BRANCH: DT**
**ORDER: 202001631        CLOSER: JPB        ORDER TYPE: A-2        SUBTYPE: R              DATE: 08/20/2020**

| TRAVIS COUNTY HOSPITAL | | | PAYMENTS AS OF | | 07/13/2020 |
|---|---|---|---|---|---|
| COLLECTED BY TRAVIS CO | | | | 19 TAX RATE | 0.1055730 |
| PHONE 512-854-9473 | | | | W/O EXEMPT | 1,562.96 |
| **EXEMPTIONS NONE** | **YR** | **BASE TAX** | **BASE DUE** | **DUE 08/2020** | **DUE 09/2020** |
| AC# 171807 | 19 | 1,562.96 | 1,562.96 | **1,859.92** | **1,875.55** |
| TS 08-20-20 | SUBTOTAL | 1,562.96 | 1,562.96 | **1,859.92** | **1,875.55** |
| **AUSTIN COMMUNITY COLLEGE** | | | **PAYMENTS AS OF** | | **07/13/2020** |
| COLLECTED BY TRAVIS CO | | | | 19 TAX RATE | 0.1049000 |
| PHONE 512-854-9473 | | | | W/O EXEMPT | 1,553.00 |
| **EXEMPTIONS NONE** | **YR** | **BASE TAX** | **BASE DUE** | **DUE 08/2020** | **DUE 09/2020** |
| AC# 171807 | 19 | 1,553.00 | 1,553.00 | **1,848.07** | **1,863.60** |
| TS 08-20-20 | SUBTOTAL | 1,553.00 | 1,553.00 | **1,848.07** | **1,863.60** |

| SUMMARY OF ACCOUNT 04-1405-0102-0000 | | | | |
|---|---|---|---|---|
| | **TAX YEAR** | **BASE TAX** | **DUE 08/2020** | **DUE 09/2020** |
| TRAVIS COUNTY | **2019** | 5,467.22 | 6,505.99 | 6,560.66 |
| CITY OF AUSTIN (TRAVIS CO | **2019** | 6,559.90 | 7,806.28 | 7,871.88 |
| ISD - AUSTIN | **2019** | 16,610.71 | 19,766.74 | 19,932.85 |
| TRAVIS COUNTY HOSPITAL | **2019** | 1,562.96 | 1,859.92 | 1,875.55 |
| AUSTIN COMMUNITY COLLEGE | **2019** | 1,553.00 | 1,848.07 | 1,863.60 |
| TOTAL TAX | | **31,753.79** | **37,787.00** | **38,104.54** |

|  |  |
|---|---|
| | 01 02 03 2J 68 |
| CAD#    **04-1405-0103-0000** | **HE6/J01** |
| DESC    **ABS 8 SUR 20 DECKER I ACR 4.32 ABST/SUB ID A0008** | |
| ACREAGE   **4.320** | |
| SITUS    ***4811 S CONGRESS AVE 02*** | |
| MAIL     401 CONGRESS AVE 33RD FL AUSTIN TX 78701-3792 | |
| ASSESSED OWNER(S) | **2019 ASSESSED VALUES** |
| ***WC 4811 SOUTH CONGRESS LLC*** | LAND                                952,656 |
| | IMPROVEMENT                    14,088 |
| CLASS CODE   **F1 - COMMERCIAL IMPROVED** | **TOTAL VALUE                  966,744** |
| | TOTAL TAX RATE            2.1448660 |
| | TOTAL EST TAXES |
| | W/O EXEMPT                  20735.36 |

## TAX ENTITY INFORMATION

| TRAVIS COUNTY | | | PAYMENTS AS OF | | 07/13/2020 |
|---|---|---|---|---|---|
| PO BOX 149328 AUSTIN, TX 78714-9328 | | | | 19 TAX RATE | 0.3692930 |
| PHONE 512-854-9473 | | | | W/O EXEMPT | 3,570.12 |
| **EXEMPTIONS NONE** | **YR** | **BASE TAX** | **BASE DUE** | **DUE 08/2020** | **DUE 09/2020** |
| AC# 171808 | 19 | 3,570.12 | 3,570.12 | **4,248.44** | **4,284.14** |
| TS 08-20-20 | SUBTOTAL | 3,570.12 | 3,570.12 | **4,248.44** | **4,284.14** |

## TAX CERTIFICATE

**DATA TRACE**

10920 W. SAM HOUSTON PKWY N. SUITE 400

HOUSTON~ TX. 77064

PHONE (281)890-0381 FAX (281)890-2114

*REMIT CERT FEE TO:*

*DATA TRACE*

*P.O BOX 31001-2283*

*PASADENA, CA 91110-2283*

**CUST: HERITAGE TITLE COMPANY**  **BRANCH: DT**

**ORDER: 202001631**  **CLOSER: JPB**  **ORDER TYPE: A-2**  **SUBTYPE: R**  **DATE: 08/20/2020**

| **CITY OF AUSTIN (TRAVIS COUNTY)** | | | **PAYMENTS AS OF** | | **07/13/2020** |
|---|---|---|---|---|---|
| COLLECTED BY TRAVIS CO | | | | 19 TAX RATE | 0.4431000 |
| PHONE 512-854-9473 | | | | **W/O EXEMPT** | **4,283.64** |
| **EXEMPTIONS NONE** | **YR** | **BASE TAX** | **BASE DUE** | **DUE 08/2020** | **DUE 09/2020** |
| AC# 171808 | 19 | 4,283.64 | 4,283.64 | **5,097.53** | **5,140.37** |
| TS 08-20-20 | SUBTOTAL | 4,283.64 | 4,283.64 | **5,097.53** | **5,140.37** |

| **ISD - AUSTIN** | | | **PAYMENTS AS OF** | | **07/13/2020** |
|---|---|---|---|---|---|
| COLL BY TRAVIS COUNTY | | | | 19 TAX RATE | 1.1220000 |
| PHONE 512-854-9473 | | | | **W/O EXEMPT** | **10,846.87** |
| **EXEMPTIONS NONE** | **YR** | **BASE TAX** | **BASE DUE** | **DUE 08/2020** | **DUE 09/2020** |
| AC# 171808 | 19 | 10,846.87 | 10,846.87 | **12,907.78** | **13,016.24** |
| TS 08-20-20 | SUBTOTAL | 10,846.87 | 10,846.87 | **12,907.78** | **13,016.24** |

| **TRAVIS COUNTY HOSPITAL** | | | **PAYMENTS AS OF** | | **07/13/2020** |
|---|---|---|---|---|---|
| COLLECTED BY TRAVIS CO | | | | 19 TAX RATE | 0.1055730 |
| PHONE 512-854-9473 | | | | **W/O EXEMPT** | **1,020.62** |
| **EXEMPTIONS NONE** | **YR** | **BASE TAX** | **BASE DUE** | **DUE 08/2020** | **DUE 09/2020** |
| AC# 171808 | 19 | 1,020.62 | 1,020.62 | **1,214.54** | **1,224.74** |
| TS 08-20-20 | SUBTOTAL | 1,020.62 | 1,020.62 | **1,214.54** | **1,224.74** |

| **AUSTIN COMMUNITY COLLEGE** | | | **PAYMENTS AS OF** | | **07/13/2020** |
|---|---|---|---|---|---|
| COLLECTED BY TRAVIS CO | | | | 19 TAX RATE | 0.1049000 |
| PHONE 512-854-9473 | | | | **W/O EXEMPT** | **1,014.11** |
| **EXEMPTIONS NONE** | **YR** | **BASE TAX** | **BASE DUE** | **DUE 08/2020** | **DUE 09/2020** |
| AC# 171808 | 19 | 1,014.11 | 1,014.11 | **1,206.79** | **1,216.93** |
| TS 08-20-20 | SUBTOTAL | 1,014.11 | 1,014.11 | **1,206.79** | **1,216.93** |

| SUMMARY OF ACCOUNT 04-1405-0103-0000 | | | | |
|---|---|---|---|---|
| | **TAX YEAR** | **BASE TAX** | **DUE 08/2020** | **DUE 09/2020** |
| TRAVIS COUNTY | **2019** | 3,570.12 | 4,248.44 | 4,284.14 |
| CITY OF AUSTIN (TRAVIS CO | **2019** | 4,283.64 | 5,097.53 | 5,140.37 |
| ISD - AUSTIN | **2019** | 10,846.87 | 12,907.78 | 13,016.24 |
| TRAVIS COUNTY HOSPITAL | **2019** | 1,020.62 | 1,214.54 | 1,224.74 |
| AUSTIN COMMUNITY COLLEGE | **2019** | 1,014.11 | 1,206.79 | 1,216.93 |
| TOTAL TAX | | **20,735.36** | **24,675.08** | **24,882.42** |

## TAX CERTIFICATE
### DATA TRACE
10920 W. SAM HOUSTON PKWY N. SUITE 400
HOUSTON~ TX. 77064
PHONE (281)890-0381 FAX (281)890-2114

**REMIT CERT FEE TO:**
*DATA TRACE*
*P.O BOX 31001-2283*
*PASADENA, CA 91110-2283*

| | | |
|---|---|---|
| **CUST: HERITAGE TITLE COMPANY** | **BRANCH: DT** | |
| **ORDER: 202001631**   **CLOSER: JPB** | **ORDER TYPE: A-2**   **SUBTYPE: R** | **DATE: 08/20/2020** |

01 02 03 2J 68
**HE6/J01**

| | |
|---|---|
| CAD# | **04-1405-0107-0000** |
| DESC | **ABS 8 SUR 20 DECKER I ACR 2.620 ABST/SUB ID A0008** |
| ACREAGE | **2.620** |
| SITUS | *5001 WASSON RD 02* |
| MAIL | 401 CONGRESS AVE 33RD FL AUSTIN TX 78701-3792 |

| ASSESSED OWNER(S) | **2019 ASSESSED VALUES** | |
|---|---|---|
| ***WC 4811 SOUTH CONGRESS LLC*** | LAND | 104,800 |
| | IMPROVEMENT | 175,423 |
| **CLASS CODE  A1 - SINGLE FAMILY RESIDENCE** | **TOTAL VALUE** | **280,223** |
| | TOTAL TAX RATE | 2.1448660 |
| | TOTAL EST TAXES | |
| | W/O EXEMPT | 6010.40 |

### TAX ENTITY INFORMATION

| **TRAVIS COUNTY** | | **PAYMENTS AS OF** | | **07/13/2020** |
|---|---|---|---|---|
| PO BOX 149328 AUSTIN, TX 78714-9328 | | | **19 TAX RATE** | 0.3692930 |
| PHONE 512-854-9473 | | | **W/O EXEMPT** | **1,034.84** |

| **EXEMPTIONS NONE** | **YR** | **BASE TAX** | **BASE DUE** | **DUE 08/2020** | **DUE 09/2020** |
|---|---|---|---|---|---|
| AC# 599136 | 19 | 1,034.84 | 1,034.84 | **1,231.46** | **1,241.81** |
| TS 08-20-20 | SUBTOTAL | 1,034.84 | 1,034.84 | **1,231.46** | **1,241.81** |

| **CITY OF AUSTIN (TRAVIS COUNTY)** | | **PAYMENTS AS OF** | | **07/13/2020** |
|---|---|---|---|---|
| COLLECTED BY TRAVIS CO | | | **19 TAX RATE** | 0.4431000 |
| PHONE 512-854-9473 | | | **W/O EXEMPT** | **1,241.67** |

| **EXEMPTIONS NONE** | **YR** | **BASE TAX** | **BASE DUE** | **DUE 08/2020** | **DUE 09/2020** |
|---|---|---|---|---|---|
| AC# 599136 | 19 | 1,241.67 | 1,241.67 | **1,477.59** | **1,490.00** |
| TS 08-20-20 | SUBTOTAL | 1,241.67 | 1,241.67 | **1,477.59** | **1,490.00** |

| **ISD - AUSTIN** | | **PAYMENTS AS OF** | | **07/13/2020** |
|---|---|---|---|---|
| COLL BY TRAVIS COUNTY | | | **19 TAX RATE** | 1.1220000 |
| PHONE 512-854-9473 | | | **W/O EXEMPT** | **3,144.10** |

| **EXEMPTIONS NONE** | **YR** | **BASE TAX** | **BASE DUE** | **DUE 08/2020** | **DUE 09/2020** |
|---|---|---|---|---|---|
| AC# 599136 | 19 | 3,144.10 | 3,144.10 | **3,741.48** | **3,772.92** |
| TS 08-20-20 | SUBTOTAL | 3,144.10 | 3,144.10 | **3,741.48** | **3,772.92** |

| **TRAVIS COUNTY HOSPITAL** | | **PAYMENTS AS OF** | | **07/13/2020** |
|---|---|---|---|---|
| COLLECTED BY TRAVIS CO | | | **19 TAX RATE** | 0.1055730 |
| PHONE 512-854-9473 | | | **W/O EXEMPT** | **295.84** |

| **EXEMPTIONS NONE** | **YR** | **BASE TAX** | **BASE DUE** | **DUE 08/2020** | **DUE 09/2020** |
|---|---|---|---|---|---|
| AC# 599136 | 19 | 295.84 | 295.84 | **352.05** | **355.01** |
| TS 08-20-20 | SUBTOTAL | 295.84 | 295.84 | **352.05** | **355.01** |

| **AUSTIN COMMUNITY COLLEGE** | | **PAYMENTS AS OF** | | **07/13/2020** |
|---|---|---|---|---|
| COLLECTED BY TRAVIS CO | | | **19 TAX RATE** | 0.1049000 |
| PHONE 512-854-9473 | | | **W/O EXEMPT** | **293.95** |

| **EXEMPTIONS NONE** | **YR** | **BASE TAX** | **BASE DUE** | **DUE 08/2020** | **DUE 09/2020** |
|---|---|---|---|---|---|
| AC# 599136 | 19 | 293.95 | 293.95 | **349.80** | **352.74** |
| TS 08-20-20 | SUBTOTAL | 293.95 | 293.95 | **349.80** | **352.74** |

EXHIBIT NO. 30     EX. 30-007

| **TAX CERTIFICATE** | *REMIT CERT FEE TO:* |
|---|---|
| **DATA TRACE** | *DATA TRACE* |
| 10920 W. SAM HOUSTON PKWY N. SUITE 400 | *P.O BOX 31001-2283* |
| HOUSTON~ TX. 77064 | *PASADENA, CA 91110-2283* |
| PHONE (281)890-0381 FAX (281)890-2114 | |

**CUST: HERITAGE TITLE COMPANY**      **BRANCH: DT**

**ORDER: 202001631**    **CLOSER: JPB**    **ORDER TYPE: A-2**    **SUBTYPE: R**    **DATE: 08/20/2020**

| SUMMARY OF ACCOUNT 04-1405-0107-0000 | | | | |
|---|---|---|---|---|
| | **TAX YEAR** | **BASE TAX** | **DUE 08/2020** | **DUE 09/2020** |
| TRAVIS COUNTY | **2019** | 1,034.84 | 1,231.46 | 1,241.81 |
| CITY OF AUSTIN (TRAVIS CO | **2019** | 1,241.67 | 1,477.59 | 1,490.00 |
| ISD - AUSTIN | **2019** | 3,144.10 | 3,741.48 | 3,772.92 |
| TRAVIS COUNTY HOSPITAL | **2019** | 295.84 | 352.05 | 355.01 |
| AUSTIN COMMUNITY COLLEGE | **2019** | 293.95 | 349.80 | 352.74 |
| TOTAL TAX | | **6,010.40** | **7,152.38** | **7,212.48** |

### CONDITIONS, DISCLAIMERS AND EXCLUSIONS

This Tax Certificate/Tax Order Report does not constitute a report on or certification of: (1) mineral (productive and/or non-productive) taxes or leases; (2) personal property taxes; or (3) other non ad valorem taxes (such as paving liens, stand-by charges or maintenance assessments).

Data Trace Information Services LLC ("Data Trace") may have warranted the accuracy of this Tax Certificate/Tax Order Report to its customer (the "Data Trace Customer") pursuant to the terms and conditions of a written tax service agreement between Data Trace and said Data Trace Customer (the "Tax Service Agreement"). Any such warranty (hereinafter, "Data Trace Customer Warranty") does not: (a) extend to a third party bearer of this Tax Certificate/Tax Order Report; (b) cover any changes made to the records of the taxing authority after the "payments as of," "paid," or "payment" dates delineated above; and (c) cover any invalid tax information shown on the records of the taxing authority or resulting from an error by the Data Trace Customer (including, without limitation, submission of incorrect property information by said Data Trace Customer). DATA TRACE MAKES NO WARRANTIES (EXPRESS OR IMPLIED) WITH RESPECT TO THIS TAX CERTIFICATE/TAX ORDER REPORT OTHER THAN (WHERE APPLICABLE) THE DATA TRACE CUSTOMER WARRANTY. Any and all claims under a Data Trace Customer Warranty must be submitted to Data Trace by the corresponding Data Trace Customer and are subject to the terms and conditions set forth in the pertinent Tax Service Agreement (including, without limitation, the filing deadlines applicable to such claims). In some jurisdictions Data Trace's validation of a Tax Certificate/Tax Order Report is required to activate a Data Trace Customer Warranty.

**PRINTED BY HE6/J01**

## HOA CERTIFICATE

### DATA TRACE

10920 W. SAM HOUSTON PKWY N. SUITE 400

HOUSTON~ TX. 77064

PHONE (281)890-0381 FAX (281)890-2114

*REMIT CERT FEE TO:*

*DATA TRACE*

*P.O BOX 31001-2283*

*PASADENA, CA 91110-2283*

| CUST: HERITAGE TITLE COMPANY | | BRANCH: DT | | |
|---|---|---|---|---|
| ORDER: 202001631 | CLOSER: JPB | ORDER TYPE: A-2 | SUBTYPE: R | DATE: 08/20/2020 |

**SELLER**       *

**BUYER**

**COUNTY**       TRAVIS

**SUBD NAME / BLK A A ACREAGE ACCOUNT**

   **NO MAINTENANCE ASSESSED**

*** THIS SUBDIVISION IS NOT ASSESSED BY AN HOA ***

SUMMARY OF ACCOUNT 04-1405-0102-0000

| **DESC** | ABS 8 SUR 20 DECKER I ACR 5.6839 ABST/SUB ID A0008 |
|---|---|
| **SITUS** | 4917 S CONGRESS AVE 02 |

| EXAMINER   TR4/JDC  07/20/2005 | CONTACTED |
|---|---|

SUMMARY OF ACCOUNT 04-1405-0103-0000

| **DESC** | ABS 8 SUR 20 DECKER I ACR 4.32 ABST/SUB ID A0008 |
|---|---|
| **SITUS** | 4811 S CONGRESS AVE 02 |

**SUBD NAME / BLK ABS 8 SUR 20 DECKER I**

   **NO HOA FOUND FOR ABS 8 SUR 20 DECKER I**

*** OUR RESEARCH DOES NOT INDICATE THE EXISTENCE OF AN ***

*** HOA. PLEASE VERIFY WITH YOUR TITLE REPORT. IF AN ***

*** HOA IS KNOWN, PLEASE CONTACT YOUR TAX SERVICE ***

SUMMARY OF ACCOUNT 04-1405-0101-0000

| **DESC** | ABS 8 SUR 20 DECKER I ACR 2.320 ABST/SUB ID A0008 |
|---|---|
| **SITUS** | 4917 S CONGRESS AVE 02 |

SUMMARY OF ACCOUNT 04-1405-0107-0000

| **DESC** | ABS 8 SUR 20 DECKER I ACR 2.620 ABST/SUB ID A0008 |
|---|---|
| **SITUS** | 5001 WASSON RD 02 |

### CONDITIONS, DISCLAIMERS AND EXCLUSIONS

This HOA Certificate does not constitute a report on or certification of: (1) mineral (productive and/or non-productive) taxes or leases; (2) personal property taxes; or (3) other non ad valorem taxes (such as paving liens, stand-by charges or maintenance assessments).

Data Trace Information Services LLC ("Data Trace") may have warranted the accuracy of this HOA Certificate to its customer (the "Data Trace Customer") pursuant to the terms and conditions of a written tax service agreement between Data Trace and said Data Trace Customer (the "Tax Service Agreement"). Any such warranty (hereinafter, "Data Trace Customer Warranty") does not: (a) extend to a third party bearer of this HOA Certificate; (b) cover any changes made to the records of the association or other assessment authority after the "payments as of," "paid," or "payment" dates delineated above; and (c) cover any invalid assessment information shown on the records of the association or other assessment authority authority or resulting from an error by the Data Trace Customer (including, without limitation, submission of incorrect property information by said Data Trace Customer). DATA TRACE MAKES NO WARRANTIES (EXPRESS OR IMPLIED) WITH RESPECT TO THIS HOA CERTIFICATE OTHER THAN (WHERE APPLICABLE) THE DATA TRACE CUSTOMER WARRANTY. Any and all claims under a Data Trace Customer Warranty must be submitted to Data Trace by the corresponding Data Trace Customer and are subject to the terms and conditions set forth in the pertinent Tax Service Agreement (including, without limitation, the filing deadlines applicable to such claims). In some jurisdictions Data Trace's validation of a HOA Certificate is required to activate a Data Trace Customer Warranty.



T. 713.220.9165
F. 713.223.9319
mdurrschmidt@hirschwest.com

July 6, 2020

*Via CMRRR: 9414 7266 9904 2167 5066 80*
*and First Class U.S. Mail*

WC 4811 South Congress, LLC
c/o World Class
814 Lavaca St.
Austin, Texas 78701
Attn: Natin Paul

Re:    Promissory Note (the "Note") dated March 31, 2017 in the original principal sum of $4,745,000 executed by WC 4811 South Congress, LLC ("Maker" or "Borrower") and payable to BancorpSouth Bank, as successor by merger to First State Bank Central Texas, secured by a Deed of Trust, Security Agreement and Financing Statement dated March 31, 2017 on 14.993 acres of land, more or less, out of the Isaac Decker League Survey No. 20, Abstract No. 8, in Travis County, Texas (the "Collateral" or the "Property") and guaranteed by Natin Paul and World Class Capital Group, LLC (collectively the "Guarantors").

Dear Sir or Madam:

As you know, this law firm represents BancorpSouth Bank, successor by merger to First State Bank Central Texas (the "Bank") in connection with the above-referenced Note. As you also know, the Note is delinquent.

Pursuant to the Deed of Trust, the Borrower may collect rents until the Borrower receives a notice of default from the Bank. The Bank has provided notice to Borrower of its default under the Note by letter dated July 2, 2020. The Bank hereby notifies Borrower to not collect rents from any tenant or lessee on the Property. Any rents collected by Borrower must be held in kind and remitted to Bill Babineaux of BancorpSouth Bank at 315 Settlers Trace Blvd., Lafayette, Louisiana 70508.

20170804.20190907/3743901.1

EXHIBIT NO. 31

EX. 31-001

WC 4811 South Congress, LLC
July 6, 2020
Page 2


       In accordance with the obligations of the Borrower under the Deed of Trust, please provide us with copies of the lease for every tenant or lessee occupying a rental space on the Property and the rent roll for the Property.


                               Sincerely,

                               HIRSCH & WESTHEIMER, P.C.


                               By:*/s/ Michael J. Durrschmidt*
                                  Michael J. Durrschmidt


cc:    Natin Paul
       c/o World Class
       814 Lavaca St.
       Austin, Texas 78701
       Attn: Natin Paul
       *Via CMRRR: 9414 7266 9904 2167 5065 67*

       World Class Capital Group, LLC
       c/o World Class
       814 Lavaca St.
       Austin, Texas 78701
       Attn: Natin Paul
       *Via CMRRR: 9414 7266 9904 2167 5066 42*

       Linda Thong
       World Class
       244 Fifth Avenue, Suite 2200
       New York, New York 10001
       *Via CMRRR: 9414 7266 9904 2167 5067 03*

       Maryann Norwood
       World Class
       814 Lavaca St.
       Austin, Texas 78701
       *Via email: mnorwood@world-class.com*

# BRACEWELL

September 9, 2020

WC 4811 South Congress, LLC
c/o World Class
814 Lavaca St.
Austin, Texas 78701
Attn: Natin Paul
Certified Mail RRR # 9414726699042147947403
And First Class Mail

Mr. Natin Paul
c/o World Class
814 Lavaca St.
Austin, Texas 78701
Certified Mail RRR # 9414726699042147947601
First Class Mail

World Class Capital Group, LLC
814 Lavaca St.
Austin, Texas 78701
Attn: Natin Paul
Certified Mail RRR # 9414726699042147947595
And First Class Mail

World Class
244 Fifth Avenue, Suite 2200
New York, New York 10001
Attn: Linda Thong
Certified Mail RRR # 9414726699042147947618
First Class Mail

Mr. Brian Elliott
World Class Global Business Services
814 Lavaca St.
Austin, Texas 78701
Via email: belliott@world-class.com

Ms. Maryann Norwood
World Class
814 Lavaca St.
Austin, Texas 78701
Via email: mnorwood@world-class.com

## NOTICE DEMANDING RENT AND RENT PROCEEDS

Ladies and Gentlemen:

As you are aware, this law firm represents 4811 SoCo, L.P., successor by assignment to BancorpSouth Bank, successor by merger to First State Bank Central Texas (the "Lender") in connection with the below-referenced Note[1]. You were notified by letters dated July 6, 2020, July 23, 2020 and again August 17, 2020 by the law firm Hirsch & Westheimer, P.C. that you **may not** collect rents from any tenant or lessee on the Mortgaged Property and any rents collected by you must be held in kind and remitted to Lender.

---

[1] Promissory Note (the "Note") dated March 31, 2017 in the original principal sum of $4,745,000 executed by WC 4811 South Congress, LLC ("Maker" or "Borrower") and payable to BancorpSouth Bank, as successor by merger to First State Bank Central Texas, secured by a Deed of Trust, Security Agreement and Financing Statement dated March 31, 2017 (the "Deed of Trust") on 14.993 acres of land, more or less, out of the Isaac Decker League Survey No. 20, Abstract No. 8, in Travis County, Texas (the "Collateral" or the "Mortgaged Property") and guaranteed by Natin Paul and World Class Capital Group, LLC (collectively the "Guarantors").

**Christopher L. Dodson**
Partner

T: +1.713.221.1373      F: +1.800.404.3970
711 Louisiana Street, Suite 2300, Houston, Texas 77002-2770
chris.dodson@bracewell.com      bracewell.com

EXHIBIT NO. 32

# BRACEWELL

September 9, 2020
Page 2

This notice serves as a reminder that you may not collect any rents from any tenant or lessee of the Mortgaged Property. In addition, we request an accounting of any rents you have collected from any tenant or lessee on the Mortgaged Property from July 6, 2020 to the current date and request that you immediately remit such rents to Lender at the address provided below.

Further, you have not provided Lender with copies of the lease for every tenant or lessee occupying a rental space on the Mortgaged Property and the current rent roll for the Mortgaged Property. These documents have been requested in each of the letters referenced herein and to date you have failed to provide them.

Pursuant to the terms of the Deed of Trust, you are hereby again directed to provide us with copies of the lease for every tenant or lessee occupying rental space on the Mortgaged Property and the current rent roll for the Mortgaged Property, and to deliver all rents and proceeds of any rents you receive concerning the Mortgaged Property to Lender at the address below.

The Lender expressly reserves all of its rights and remedies relating to the Note, Deed of Trust, or any of the loan document executed in connection therewith (collectively, together with the Note and Deed of Trust, the "Loan Documents"). Neither this notice nor any past, present, or future action, inaction, or discussions by the Lender has been intended or shall constitute: (a) a waiver or relinquishment of, or an agreement to delay or refrain from exercising, any rights or remedies provided for by law or in the Loan Documents, (b) an election of remedies, (c) an agreement to engage in negotiating, or to obtain approval for, any proposal for refinancing or renewal of the Note, or (d) an agreement relating to any other matter not expressly addressed herein. This notice and any notices previously sent by the Lender should not be construed as requiring Lender to give any notice not expressly required by the Loan Documents, or applicable law.

This notice is not intended to advise you of your legal rights and obligations. You should obtain counsel of your choice to discuss your legal rights and obligations.

# BRACEWELL

September 9, 2020
Page 3

Very truly yours,

BRACEWELL LLP

Christopher L. Dodson

**ADDRESS FOR DELIVERY OF RENTAL
PAYMENTS EFFECTIVE IMMEDIATELY:**

500 West 2nd Street, #1900
Austin, Texas 78701

cc:     Mr. Mark Riley
        (Via electronic mail: Mark.Riley@Riley-CPA-Law.com )

        4811 SoCo, L.P.
        (Via electronic mail )



# Delaware

Page 1

### The First State

*I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF LIMITED PARTNERSHIP OF "4811 SOCO, L.P.", FILED IN THIS OFFICE ON THE FIRST DAY OF JUNE, A.D. 2020, AT 6:34 O`CLOCK P.M.*



Jeffrey W. Bullock, Secretary of State

7996168  8100
SR# 20205401446

Authentication: 203030188
Date: 06-02-20

You may verify this certificate online at corp.delaware.gov/authver.shtml

EXHIBIT NO. 33                                    EX. 33-001

# CERTIFICATE OF LIMITED PARTNERSHIP
## OF
## 4811 SOCO, L.P.

The undersigned general partner, desiring to form a limited partnership pursuant to the Delaware Revised Uniform Limited Partnership Act, hereby executes this Certificate of Limited Partnership.

1.  The name of the limited partnership (the "*Partnership*") is 4811 SoCo, L.P.

2.  The address of the registered office of the Partnership is 1209 Orange Street, Wilmington, Delaware, 19801.  The name of the Partnership's registered agent for service of process, whose business office address is identical with the registered office of the Partnership, is The Corporation Trust Company.

3.  The name and the business and mailing address of the sole general partner of the Partnership are as follows:

| Name | Business and Mailing Address |
|---|---|
| 4811 SoCo GP, LLC | 1209 Orange Street<br>Wilmington, Delaware, 19801 |

4.  This Certificate of Limited Partnership shall be effective upon the filing hereof with the Secretary of State of the State of Delaware.

Dated: June 1, 2020.

GENERAL PARTNER:

**4811 SoCo GP, LLC**
(a Delaware limited liability company)

By: _____
Timothy C. Taylor, Sr.
Authorized Person

State of Delaware
Secretary of State
Division of Corporations
Delivered  06:34 PM 06/01/2020
FILED  06:34 PM 06/01/2020
SR  20205401446 - File Number  7996168

CERTIFICATE OF LIMITED PARTNERSHIP
25953556v.2

4811 SoCo, L.P.

EXHIBIT NO. 33                                      EX. 33-002

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Diana Alday on behalf of W Benesh
Bar No. 2132050
diana.alday@bracewell.com
Envelope ID: 46074317
Status as of 9/11/2020 1:21 PM CST

Associated Case Party: WC 4811 South Congress, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Manfred Sternberg | | manfred@msternberg.com | 9/9/2020 11:49:15 AM | SENT |

Associated Case Party: 4811 Soco, LP

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christopher L.Dodson | | chris.dodson@bracewell.com | 9/9/2020 11:49:15 AM | SENT |
| W. Stephen Benesh | | steve.benesh@bracewell.com | 9/9/2020 11:49:15 AM | SENT |
| Jaclyn Carr | | jaclyn.carr@bracewell.com | 9/9/2020 11:49:15 AM | SENT |
| Robert P.Grattan | | bob.grattan@bracewell.com | 9/9/2020 11:49:15 AM | SENT |

Associated Case Party: BancorpSouth Bank

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Brian Buescher | | bbuescher@hirschwest.com | 9/9/2020 11:49:15 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Dana LKirkpatrick | | dana@msternberg.com | 9/9/2020 11:49:15 AM | SENT |
| Christopher L.Dodson | | chris.dodson@bracewell.com | 9/9/2020 11:49:15 AM | SENT |
| Mark Riley | | riley@riley-cpa-law.com | 9/9/2020 11:49:15 AM | SENT |
| Michael J.Durrschmidt | | mdurrschmidt@hirschwest.com | 9/9/2020 11:49:15 AM | SENT |